# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| BARBARA ALIOTTA | ) | |
| 2175 Crestlake Drive | ) | |
| Rockwall, TX 75087 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| ROBERT ANDERSON | ) | |
| 424 Sonoma Drive | ) | |
| Rockwall, TX 75087 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| JEANNIE AVERY | ) | **COMPLAINT** |
| P.O. Box 542662 | ) | **JURY DEMAND** |
| Grand Prairie, TX 75054 | ) | |
| | ) | |
| and | ) | **CLASS ACTION** |
| | ) | |
| YVONNE CAIN | ) | |
| 9700 Starboard Court | ) | |
| Cheltenham, MD 20623 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| PRISCILLA CATAPAT | ) | |
| 1410 Blakes Way | ) | |
| Garland, TX  75042 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| EVELYN CLAUDE | ) | |
| 2600 Winding Creek Drive | ) | |
| Carrollton, TX 75007 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| SYLVIA CLINE | ) | |
| 7147 Tours Street | ) | |
| Houston, TX  77036 | ) | |
| | ) | |
| and | ) | |

MARY L. DUPREE-ELLIS )
12807 Hilltop Drive )
Balch Springs, TX 75108 )
)
        and )
)
WYMAN ELROD )
7107 Briar Meadow Drive )
Dallas, TX 75230 )
)
        and )
)
PATRICIA EVERETT )
655 Freeland Avenue )
Calumet City, IL 60409 )
)
        and )
)
LARRY GLAZENER )
4909 Hovenkamp Drive )
Dallas, TX 75227-2820 )
)
        and )
)
DENNIS HAROOTUNIAN )
3713 South George Mason Drive )
Apt. 1409W )
Falls Church, VA 22041 )
)
        and )
)
MARY KEBBEH )
1238 Sleepy Hollow Drive )
Dallas, TX 75235 )
)
        and )
)
DENNIS KELLER )
4521 Hale Street )
The Colony, TX 75056 )
)
        and )
)
)

PEARL LINDSEY                          )
809 Aspen Drive                        )
Desoto, TX  75115                      )
                                       )
        and                            )
                                       )
FAYE MORITZ                            )
2441 Chestnut Drive                    )
Little Elm, TX 75068                   )
                                       )
        and                            )
                                       )
BERNICE PARKER                         )
5038 Overcrest Drive                   )
Garland, TX  75043                     )
                                       )
        and                            )
                                       )
PAULA PATTERSON                        )
141 Baker's Acres Drive                )
Hawthorne, FL  32640                   )
                                       )
        and                            )
                                       )
PATRICK J. SHUTE                       )
10105 Concorde Drive                   )
Frisco, TX 75035                       )
                                       )
                    Plaintiffs,        )
                                       )
v.                                     )
                                       )
MARTIN J. GRUENBERG, ACTING            )
CHAIRMAN, FEDERAL DEPOSIT              )
INSURANCE CORPORATION,                 )
 550 17th St., N.W.                    )
Washington, D.C.  20429-0002           )
                                       )
                    Defendant.         )
_____ )

## COMPLAINT

1.    Plaintiff BARBARA ALIOTTA and eighteen (18) other plaintiffs file this action against MARTIN J. GRUENBERG, Acting Chairman of the Federal Deposit Insurance Corporation ("FDIC" or "Defendant Agency"), to enforce their rights to continuing employment with the FDIC free from discrimination on the basis of age under the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* (the "ADEA").

### JURISDICTION

2.    Jurisdiction of this Court is based upon the ADEA, 29 U.S.C. § 633a(c), 28 U.S.C. § 1331 (federal question), and 28 U.S.C. § 1343 (civil rights).

### VENUE

3.    Venue lies in the District of Columbia pursuant to 28 U.S.C. § 1391 and 29 U.S.C. § 633a(c).  The headquarters of the Defendant Agency, including the office of the named Defendant Acting Chairman Gruenberg, is located in this District.  In this District, the Defendant Agency established and applied the policies and practices that harmed the plaintiffs.  The Defendant Agency made and maintained records concerning the plaintiffs in this District.  At least two of the plaintiffs served as employees of the Defendant Agency in this District.

