# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| BARBARA ALIOTTA, et al and<br>Others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MARTIN J. GRUENBERG, ACTING<br>CHAIRMAN, FEDERAL DEPOSIT<br>INSURANCE CORPORATION,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case Number 1: 05CV02325<br><br>AMENDED COMPLAINT<br><br><br>CLASS ACTION |

1.      Plaintiff BARBARA ALIOTTA and forty-eight other plaintiffs file this action against MARTIN J. GRUENBERG, Acting Chairman of the Federal Deposit Insurance Corporation ("FDIC" or "Defendant Agency"), to enforce their rights to equal employment opportunity, specifically to be free from age discriminatory employment practices by the Defendant Agency under the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* (the "ADEA").

## JURISDICTION

2.      Jurisdiction of this Court is based upon Section 15 of the ADEA, 29 U.S.C. § 633a(c), 28 U.S.C. § 1331 (federal question), and 28 U.S.C. § 1343 (civil rights).

## VENUE

3.      Venue lies in the District of Columbia pursuant to 28 U.S.C. § 1391 and 29 U.S.C. § 633a(c).  The headquarters of the Defendant Agency, including the office of the named Defendant Acting Chairman Gruenberg and the office of the Director of the Division of

1

Resolutions and Receiverships, are located in this District.  In this District, the Defendant

Agency established and applied the policies and practices that harmed the plaintiffs and other

employees age 50 and older who are similarly situated to plaintiffs.  The Defendant Agency made

and maintained records concerning the plaintiffs in this District.  Some of the plaintiffs served as

employees of the Defendant Agency in this District.

## NOTICE OF INTENT TO SUE

4.     On October 31, 2005, nineteen Plaintiffs filed their Notice of Intent to File Suit

against the Defendant Agency with the United States Equal Employment Opportunity

Commission (the "Commission").   Similar notices advising the Commission and the Defendant

Agency of other employees were filed and served on November 10, 2005, and December 5, 15

and 22, 2005 and on January 3 and 20, 2006.   Plaintiffs served a copy of each Notice of Intent to

File Suit on the Defendant Agency on the same day that the Notice was served with the

Commission.  The Notices advised the Commission and the Defendant Agency of the Plaintiffs'

intent to include a class action as part of their claims.

## PARTIES

5.     Plaintiffs were born on dates ranging from January 10, 1933 through September

30, 1955.  They were employees of the Defendant Agency in its Division of Resolutions and

Receiverships ("DRR") in Washington D.C. or in or near Dallas, Texas during and before 2005.

In the fall of 2004, the Defendant Agency offered to employees of DRR who were not

supervisors, and to some employees in its other Divisions or Offices, incentives to leave its

employment, resign or retire.  Effective from November 30, 2004 through May 14, 2005, the

Defendant Agency discharged approximately 102 employees aged 50 or older, including at least

2

29 Plaintiffs aged 50 or older who accepted the incentives to retire in the spring of 2005 in order to avoid the substantial risk that they would be terminated without any retirement benefits until they reached the age of 62.  In addition, pursuant to its 2005 RIF, the Agency discharged approximately seventy-one other employees, including approximately twenty-four Plaintiffs, from its employment effective September 3, 2005.

6.      Plaintiff Barbara Aliotta was born on June 19, 1954.  She was employed by the Defendant Agency on June 23, 1986.  She was a Resolutions and Receiverships ("R&R") Specialist, Grade 12, in the Dallas, Texas office of the Defendant Agency.  She had more than 19 years of service when she was discharged effective September 3, 2005.

7.       Plaintiff Robert Anderson was born on December 25, 1952.  He was employed by the Defendant Agency for six years and nine months and was a Grade 6 employee when the Defendant Agency discharged him from employment effective September 3, 2005.

8.      Plaintiff Jeanie Avery was born on February 24, 1952.  She was employed by the Defendant Agency on January 2, 1987.  She was a R&R Technician, Grade 7.  She had more than 18 years of service when the Defendant Agency discharged her from its employment effective September 3, 2005.

9.      Plaintiff Douglas M. Barrow was born on February 22, 1938.  He became employed by FDIC in February 1990.  He was a R&R Specialist, Grade 11.  He accepted the offer of incentives to retire.  The Defendant Agency discharged him from its employment effective on May 14, 2005.

10.     Plaintiff Ann A. Bonner was born on March 25, 1946.  She started her employment with FDIC in April 1981.  She served for 24 years and 5 months and was a Grade 12

3

when the Defendant Agency discharged her from its employment effective on September 3, 2005. Notice of her claims was served on the Equal Employment Opportunity Commission on or about January 20, 2006. Her claims will therefore be timely on or about February 21, 2006.

11.    Plaintiff LaMargo Brown was born on October 15, 1951. She was employed by the Defendant Agency on April 15, 1985. She was employed for 20 years by FDIC and was a Grade 6. She accepted the incentives to retire. The Defendant Agency discharged her from its employment effective May 14, 2005.

