## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                          )
**BARBARA ALIOTTA, et al**                )
                                          )
    **Plaintiffs,**                        )
                                          )
        **v.**                           )        **Case No. 1:05-cv-02325-RMU**
                                          )
**MARTIN J. GRUENBERG,**                  )
**Acting Chairman,**                      )
**Federal Deposit Insurance Corporation,** )
                                          )
    **Defendant.**                       )
_____)


### DEFENDANT'S ANSWER AND AFFIRMATIVE DEFENSES
### TO PLAINTIFFS' AMENDED COMPLAINT

Defendant Martin J. Gruenberg, in his official capacity as Acting Chairman of the

Federal Deposit Insurance Corporation ("FDIC"), responds to Plaintiffs' Amended Complaint as

follows:

### GENERAL DENIAL

Pursuant to Rule 8(b) of the Federal Rules of Civil Procedure, Defendant asserts a

general denial as to those allegations contained in Plaintiffs' Amended Complaint that are not

clearly and specifically admitted herein.

### SPECIFIC DENIALS AND RESPONSES

Pursuant to Rule 8(b) of the Federal Rules of Civil Procedure, Defendant further

responds to Plaintiffs' Amended Complaint as follows by responding to the numbered

paragraphs of the Amended Complaint:

1.  Paragraph one of the Amended Complaint is Plaintiffs' statement of their case, to which no response is required.  Any statements of fact are denied.

2.  Subject to Defendant's contention that Plaintiffs have failed to exhaust administrative remedies or otherwise fulfill statutory prerequisites for some or all of their claims, Defendant admits the allegations of paragraph two of the Amended Complaint.

3.  Defendant denies the existence of any claims or causes of action on the part of Plaintiffs, denies that it "established and applied the policies and practices" in this District that allegedly harmed the Plaintiffs and similarly situated employees, but admits that venue would be proper based on the allegations of paragraph three of the  Amended Complaint that the offices of the named Defendant Acting Chairman Gruenberg and the Director of the Division of Resolutions and Receiverships are located in this District, and also admits the allegations that the FDIC made and maintained records concerning the Plaintiffs in this District and that some of the Plaintiffs served as employees of the FDIC in this District.

4.  Defendant admits that the FDIC has received a copy of a letter dated October 31, 2005, from attorney David L. Rose to the EEOC stating his intent to file suit under the ADEA on behalf of the following eighteen (18) named Plaintiffs:  Aliotta, Anderson, Avery, Cain, Catapat, Claude, Cline, DuPree-Ellis, Elrod, Everett, Glazener, Kebbeh, Keller, Lindsey, Moritz, Parker, Patterson and Shute.  Defendant admits that the FDIC has received a copy of a letter dated November 10, 2005, from attorney David L. Rose to the EEOC stating his intent to file suit under the ADEA on behalf of the following additional two (2) named Plaintiffs:  Brown and Wardell.  Defendant admits that the FDIC has received a copy of a letter dated December 6, 2005 (not December 5 as alleged), from attorney David L. Rose to the EEOC stating his intent to file suit under the ADEA on behalf of the following additional named Plaintiff:  Fairfield.

Defendant admits that the FDIC has received a copy of a letter dated December 15, 2005, from attorney David L. Rose to the EEOC stating his intent to file suit under the ADEA on behalf of the following additional two (2) named Plaintiffs: George and Ware (as well as Fairfield, who was previously named in the letter dated December 6, 2005). Defendant admits that the Rose & Rose law firm has provided its counsel with an unsigned copy of a letter dated December 22, 2005, from attorney David L. Rose to the EEOC stating his intent to file suit under the ADEA on behalf of the following additional seven (7) named Plaintiffs: Cantrell, Thiels, Barrow, Valentine, Dillow, Hoover and Williams (as well as Wardell, who was previously named in the letter dated November 10, 2005). Defendant states that the FDIC has received a copy of a letter dated December 28, 2005, from attorney David L. Rose to the EEOC stating his intent to file suit under the ADEA on behalf of the following additional six (6) named Plaintiffs: Henderson, Kelly, Lett, Leal, Gregory Haag and Kathy Haag. Defendant denies that the FDIC has received a copy of a letter dated January 3, 2006, advising the EEOC that other employees intended to file suit under the ADEA. Defendant admits that the FDIC has received a copy of a letter dated January 20, 2006, from attorney David L. Rose to the EEOC stating his intent to file suit under the ADEA on behalf of the following additional four (4) named Plaintiffs: Bonner, Montoya, Powers, and Schirf. In addition, the FDIC has received copies of the following subsequently dated letters from attorney David L. Rose to the EEOC stating his intent to file suit under the ADEA on behalf of the additional named Plaintiffs listed hereafter: (i) February 2, 2006 – Connell, Frantum, Carole Mann and Richard Mann; (ii) February 16, 2006 – Flowers, Gray, McAnally and Scott; (iii) February 21, 2006 – Harootunian.

    5. Defendant admits that the named Plaintiffs were born on dates ranging from January 10, 1933 (Sylvia Cline), through September 26, 1955 (O. Faye Moritz). Defendant admits that

the named Plaintiffs were employees in the FDIC's Division of Resolutions and Receiverships (DRR) in either Dallas, Texas, or Washington, D.C. in 2005 and at various times prior to 2005. Defendant admits that in the fall of 2004, pursuant to a memorandum dated October 26, 2004, entitled "Buyout Program and Reductions-in-Force," which was issued to all employees from the office of John F. Bovenzi, Deputy to the Chairman and Chief Operating Officer, the FDIC announced, inter alia, that it would offer buyouts (which included, among other benefits, a cash payment equal to 50% of total salary and the ability to combine the buyout with either regular or early retirement) to most employees in DRR, the Division of Information Resources Management (DIRM), the Division of Administration (DOA), the Legal Division, and the Division of Finance (DOF), as well as to a more limited number of employees in the Division of Supervision and Consumer Protection (DSC), and the Division of Insurance and Research (DIR). Because the buyout was offered to all permanent DRR employees, including supervisors, who were not occupying Executive Manager (EM) graded positions, Defendant specifically denies that the buyout was "offered to employees of DRR who were not supervisors." Defendant denies that 102 employees aged 50 or over were "discharged" from November 30, 2004 through May 14, 2005, but states that during this time period, 132 DRR employees (including 33 of the named Plaintiffs) accepted a buyout offer which generally required their voluntarily separation from the FDIC by May 14, 2005. Defendant lacks information sufficient to form a belief as to the truth of the statement that those Plaintiffs "who accepted the incentives to retire in the spring of 2005" did so "in order to avoid the substantial risk that they would be terminated without any retirement benefits until they reached age 62," and therefore these allegations are denied. Defendant admits that 66 DRR employees (not 71 as alleged), including 16 named Plaintiffs (not

4

24 as alleged), were involuntarily separated from employment with the FDIC pursuant to federal reduction-in-force (RIF) procedures effective September 3, 2005.