### NOTICE OF INTENT TO SUE

4.    On October 31, 2005, the nineteen Plaintiffs filed their Notice of Intent to File Suit against the Defendant Agency with the United States Equal Employment Opportunity Commission ("EEOC" or the "Commission").  Plaintiffs served a copy of that Notice of Intent to File Suit on the Defendant Agency on the same day.  The Notice

1

advised the Commission and the Defendant Agency of the Plaintiffs' intent to include a class action as part of their claims.

## PARTIES

5.    Plaintiffs were born on dates ranging from January 10, 1933 through December 30, 1955.  They were older employees of the Defendant Agency in its Division of Resolutions and Receiverships ("DRR") in Washington D.C. or in Dallas, Texas during and before 2005.  The Defendant Agency discharged them from their employment effective on May 14, 2005 and on September 3, 2005.

6.    Plaintiff Barbara Aliotta was born on June 19, 1954.  She was employed by the Defendant Agency on June 23, 1986.  She was a Resolutions and Receiverships ("R&R") Specialist, Grade 12, in the Dallas, Texas office of the Defendant Agency.  She had more than 19 years of service when she was discharged effective September 3, 2005.

7.    Plaintiff Robert Anderson was born on December 25, 1952.  He was employed by the Defendant Agency for six years and nine months and was a Grade 6 employee when the Defendant Agency discharged him from employment, effective September 3, 2005.

8.    Plaintiff Jeanne Avery was born on February 24, 1952.  She was employed by the Defendant Agency on January 2, 1987.  She was a R&R Technician, Grade 7.  She had more than 18 years of service when the Defendant Agency discharged her from employment effective September 3, 2005.

9.    Plaintiff Yvonne Cain was born on May 26, 1950.  Defendant Agency hired her in September 1983 at its Headquarters office in the District of Columbia.  She

2

was detailed to the Dallas office in 2003, and was reassigned permanently to the Dallas office thereafter. She was a R&R Specialist, Grade 13, when she was offered an early retirement and discharge from employment, or discharge without early retirement in the spring of 2005. Given that option, she chose to be discharged with the early retirement. The FDIC separated her from its service effective May 14, 2005.

10.    Plaintiff Priscilla Catapat was born on August 19, 1944. She was employed by the Defendant Agency on April 18, 1983. Plaintiff Catapat has a degree in accounting and 14 years of accounting experience with the FDIC. In 2005 she was employed as a R&R Specialist, Grade 12. She had years of experience in the Claims Department of FDIC and the Customer Service Division of DRR, but the Agency denied her bids for positions in those Departments. She was placed on the Re-Employment Priority List of the FDIC, but instead of filling positions from that list, the Defendant Agency filled the vacancies with younger employees who had less experience and expertise than she had. Plaintiff Catapat was a R&R Specialist, Grade 12, when the Defendant Agency discharged her from employment effective September 3, 2005. She did not accept a buyout, but applied for and accepted a retirement after her discharge.

11.    Plaintiff Evelyn Claude was born on September 11, 1955. She was employed by the Defendant Agency on February 10, 1992. She was a R&R Technician, Grade 7, when the Agency discharged her from employment effective September 3, 2005.

12.    Plaintiff Sylvia Cline was born on January 10, 1933. She was employed by the Defendant Agency in DRR on October 15, 1979. She was a R&R Technician,

3

Grade 8, with more than 25 years of service when the Agency discharged her from employment effective September 3, 2005.  Apparently because of her age and years of service, she was not offered a buyout or an enhanced or early retirement.

13.    Plaintiff Mary L. DuPree-Ellis was born on May 30, 1953.  She was employed by the Defendant Agency in May 1985.  She was a Grade 7, R&R technician, with about 15 years of service with the FDIC and about 20 years of service with the Federal government, when she was offered a discharge from the employment of the Defendant Agency with or without a buyout and early retirement.  She chose to accept the discharge with a buyout and an early retirement.  The Agency discharged her from its employment effective May 14, 2005.

14.  Plaintiff Wyman Elrod was born on August 25, 1952.  He was employed by the Defendant Agency on October 10, 1986.  He was a R&R Specialist, Grade 12, when the Defendant Agency discharged him from employment effective September 3, 2005.