12.    Plaintiff Yvonne Cain was born on May 26, 1950. Defendant Agency hired her in September 1983 at its Headquarters office in the District of Columbia. She was detailed to the Dallas office in 2003, and was reassigned permanently to the Dallas office thereafter. She was a R&R Specialist, Grade 13. She accepted the incentives for an early retirement. The Defendant Agency discharged her from its employment with the early retirement effective May 14, 2005.

13.    Plaintiff James R. Cantrell was born on May 9, 1941. He began his career with FDIC on April 22, 1991. He was a R&R Technician, Grade 7. He took the incentives to retire. The Defendant Agency discharged him from its employment effective May 14, 2005.

14.    Plaintiff Priscilla Catapat was born on August 19, 1944. She was employed by the Defendant Agency on April 18, 1983. Plaintiff Catapat has a degree in accounting and 14 years of accounting experience with the FDIC. In 2005 she was employed as a R&R Specialist, Grade 12. She had years of experience in the Claims Department of FDIC and the Customer Service Division of DRR, but the Agency denied her bids for positions in those Departments. She was placed on the Re-Employment Priority List of the FDIC, but instead of filling positions

4

from that list, the Defendant Agency filled the vacancies with younger employees who had less experience and expertise than she had.  Plaintiff Catapat was a R&R Specialist, Grade 12, when the Defendant Agency discharged her from employment effective September 3, 2005.  She did not accept an incentive to retire.  However, she applied for and accepted a retirement after her discharge.

15.     Plaintiff Evelyn Claude was born on September 11, 1955.  She was employed by the Defendant Agency on February 10, 1992.  She was a R&R Technician, Grade 7 when the Agency discharged her from employment effective September 3, 2005.

16.     Plaintiff Sylvia Cline was born on January 10, 1933.  She was employed by the Defendant Agency in DRR on October 15, 1979.  She was a R&R Technician, Grade 8 with more than 25 years of service when the Agency discharged her from employment effective September 3, 2005.

17.     Plaintiff James ("Jim")  B. Connell was born on June 27, 1949.  He was employed by the Defendant Agency on August 28, 1989.  He was a R&R Specialist, Grade 13.  He accepted the incentive to retire with a reduced annuity and discharged by the Agency from its employment effective May 14, 2005.  Notice of his claims was served on the EEOC on February 7, 2006.  His claim will mature and become timely on or about March 9, 2006.

18.     Plaintiff Lawrence G. Dillow was born on September 7, 1937.  He began his career with FDIC in January 1987.  He was a R&R Specialist, Grade 12.  He accepted the incentives to retire early.  The Defendant Agency discharged him from its employment effective May 14, 2005.

5

19.     Plaintiff Mary DuPree-Ellis was born on May 30, 1953.  She was employed by the Defendant Agency in May 1985.  She was a R&R Technician, Grade 7, with about 15 years of service with the FDIC and about 20 years of service with the federal government.  The Defendant Agency offered her a discharge with or without a buyout and early retirement.  She chose to accept the discharge with a buyout and an early retirement.  The Agency discharged her from its employment effective May 14, 2005.

20.     Plaintiff Wyman Elrod was born on August 25, 1952.  He was employed by the Defendant Agency on October 10, 1986.  He was a R&R Specialist, Grade 12 when the Defendant Agency discharged him from employment effective September 3, 2005.

21.     Plaintiff Patricia J. Everett was born on June 12, 1949.  She was employed by the Defendant Agency on April 28, 1986.  She was a R&R Technician, Grade 7 when the Agency discharged her from her employment effective September 3, 2005.

22.     Plaintiff Joan D. Fairfield was born on July 15, 1953.  She was employed by the Defendant Agency on November 7, 1977 when she worked for the Federal Home Loan Bank Board, which was absorbed into FDIC in 1989.  She was a R& R Specialist, Grade 14 in the Washington, D.C. office of the Defendant Agency.  She had 27.5 years of experience with the Defendant Agency.  She took the incentives to retire early.  The Defendant Agency discharged her from its employment effective May 14, 2005.

23.  Plaintiff C. Jenola Flowers was born on May 4, 1941.  She was employed by the Defendant Agency on October 8, 1983.  She was a Grade 13 Supervisory Secretary.  She accepted incentives to retire.  The Defendant Agency terminated her employment effective May 14, 2005.  Notice of her claims was served on the EEOC on or about January 31, 2006.  Her

6

claims will therefore be timely on or about March 2, 2006.

24.    Plaintiff Kathy Frantum was born on October 20, 1946.  She was employed by Defendant Agency on May 21, 1990.  She was a Financial Management Analyst, Grade 12 when the Defendant Agency terminated her employment effective May 14, 2005.   Notice of her claims was served on the EEOC on or about February 2, 2006.  Her claims will therefore be timely on or about March 9, 2006.

25.    Plaintiff Jamesena George was born on March 20, 1952.  She was employed by Defendant Agency beginning on June 7, 1987.  She was detailed to the Dallas field office of the Division of Resolutions and Receiverships for six months from August 8, 2002 until February 2003.  She was then reassigned to that office on June 2, 2003.  She was an Administrative Specialist, Grade 11.  She accepted the incentives to retire early.  The Defendant Agency discharged her from its employment on May 14, 2005.