6.  Defendant admits the allegations of paragraph 6 of the Amended Complaint with respect to Plaintiff Barbara Aliotta, who was involuntarily separated from employment with the FDIC pursuant to federal reduction-in-force (RIF) procedures effective September 3, 2005, with severance pay.

7.  Plaintiff Robert Anderson was a Grade 9 employee (not Grade 6 as alleged) upon his separation from the FDIC.  With this exception, Defendant admits the allegations of paragraph 7 of the Amended Complaint with respect to Plaintiff Anderson, who was involuntarily separated from employment with the FDIC pursuant to federal reduction-in-force (RIF) procedures effective September 3, 2005, with severance pay.

8.  Plaintiff Jeanne Avery was born in 1954 (not 1952 as alleged) and was employed by the FDIC beginning on January 20 (not January 2 as alleged), 1987.  With these exceptions, Defendant admits the allegations of paragraph 8 of the Amended Complaint with respect to Plaintiff Avery, who was involuntarily separated from employment with the FDIC pursuant to federal reduction-in-force (RIF) procedures effective September 3, 2005, with severance pay.

9.  Plaintiff Douglas M. Barrow started employment with the FDIC in December of 1989 (not February of 1990 as alleged), was a Grade 12 employee (not Grade 11 as alleged) when he retired from the FDIC; Defendant therefore denies that he was "discharged" from employment. With these exceptions, Defendant admits the allegations of paragraph 9 of the Amended Complaint with respect to Plaintiff Barrow, who voluntarily retired with a buyout from the FDIC on May 14, 2005.

10.  Defendant admits the allegations of paragraph 10 of the Amended Complaint with respect to Plaintiff Ann A. Bonner, who was involuntarily separated from employment with the FDIC pursuant to federal reduction-in-force (RIF) procedures effective September 3, 2005.

11.  Defendant denies that Plaintiff La Margo Brown was "discharged" from employment.  With this exception, Defendant admits the allegations of paragraph 11 of the Amended Complaint with respect to Plaintiff Brown, who voluntarily retired with a buyout from the FDIC on May 14, 2005.

12.  Defendant denies that Plaintiff Yvonne Cain was "discharged" from employment. Plaintiff Cain was detailed to the Dallas office in 2002 (not 2003 as alleged), and was a Grade 9 employee (not Grade 13 as alleged) upon her retirement from the FDIC.  With these exceptions, Defendant admits the allegations of paragraph 12 of the Amended Complaint with respect to Plaintiff Cain, who voluntarily retired with a buyout from the FDIC on May 14, 2005.

13.  Defendant admits the allegations of paragraph 13 of the Amended Complaint with respect to Plaintiff James R. Cantrell, who voluntarily retired with a buyout from the FDIC on May 14, 2005.

14.  Defendant admits that Plaintiff Priscilla Catapat was born on August 19, 1944 and was employed by the FDIC on April 18, 1983.  Defendant admits that Plaintiff Catapat was employed as a Resolutions & Receiverships Specialist, Grade 12, in 2005, that she did not accept the buyout and other incentives offered to FDIC employees in 2005, but she was eligible for a retirement annuity after her involuntary separation from employment with the FDIC on September 3, 2005.  Defendant denies the remaining allegations of paragraph 12 of the Amended Complaint with respect to Plaintiff Catapat, who was involuntarily separated from employment

6

with the FDIC pursuant to federal reduction-in-force (RIF) procedures effective September 3, 2005.

15.  Defendant admits the allegations of paragraph 15 of the Amended Complaint with respect to Plaintiff Evelyn Claude, who was involuntarily separated from employment with the FDIC pursuant to federal reduction-in-force (RIF) procedures effective September 3, 2005, with severance pay.

16.  Defendant admits the allegations of paragraph 16 of the Amended Complaint with respect to Plaintiff Sylvia Cline, who was involuntarily separated from employment with the FDIC pursuant to federal reduction-in-force (RIF) procedures effective September 2, 2005.

17.  Plaintiff James B. Connell was born in 1946 (not 1949 as alleged).  Defendant denies that Mr. Connell was "discharged" by the FDIC and denies that he retired with a reduced annuity. The FDIC has received a copy of a letter dated February 2, 2006 (not February 7 as alleged), from attorney David L. Rose to the EEOC stating his intent to file suit under the ADEA on behalf of Mr. Connell and three other named Plaintiffs.  Defendant denies that his claim will mature and become timely on or about March 9, 2006.  With these exceptions, Defendant admits the allegations of paragraph 17 of the Amended Complaint with respect to Plaintiff Connell, who voluntarily resigned with a buyout from the FDIC on May 14, 2005, and transferred to the General Services Administration (GSA) effective May 15, 2005.

18.  Defendant denies that Plaintiff Lawrence G. Dillow was "discharged" from employment.  With this exception, Defendant admits the allegations of paragraph 18 of the Amended Complaint with respect to Plaintiff Dillow, who voluntarily retired with a buyout from the FDIC on May 14, 2005.

19.   Plaintiff Mary L. DuPree-Ellis was employed by the FDIC in November 1990 (not May 1985 as alleged).  Defendant denies that Plaintiff DuPree-Ellis was "discharged" or "offered a discharge."  With these exceptions, Defendant admits the allegations of paragraph 19 of the Amended Complaint with respect to Plaintiff DuPree-Ellis, who voluntarily retired with a buyout from the FDIC on May 14, 2005.

20.   Plaintiff Wyman Elrod was employed by the FDIC on October 14 (not October 10 as alleged), 1986.  With this exception, Defendant admits the allegations of paragraph 20 of the Amended Complaint with respect to Plaintiff Elrod, who was involuntarily separated from employment with the FDIC pursuant to federal reduction-in-force (RIF) procedures effective September 3, 2005, with severance pay.

21.   Defendant denies that Plaintiff Patricia J. Everett was "discharged" from her employment effective September 3, 2005.  With this exception, Defendant admits the allegations of paragraph 21 of the Amended Complaint with respect to Plaintiff Everett, who voluntarily retired with a buyout from the FDIC on May 14, 2005.