15.    Plaintiff Patricia J. Everett was born on June 12, 1949.  She was employed by the Defendant Agency on April 28, 1986.  She was a R&R Technician, Grade 7, when the Agency discharged her from her employment effective September 3, 2005.

16.    Plaintiff Larry L. Glazener was born on July 17, 1948.  He graduated from West Texas A & M University with a degree in Management and Finance in May 1971.  While he was employed as an assistant cashier at Plaza del Oro Commerce Bank, N.A., he completed all course work offered by the American Institute of Banking in Houston and received a certificate of completion.  He achieved a Grade 15 position with

the Defendant Agency, but left that employment in 1998. He returned to the employment of the Defendant Agency in 1999 in a "term" Grade 13 position, but accepted a permanent Grade 12 position. He had a total of more than 23 years of service with the Defendant Agency in the spring of 2005. Plaintiff Glazener was a R&R Specialist, Grade 12. Defendant Agency did not offer him a buyout because he was eligible for a reduced retirement annuity when the Defendant Agency separated him from its service effective May 14, 2005.

17.    Plaintiff Dennis C. Harootunian was born on December 30, 1950. He received a Bachelor's Degree in Business Administration from Boston University in 1972 and a Master's Degree in Finance and Marketing from Suffolk University in 1973. He was employed by the Securities and Exchange Commission in Washington, D.C. from July 1975 through mid-October 1988 as a Senior Financial Analyst within the Division of Corporation Finance. He was employed in the Defendant Agency in its Headquarters office in Washington, D.C. in October 1988. In 2005, he was a R&R Specialist, Grade 13, with more than 30 years of federal service. The Defendant Agency did not offer him a buyout because, based upon his age and years of service, he was entitled to a reduced annuity in 2005. Plaintiff Harootunian was certified by the Human Resources Office as qualified for seven different positions within DRR. He bid for each of those positions. The Defendant Agency chose eight younger employees for those positions with less experience and expertise than Plaintiff Harootunian. The Defendant Agency discharged Plaintiff Harootunian from employment effective September 3, 2005.

18.     Plaintiff Mary S. Kebbeh was born on September 27, 1950.  She was employed by the Defendant Agency on April 9, 1990.  She was a R&R Technician, Grade 7, when the Defendant Agency discharged her from its employment effective September 3, 2005.

19.     Plaintiff Dennis L. Keller was born on September 11, 1950.  He was employed by the Defendant Agency on May 13, 1986.  He was a R&R Specialist, Grade 12, when the Defendant Agency discharged him from employment effective September 3, 2005.

20.     Plaintiff Pearl Lindsey was born on June 9, 1955.  She was employed by the Defendant Agency on November 19, 1986.  She was a Secretary, Grade 6, when the Defendant Agency discharged her from its employment effective September 3, 2005.

21.     Plaintiff O. Faye Moritz was born on September 26, 1955.  She was employed by the Defendant Agency starting on January 27, 1986.  She was a R&R Specialist, Grade 12, when the Defendant Agency discharged her from employment effective September 3, 2005.

22.     Plaintiff Bernice Parker was born on March 30, 1949.  She was employed by the Defendant Agency on June 9, 1986.  She was a R&R Technician, Grade 7, when she was offered an early retirement and discharge from employment, or discharge without early retirement, in the spring of 2005.  Given that option, she chose to be discharged with the early retirement.  The FDIC separated her from its service effective May 14, 2005.

6

23.     Plaintiff Paula J. Patterson was born on July 25, 1950.  She was employed by Defendant Agency on December 12, 1988.  She was a R&R Technician, Grade 7, when the Defendant Agency offered her a discharge from employment with a buyout and early retirement, or a discharge with a buyout and early retirement.  Defendant terminated her from its employment effective May 14, 2005.

24.     Plaintiff Patrick J. Shute was born on March 4, 1949.  He was employed by the Defendant Agency starting on September 30, 1985.  He had become the Department Head of the Claims Department of DRR in the Dallas office, and received excellent performance appraisals in that position.  In 2001, however, the Defendant Agency eliminated him from that position, and created two "Section Chief" positions to perform the duties he had performed as Department Head.  The Defendant Agency awarded both of those new positions to much younger employees who had substantially less experience and expertise than Shute.  Plaintiff Shute was a R&R Specialist, Grade 14, with 19 years and 4 months of service with the Defendant Agency when the Defendant Agency offered him a discharge from employment with a buyout and an early retirement, or a discharge from employment without a buyout and without an early retirement.  He accepted the discharge with a buyout and early retirement.  The Defendant Agency discharged him from employment effective May 14, 2005.