26.    Plaintiff Larry L. Glazener was born on July 17, 1948.  He graduated from West Texas A & M University with a degree in Management and Finance in May 1971.  While he was employed by a bank in Texas, he completed the course work offered by the American Institute of Banking in Houston and received a certificate of completion.  He had a computed entry of duty date of October 17, 1985 and had a total of more than 19 years of service with the Defendant Agency.  In the fall of 2004 he was a R&R Specialist, Grade 12.  He accepted an incentive for a reduced retirement annuity, and the Defendant Agency separated him from its service effective May 14, 2005.

27.    Plaintiff Darrel Gray was born on August 17, 1951.  He was hired by the Defendant Agency on September 14, 1987.  He was a R&R Specialist, Grade 12 when his

employment was terminated on September 3, 2005.

28.    Plaintiff Gregory Haag was born on November 23, 1949.  He has worked for the FDIC for 19.5 years.  He is currently employed by the Defendant Agency as a CG13 R&R Specialist.  He accepted a lower-graded position, moving to a CG12 in Lexington, Kentucky, in order to avoid the RIF in the Dallas office.

29.    Plaintiff Kathy Haag was born on September 24, 1949.  She was employed with FDIC for 14.5 years.  She was a R&R Technician, Grade 7.  She accepted the incentives to retire early.  The Defendant Agency discharged her from its employment effective May 14, 2005.

30.    Plaintiff Denis Harootunian was born on December 30, 1950.  He received a Bachelor's Degree in Business Administration from Boston University in 1972 and a Master's Degree in Finance and Marketing from Suffolk University in 1973.  He was employed by the Securities and Exchange Commission in Washington, D.C. from July 1975 through mid-October 1988 as a Senior Financial Analyst within the Division of Corporation Finance.  He was employed by the Defendant Agency at its Headquarters office in Washington, D.C. in October 1988.  In 2005, he was a R&R Specialist, Grade 13 with more than 30 years of federal service.  Plaintiff Harootunian was certified by the Human Resources Office as qualified for seven different positions within DRR.  He bid for each of those positions.  The Defendant Agency chose eight younger employees with less experience and expertise than Plaintiff Harootunian for those seven positions (two were chosen for one of the positions).  The Defendant Agency discharged Plaintiff Harootunian from its employment effective September 3, 2005.

31.    Plaintiff Peggy J. Henderson was born on February 9, 1939.  She was an Administrative Assistant, Grade 6.  She accepted the incentives to retire.  The Defendant Agency

discharged her from its employment effective May 14, 2005.

32.     Plaintiff Pinkie L. Hoover was born on May 9, 1947.  She started her employment with FDIC in September 1987 as a CG7 R&R Technician.  She accepted an incentive for early retirement.  The Defendant Agency discharged her from employment effective May 14, 2005.

33.     Plaintiff Mary S. Kebbeh was born on September 27, 1950.  She was employed by the Defendant Agency on April 9, 1990.  She was a R&R Technician, Grade 7 when the Defendant Agency discharged her from its employment effective September 3, 2005.

34.     Plaintiff Dennis L. Keller was born on September 11, 1950.  He was employed by the Defendant Agency on May 13, 1986.  He was a R&R Specialist, Grade 12 when the Defendant Agency discharged him from employment effective September 3, 2005.

35.     Plaintiff Gary Kelly was born on February 3, 1945.  He was employed by the defendant for 23 years.  He was a R&R Specialist, Grade 12.  He accepted an incentive to retire. The Defendant Agency discharged him from its employment effective April 30, 2005.

36.     Plaintiff Vincent Leal was born on October 4, 1954.  He was employed by FDIC for 21 years.  He was a R&R Specialist, Grade 12.  He accepted an incentive to accept a reduced annuity.  The Defendant Agency discharged him from his employment on May 14, 2005.

37.     Plaintiff Donald Lett was born on December 27, 1952.  He was employed by the defendant for 25 years. He was a R&R Specialist, Grade 12.  He accepted an incentive to accept a reduced annuity, and the Defendant Agency discharged him from its employment on May 14, 2005.

38.     Plaintiff Pearl Lindsey was born on June 9, 1955.  She was employed by the Defendant Agency on November 19, 1986.  She was a Secretary, Grade 6.  Pursuant to the 2005

RIF, the Defendant Agency discharged her from its employment effective September 3, 2005.

39.     Plaintiff Carole Mann was born on February 16, 1945.  She began employment with the Defendant Agency in August 1984.  She was an Administrative Specialist, Grade 12 when she left Defendant Agency February 25, 2005 for a job offer in the private sector.  Notice of her claims was served on the EEOC on or about February 2, 2006.  Her claims will therefore be timely on or about March 9, 2006.

40.     Plaintiff Richard Mann was born on April 6, 1946.  He started work with Defendant Agency on November 27, 1977.  He was a R&R Specialist, Grade 14.  He accepted an incentive when Defendant Agency separated him from employment on April 30, 2005 with an early retirement buyout.  Notice of his claims was served on the EEOC on or about February 2, 2006. His claims will therefore be timely on or about March 9, 2006.