22.   Plaintiff Joan D. Fairfield was employed by the FDIC on November 6 (not November 7 as alleged), 1977.  With this exception, Defendant admits the allegations of paragraph 22 of the Amended Complaint with respect to Plaintiff Fairfield, who voluntarily retired with a buyout from the FDIC on May 14, 2005.

23.   Plaintiff C. Jenola Flowers was born on May 7 (not May 4 as alleged), 1941, and was a Resolutions & Receiverships Specialist (not a Supervisory Secretary as alleged) when she retired from the FDIC.  Defendant denies that Ms. Flowers was "terminated" by the FDIC.  The FDIC has received a copy of a letter dated February 16, 2006 (not January 31 as alleged), from attorney David L. Rose to the EEOC stating his intent to file suit under the ADEA on behalf of

Mr. Connell and three other named Plaintiffs.  Defendant denies that her claim will mature and become timely on or about March 2, 2006.  With these exceptions, Defendant admits the allegations of paragraph 23 of the Amended Complaint with respect to Plaintiff Flowers, who voluntarily resigned with a buyout from the FDIC on May 14, 2005.

24.  Defendant denies that Plaintiff Kathy Frantum was "terminated" by the FDIC.  The FDIC has received a copy of a letter dated February 2, 2006, from attorney David L. Rose to the EEOC stating his intent to file suit under the ADEA on behalf of Ms. Frantum and three other named Plaintiffs.  Defendant denies that her claim will mature and become timely on or about March 9, 2006.  With these exceptions, Defendant admits the allegations of paragraph 24 of the Amended Complaint with respect to Plaintiff Frantum, who voluntarily resigned with a buyout from the FDIC on May 14, 2005, and transferred to the General Services Administration (GSA) effective May 15, 2005.

25.  Plaintiff Jamesena George was detailed to DRR in the FDIC's Dallas office on August 11 (not August 8 as alleged), 2002, and was reassigned to that office on March 9 (not June 2 as alleged), 2003.  She was a Resolutions & Receiverships (not Administrative) Specialist when she retired from the FDIC.  With these exceptions, Defendant admits the allegations of paragraph 25 of the Amended Complaint with respect to Plaintiff George, who voluntarily retired with a buyout from the FDIC on May 14, 2005.

26.  Plaintiff Larry L. Glazener left employment with the FDIC in 1995 (not 1998 as alleged), returned to the FDIC as a term employee in 1998 (not 1999 as alleged), and accepted a permanent Grade 12 position on December 31, 2000.  Defendant lacks information sufficient to form a belief as to the truth of the statement that "[w]hile he was employed by a bank in Texas, he completed the course work offered by the American Institute of Banking in Houston and

received a certificate of completion," and therefore these allegations are denied.  With these exceptions, Defendant admits the allegations of paragraph 26 of the Amended Complaint with respect to Plaintiff Glazener, who voluntarily retired with a buyout from the FDIC on May 14, 2005.

27.  Defendant admits the allegations of paragraph 27 of the Amended Complaint with respect to Plaintiff Darrel Gray, who was involuntarily separated from employment with the FDIC pursuant to federal reduction-in-force (RIF) procedures effective September 3, 2005, with severance pay.

28.  Plaintiff Gregory Haag was formerly employed as a Resolutions & Receiverships Specialist, but he applied for and accepted a position with the FDIC as an Associate Financial Institutions Specialist, which is the position he currently occupies.  Defendant lacks information sufficient to form a belief as to the truth of the statement that he accepted his current position in Lexington, Kentucky, "in order to avoid the RIF in the Dallas office," and therefore these allegations are denied.  With these exceptions, Defendant admits the allegations of paragraph 28 of the Amended Complaint with respect to Plaintiff Gregory Haag.

29.  Defendant denies that Plaintiff Kathy Haag was "discharged" from employment with the FDIC.  With these exceptions, Defendant admits the allegations of paragraph 29 of the Amended Complaint with respect to Plaintiff Kathy Haag, who voluntarily retired with a buyout from the FDIC on May 14, 2005.

30.  According to his SF-171 submitted to the FDIC, Plaintiff Denis Harootunian was employed by the United States Securities and Exchange Commission through mid-October 1989 as a Financial Analyst (not through mid-October 1988 as a Senior Financial Analyst as alleged), and was employed by the FDIC beginning in October 1989 (not 1988 as alleged).  Defendant

admits that on June 2, 2005, Plaintiff Harootunian was referred as qualified, but was not selected, for the following seven DRR Headquarters positions: (i) Financial Planning Specialist, CG-301-12, 65W133; (ii) Franchise & Asset Marketing Specialist, CG-1101-12, 65S164; (iii) Special Assistant, CG-1101-13, 65W131; (iv) Claims Systems Analyst, CG-1101-13, 65S162; (v) Contract Oversight Specialist, CG-1101-13, 65W130; (vi) Franchise & Asset Marketing Specialist, CG-1101-13, 65S163; and (vii) Capital Market Specialist (2 vacancies), CG-1101-13, 65W129. Defendant denies that Plaintiff Harootunian "bid" for each of these positions. While Defendant admits that seven of the eight selectees for these positions were younger than Plaintiff Harootunian, Defendant denies that the selectees had less experience and expertise relevant to these positions than Plaintiff Harootunian. With these exceptions, Defendant admits the allegations of paragraph 30 of the Amended Complaint with respect to Plaintiff Harootunian, who was involuntarily separated from employment with the FDIC pursuant to federal reduction-in-force (RIF) procedures effective September 3, 2005.

31. Defendant denies that Plaintiff Peggy J. Henderson was "discharged" from employment with the FDIC. She was a Resolutions & Receiverships Technician, Grade 7 (not an Administrative Assistant, Grade 6, as alleged) when she retired from the FDIC with a buyout on November 30, 2004. With these exceptions, Defendant admits the allegations of paragraph 31 of the Amended Complaint with respect to Plaintiff Henderson, who voluntarily retired with a buyout from the FDIC on November 30, 2004.

32. Plaintiff Pinkie Hoover started her employment with the FDIC as a grade LG-05 Secretary (not a CG7 R&R Technician as alleged). Defendant denies that Plaintiff Hoover was "discharged" from employment with the FDIC. With these exceptions, Defendant admits the

allegations of paragraph 32 of the Amended Complaint with respect to Plaintiff Hoover, who voluntarily retired with a buyout from the FDIC on May 14, 2005.