25.     Defendant Martin J. Gruenberg is the Acting Chairman of the FDIC.  He is sued in his official capacity as the head of the FDIC under Section 15, 29 U.S.C. § 633a and 28 U.S.C. § 1391.  The FDIC is an agency created by Congress in 1933 to provide insurance for deposits below $100,000 in national and state chartered banks and

savings institutions.  It is governed by a five member Board of Directors, all of whom are appointed by the President and confirmed by the Senate.  The Board of Directors includes: 1) the Chairman, 2) the Vice Chairman, 3) the Director, 4) the Director, Office of Thrift Supervision, and 5) the Director, Comptroller of the Currency.  FDIC is an employer, as defined by Section 14 of the Age Discrimination in Employment Act, 29 U.S.C. § 633a.  As used in this Complaint the term "Defendant Agency" means the FDIC, including its Acting Chairman and the Board of Directors.

## FACTUAL BASIS FOR THE CLAIMS

26.     In the mid-1990's, members of the Board of Directors of the FDIC discussed their desire to reduce the number of employees in the Agency because the extraordinary workload caused by the savings and loan and bank crises in the 1980's was shrinking.  Members of the Board and/or officers of the Defendant Agency expressed opposition to any Reduction in Force ("RIF") because under federal rules for "RIF"s, employees with seniority are favored, while younger, less experienced employees are more likely to lose their positions.

27.     On November 25, 1997, the Board asked for a list of all employees age 50 and older.  On January 6, 1998, Chief Operating Officer John Bovenzi presented the list of employees age 50 and older to the Board of the FDIC.  Close to that time, the Defendant Agency announced a core staffing analysis in which those positions not identified as "core" were considered "excess."

28.     In remarks made to groups of employees in 2001 and 2002, Donald E. Powell, who was then Chairman of the FDIC, stated:  "I want young people around me--

8

-- they have all the innovative ideas."

29.    In the summer of 2002, at a discussion open to employees of the two

divisions of the Defendant Agency that were about to be consolidated, Chairman Donald

E. Powell asked to see the hands of employees who had been with FDIC for more than

twenty (20) years.  He then said:  "It is time for you long-term employees to go and give

the younger employees a chance to advance," or words to that effect.

30.    In order to receive a full retirement annuity under the Federal Employee

Retirement System  ("FERS") or under the Civil Service Retirement System ("CSRS"),

a federal employee must be at least 55 years old and have at least 30 years of federal

service, except that employees age 62 or older can retire with at least 10 years of service.

5 U.S.C. § 8412 (a)(d) and (h).  However, a federal agency attempting to reduce the size

of its work force through a Reduction in Force (RIF) may, under the regulations of the

Office of Personnel Management, offer an early retirement, which is less than a full

annuity, to those employees age 50 and above whose employment or grade may be

harmed by the RIF.

31.    At the end of 2001, FDIC employed 6,229 people.  On February 6, 2002,

Chief Operating Officer Bovenzi sent a message to all employees that 400 staff were

currently "excess" and that total excess would be 600 by the end of 2006.

32.    In May 2002, the Defendant Agency conducted a RIF in which it

discharged 20 employees.  Upon information and belief, plaintiffs assert that most of

those harmed by the 2002 RIF were more than 50 years old.

33.    On September 16, 2002, Chairman Powell advised FDIC employees that the Defendant Agency would make a broad RIF unless 400 or more employees accepted a buyout and left their employment with the Agency.  If 400 employees had done so, the Agency's work force would have been reduced from 6,209 to 5,809 employees.  By October 11, 2002, approximately 645 employees had accepted a buyout.  Upon information and belief, a high proportion of the employees who accepted the buyout were more than 50 years old.  By year end 2002, the permanent staff had been reduced from 6,104 to 5,402.  The temporary and "term" staff had been reduced from 125 to 55, leaving a total staff of 5,457.  By that date, the FDIC had 372 fewer employees than the reduction target set by Chairman Powell.