41.     Plaintiff James "Jim" McAnally was born on March 28, 1940.  He started his employment with Defendant Agency on January 19, 1987.  He was a R&R Specialist, Grade 14. He accepted an incentive for a reduced early retirement and Defendant Agency discharged him on May 14, 2005,

42.     Plaintiff Edwin Montoya was born on August 23, 1954.  He was employed by Defendant Agency for 29 years and 10 months as a R&R Specialist, Grade 12.  He accepted an incentive to retire early.  He was discharged by the Defendant Agency effective May 14, 2005. Notice of his claims was served on the EEOC on or about January 20, 2006.  His claims will therefore be timely on or about February 21, 2006.

43.     Plaintiff O. Faye Moritz was born on September 26, 1955.  She was employed by the Defendant Agency starting on January 27, 1986.  She was a R&R Specialist, Grade 12 when

10

the Defendant Agency, pursuant to its 2005 RIF, discharged her from its employment effective September 3, 2005.

44.     Plaintiff Bernice Parker was born on March 30, 1949.  She was employed by the Defendant Agency on June 9, 1986.  She was a R&R Technician, Grade 7.  She accepted an incentive for a reduced early retirement.  The Agency discharged her from its employment effective May 14, 2005.

45.     Plaintiff Paula J. Patterson was born on July 25, 1950.  She was employed by Defendant Agency on December 12, 1988.  She was a R&R Technician, Grade 7 when the Defendant Agency offered her a discharge from employment with a buyout and early retirement. Defendant terminated her from its employment effective May 14, 2005.

46.     Plaintiff Nancy Powers was born on February 24, 1948.  She was employed by the Defendant Agency for 7.5  years as a GS-12 when she was discharged from her employment on September 3, 2005.  Notice of her claims was given to the Defendant Agency on or about January 20, 2006.  Her claims will therefore be timely on or about February 21, 2006.

47.     Plaintiff Herbert Schirf was born on September 10, 1945.  He began his service with FDIC on March 4, 1974.  His employment as a R&R Specialist, Grade 12 in DRR ended on April 30, 2005.  He received a retirement annuity starting June 1.  Notice of his claims was served on the EEOC on or about January 20, 2006.  His claims will therefore be timely on or about February 21, 2006.

48.     Plaintiff James M. Scott was born on April 28, 1943.  He began work with Defendant Agency on October 20, 1986.  He was a R&R Specialist, Grade 12 in DRR.  He accepted a buyout and a reduced annuity.  He was discharged from employment by the Agency

11

effective on April 30, 2005.  Notice of his claim was served on the EEOC on February 7, 2006.

His claims will therefore mature and be timely on or about March 9, 2006.

49.    Plaintiff Patrick J. Shute was born on March 4, 1949.  He was employed

by the Defendant Agency starting on September 30, 1985.  He had become the Department Head

of the Claims Department of DRR in the Dallas office, receiving excellent performance

appraisals in that position.  In 2001, however, the Defendant Agency eliminated him from that

position, and created two "Section Chief" positions to perform the duties he had performed as

Department Head.  The Defendant Agency awarded both of those new positions to much younger

employees who had substantially less experience and expertise than Shute.  Plaintiff Shute was a

R&R Specialist, Grade 14 with 19 years and 4 months of service with the Defendant Agency

when the Defendant Agency offered him a discharge from employment with a buyout and an

early retirement, or a discharge from employment without a buyout and without an early

retirement.  He accepted the discharge with a buyout and early retirement.  The Defendant

Agency discharged him from employment effective May 14, 2005.

50.    Plaintiff Sherry Thiels was born on October 20, 1948.  She started with FDIC on

December 16, 1976.  She took the buyout option and the Agency discharged her from its service

in her position as a R&R Specialist, Grade 13 on May 14, 2005.

51.    Plaintiff Marc Valentine was born on November 7, 1941.  He started his most

recent employment with FDIC in February or March of 1987.  He had worked for FDIC for nine

months in 1985.  He accepted an incentive which ended his employment as a R&R Specialist,

Grade 12 with FDIC on May 14, 2005.

52.    Plaintiff Frances Wardell was born on September 22, 1952.  She was employed by

12

FDIC for 18.5 years. She was a R&R Technician, Grade 7 when she was discharged from her employment on September 3, 2005.

53.    Plaintiff Jackson Ware was born on July 5, 1945. He was employed by Defendant Agency for 19 years and 2 months. He was a Supervisory Resolutions and Receiverships Specialist, Grade 14 employee. He accepted an incentive to retire early. The Defendant Agency discharged him from employment effective May 14, 2005.

54.    Plaintiff Kerry Williams was born on August 1, 1941. He was hired by Defendant on or about June 19, 1989. He was a R&R Specialist, Grade 12. He accepted an incentive to accept a reduced annuity. The Defendant Agency terminated him from its employment on May 14, 2005.