33. Defendant admits the allegations of paragraph 33 of the Amended Complaint with respect to Plaintiff Mary S. Kebbeh, who was involuntarily separated from employment with the FDIC pursuant to federal reduction-in-force (RIF) procedures effective September 3, 2005, with severance pay.

34. Plaintiff Dennis L. Keller was employed by the FDIC on May 13, 1985 (not 1986 as alleged). With this exception, Defendant admits the allegations of paragraph 34 of the Amended Complaint with respect to Plaintiff Keller, who was involuntarily separated from employment with the FDIC pursuant to federal reduction-in-force (RIF) procedures effective September 3, 2005, with severance pay.

35. Plaintiff Gary Kelly was employed by the FDIC for over 21 years (not 23 years as alleged). Defendant denies that he was "discharged" from employment. With these exceptions, Defendant admits the allegations of paragraph 35 of the Amended Complaint with respect to Plaintiff Kelly, who voluntarily retired with a buyout from the FDIC on April 30, 2005.

36. Defendant denies that Plaintiff Vincent Leal was "discharged" by the FDIC. With this exception, Defendant admits the allegations of paragraph 36 of the Amended Complaint with respect to Plaintiff Leal, who voluntarily retired with a buyout from the FDIC effective May 13, 2005.

37. Plaintiff Donald Lett was a Grade 13 (not Grade 12 as alleged) R&R Specialist when he retired from the FDIC. Defendant denies that Plaintiff Lett was "discharged" by the FDIC. With these exceptions, Defendant admits the allegations of paragraph 37 of the Amended

12

Complaint with respect to Plaintiff Lett, who voluntarily retired with a buyout from the FDIC on May 14, 2005.

38.  Plaintiff Pearl Lindsey was employed by the FDIC on September 15 (not November 19 as alleged), 1986.  With this exception, Defendant admits the allegations of paragraph 38 of the Amended Complaint with respect to Plaintiff Lindsey, who was involuntarily separated from employment with the FDIC pursuant to federal reduction-in-force (RIF) procedures effective September 3, 2005, with severance pay.

39.  Defendant lacks information sufficient to form a belief as to the truth of the statement that the reason Plaintiff Carole Mann left the FDIC was "for a job offer in the private sector," but notes that this is inconsistent with Plaintiffs' allegation in paragraph 75 of the Amended Complaint that "[s]ome employees over 50, including Carole Mann and Richard Mann accepted a buyout to leave the Defendant Agency for lower grade positions in another Federal Agency."  The FDIC has received a copy of a letter dated February 2, 2006, from attorney David L. Rose to the EEOC stating his intent to file suit under the ADEA on behalf of Ms. Mann and three other named Plaintiffs.  Defendant denies that her claim will mature and become timely on or about March 9, 2006.  With these exceptions, Defendant admits the allegations of paragraph 39 of the Amended Complaint with respect to Plaintiff Carole Mann, who voluntarily resigned with a buyout from the FDIC on February 25, 2005.

40.  Defendant admits the allegations of paragraph 40 of the Amended Complaint with respect to Plaintiff Richard Mann, who voluntarily retired with a buyout from the FDIC on April 30, 2005.

41.  Defendant denies that Plaintiff McAnally was "discharged" by the FDIC.  With this exception, Defendant admits the allegations of paragraph 41 of the Amended Complaint with

13

respect to Plaintiff McAnally, who voluntarily retired with a buyout from the FDIC on May 14, 2005.

42.  Plaintiff Edwin Montoya was employed by the FDIC for 29 years and 4 months (not 10 months as alleged).  Defendant denies that Plaintiff Montoya was "discharged" by the FDIC. The FDIC has received a copy of a letter dated January 20, 2006, from attorney David L. Rose to the EEOC stating his intent to file suit under the ADEA on behalf of Mr. Montoya and three other named Plaintiffs.  Defendant denies that his claim will mature and become timely on or about February 21, 2006.  With these exceptions, Defendant admits the allegations of paragraph 24 of the Amended Complaint with respect to Plaintiff Montoya, who voluntarily retired with a buyout from the FDIC on May 14, 2005.

43.  Defendant admits the allegations of paragraph 43 of the Amended Complaint with respect to Plaintiff O. Faye Moritz, who was involuntarily separated from employment with the FDIC pursuant to federal reduction-in-force (RIF) procedures effective September 3, 2005, with severance pay.

44.  Plaintiff Bernice Parker was employed by the FDIC in 1985 (not 1986 as alleged), and was offered a buyout with or without early retirement.  Defendant denies that she was "discharged" from employment.  With these exceptions, Defendant admits the allegations of paragraph 44 of the Amended Complaint with respect to Plaintiff Parker, who voluntarily retired with a buyout from the FDIC on May 14, 2005.

45.  Defendant denies that Plaintiff Paula J. Patterson was eligible for early retirement, denies that she was terminated from employment effective May 14, 2005, but admits that she would have received a buyout if she had resigned from the FDIC by May 14, 2005 (which she chose not to do).  With these exceptions, Defendant admits the allegations of paragraph 43 of the

14

Amended Complaint with respect to Plaintiff Patterson, who was involuntarily separated from employment with the FDIC pursuant to federal reduction-in-force (RIF) procedures effective September 3, 2005, with severance pay.

46.    Defendant denies that Plaintiff Nancy Powers was "discharged" by the FDIC.  With this exception, Defendant admits the allegations of paragraph 46 of the Amended Complaint with respect to Plaintiff Powers, who voluntarily retired with a buyout from the FDIC on September 3, 2005 (delayed departure extension).

47.    Defendant lacks information sufficient to form a belief as to the truth of the statement that the reason Plaintiff Herbert Schirf left the FDIC on April 30, 2005, was "so he could receive a retirement annuity starting June 1."  The FDIC has received a copy of a letter dated January 20, 2006, from attorney David L. Rose to the EEOC stating his intent to file suit under the ADEA on behalf of Mr. Schirf and three other named Plaintiffs.  Defendant denies that his claim will mature and become timely on or about February 21, 2006.  With these exceptions, Defendant admits the allegations of paragraph 47 of the Amended Complaint with respect to Plaintiff Schirf, who voluntarily retired with a buyout from the FDIC on April 30, 2005.