34.    On January 6, 2003, the Defendant Agency, through Chief Operating Officer Bovenzi, announced without explanation that 200 of its employees were still excess.  On July 14, 2003, the Defendant Agency discharged 39 employees, and reduced in grade 33 additional employees.  Upon information and belief, most of the employees whom the Defendant Agency discharged or reduced in grade were over the age of 50.

### THE 2005 REDUCTION IN FORCE

35.    In October 2004, Director of the DRR Michael Glassman issued a global message to employees of that Division, stating that he was recommending a Reduction in Force to take place during 2005 to reduce staffing levels in DRR by more than half, from 515 to 240 employees.

36.    Despite the stated goal of reducing the number of employees in the DRR, the Defendant Agency renamed 67 positions in DRR and designated them as "new" or

"vacant" and proceeded to hire, promote or transfer employees to fill those positions in late 2004 or early 2005. Upon information and belief, the Defendant Agency awarded most of those 67 positions to employees who were forty-five (45) years old or younger, all of whom were significantly younger than the plaintiffs, and almost all of whom had significantly less service than plaintiffs.

37. The Office of Personnel Management has adopted regulations that authorize agencies who undertake a Reduction in Force to offer an early retirement annuity to employees who have attained age 50 and have at least 20 years of service. The Defendant Agency apparently sought and obtained authority from the FDIC to make such offers in connection with its 2005 Reduction in Force in the DRR.

38. In January or February 2005, the Defendant Agency made a buyout offer to those DRR employees who were less than 50 years of age and to other employees 50 years of age and older who were not yet eligible to receive a full retirement annuity. The Defendant Agency offered these employees the choice of being discharged from their employment with an early retirement or being discharged without an early retirement.

39. The buyout was based on the employee's grade and salary, which was in no event more than 50% of the employee's annual salary, in return for the employee's signature on a Statement of Intent to Retire Early With a Buyout from the FDIC. The Intent to Retire Early document states that if the employee who accepts the early retirement is re-employed by the Defendant Agency or employed as a contractor of the Defendant Agency within five years, he or she will be responsible for repaying to the Defendant Agency the gross amount of the buyout.

11

40.     The Intent to Retire Early with a Buyout document states that:

[M]y intent to retire with a voluntary separation incentive payment (also called a 'buyout') . . . is entirely voluntary and has not been coerced . . . I understand that I cannot rescind this application after the date I retire or May 2, 2005 . . . unless the FDIC's authority to offer voluntary early retirement has been withdrawn by the U.S. Office of Personnel Management . . ..

41.     Nothing in the Intent to Retire Early document states or suggests that the employee's written Intent to Retire Early constitutes a waiver or release of his or her rights under the ADEA, including the rights to bring this suit and to obtain make-whole relief under that Act.  Nothing in the Intent to Retire Early document releases the Defendant Agency from its obligation under the ADEA to make "all personnel actions affecting employees or applicants from employment who are at least 40 years of age . . . free from any discrimination based on . . . age."  Section 15, 29 U.S.C. § 633a.

42.     Approximately 100 employees over the age of 50, including Plaintiffs Yvonne Cain, Larry Glazener, Bernice Parker, Paula Patterson and Patrick Shute accepted the buyout and signed the Intent to Retire Early document.  Defendant Agency separated each of the five plaintiffs named above from their employment with FDIC on May 14, 2005.  The Defendant Agency also separated each of the other members of the class of employees who signed an Intent to Retire Early from service on May 14, 2005.

43.     The retirement income of most of the employees who accepted the early retirement is less than 25% of the salary they received as employees of the FDIC.  For many employees, their retirement income is less than 15% of the salary they had been receiving as employees of the FDIC.

12

44. Those employees who were more than 54 and a half years old or who had 30 years of service, or who were 60 years of age or older with ten (10) years of service and were therefore entitled to an annuity retirement without the need for an early retirement, were not offered a buyout, severance pay, or an early or enhanced annuity. Plaintiffs Cline and Harootunian, and possibly other plaintiffs and older employees, were not offered a buyout based upon their age and years of service. They were treated less favorably than their younger co-workers because of their age.