55.    Defendant Martin J. Gruenberg is the Acting Chairman of the FDIC. He is sued in his official capacity as the head of the FDIC under Section 15, 29 U.S.C. § 633a and 28 U.S.C. § 1391. The FDIC is an agency created by Congress in 1933 to provide insurance for deposits below $100,000 in national and state chartered banks and savings institutions. It is governed by a five member Board of Directors, all of whom are appointed by the President and confirmed by the Senate. The Board of Directors includes: 1) the Chairman, 2) the Vice Chairman, 3) the Director, 4) the Director, Office of Thrift Supervision, and 5) the Director, Comptroller of the Currency. FDIC is an employer as defined by Section 14 of the Age Discrimination in Employment Act, 29 U.S.C. § 633a. As used in this Complaint the term "Defendant Agency" means the FDIC, including its Acting Chairman and the Board of Directors. Defendant Agency is an executive branch agency of the United States.

## FACTUAL BASIS FOR THE CLAIMS

56.    In the mid-1990s, members of the Board of Directors of the FDIC discussed their desire to reduce the number of employees in the Agency because the extraordinary workload caused by the savings and loan and bank crises in the 1980s was shrinking.  Members of the Board and/or officers of the Defendant Agency expressed opposition to any Reduction in Force ("RIF") because under federal rules for "RIF"s, employees with seniority are favored, while younger, less experienced employees are more likely to lose their positions.

57.    On November 25, 1997, the Board asked for a list of all employees age 50 and older.  On January 6, 1998, Chief Operating Officer John Bovenzi presented the list of employees age 50 and older to the Board of the FDIC.  Close to that time, the Defendant Agency announced a core staffing analysis in which those positions not identified as "core" were considered "excess."   Upon information and belief, the Defendant Agency reduced its work force in 1998 and 1999 through offers of incentives to retire or to retire early to employees who were then 50 years or older, particularly those who held positions classified as "excess."

58.    In remarks made to groups of employees in 2001 and 2002, Donald E. Powell, who was then Chairman of the FDIC, stated:  "I want young people around me––- they have all the innovative ideas."

59.    In the summer of 2002, at a discussion open to employees of the two divisions of the Defendant Agency that were about to be consolidated, Chairman Donald E. Powell asked to see the hands of employees who had been with FDIC for more than twenty (20) years.  He then said:  "It is time for you long-term employees to go and give the younger

14

employees a chance to advance," or words to that effect.

60.     In order to receive a full retirement annuity under the Federal Employee Retirement System ("FERS") or under the Civil Service Retirement System ("CSRS"), a federal employee must be at least 55 years old and have at least 30 years of federal service, except that employees age 62 or older can retire with at least 10 years of service.  5 U.S.C. § 8412 (a)(d) and (h).  However, a federal agency attempting to reduce the size of its work force through a Reduction in Force (RIF) may, under the regulations of the Office of Personnel Management, offer an early retirement, which is less than a full annuity, to those employees age 50 and above whose employment or grade may be harmed by the RIF.

61.     At the end of 2001, FDIC employed 6,229 people.  On February 6, 2002, Chief Operating Officer Bovenzi sent a message to all employees that 400 staff were currently "excess" and that total excess would be 600 by the end of 2006.

62.     After offering incentives for early retirement in late 2001 or early 2002, the Defendant Agency conducted a RIF in which it discharged 20 employees in May 2002.  Upon information and belief, plaintiffs assert that most of those harmed by the 2002 RIF were more than 50 years old.

63.     On September 16, 2002, Chairman Powell advised FDIC employees that the Defendant Agency would make a broad RIF unless 400 or more employees accepted a buyout and left their employment with the Agency.  If 400 employees had done so, the Agency's work force would have been reduced from 6,209 to 5,809 employees.  By October 11, 2002, 645 employees had accepted a buyout.  Upon information and belief, a high proportion of the employees who accepted the buyout were more than 50 years old.

15

64. By year end 2002, the permanent staff of the Defendant Agency had been reduced from 6,104 to 5,402. The temporary and "term" staff had been reduced from 125 to 55, leaving a total staff of 5,457. By year end 2001, the FDIC employed 372 fewer employees than the reduction target set by Chairman Powell for that date.

65. On January 6, 2003, the Defendant Agency, through Chief Operating Officer Bovenzi, announced without explanation that 200 of its employees were still excess. Upon information and belief, the Defendant Agency offered incentives to retire in the first half of 2003. On July 14, 2003, the Defendant Agency, pursuant to a RIF, discharged 39 employees and reduced in grade 33 additional employees. Upon information and belief, most of the employees whom the Defendant Agency discharged or reduced in grade in its 2003 RIF were over the age of 50.

## THE 2005 REDUCTION IN FORCE

66. As of October 26, 2004, the workforce of the Defendant had been further reduced to approximately 5,300 or fewer employees.

67. By a memorandum to All FDIC Employees Corporate from the Chief Operating Officer, dated October 26, 2004, Defendant Agency announced "that each division and office was asked to determine if their organizational focus and workforce composition is properly aligned with the current workload and the evolving corporate vision." The Defendant Agency announced that "several factors" including continued industry consolidation and improved efficiencies with the FDIC . . . support the conclusion that the FIDC will need to become a smaller agency" and began "active planning for RIFs in DRR and DIRM, DOA, Legal and DOF." The Defendant Agency estimated a "reduction of between 500 and 600" through a RIF

positions by the end of 2006 with "most of the reductions occurring by year-end 2005."