48.    Plaintiff James M. Scott was born on April 18 (not April 28 as alleged), 1943. Defendant denies that he was "discharged" from employment.  The FDIC has received a copy of a letter dated February 16 (not February 7 as alleged), 2006, from attorney David L. Rose to the EEOC stating his intent to file suit under the ADEA on behalf of Mr. Scott and three other named Plaintiffs.  Defendant denies that his claim will mature and become timely on or about March 9, 2006.  With these exceptions, Defendant admits the allegations of paragraph 48 of the Amended Complaint with respect to Plaintiff Scott, who voluntarily retired with a buyout from the FDIC on April 30, 2005.

49.  Defendant lacks information sufficient to form a belief as to the truth of the statement that Plaintiff Patrick J. Shute received "excellent" performance appraisals in the position of Department Head of the Claims Department of DRR prior to 2001, that he was "eliminated from that position" in 2001, and that the FDIC "created two 'Section Chief' positions to perform the duties he had performed as Department Head," and therefore these allegations are denied.  Defendant denies that the FDIC "awarded both of these positions to much younger employees who had substantially less experience and expertise than Shute." Plaintiff Shute had 19 years and 7 months (not 4 months) of FDIC service when he resigned after he was offered a buyout and accepted early retirement.  Defendant denies that he was "discharged" from employment.  With these exceptions, Defendant admits the allegations of paragraph 49 of the Amended Complaint with respect to Plaintiff Shute, who voluntarily retired with a buyout from the FDIC on May 14, 2005.

50.  Defendant denies that Plaintiff Sherry Thiels was "discharged" from employment. With these exceptions, Defendant admits the allegations of paragraph 50 of the Amended Complaint with respect to Plaintiff Thiels, who voluntarily retired with a buyout from the FDIC on May 14, 2005.

51.  Plaintiff Marc Valentine started his most recent employment with the FDIC in March of 1989 (not February or March of 1987 as alleged).  Prior to that, he had worked for the FDIC for eight months (not nine months as alleged) in 1985.  With these exceptions, Defendant admits the allegations of paragraph 51 of the Amended Complaint with respect to Plaintiff Valentine, who voluntarily retired with a buyout from the FDIC on May 14, 2005.

52.  Defendant admits the allegations of paragraph 52 of the Amended Complaint with respect to Plaintiff Frances Wardell, who was involuntarily separated from employment with the

FDIC pursuant to federal reduction-in-force (RIF) procedures effective September 3, 2005, with severance pay.

53.  Plaintiff Jackson Ware was employed by the FDIC for 19 years and 1 month (not 2 months as alleged) and was a Resolutions and Receiverships Specialist (not a Supervisory Resolutions and Receiverships Specialist as alleged) when he retired from the FDIC.  Defendant denies that Plaintiff Ware was "discharged" from employment.  With these exceptions, Defendant admits the allegations of paragraph 53 of the Amended Complaint with respect to Plaintiff Ware, who voluntarily retired with a buyout from the FDIC on May 14, 2005.

54.  Defendant denies that Plaintiff Kerry Williams was "discharged" from employment. With this exception, Defendant admits the allegations of paragraph 54 of the Amended Complaint with respect to Plaintiff Williams, who voluntarily retired with a buyout from the FDIC on May 14, 2005.

55.  Defendant admits that Martin J. Gruenberg is that Acting Chairman of the FDIC, that the FDIC is an independent regulatory agency of the federal government created in 1933, and that it currently insures deposits in banks and savings institutions for up to $100,000.  Defendant admits that it is managed by a five-person Board of Directors (all of whom are appointed by the President and confirmed by the Senate), consisting of the Chairman, the Vice Chairman, the Director of the Office of Thrift Supervision, the Comptroller of the Currency, and an additional Director.  Defendant admits that it is subject to the ADEA pursuant to 29 U.S.C. § 633a and that it is an executive agency within the meaning of 29 U.S.C. § 633a.  The head of the agency, in his official capacity, is the only proper Defendant.  The remainder of paragraph 55 of the Amended Complaint comprises conclusions of law and argument, which require no response.

56.  Defendant admits that in the mid-1990's, discussions occurred among members of the FDIC's Board of Directors about the need to reduce the number of FDIC employees, in part because of the agency's declining workload in resolution and asset liquidation activities.  The remaining factual allegations are denied.

57.  Defendant admits that a memorandum entitled "Update on Corporate Staffing" dated November 28, 1997, was distributed via e-mail to all FDIC employees from the office of Dennis F. Geer, Deputy to the Chairman and Chief Operating Officer.  Defendant admits that a memorandum entitled "Approval of 1998 Staffing Allocations" dated December 10, 1997, was distributed to all FDIC Division and Office Directors from the office of Dennis F. Geer, Deputy to the Chairman and Chief Operating Officer.   Defendant denies the remaining allegations of paragraph 57 of the complaint concerning "announce[ment] [of] a core staffing analysis," except to the extent supported by the memoranda themselves, which are the best evidence of their contents.  Defendant admits that the FDIC offered buyouts and other incentives to reduce excess staffing in 1998 and 1999, but denies that such offers were limited to employees who were then 50 years or older.  The remaining factual allegations of paragraph 57 of the Amended Complaint are denied.

58.  Defendant lacks information sufficient to form a belief as to the truth of the statement attributed to the former Chairman of the FDIC in 2001 and 2002, and therefore this allegation is denied.

59.  Defendant admits that in the summer of 2002, the Division of Research and Statistics (DRS) and the Division of Insurance (DOI) were merged to form the Division of Insurance and Research (DIR), and that after the merger, at an "all hands" meeting called by senior management with employees of the new organization, former Chairman Powell asked employees

with differing years of experience to raise their hands.  The remaining factual allegations are denied.

60.  The allegations of paragraph 60 of the Amended Complaint comprise conclusions of law and argument to which no response is necessary.  Any factual allegations are denied.

61.  By the end of 2001, the FDIC had 6,197 employees.  Defendant admits that a memorandum entitled "Reshaping the FDIC for the Future" dated February 6, 2002, was distributed via e-mail to all FDIC employees from the office of John F. Bovenzi, Deputy to the Chairman and Chief Operating Officer.  Defendant denies the remaining allegations of paragraph 61 of the Amended Complaint, except to the extent supported by the memorandum itself, which is the best evidence of its contents.