45. The Defendant Agency by letter of June 30, 2005, advised Plaintiffs Aliotta, Anderson, Avery, Catapat, Claude, Cline, Ellis, Elrod, Everett, Harootunian, Kebbeh, Keller, Lindsey, and Moritz and approximately fifty-four (54) other employees that:

> You will be affected by a reduction in force (RIF) action. This RIF is necessary due to lack of work and/or a need to reorganize the way we perform our work. Consequently, your last day of work with the FDIC will be September 2, 2005, and you will be separated from the Federal service on September 3, 2005 . . . The RIF action does not reflect on your service, performance or conduct. FDIC is appreciative of your service and sincerely regrets taking this action.

46. Defendant Agency separated Plaintiffs Aliotta, Anderson, Avery, Catapat, Claude, Cline, Ellis, Elrod, Everett, Harootunian, Kebbeh, Keller, Lindsey, and Moritz from their service with FDIC, effective on September 3, 2005, together with approximately fifty-four (54) other employees. The majority of employees that FDIC separated from its service effective on September 3, 2005 were over the age of 50, and many others were 45 or older. In 2005, the Defendant Agency discharged only a few employees in DRR who were under the age of 45, and even fewer employees who were

13

under the age of 40.

47.    The Defendant Agency placed the names of some of the plaintiffs and other older employees on a Re-employment Priority List, but the Defendant Agency filled any vacant positions with younger and less senior employees who were no better qualified than plaintiffs and no better qualified than other older workers.  The preference in placing younger employees into open positions from the Re-employment Priority List was another age discriminatory practice by the Agency.

48.    The Defendant Agency also excluded from the 2005 RIF those employees in DRR who were designated as "managers."  Such managers usually hold Grade 13, 14, 15 or a higher rank and are therefore the highest paid employees of the Defendant Agency.  Upon information and belief, plaintiffs assert that most of the persons that the Defendant Agency promoted or hired for positions as managers in the years 2001, 2002, 2003, 2004 and 2005 were significantly less than 50 years old.  Consequently, many of the managers are significantly younger than the plaintiffs.

49.    On September 2, 2005, the Defendant Agency, through its Human Resources Division, sought by e-mail at least fifty (50) additional regular, full-time employees to recruit and hire new employees from college and university campuses as a collateral assignment.  The  "interns" were to be hired at grades 7, 9, 11 and above for a three year internship program with the expectation that they would serve in grades 12 and higher, including managerial positions, after they completed their internships and received their commissions.

14

50.    At all material times during the downsizing programs in 2002, 2003, 2004 and 2005, Defendant Agency continued its recruitment, hiring and employment of new employees.  Many of those hired by the Defendant Agency each year were recruited to apply for "intern" positions under the Defendant Agency's annual recruitment program for corporate employees.

51.    Plaintiffs and other older employees in DRR were harmed by the Defendant's pattern and practice of age discrimination in designing and implementing its 2005 RIF in the DRR which resulted in the termination of their employment.

52.    The Defendant Agency's conduct in designing and implementing the 2005 RIF was not based on a reasonable factor other than age.

53.    Upon information and belief, the Defendant Agency chose the DRR for its 2005 Reduction in Force in whole or in substantial part because DRR's work force was significantly older than the work force of its other Divisions.

54.    Pursuant to its 2005 RIF, the Defendant Agency terminated the employment of approximately 171 employees in its Division of Resolutions and Receiverships in May and September.  At least 120 employees who were terminated are over the age of 50.

55.    Each of the plaintiffs had performed satisfactorily.  The Defendant Agency had no business reason or justification, other than the reduction in force, for discharging them from its employment.

56.    The Defendant Agency stated in its Special Notice letter of June 30, 2005 that:  "This RIF is necessary due to lack of work and/or a need to reorganize the way we

15

perform our work." That statement is not accurate. The Defendant Agency had sufficient work to hire new employees in 2005 and it retained many younger employees, and promoted some of them in 2005, while discharging plaintiffs and other employees over the age of fifty (50).

57.    Whatever "need to reorganize the way we perform our work" the Defendant Agency might have had on June 30, 2005 was not remedied or addressed by the Defendant Agency's conduct in discharging plaintiffs and other experienced employees who had performed satisfactorily and replacing them with younger employees with fewer skills and abilities.