68.     On the afternoon of October 26, 2004,  Director Glassman of DRR announced that based upon "our review of new business procedures and our budget submission" that he recommended that "staffing levels be reduced from 515 to 240 positions."  That meant that 275 positions out of the 515 positions in DRR, or 53%, would be eliminated by the end of the third quarter 2005.  Defendant further stated that "the recently announced Corporation-sponsored buyout program will be open to all DRR employees with the exception of EM employees through mid-May, 2005 and that DRR employees "will have the opportunity to apply for crossover opportunities at both grade 12 and grade 5/7/9 levels with the Division of Supervision and Consumer Protection."  Defendant Agency stated that "a Reduction-in-Force (RIF) in both Washington and Dallas to involuntarily separate any remaining surplus employees" will occur and that it will be conducted and completed by the end of the third quarter 2005."  Upon information and belief, the RIF in DRR was the only one understated by the Defendant Agency from October, 2004 through December, 2005.

69.     In late 2004 or 2005, the Defendant Agency renamed 67 cross-over positions, designated them as "new" or "vacant," and proceeded to hire, promote or transfer employees from DRR and elsewhere to fill those positions in late 2004 or early 2005.  Upon information and belief, the Defendant Agency awarded most of those 67 positions to employees who were forty-five (45) years old or younger, all of whom were significantly younger than the plaintiffs, and almost all of whom had significantly less service than plaintiffs.

70.     Under lawful regulation, federal agencies who undertake a Reduction in Force may offer an early retirement annuity to employees who have attained age 50 and have at least 20

17

years of service.  Regulations of the Office of Personnel Management govern when a reduction in force by an executive branch agency and some other federal agency is consistent law.  5 C.F.R. § 3511. 202.  Each agency "is responsible for following and applying the regulations when the agency determines that a reduction in force is necessary."  5 C.F.R. § 351.204.

71.    In a reduction in force, the OPM must require, and the Agency must utilize a process for "release of competing employees which gives effect to (1) tenure of employment, (2) military preference, (3) length of service; and (4) efficiency or performance ratings. " 5 U.S.C. § 3502.

72.    Before obligating any resources for voluntary separation incentive payments to its employees, the head of each agency must submit a plan to the Director of OPM outlining the intended use of such payments.  Such a plan may not be implemented without the approval of the Director of OPM.  5 U.S.C. § 3522.

73.    Upon information and belief, Defendant Agency has not publicly asserted that the 2005 in DRR was necessary.  However, DRR employees were informed via a notice letter that: "This RIF is necessary due to lack of work and/or a need to reorganize the way we perform our work."

74.    In the fall of 2004, the Defendant Agency made a buyout offer to those DRR employees who were less than 50 years of age and to other employees 50 years of age and older who were not yet eligible to receive a full retirement annuity.  The Defendant Agency offered these employees the choice of being discharged from their employment with an incentive to retire or resign with an early retirement or face the likelihood of being discharged without an early retirement.  The Corporation Buyout program announced on October 26, 2004.  It was open to all

18

DRR employees at all grade levels, with the exception of EM employees, but the employees who accepted were obliged to submit their applications by December 31, 2004.   The buyout included a cash payment equal to 50% of total annual salary and the ability to combine the buyout with either regular or early retirement.

75.     Approximately 102 employees over the age of 50, including Plaintiffs Barrow, Brown, Cain, Cantrell, Connell, Dillow, DuPree-Ellis, Fairfield, George, Glazener, Gray, Haag, Henderson, Hoover, Kelly, Leal, Lett, McAnally, Montoya, Parker, Patterson, Petri, Schirf, Scott, Shute, Thiels, Valentine, Ware and Williams accepted the buyout and signed the Intent to Retire Early document.  Some employees over 50, including Carole Mann and Richard Mann accepted a buyout to leave the Defendant Agency for lower grade positions in another Federal Agency. Defendant Agency separated each of the plaintiffs named above from their employment with FDIC in the spring of 2005, effective no later than May 14, 2005.  The Defendant Agency also separated each of the other employees who accepted a buyout and early retirement in the spring of 2005, effective on or before May 14, 2005.

76.     The retirement income of most of the above-named plaintiffs and other employees who accepted the early retirement is less than 25% of the salary they received as employees of the FDIC.  For many such plaintiffs and other employees, their retirement income is less than 15% of the salary they had been receiving as employees of the FDIC.

77.     Under the Defendant's 2005 RIF some employees who were 55 or more years of age with 30 years of service, or who had reached age 62 or 65 with 10 or more years of service, and were eligible for full retirement were not offered a buy out because they were already eligible for retirement.

78.     The Defendant Agency by letter of June 30, 2005 advised Plaintiffs Aliotta,

Anderson, Avery, Bonner, Catapat, Claude, Cline, Ellis, Elrod, Everett, Harootunian, Kebbeh,

Keller, Lindsey, Moritz, Powers, and Wardell, and approximately 45 other employees that:

> You will be affected by a reduction in force (RIF) action.  This RIF is necessary due to
> lack of work and/or a need to reorganize the way we perform our work.  Consequently,
> your last day of work with the FDIC will be September 2, 2005, and you will be separated
> from the Federal service on September 3, 2005 . . . The RIF action does not reflect on
> your service, performance or conduct.  FDIC is appreciative of your service and sincerely
> regrets taking this action.