62.  Defendant admits that it initiated a targeted buyout program in September 2001 (including payment of 50% of total annual pay plus supplemental incentives), to attorneys in the Legal Division, as well as certain field employees in the Office of Ombudsman and Office of Diversity and Economic Opportunity in 2001, and that a subsequent buyout program was offered to employees in selected positions in other FDIC divisions and offices in 2002.  Defendant admits that independently of the buyout programs, the FDIC requested and obtained U.S. Office of Personnel Management (OPM) approval for voluntary early retirement authority through September 30, 2002 (later extended to September 30, 2003 for all employees occupying a position eligible for a buyout offer and all executive level employees).  Defendant admits that it conducted a reduction-in-force (RIF) in the FDIC's Legal Division in May 2002 that resulted in the involuntary separation of nineteen (19) attorneys pursuant to federal reduction-in-force (RIF) procedures at that time.  Defendant lacks information sufficient to form a belief as to what

Plaintiffs mean by the phrase "those harmed by the 2002 RIF," and therefore the remaining allegations are denied.

63.  Defendant lacks knowledge sufficient to form a belief as to the truth of the statement that "[o]n September 16, 2002, Chairman Powell advised FDIC employees that the Defendant Agency would make a broad RIF unless 400 or more employees accepted a buyout and left their employment with the Agency," and therefore these allegations are denied.  Defendant states that in a memorandum entitled "Reshaping the FDIC for the Future" dated February 6, 2002, and distributed via e-mail to all FDIC employees from the office of John F. Bovenzi, Deputy to the Chairman and Chief Operating Officer, it was stated, inter alia, that "we still have over 400 identified surplus positions today and that surplus will grow to at least 600 positions in the next 3 to 4 years."  Defendant admits that by September 30, 2002, 645 employees had accepted the FDIC's most recent buyout offer, but subsequently, one person was declared ineligible, so the final total was 644; accordingly, the figure as of October 11, 2002, would have been 645 or 644.  Defendant admits that a high proportion of the employees who accepted the buyout were more than 50 years old.  Defendant denies the remaining allegations of paragraph 63 of the Amended Complaint.

64.  Defendant denies the allegations of paragraph 64 of the Amended Complaint, but states that by year-end 2002, the FDIC had 5,430 total employees.

65.  Defendant admits that a memorandum entitled "Status of Corporate Downsizing" dated January 6, 2003, was distributed via e-mail to all FDIC employees from the office of John F. Bovenzi, Deputy to the Chairman and Chief Operating Officer.  Defendant denies the remaining allegations of the first sentence of paragraph 65 of the Amended Complaint, except to the extent supported by the memorandum itself, which is the best evidence of its contents.

Defendant denies that the FDIC offered incentives for employees to retire in the first half of 2003, although the FDIC did try to minimize the impact of the impending mid-2003 RIF on employees in surplus positions through expressions of interest (EOI), merit promotions postings, internal reassignments, and outplacement services. On July 11, 2003, pursuant to federal reduction-in-force procedures, 43 FDIC employees (including one from DRR) were involuntarily separated and an additional 26 FDIC employees (including one from DRR) were reduced in grade (but received grade and pay retention in accordance with the FDIC's Corporate Reduction in Force Policy in effect at that time). Defendant denies the remaining allegations of paragraph 65 of the Amended Complaint.

66. Defendant admits that as of October 26, 2004, the on-board workforce of the FDIC was nearly 5,300.

67. Defendant admits that a memorandum entitled "Buyout Program and Reductions-in Force" dated October 26, 2004, was distributed via e-mail to all FDIC employees from the office of John F. Bovenzi, Deputy to the Chairman and Chief Operating Officer. Defendant denies the remaining allegations of paragraph 67 of the Amended Complaint, except to the extent supported by the memorandum itself, which is the best evidence of its contents.

68. Defendant admits that a memorandum entitled "DRR Workforce Planning and Transition" dated October 28 (not October 26 as alleged), 2004, was distributed to DRR employees from the office of Mitchell Glassman, Director of DRR. Defendant denies the remaining allegations of paragraph 68 of the Amended Complaint, except to the extent supported by the memorandum itself, which is the best evidence of its contents. Defendant lacks information sufficient to form a belief as to what Plaintiffs mean by their statement that "the RIF

in DRR was the only one understated by the Defendant Agency from October, 2004, through December, 2005," and therefore this allegation is denied.

69. Defendant denies the allegations of paragraph 69 of the Amended Complaint.

70. The allegations of paragraph 70 of the Amended Complaint comprise conclusions of law and argument to which no response is necessary. Any factual allegations are denied.

71. The allegations of paragraph 71 of the Amended Complaint comprise conclusions of law and argument to which no response is necessary. Any factual allegations are denied.

72. The allegations of paragraph 72 of the Amended Complaint comprise conclusions of law and argument to which no response is necessary. Any factual allegations are denied.

73. Defendant lacks knowledge sufficient to determine what Plaintiffs mean by their statement that "Defendant Agency has not publicly asserted that the 2005 in DRR was necessary" and therefore that allegation is denied. Defendant admits that on June 30, 2005, each DRR employee affected by the RIF received a Specific Notice of Reduction in Force (RIF) issued from the office of Miguel A. Torrado, Associate Director, Human Resources Branch, Division of Administration, which was tailored to that employee's individual circumstances and which contained the language quoted in paragraph 73 of the Amended Complaint. Such notices are the best evidence of their contents.

74. Defendant admits that a memorandum entitled "Buyout Program and Reductions-in Force" dated October 26, 2004, was distributed via e-mail to all FDIC employees from the office of John F. Bovenzi, Deputy to the Chairman and Chief Operating Officer. The FDIC's Division of Administration subsequently issued a global e-mail dated November 2, 2004, summarizing the terms of the DRR buyout and a Buyout Handbook which explained the buyout program in detail, including which employees were eligible, time frames for applying for the buyout, amount of the

22

buyout payment and supplemental benefits included in the buyout.  Defendant denies the

remaining allegations of paragraph 74 of the Amended Complaint (including, without limitation,

that the only employees 50 years and older who were eligible for the buyout were those "who

were not yet eligible to receive a full retirement annuity" and that DRR employees who accepted

were obliged to submit their applications by December 31, 2004), except to the extent supported

by the memorandum, global e-mail and handbook, which are the best evidence of their contents.

75.  Defendant admits that 132 DRR employees in Dallas and Washington, D.C., some of

whom were over 50, accepted the buyout.  Defendant admits that Plaintiffs James B. Connell and

Kathy Frantum accepted a buyout and transferred to lower grade positions at the GSA.