## CLASS ALLEGATIONS

58.    *Numerosity.*  The class is comprised of at least one-hundred twenty (120) former employees of the FDIC, born on or before December 30, 1955, who were harmed by the 2005 Reduction in Force in violation of the ADEA. The claims of all the potential class members are so numerous that joinder would be impractical.

59.    *Commonality.*  The questions of fact and law of plaintiffs Catapat, Glazener, Harootunian, Patterson, and Shute are common to the other Plaintiffs and other members of the class. The evidence in support of each of the plaintiff's claims of discriminatory treatment is similar to the evidence which would be offered by the class to show unlawful discrimination against other older employees who were terminated from their positions in the DRR. The following allegations of fact are common to the class (Fed. R. Civ. P. Rule 23(c)(2) and (3)):

16

- The class members are individuals born on or before December 31, 1955, who were formerly employed by the FDIC in its DRR Division;

- The Defendant Agency terminated the class members' employment as part of the 2005 RIF.

- The younger employees retained by the Defendant Agency had no greater skills, experience, or knowledge than the plaintiffs and other members of the class whom the Agency discharged;

60.    *Typicality.*  Plaintiffs Cain, Glazener, Harootunian, Patterson and Shute have claims that are typical, if not the same as, those of the other class members.

61.    *Adequacy.*   The class representatives will adequately represent the class. The class's representatives have no interests that conflict with the interests of the class. The class' legal representative, Rose & Rose, P.C., will adequately represent the class. The firm has litigated cases in the federal courts since 1989, representing plaintiffs in pattern or practice cases and collective actions and class actions for many years.

## CLAIM FOR RELIEF

### (All Plaintiffs and Class Members for Violation of the ADEA)

62.    Plaintiffs reassert and re-allege paragraphs 1 through 61, inclusive, as though fully set forth herein and incorporate said paragraphs herein by reference.

63.    Defendant Agency's design and implementation of the 2005 Reduction in Force of employees in DRR harmed plaintiffs and its other older employees; that is, those age 50 and above, by intentionally discharging them from employment because of their age when they had no intent to end their employment with the FDIC.

64.     Defendant Agency's design and implementation of the 2005 RIF harmed its oldest employees, those 50 years of age and older, by discharging a disproportionately high percentage of the oldest workers from its employment, without demonstration that it relied upon a reasonable factor other than age.  The Defendant Agency has not shown and cannot show that the practices were justified by a reasonable factor other than age.  The practices of the Defendant Agency in designing and implementing the 2005 RIF violated Section 15 of the ADEA, 29 U.S.C. § 633a.

WHEREFORE, Plaintiffs pray for entry of::

1)     An order granting plaintiffs' request for class certification of the class of:

Employees born on or before December 30, 1955, who were discharged from their employment in the Division Resolutions and Receiverships of the Defendant Agency pursuant to the 2005 RIF;

and any other class that may be disclosed by the evidence to be produced in discovery;

2)     An injunction declaring unlawful the practices followed by the Defendant Agency in its 2005 RIF, and restraining Defendant Agency from engaging in further practices which discharge or demote older employees because of their age by use of a RIF or other devices;

3)     An injunction requiring the Agency to reinstate plaintiffs and members of the class described above to their employment with the Agency;

4)     A judgment awarding the plaintiffs and members of the class or classes back pay, and other loss of income, loss of retirement and health benefits, and other

18

make-whole relief;

5)      An order awarding positions to the plaintiffs and members of the

class, unless the Agency can show that the younger employee who was selected for the

position was better able to perform the duties of the position than the plaintiff(s) and

other members of the class who were harmed by the 2005 RIF.

6)      An award to the plaintiffs of the costs of litigation including reasonable

expenses, attorneys' fees and expert witness fees.

7)      Such other relief as may be just.

### JURY DEMAND

Plaintiffs hereby demand a trial by jury.


Respectfully submitted,



/s/ David L. Rose/Terri N. Marcus
David L. Rose, D.C. Bar No. 376379
Terri N. Marcus, D.C. Bar No. 483175
Rose & Rose, P.C.
1320 19th Street, N.W. Suite 601
Washington, D.C. 20036
Tel:  (202) 331-8555
Fax: (202) 331-0996
Attorneys for Plaintiffs

December 5, 2005

19