79.     Defendant Agency separated Plaintiffs Aliotta, Anderson, Avery, Bonner, Catapat,

Claude, Cline, Ellis, Elrod, Everett, Harootunian, Kebbeh, Keller, Lindsey, Moritz, Powers and

Wardell from their service with FDIC effective on September 3, 2005, together with

approximately fifty (50) other employees.  Most employees that FDIC separated from its service

effective on September 3, 2005 were over the age of 50, and many of them were 55 or older.  In

2005, the Defendant Agency discharged only a few employees in DRR who were under the age

of 45, and even fewer employees who were under age 40.

80.     The Defendant Agency placed the names of some of the plaintiffs and

other older employees on a Re-employment Priority List, but the Defendant Agency filled any

vacant positions with younger and less senior employees who were no better qualified than

plaintiffs and no better qualified than other older workers.  The Defendant Agency favored

younger employees in making selections from the Re-employment Priority List and discriminated

against older employees in violation of the ADEA.

81.     The Defendant Agency also excluded from the 2005 RIF those employees in DRR

who were designated as "managers."  Such managers usually hold Grade 13, 14, 15 or a higher

rank and are therefore the highest paid employees of the Defendant Agency. Upon information and belief, plaintiffs assert that most of the persons that the Defendant Agency promoted or hired for positions as managers in the years 2001, 2002, 2003, 2004 and 2005 were significantly less than 50 years old. Consequently, many of the managers are significantly younger than the plaintiffs.

82. On September 2, 2005, the Defendant Agency, through its Human Resources Division, asked a substantial number of regular, full-time employees to volunteer to act as recruiters and to recruit and hire new employees from college and university campuses as a collateral assignment. The object of the program was for the Defendant Agency to hire "interns" at grades 7, 9, 11 and above for a three year internship program with the expectation that they would serve in grades 12 and higher, including managerial positions, after they completed their internships and received their commissions.

83. At all material times during the downsizing programs in 2002, 2003, 2004 and 2005, Defendant Agency continued its recruitment, hiring and employment of new employees. Many of those hired by the Defendant Agency each year were recruited to apply for "intern" positions under the Defendant Agency's annual recruitment program for corporate employees.

84. By focusing on recruitment from colleges and universities in the recruitment and hiring of new employees, while discharging from its employment trained and experienced older employees including plaintiffs and the class of older employees, the Defendant Agency in 2005 discriminated against its older employees in violation of the ADEA.

85.     In designing and implementing the RIFs in DRR in late 2004 and in 2005, the Defendant Agency engaged in a pattern and practice of purposeful discrimination against plaintiffs and its other employees over the age of 50. The 2005 RIF was designed and intended by Defendant Agency to have a disparate impact against its employees over age 50; and the RIF actually had a disparate impact against such employees. In the 2005 RIF, the Defendant Agency treated significantly younger employees more favorably than the class of employees over the age of 50.

86.     Even if the Defendant Agency did not intend to discriminate against plaintiffs and other older employees, its conduct in designing and implementing the 2005 RIF had a discriminatory impact against plaintiffs and other employees over the age of 50.

87.     The Defendant Agency's design and execution of the 2004 and 2005 RIFs were not based on a reasonable factor other than age.

88.     Although it studied the possibility of conducting a RIF of Divisions and Offices other than DRR, the Defendant Agency chose the DRR for its only Reduction in Force from October 2004 through December 2005.

89.     The Defendant chose to conduct the 2005 RIF harming the older employees in DRR in whole or in substantial part because DRR's work force was significantly older than the work force of its other Divisions.

90.     Pursuant to its 2005 RIF, the Defendant Agency terminated the employment of approximately 171 employees in its Division of Resolutions and Receiverships in May and September of 2005. At least 126 employees who were terminated are over the age of 50.

22

91.     Each of the plaintiffs and other members of the class of employees over the age of 50 had performed satisfactorily.  As acknowledged in its letter of June 30, 2005, plaintiffs and the other older employees the Defendant Agency harmed in conducting its 2005 RIF were not selected for termination or reduction in grade because of their poor performance, or because their performance was not as good as the younger employees the Defendant Agency decided to retain.

92.     The Defendant Agency stated in its Special Notice letter of June 30, 2005 that: "This RIF is necessary due to lack of work and/or a need to reorganize the way we perform our work."  That statement is not accurate.  The Defendant Agency had sufficient work to hire new employees in 2005 and it retained many younger employees, and promoted some of them in the fall of 2004 and in 2005, while discharging plaintiffs and other employees over the age of fifty (50) from its employment.

93.    Whatever "need to reorganize the way we perform our work" the Defendant Agency might have had on June 30, 2005 was not remedied or addressed by the Defendant Agency's conduct in discharging plaintiffs and other experienced employees who had performed satisfactorily and replacing them with younger employees with fewer skills and abilities.

94.    The Defendant Agency had no business reason or justification, other than the Reduction In Force, for discharging the Plaintiffs and many its other employees in DRR who are over 50 years old its employment, and in reducing the grade of some of its older DRR employees.