Defendant lacks information sufficient to form a belief as to the truth of the statement that

Plaintiffs Carole Mann and Richard Mann "accepted a buyout to leave the Defendant Agency for

lower graded positions in another Federal Agency" (but notes that paragraph 39 of the Amended

Complaint states that Plaintiff Carole Mann "left Defendant Agency February 25, 2005 for a job

offer in the private sector"), and therefore these allegations are denied.  Defendant admits that

each of the Plaintiffs named in paragraph 75 who accepted the buyout were separated from their

employment in the spring of 2005 (except for Plaintiff Frantum who was separated in the

winter), effective no later than May 14, 2005.  Plaintiffs Gray and Patterson did not apply for the

buyout and were involuntarily separated from employment with the FDIC pursuant to federal

reduction-in-force (RIF) procedures effective September 3, 2005, with severance pay.  Petri is

not a named Plaintiff in this lawsuit.  Defendant denies that each of the other employees who

accepted a buyout was separated on or before May 14, 2005 (for example, Plaintiff Powers had a

delayed departure extension until September 3, 2005).

76.  Defendant lacks information sufficient to form a belief as to the truth of the allegations concerning the retirement income of employees who accepted early retirement, and therefore these allegations are denied.

77.  Defendant denies the allegations of paragraph 77 of the Amended Complaint. However, the following categories of employees were not eligible for the 2005 buyout: reemployed annuitants; disability retirees (including those who became eligible for disability retirement within a year of separation); discontinued service retirees; Schedule C employees ("political appointees"); Presidential appointees; employees who were in receipt of an involuntary separation proposal for misconduct or unacceptable performance (employees who had an approved buyout separation date and subsequently received a proposed removal notice had their buyout offers rescinded by the FDIC); and time-limited employees, even if they converted to the time-limited service with no break in service from a permanent appointment.

78.  Defendant admits that on June 30, 2005, each DRR employee affected by the RIF received a Specific Notice of Reduction in Force (RIF) issued from the office of Miguel A. Torrado, Associate Director, Human Resources Branch, Division of Administration, which was tailored to that employee's individual circumstances and which contained language similar to that which is set forth in paragraph 78 of the Amended Complaint.  Defendant denies the remaining allegations of paragraph 78 of the Amended Complaint, except to the extent supported by the notices themselves, which are the best evidence of their contents.

79.  Defendant admits that the Plaintiffs named in paragraph 79 were separated from the FDIC on September 3, 2005 (with the exception of Plaintiffs Dupree-Ellis and Everett, who were separated on May 14, 2005), along with approximately fifty other DRR employees who were separated on that date.  Inasmuch as the number of employees under age 40 who were

24

"discharged" on that date is a subset of the total number of employees under the age of 45 who were "discharged," Defendant admits the truism that there were fewer employees discharged who were under age 40 than those who were under age 45. The remaining allegations of paragraph 79 of the Amended Complaint are denied.

80. Defendant denies the allegations of paragraph 80 of the Amended Complaint.

81. Defendant denies the allegations of paragraph 81 of the Amended Complaint.

82. Defendant admits that a memorandum entitled "Expression of Interest – HR-05-003 FDIC Recruiters (Collateral Duty)" dated September 2, 2005 was distributed via e-mail to all FDIC employees from the office of Miguel Torrado, Associate Director, Division of Administration, Human Resources Branch. Defendant denies the remaining allegations of paragraph 81 of the Amended Complaint, except to the extent supported by the memorandum itself, which is the best evidence of its contents.

83. Defendant admits that at various times during 2002 - 2005, despite the ongoing need to reduce surplus staffing, the FDIC continued to recruit and hire additional employees from outside the agency on a limited basis in order to address particularized staffing shortages, such as vacant bank examiner positions. Defendant denies the remaining allegations of paragraph 83 of the Amended Complaint.

84. Defendant denies the allegations of paragraph 84 of the Amended Complaint.

85. Defendant denies the allegations of paragraph 85 of the Amended Complaint.

86. Defendant denies the allegations of paragraph 86 of the Amended Complaint.

87. Defendant denies the allegations of paragraph 87 of the Amended Complaint.

88. Defendant admits that pursuant to a memorandum dated October 26, 2004, entitled "Buyout Program and Reductions-in-Force," which was issued to all employees from the office

of John F. Bovenzi, Deputy to the Chairman and Chief Operating Officer, the FDIC announced, inter alia, that it had "begun active planning for RIFs in DRR and DIRM in the third quarter of 2005, and in DOA, Legal and DOF in 2006."  Subsequently, on March 4, 2005, formal notification was sent by the FDIC's Division of Administration to the National Treasury Employees Union (NTEU) of a reduction-in-force planned for bargaining unit employees in both DIT (the Division of Information Technology, formerly DIRM) and DRR.  In April 2005, informational RIF notices were sent to employees in both DIT and DRR.  However, by July 25, 2005, it was determined that no RIF would occur in DIT due to the success of the buyout program and other initiatives taken to reduce and realign DIT's staff.  Defendant admits that the only reduction-in-force which actually occurred during the time period October 2004 through December 2005 involved DRR.  Defendant denies the remaining allegations of paragraph 88 of the Amended Complaint.

89.  Defendant denies the allegations of paragraph 89 of the Amended Complaint.

90.  Defendant denies the allegations of paragraph 90 of the Amended Complaint. During 2005, 132 DRR employees applied for and accepted the buyout, and 66 DRR employees were involuntarily separated from employment with the FDIC pursuant to federal reduction-in-force (RIF) procedures effective September 3, 2005.

91.  Defendant admits that each of the Plaintiffs and other members of the alleged class who were voluntarily separated pursuant to the buyout or who were involuntarily separated from employment with the FDIC pursuant to federal reduction-in-force (RIF) procedures were not separated because they had performed at a less than satisfactory level at the FDIC.  Defendant admits that on June 30, 2005, each DRR employee affected by the RIF received a Specific Notice of Reduction in Force (RIF) issued from the office of Miguel A. Torrado, Associate

Director, Human Resources Branch, Division of Administration, which was tailored to that employee's individual circumstances and which stated, inter alia, that "[t]his RIF action does not reflect on hour service, performance and conduct."  Such notices are the best evidence of their contents.  Defendant denies the remaining allegations of paragraph 91 of the Amended Complaint.

92.  Defendant admits that on June 30, 2005, each DRR employee affected by the RIF received a Specific Notice of Reduction in Force (RIF) issued from the office of Miguel A. Torrado, Associate Director, Human Resources Branch, Division of Administration, which was tailored to that employee's individual circumstances and which stated, inter alia, that "[t]his RIF is necessary due to a lack of work and/or a need to reorganize that way we perform our work."  Such notices are the best evidence of their contents.  Defendant denies the remaining allegations of paragraph 92 of the Amended Complaint.