## CLASS ALLEGATIONS

95. *Numerosity.*  The class is comprised of at least one-hundred twenty-six (126) former employees of the FDIC, born on or before December 30, 1955, who were harmed by the 2005 Reduction in Force in violation of the ADEA.  In addition to the termination of the employment

of the older DRR employees, the Agency harmed other employees, including Plaintiff Gregory Haag, by reducing their grade. The claims of all the potential class members are so numerous that joinder would be impractical.

96. *Commonality.* The questions of fact and law of Plaintiffs Aliotta, Catapat, George, Haag, Harootunian, Patterson, Shute, and Wardell are common to the other plaintiffs and other members of the class. The evidence in support of each of the claims of discriminatory treatment those seven Plaintiffs is similar to the evidence which would be offered by the class to show unlawful discrimination against other older employees who were terminated from their positions in the DRR or otherwise harmed by the age discrimination conduct of the Defendant Agency in the RIF from November, 2004. The following allegations of fact are common to the class (Fed. R. Civ. P. Rule 23(c)(2) and (3)):

- The class members are individuals born on or before December 31, 1955, who were employed by the FDIC in its DRR in November 2004 and also were separated from their employment by Defendant Agency effective from November 30, 2004 through September 3, 2005, or who were reassigned to a lower grade or compelled to move by the actions of the Defendant Agency.

- The Defendant Agency terminated its employment of most of the members of the class as part of the 2005 RIF, and reduced the grade of other members of the class.

- The younger employees retained by the Defendant Agency had no greater skills, abilities, experience, or knowledge than the plaintiffs and other members of the class whom the Agency discharged or demoted or induced to leave its employment.

24

97.    *Typicality.*  Plaintiffs Aliotta, Cain, Glazener, Harootunian, Patterson, Shute and Wardell have claims that are typical, if not the same as, those of the other class members, and claims of Plaintiff Gregory Haag are typical of the members who accepted a position with Defendant Agency that is lower in grade than their former position.

98.    *Adequacy.*   The class representatives will adequately represent the class.  The class representatives have no interests that conflict with the interests of the class.  Their legal representative, Rose & Rose, P.C., will adequately represent the class.  The firm has litigated cases in the federal courts since 1989, representing plaintiffs in pattern or practice cases and collective actions and class actions.

## CLAIM FOR RELIEF

### (All Plaintiffs and Class Members for Violation of the ADEA)

99.    Plaintiffs reassert and re-allege paragraphs 1 through 98, inclusive, as though fully set forth herein and incorporate said paragraphs herein by reference.

100.    Defendant Agency's design and implementation of the 2005 Reduction in Force of employees in DRR harmed plaintiffs and its other older employees; that is, those age 50 and above, by intentionally discharging them from employment because of their age although those employees would not have resigned or chosen to retire in the absence of the serious threat that they might be terminated with no retirement income for years.

101.    Defendant Agency's design and implementation of the 2005 RIF harmed its oldest employees, those 50 years of age and older, by discharging a disproportionately high percentage of the oldest workers from its employment, without demonstration that it relied upon a reasonable factor other than age.  The Defendant Agency has not shown and cannot show that the

25

practices were justified by a reasonable factor other than age. The practices of the Defendant

Agency in designing and implementing the 2005 RIF violated Section 15 of the ADEA, 29

U.S.C. § 633a.

WHEREFORE, Plaintiffs pray for entry of:

1)      An order granting plaintiffs' request for class certification of the class of:

Employees born on or before December 30, 1955, who were discharged from their employment

in the Division of Resolutions and Receiverships of the Defendant Agency or reduced in grade

pursuant to the 2005 RIF, and any other class that may be disclosed by the evidence to be

produced in discovery;

2)      An injunction declaring unlawful the practices followed by the Defendant Agency

in its 2005 RIF, and restraining Defendant Agency from engaging in further practices which

discharge or demote older employees because of their age by use of a RIF or other devices;

3)      An injunction requiring the Agency to reinstate plaintiffs and members of

the class described above to their employment with the Agency;

4)      A judgment awarding the plaintiffs and members of the class or classes

back pay and other loss of income, loss of retirement and health benefits, and other make-whole

relief;

5)      An order awarding positions to the plaintiffs and members of the class for which

they could and can perform, unless the Defendant Agency can show that the younger employee

who was selected for the position was better able to perform the duties of the position than the

plaintiffs or other older employees of the class harmed by the conduct of the Defendant Agency

2005 RIF;

6)        An award to the plaintiffs of the costs of litigation including reasonable

expenses, attorneys' fees and expert witness fees;

7)        Such other relief as may be just.

Dated: February 8, 2006                     Respectfully submitted,

                                            /s/ David L. Rose
                                            /s/ Terri N. Marcus

                                            _____
                                            David L. Rose, D.C. Bar No. 376379
                                            Terri N. Marcus, D.C. Bar No. 483175
                                            Rose & Rose, P.C.
                                            1320 19th Street, N.W. Suite 601
                                            Washington, D.C. 20036
                                            Tel:  (202) 331-8555
                                            Fax: (202) 331-0996

                                            Attorneys for Plaintiffs