93.  Defendant denies the allegations of paragraph 93 of the Amended Complaint.

94.  Defendant denies the allegations of paragraph 94 of the Amended Complaint.

95.  Defendant denies the allegations of paragraph 95 of the Amended Complaint.

96.  Defendant denies the allegations of paragraph 96 of the Amended Complaint.

97.  Defendant denies the allegations of paragraph 97 of the Amended Complaint.

98.  Defendant admits that Plaintiffs' counsel has represented plaintiffs in pattern or practice cases and collective actions and class actions, and has no reason to believe that Rose & Rose, P.C., will not provide adequate legal representation to the Plaintiffs.  Defendant denies the remaining allegations of paragraph 98 of the Amended Complaint.

99.  Defendant incorporates by reference its responses to paragraphs 1 through 98 of the Amended Complaint.

100.  Defendant denies the allegations of paragraph 100 of the Amended Complaint.

101.  Defendant denies the allegations of paragraph 101 of the Amended Complaint.

## DEFENSES AND AFFIRMATIVE DEFENSES

By pleading the following defenses, as provided for pursuant to Rule 8(c) of the Federal Rules of Civil Procedure, Defendant does not concede that it possesses or assumes the burden to prove each or any of them.  Defendant maintains that Plaintiffs retain the burden of proof on all matters necessary to state and sustain the claims asserted in the Amended Complaint.

## FIRST AFFIRMATIVE DEFENSE

Plaintiffs have failed to state a claim for which relief may be granted.

## SECOND AFFIRMATIVE DEFENSE

Plaintiffs have failed to exhaust administrative remedies for some or all of their claims.

## THIRD AFFIRMATIVE DEFENSE

Plaintiffs have failed to provide timely notice under the Age Discrimination in Employment Act and related regulations for some or all of their claims, including, without limitation, those Plaintiffs who failed to provide timely notice to the EEOC within 180 days of the occurrence of the alleged unlawful practice, as required by the provisions of 29 C.F.R. 1614.201(a):  Fairfield, George, Ware, Cantrell, Thiels, Barrow, Valentine, Dillow, Hoover, Williams, Henderson, Kelly, Lett, Leal, Kathy Haag, Montoya, Schirf, Connell, Frantum, Carole Mann, Richard Mann, Flowers, and Scott, all of whom resigned or retired from the FDIC on or before May 14, 2005.

## FOURTH AFFIRMATIVE DEFENSE

The Court lacks jurisdiction over some or all of Plaintiffs' claims.

## FIFTH AFFIRMATIVE DEFENSE

Plaintiffs have failed to comply with the time limits for pursuing administrative and judicial remedies for age discrimination complaints.

## SIXTH AFFIRMATIVE DEFENSE

Some or all of Plaintiffs' claims are barred by the statute of limitations, laches, res judicata, collateral estoppel, settlement and release, or accord and satisfaction.

## SEVENTH AFFIRMATIVE DEFENSE

Plaintiffs and their counsel cannot satisfy the requirements necessary to maintain a class action.

## EIGHTH AFFIRMATIVE DEFENSE

The head of the agency, in his official capacity, is the only proper defendant.

## NINTH AFFIRMATIVE DEFENSE

The decisions Plaintiffs challenge were based on reasonable business factors other than age.

## TENTH AFFIRMATIVE DEFENSE

The FDIC conducted its reductions-in-force in accordance with applicable federal regulations and procedures.

## ELEVENTH AFFIRMATIVE DEFENSE

Some or all of the Plaintiffs' claims are barred because of their voluntary departure from the FDIC.

## TWELFTH AFFIRMATIVE DEFENSE

Plaintiffs have failed to appeal to the Merit Systems Protection Board for some or all of their claims.

## THIRTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' entitlement to relief is limited by court orders entered in other cases.

## FOURTEENTH AFFIRMATIVE DEFENSE

Some or all of the Plaintiffs lack standing to pursue the claims asserted in the Amended Complaint.

## FIFTEENTH AFFIRMATIVE DEFENSE

Plaintiffs fail to state a prima facie case under any of the claims or causes of action they have asserted; in the alternative, assuming Plaintiffs have stated a prima facie case, all conduct and actions on the part of Defendant concerning Plaintiffs were wholly based on legitimate, non-discriminatory, and non-retaliatory reasons.

## SIXTEENTH AFFIRMATIVE DEFENSE

Defendant denies Plaintiffs are entitled to recover any damages or other relief; in the alternative, upon information and belief, Plaintiffs' damage claims are barred in whole or part by reason of their failure to mitigate their alleged damages and/or the doctrine of after-acquired evidence; further, in the alternative, to the extent Plaintiffs have mitigated their damages, Defendant is entitled to a credit or set-off.

## SEVENTEENTH AFFIRMATIVE DEFENSE

Plaintiffs are not entitled to a jury trial of the allegations of their Amended Complaint.

30

## EIGHTEENTH AFFIRMATIVE DEFENSE

Defendant reserves the right to assert additional defenses, affirmative or otherwise, upon further investigation and discovery into the matters alleged.  Defendant asserts all applicable statutory limitations with respect to Plaintiffs' damage claims.

WHEREFORE, Defendant requests the Court enter judgment in its favor and against Plaintiffs, that the Amended Complaint be dismissed in its entirety with prejudice, that Defendant recover its costs in this action, and for such other relief as may be appropriate.

Respectfully submitted,

/s/  William S. Jones

_____

William S. Jones
Georgia Bar No. 404288
Counsel, Legal Division
Federal Deposit Insurance Corporation
3501 N. Fairfax Drive (VS-E6006)
Arlington, VA 22226
(703) 562-2362
(703) 562-2482 (Fax)

Stephen J. Kessler
D.C. Bar No. 382427
Counsel, Legal Division
Federal Deposit Insurance Corporation
3501 N. Fairfax Drive (VS-E6014)
Arlington, VA 22226
(703) 562-2311
(703) 562-2482 (Fax)

Attorneys for Defendant

Dated: March 15, 2006

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 15, 2006, I caused a true and correct copy of the foregoing

Defendant's Answer and Affirmative Defenses to Plaintiffs' Amended Complaint to be served

on Plaintiffs, through counsel, by first-class mail, postage prepaid, addressed as follows:


Terri N. Marcus, Esq.
David L. Rose, Esq.
Rose & Rose, P.C.
1320 19th Street, N.W.
Suite 601
Washington, DC 20036



/s/  William S. Jones
_____
William S. Jones
Counsel
Federal Deposit Insurance Corporation