# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

BARBARA ALIOTTA, et al and ) Case Number 1: 05CV02325
Others similarly situated, )
) MOTION FOR CLASS CERTIFICATION;
　　　　　　　Plaintiffs, ) MEMORANDUM OF POINTS AND
) DECLARATIONS IN SUPPORT
v. ) THEREOF
)
MARTIN J. GRUENBERG, Acting )
Chairman, Federal Deposit Insurance )
Corporation, ) [Proposed Order Submitted Concurrently Herewith]
)
　　　　　　　Defendant. )
)

Plaintiffs hereby move the Court for an order granting certification of a class pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure on Plaintiff's claim for relief for defendant's violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 633a.

This Motion is based on the ground that plaintiffs can prove by a preponderance of the evidence that the prerequisites of numerosity, commonality, typicality, and adequacy of representation are met, and that questions of law or fact common to the class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the action.

This motion is made following the conference of counsel pursuant to Local Civil Rule 7(m), which took place on April 17, 2006. Defendant opposes this motion. The motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the exhibits

i

filed concurrently herewith, and all pleadings and documents on file, and upon such evidence and

arguments as may properly come before the Court at the time of the hearing.


DATED: April 21, 2006                    ROSE & ROSE, P.C.


                                         /s/ David L. Rose
                                         /s/ Terri N. Marcus
                              By:        _____
                                         David L. Rose
                                         Terri N. Marcus
                                         Attorneys for Plaintiffs

# TABLE OF CONTENTS

Page No.

**Table of Contents** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

**Table of Authorities** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

I. Introduction/Factual Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. Standard of Proof . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

III. Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    A. The Class Should Be Certified Because the Prerequisites of a Class Under
       Rule 23(a) Have Been Met . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

       1. Numerosity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

       2. Commonality . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

       3. Typicality . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

       4. Adequacy of Representation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

    B. The Class Should Be Certified Because the Additional Requirements of
       Predominance and Superiority for a Rule 23(B)(3) Class Have Been Met . . . . . 14

       1. Predominance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

       2. Superiority . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

    C. If the Court Finds That Certification is not Appropriate at this Tie, Plaintiffs
       Should Be Permitted Time to Conduct Discovery and Submit Further
       Evidence in Support of the Motion Before a Final Determination Has
       Been Made . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

IV. Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

# TABLE OF AUTHORITIES

Page No.

**STATUTES**

Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq* . . . . . . . . . . . *passim*

26 U.S.C. § 626(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

29 U.S.C. 216(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

**CASES**

*Adams, et al v. Ameritech Services, Inc., et al*
    231 F.3d 414 (7th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Amchem Products, Inc. v. Windsor,*
    521 U.S. 591, 117 S.Ct. 2231, 138 L. Ed. 2d 689 (1997) . . . . . . . . . . . . . . . . . . . 12,13,15

*Arnold v. Postmaster General,*
    667 F. Supp. 6 (D.D.C. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Broussard v. Meineke Discount Muffler Shops, Inc.,*
    155 F.3d 331 (4th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Bynum v. District of Columbia,*
    214 F.R.D. 27 (D.D.C. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Castano v. American Tobacco Company,*
    84 F.3d 734 (5th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Coburn v. Pan American World Airways, Inc.,*
    711 F.2d 339 (D.C. Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Council of and for the Blind of Delaware County Valley, Inc. v. Regan,*
    709 F.2d 1521 (D.C. Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7,11

*Cuddy v. Carmen,*
    694 F.2d 853 (D.C. Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Dunaway v. Int'l Bhd. of Teamsters,*
    310 F.3d 758 (D.C. Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

iv

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156, 94 S. Ct. 2140, 40 L. Ed. 2d 732 (1974) . . . . . . . . . . . . . . . . . . . . . . . . 4,18

*General Telephone Company of the Southwest v. Falcon*,
    457 U.S. 147, 102 S. Ct. 2364, 72 L. Ed. 2d 740 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Georgine v. Amchem Prods. Inc.*,
    83 F.3d 610 (3d Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Hyman v. First Union Corp.*,
    982 F. Supp. 1 (D.D.C. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*In re Bristol Bay, Alaska, Salmon Fishery Antitrust Litig.*,
    78 F.R.D. 622 (W.D. Wa. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*In re Master Key Antitrust Litig.*,
    528 F.2d 5 (2d Cir. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*In re Visa Check/MasterMoney Antitrust Litig. v. Visa, USA Inc.*,
    280 F.3d 124 (2nd Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*In re Vitamins Antitrust Litig.*,
    209 F.R.D. 251 (D.D.C. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*James v. England*,
    226 F.R.D. 2 (D.D.C. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Kifafi v. Hilton Hotel Retirement Plan*,
    228 F.R.D. 382 (D.C. Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Link v. Mercedes Benz of N. Am., Inc.*,
    550 F.2d 860 (3d Cir. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*McReynolds v. Sodexho Marriott Services, Inc.*,
    208 F.R.D. 428 (D.D.C. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4,9

*Melong v. Micronesian Claims Commission*,
    643 F.2d 10 (D.C. Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Montelongo v. Meese*,
    803 F.2d 1341 (5th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Moysey v. Andrus,*
   481 F. Supp. 850 (D.C. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Mullen v. Treasure Chest Casino, LLC,*
   186 F.3d 620 (5th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Owens v. Bethlehem Mines Corp.,*
   108 F.R.D. 207 (S.D.W.Va. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Pigford v. Glickman,*
   182 F.R.D. 341 (D.D.C. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4,5,6

*Phillips Petroleum Co. v. Shutts,*
   472 U.S. 797, 105 S. Ct. 2965, 86 L. Ed. 2d 628 (1985) . . . . . . . . . . . . . . . . . . . . . . . 16

*Silver v. Leavitt,*
   2006 WL 626928 *13 (D.C. Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Smith v. City of Jackson,*
   544 U.S. 228, 125 S.Ct. 1536, 161 L.Ed.2d 410 (2005) . . . . . . . . . . . . . . . . . . . . . . 8,11

*Stewart v. Rubin,*
   948 F. Supp. 1077 (D.D.C. 1996); *aff'd*, 124 F.3d 1309 (D.C. Cir. 1997) . . . . . . . . . . . 6

*Taylor, et al v. Barnhart,*
   EEOC No. 120-2003-0304X . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Teneyck v. Omni Shoreham Hotel,*
   365 F.3d 1139 (D.C. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Wagner v. Taylor,*
   836 F.2d 578 (D.C. Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Wells v. Allstate Ins. Co.,*
   210 F.R.D. 1 (D.D.C. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Windham v. American Brands, Inc.,*
   565 F.2d 59 (4th Cir. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Yaffe v. Powers,*
   454 F.2d 1362 (1st Cir. 1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

vi

*Zinser v. Accufix Research Inst., Inc.,*
    253 F.3d 1180 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

**FEDERAL RULES OF CIVIL PROCEDURE**

Fed.R.Civ.P. 23(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5,7,11,12

Fed.R.Civ.P. 23(b)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

Fed. R. Civ. P. 23(b)(3)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Fed. R. Civ. P. 23(b)(3)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Fed. R. Civ. P. 23(b)(3)(C) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Fed. R. Civ. P. 23(b)(3)(D) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

**LOCAL CIVIL RULES OF THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

Local Civil Rule 23(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

**SECONDARY SOURCES**

Manual for Complex Litigation, §§ 1.43 n. 72 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Wright, Miller & Kane, Federal Practice and Procedure: Civil 2nd §§ 1762 . . . . . . . . . . . . . . 5,6

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION/FACTUAL STATEMENT

On December 5, 2005, nineteen (19) plaintiffs filed their complaint alleging violations of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* against their former employer, Defendant Federal Deposit Insurance Corporation ("FDIC"). Appropriate notice was given to the U.S. Equal Employment Opportunity Commission under Section 15 of the ADEA, 29 U.S.C. § 633a(d).

On February 8, 2006, an amended complaint was filed which included thirty (30) additional plaintiffs, bringing the total number of plaintiffs to forty-nine (49).

Plaintiffs were born on dates ranging from January 10, 1933 (Sylvia Cline) through September 26, 1955 (O. Faye Moritz). Def.'s Answer, ¶5. The average age of the plaintiffs in 2005 was fifty-nine (59).

Plaintiffs were all employees of the FDIC in its Division of Resolutions and Receiverships ("DRR") in either Dallas, Texas or Washington, D.C. Def.'s Answer, ¶5. Most of the plaintiffs had more than ten years of service with the agency. Amended Complaint, ¶¶6-55. Twelve (12) plaintiffs were Resolutions and Receiverships Technicians ("R&R Technicians") at Grades 7 or 8. Thirty-one (31) plaintiffs were Resolutions and Receiverships Specialists ("R&R Specialists") at Grades 11, 12, 13 or 14. The remaining six (6) plaintiffs held various positions within the division.

The plaintiffs' claims stem from a Reduction in Force ("RIF") that was initiated at the end of 2004. The separations from employment occurred from November 30, 2004 through the end of 2005. Def.'s Answer, ¶¶6-55. On June 30, 2005 each DRR employee affected by the RIF

received a Specific Notice of Reduction in Force, stating that "[t]his RIF action does not reflect on your service, performance and conduct." Amended Complaint, ¶79.

The RIF had an adverse impact on DRR employees who were fifty (50) years old and older.[1] As a result of the RIF, thirty-one (31) plaintiffs took monetary incentives offered by defendant to retire early to avoid being terminated without payment of the monetary incentives.[2] A total of 132 DRR employees in Dallas and Washington, D.C. accepted the buyout. Def.'s Answer, ¶75.

The buyout included, among other benefits, a cash payment equal to 50% of total salary and the ability to combine the buyout with either regular or early retirement. Def.'s Answer, ¶5. The plaintiffs who accepted the buyout had no plans to retire or resign when they did. Most of these plaintiffs were discharged from their employment effective April 30, 2005 or May 14, 2005. Def.'s Answer, ¶5. Two plaintiffs (James Connell and Kathy Frantum) accepted the buyout and subsequently found new position within the agency, albeit, in lower-graded, lower-paying, positions. Def.'s Answer, ¶75.

Seventeen (17) plaintiffs were not offered or did not accept the incentives to retire early. They were terminated effective September 3, 2005. One (1) plaintiff, Gregory Haag, from the Kentucky office was terminated, but bid for and received a new lower-graded, lower-paid, position in Kentucky. Approximately fifty (50) other employees from DRR were also separated

---

[1] All of the plaintiffs were 50 years old or older when they were persuaded to retire or terminated, except plaintiff O. Faye Moritz who was 23 days shy of her 50th birthday when she was terminated on September 3, 2005.

[2] Defendant alleges that thirty-three (33) not thirty-one (31) plaintiffs took the buyout. Def's. Answer, ¶5. Plaintiffs expect the discrepancy will be resolved in the discovery phase.

on that date.  Def.'s Answer, ¶79.

Plaintiffs intend to prove that the FDIC targeted the Division of Resolutions and Receiverships for reductions because it was an "old" division.  Its employees were, as a whole, older than the employees in other divisions of the FDIC.  The only RIF which took place during the time period October 2004 through December 2005 involved DRR.  Def.'s Answer, ¶88.

Additionally, during the RIF, employees in their 20's, 30's or 40's were not encouraged to resign, terminated, or downgraded at the same rate as employees in their 50's, 60's or 70's.  Younger employees were given more opportunities to transfer than the older employees.  During and after the RIF, younger employees were hired and placed in positions that could have been occupied by the plaintiffs and other older employees.

Plaintiffs seek class certification pursuant to Federal Rules of Civil Procedure 23(b)(3).  Specifically, Plaintiffs seek to certify a class of:

Former or present employees of FDIC's Division of Resolutions and Receiverships who were born on a date on or before September 30, 1955 who were terminated from their positions in the DRR, or who were offered and accepted a buyout, as a result of the 2005 RIF, or who accepted a reduction in grade to retain their employment.

## II.  STANDARD OF PROOF

Trial courts have broad discretion to certify classes within the framework of Rule 23.  *Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 344 (4th Cir. 1998);  *Montelongo v. Meese*, 803 F.2d 1341, 1351 (5th Cir. 1986); *James v. England*, 226 F.R.D. 2, 5 (D.D.C. 2004).  A district court's decision to certify a class will be reversed only upon a showing that the court abused its discretion, or that it applied incorrect legal standards in reaching its

decision. *Wagner v. Taylor*, 836 F.2d 578, 586 (D.C. Cir. 1987).

As the party seeking class certification, plaintiffs bear the burden of demonstrating that they have met each of the four prerequisites of Rule 23(a) and at least one of the requirements of Rule 23(b). *Melong v. Micronesian Claims Commission*, 643 F.2d 10, 17 (D.C. Cir. 1980); *Pigford v. Glickman*, 182 F.R.D. 341, 345 (D.D.C. 1998). If the plaintiff is seeking to certify a class in accordance with Rule 23(b)(3), then in addition to those prerequisites, the plaintiff must prove that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3).

A plaintiff is not required to establish the merits of his or her case because the class certification issue is procedural in nature. A motion for class certification is not an occasion for examination of the merits of the case. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178, 94 S. Ct. 2140, 40 L. Ed. 2d 732 (1974); *Kifafi v. Hilton Hotel Retirement Plan*, 228 F.R.D. 382, 385 (D.C. Cir. 2005) (nothing in either the language or history of Rule 23 gives a court any authority to conduct a preliminary inquiry into the merits of the suit in order to determine whether it may be maintained as a class action). Finally, in reviewing a motion for class certification, a district court is generally bound to take the substantive allegations of the complaint as true. *McReynolds v. Sodexho Marriott Services, Inc.*, 208 F.R.D. 428, 431 (D.D.C. 2002).

## III.   ARGUMENT

### A.   THE CLASS SHOULD BE CERTIFIED BECAUSE THE PREREQUISITES OF A CLASS UNDER RULE 23(A) HAVE BEEN MET

Class certification under Rule 23 of the Federal Rules of Civil Procedure is permissible in ADEA suits against the federal government. *Moysey v. Andrus,* 481 F. Supp. 850, 852-54 (D.C. 1979). Rule 23(a) requires, as a condition precedent to class certification, that four requirements be met. The four prerequisites are: (1) the class must be so numerous that joinder of all members is impracticable [numerosity]; (2) there must be questions of law or fact common to the class [commonality]; (3) the claims or defenses of the representative parties must be typical of the claims or defenses of the class [typicality]; and (4) the representative parties must fairly and adequately protect the interests of the class [adequacy]. *General Telephone Company of the Southwest v. Falcon*, 457 U.S. 147, 155, 102 S. Ct. 2364, 72 L. Ed. 2d 740 (1982).

### 1. NUMEROSITY

The prerequisite of numerosity is met if "the class is so large that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). A plaintiff does not "have to provide an exact number of putative class members in order to satisfy the numerosity requirement". *Pigford*, 182 F.R.D. at 347. An exact count of the class members is not required because a court may make common sense assumptions to support a finding of numerosity. *Bynum v. District of Columbia*, 214 F.R.D. 27, 32 (D.D.C. 2003).

Although courts have varied as to the number of members sufficient to make joinder impracticable, courts have generally held that joinder is practicable in cases of fewer than 25 parties, and impracticable in cases of more than 35 parties. WRIGHT, MILLER & KANE,

5

FEDERAL PRACTICE AND PROCEDURE: CIVIL 2nd §§ 1762; *Bynum*, 214 F.R.D. at 33 (93 persons sufficient for numerosity requirement); *Stewart v. Rubin*, 948 F. Supp. 1077, 1088 (D.D.C. 1996); *aff'd*, 124 F.3d 1309 (D.C. Cir. 1997) (245 member class located throughout the country satisfies numerosity requirement); *Pigford*, 182 F.R.D. at 347-48 (401 named plaintiffs was sufficient, especially when class members were located in different states).

In this case, plaintiffs estimate the size of the class to be approximately 100 to 130 members. One hundred and thirty-two (132) DRR employees left the FDIC after they accepted the buyout offer. Thirty-one (31) of these former DRR employees are already plaintiffs, leaving approximately another one-hundred (100) former DRR employees as potential class members. In addition, there are approximately fifty (50) former DRR employees (not including the plaintffs) who were terminated outright as part of the 2005 RIF. Plaintiffs estimate than there are less than thirty more individuals who accepted a reduction in grade in order to keep their employment with the FDIC.

Of these 150, not all will be age 50 or over; however, a substantial number of them are likely to fall into the older age category. A staffing list of the Division of Resolutions and Receiverships, dated March 4, 2002, shows that out of the 456 total number of DRR employees, approximately 300, or 66%, were born on or before September 30, 1955. Approximately 150 DRR employees, or 33%, were born after September 30, 1955. (See a true and correct copy of the 2002 staffing list attached hereto as Exhibit A). Based on these numbers, it is reasonable to conclude that at least 66% of the 150 former DRR employees who left as a result of the 2005 RIF fall into older age category. Therefore, plaintiffs expect there to be a class of approximately 100 (66% of 150) members. One-hundred class members is sufficient for class certification since

6

joinder of so many individuals to a case already containing forty-nine (49) plaintiffs is impracticable.[3]

## 2.    COMMONALITY

A class has sufficient commonality "if there are questions of fact and law which are common to the class." Fed. R. Civ. P. 23(a)(2).  Rule 23(a)(2) has been construed permissively.  It is not necessary that all questions of fact and law be shared or be identical for the rule to be satisfied.  *Council of and for the Blind of Delaware County Valley, Inc. v. Regan*, 709 F.2d 1521, 1544 (D.C. Cir. 1983).  Commonality is found "where the question of law linking the class members is substantially related to the resolution of the litigation even though the individuals are not identically situated."  *Id.* at 1543 fn.48.  A "single factual dissimilarity does not suffice to defeat the commonality requirement."  *Bynum*, 214 F.R.D. at 33.

Here, the facts and law applicable to the named plaintiffs and the proposed class members are virtually identical.  The facts surrounding the 2005 RIF apply to all the plaintiffs and members of the class.  All of the plaintiffs/class members lost their positions in the DRR.  The vast majority of the plaintiffs/class members lost their jobs through either acceptance of a buyout to avoid termination or they were terminated.  A few plaintiffs suffered from a reduction in grade.  There are no claims made about discrimination in hiring, promotions, awards, training, discipline, or any other of the myriad of ways employees can be discriminated against by their employers.

---

[3] Plaintiffs have filed one amended complaint for the primary purpose of adding thirty (30) additional plaintiffs.  Plaintiffs anticipate that if class certification is not granted, the pleadings would need to be further modified to accommodate additional individuals seeking to be plaintiffs in this action.

The pool of relevant facts is further pared down in light of other similarities amongst the plaintiffs/class members. First, all the plaintiffs/class members were employed in just one division of the FDIC, the Division of Resolutions and Receiverships. Within the DRR, the 2005 RIF primarily impacted just two major classification of employees - R&R Technicians and R&R Specialists. Furthermore, just two geographic areas are involved - Dallas and the District of Columbia. From a temporal standpoint, almost all of the separations from employment occurred at two major times in 2005- either May 14, 2005 or September 3, 2005. These similarities amongst the plaintiffs are indicative of the facts the plaintiffs share with potential class members.

The law applicable to each of the plaintiff/class member's claim is the same as each plaintiff/class member is alleging a violation of the ADEA. No other statutes or common law causes of action are alleged to have been violated by any subset of plaintiffs. To prevail, each of the plaintiffs/class members must prove that he or she suffered an adverse employment action because the employer acted with discriminatory intent based upon the plaintiff's age.[4] *Teneyck v. Omni Shoreham Hotel*, 365 F.3d 1139, 115l (D.C. Cir. 2004); *Dunaway v. Int'l Bhd. of Teamsters*, 310 F.3d 758, 763 (D.C. Cir. 2002). Discriminatory intent can be proven via direct or circumstantial evidence. *Id.*

All of the plaintiffs/class members will rely on common evidence - both direct and circumstantial - to prove they were discriminated against on the basis of their age. They will seek to use evidence that will demonstrate that the bias which led to the discrimination came from top management and permeated the agency. In addition, they will rely on statistical

---

[4] Plaintiffs may be able to proceed without proof of intent in light of the decision in *Smith v. City of Jackson*, 544 U.S. 228, 125 S. Ct. 228, 1671 L. Ed. 410 (2005).

8

evidence to show that the agency terminated a disproportionate number of employees over the age of 50.  Each plaintiff/class member will want to utilize evidence that if younger employees did lose their positions as a result of the 2005 RIF, they were found new positions within the agency while older employees were not.  Finally, each plaintiff/class member will want to show that younger replacements were hired after he or she was terminated.

As an example, plaintiffs alleged that two incidents described in the Amended Complaint are direct evidence of age discrimination that can be relied upon by both plaintiffs and class members.   Plaintiffs alleged that in 2001 and 2002, the Chairman of the FDIC, Donald E. Powell, stated to groups of employees: "I want young people around me — they have all the innovative ideas."  Amended Complaint, ¶59.  In the summer of 2002 during another employee discussion group, Chairman Powell asked for all employees who had more than 20 years of experience at FDIC to raise their hands and stated: "It is time for you long-term employees to go and give the younger employees a chance to advance" or words to that effect.  Amended Complaint, ¶60.  Such statements by the head of the agency tend to show that younger employees were favored over those employees 50 and older and that such favoritism existed throughout the agency.

Plaintiffs may also prove their case via the burden shifting framework adopted in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L.Ed. 2d 668 (1973). *Cuddy v. Carmen*, 694 F.2d 853, 857 (D.C. Cir. 1982).  In cases involving RIFs, plaintiffs are more likely to be able to establish their prima facie case because the reason for the employee terminations is not tied to the employees' performances. *Coburn v. Pan American World Airways, Inc.*, 711 F.2d 339, 343 (D.C. Cir. 1983).   That is the case here.  Defendant informed

9

the plaintiffs/class members that:

> You will be affected by a reduction in force (RIF) action. This RIF is necessary due to lack of work and/or a need to reorganize the way we perform our work. Consequently, your last day of work with the FDIC will be September 2, 2005, and you will be separated from the Federal service on September 3, 2005 . . . The RIF action does not reflect on your service, performance or conduct. FDIC is appreciative of your service and sincerely regrets taking this action.

Amended Complaint, ¶79. The plaintiffs/class members were not offered a buyout or terminated because there were problems with their job performance. Thus, the case is not likely to splinter into arguments that some plaintiffs were terminated due to performance issues while others were not.

Given the RIF scenario, it is also likely that any alleged legitimate, non-discriminatory reason(s) for defendant's actions will apply to all the plaintiffs/class members and that any defenses, such as "reasonable business factors other than age" will also apply across-the-board.

The law and the vast majority of the relevant facts in this case will apply with equal force to all the plaintiffs and the potential class members. The 2005 RIF was either executed in a discriminatory manner or it was not. If it was, then each of the plaintiffs/class members suffered the loss of their employment in DRR for the same reason and experienced the same type of injury - loss of their salary and benefits.

In *Hyman v. First Union Corp.*, 982 F. Supp. 1, 3 (D.D.C. 1997), the court found that a group of employees who had all been terminated as a result of two company-wide RIFS were similarly situated for purposes of the ADEA. Citing *Owens v. Bethlehem Mines Corp.*, 108 F.R.D. 207 (S.D.W.Va. 1985), the court agreed that "a systematic reduction of the work force is a decision that is obviously made at a high level of the organization" and that "the nature of the

10

reduction of force made a broad class appropriate." *Hyman*, 982 F. Supp. at 3. Although the court in *Hyman* only had to make a "similarly situated" determination for an ADEA collective action,[5] the same reasoning applies in determining the commonality of the plaintiff/class members claims when a RIF is involved.

In light of the Supreme Court's decision in *Smith v. City of Jackson*, 544 U.S. 228, 125 S.Ct. 1536, 161 L.Ed.2d 410 (2005), plaintiffs/class members may also be able to prove age discrimination by showing the 2005 RIF had a disparate impact on DRR employees who were 50 years old or older. The question of whether the disparate impact theory is available for ADEA plaintiffs litigating against their federal employer is open to dispute in this district. In *Silver v. Leavitt*, 2006 WL 626928 *13 (D.C. Cir. 2006), the court held that the disparate impact theory was not "legally cognizable" for federal employees. A notice of appeal in *Silver*, however, was filed on April 18, 2006. In the event plaintiffs may prove their claim via a disparate impact analysis, plaintiffs submit that the evidence to support their claim would likewise be the same if not identical for each of the plaintiffs/class members.

### 3.    TYPICALITY

The typicality prerequisite of Rule 23(a) is fulfilled if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The main issue in determining typicality is deciding whether the class representative(s) is part of the class and has the same interests and injury as the class members. *Council of and for the Blind of Delaware County Valley, Inc.*, 709 F.2d at 1544. "A named plaintiff's claims are typical of the

---

[5]  ADEA actions against private employers must utilize the opt-in, collective action procedures found at 29 U.S.C. § 216(b). *See*, 26 U.S.C. § 626(b); *Arnold v. Postmaster General*, 667 F. Supp. 6, 15 (D.D.C. 1987).

class when there is a nexus between the injury sustained by that plaintiff and the injury suffered by the class." *Id.* at 545. A nexus is established if the claim of the named plaintiff(s) and the class members "stems from the same event, practice or course of conduct that forms the basis of the class claim and is to be litigated on the same legal theory." *Id.* This requirement has been given a liberal construction by courts as well. *Bynum*, 214 F.R.D. at 34.

Plaintiffs herein fulfill the typicality requirement. Plaintiffs contend that the 2005 RIF was executed in a manner which discriminated against then on the basis of their age. If plaintiffs are correct, then they and the class share a single type of harm - loss or downgrade of employment. They also share the same type of injury - loss of employment income and benefits. The only difference amongst the plaintiffs/class members is the amount of that income.

The differences that do exist in the claims of the named plaintiffs mirror the differences that exist for potential class members. Namely, some plaintiffs/class members lost their employment because they took the buyout to avoid termination. Other plaintiffs/class members did not take the buyout and were terminated later in 2005. A few others accepted the buyout or were terminated, but managed to find positions elsewhere within the agency. Regardless of how the 2005 RIF impacted a potential class member, there is already a named plaintiff whose claim is illustrative of the class member's claim.

Each class member's claim arises from the same course of events - the 2005 RIF - that led to the claims of the representative plaintiffs and each class member must make similar legal arguments to prove defendant's liability. For this reason, plaintiffs have satisfied the typicality requirement.

12

### 4.    ADEQUACY OF REPRESENTATION

The adequacy inquiry under Rule 23(a)(4) seeks to reveal any conflicts of interest between named parties and the class they seek to represent.  *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625-26, 117 S.Ct. 2231, 138 L. Ed. 2d 689 (1997).  Differences between named plaintiffs and class members can render the named plaintiffs inadequate representatives if those differences create conflicts between the interests of the named plaintiffs and the class members. *Mullen v. Treasure Chest Casino, LLC,* 186 F.3d 620, 624-25 (5th Cir. 1999).

Here, the plaintiffs' interest in this action is primarily to gain reinstatement with the agency and/or to receive an award of back pay to compensate them for their loss of salary and loss of retirement and health benefits.  The interests of any class members would likewise be to receive back pay for the loss of their salary and benefits or be reinstated.  Plaintiffs have no reason to anticipate or foresee that any antagonism between themselves and potential class members would result from their representation.

Furthermore, the vast majority of the plaintiffs are no longer employed by defendant. Therefore, they may pursue the litigation vigorously and without fear of retaliation or retribution for their leading roles in the action.

The adequacy of representation analysis also factors in competency and conflicts of class counsel.  *Amchen*, 521 U.S. at 626 fn.20.  Counsel chosen by the named plaintiff are also well-qualified to represent a class of approximately a few hundred members.  The law firm of Rose & Rose, P.C. has been in existence for over 18 years, since founder David L. Rose left the Department of Justice.  While at the Department of Justice, Mr. Rose served for more than 18 years as the section chief of the employment law section of the Civil Rights Division.  He

13

oversaw the work of approximately thirty-five lawyers bringing cases to remedy systemic race discrimination.  Since its founding, the firm has represented the National Association for the Advancement of Colored People in a series of cases known as the Suburban Litigation program, addressing discriminatory practices in municipalities in several states.

In the age discrimination case of *Adams, et al. v. Ameritech Services, Inc., et al.*, 231 F.3d 414 (7th Cir. 2000), the firm represented fifteen clients, but argued on behalf of more than fifty plaintiffs who lost their jobs during a downsizing.  The firm successfully overcame summary judgment for the defense on appeal and obtained significant relief for the plaintiffs.

More recently, the firm has been designated class counsel in a Rule 23 class action under Title VII in the matter of *Taylor, et al. v. Barnhart*, EEOC No. 120-2003-0304X.  The EEOC granted the plaintiffs' motion for class certification.  The class contains over 500 employees. The certification decision was appealed by the defendant federal agency and the parties are awaiting a decision by the Office of Federal Operations.  In June 2005, another firm joined Rose & Rose, P.C. as class counsel.

Counsel have no conflicts of interests which would impair their ability to adequately represent the class.  Therefore, both the plaintiffs and their chosen counsel fulfill the adequacy requirement.

**B.   THE CLASS SHOULD BE CERTIFIED BECAUSE THE ADDITIONAL REQUIREMENTS OF PREDOMINANCE AND SUPERIORITY FOR A RULE 23(B)(3) CLASS HAVE BEEN MET**

**1.  PREDOMINANCE**

The predominance inquiry is similar to the commonality inquiry, however the common issues "must be shown by the plaintiffs to predominate over the non-common issues."  *Bynum*,

214 F.R.D. at 39 (citing *In re Vitamins Antitrust Litig.*, 209 F.R.D. 251, 262 (D.D.C. 2002).
 The predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant
adjudication by representation. *Amchem Products, Inc.*, 521 U.S. at 623.

Here, a common nucleus of facts and potential legal remedies dominate the litigation.  A
common substantive law applies to all class members.  As all class members would seek redress
through the same statute, all members of the class would possess the same remedies.   As the
violation of the federal ADEA is the only cause of action alleged, there are no differences in any
state laws that need to be applied.

Albeit early in the litigation, plaintiffs expect to prove their case via evidence that applies
generally to the entire class.  Such evidence may include:

1) evidence that the DRR was targeted for the 2005 RIF because DRR was an "old"
agency; it had a disproportionately large number of employees aged 50 or older

2) evidence that the buyout was offered only to older employees, or in greater numbers
than younger employees;

3) evidence that after the 2005 RIF, younger employees remained as a greater percentage
of the DRR work force than older employees;

4) evidence that a disproportionate number of younger DRR employees were found new
positions in the agency after the 2005 RIF.

Thus, the common issue of liability is expected to be proved or disproved through facts
and evidence which are shared by all members of the class.  The only individual issue in the
litigation is the issue of damages.  However, this individual issue does not overwhelm the
common questions surrounding liability so as to render the class action valueless. *Bynum*, 214

F.R.D. at 39 (even significant differences in individual class member damage amounts do not prohibit a finding of predominance); *Bertulli v. Indep. Ass'n of Cont'l Pilots*, 242 F.3d 290, 298 (5th Cir. 2001) (finding that the predominance element was met when "virtually every issue prior to damages [was] a common issue", despite the individualized decisions which would have to be made to calculate damages). Therefore, as demonstrated, the predominance test is met because common issues dominate the litigation.

### 2.    SUPERIORITY

Rule 23(b)(3) also requires that class resolution must be "superior to other available methods for the fair and efficient adjudication of the controversy." A case will often meet the superiority standard when "common questions of law or fact permit the court to consolidate otherwise identical actions into a single efficient unit." *Bynum*, 214 F.R.D. at 40 (citing *Wells v. Allstate Ins. Co.*, 210 F.R.D. 1, 12 (D.D.C. 2002).

In evaluating superiority of proceeding with a class action, a court must "balance, in terms of fairness and efficiency, the merits of a class action against those of 'alternative available methods' of adjudication." *Georgine v. Amchem Prods. Inc.*, 83 F.3d 610, 632 (3d Cir. 1996). "The greater the number of individual issues, the less likely superiority can be established." *Castano v. American Tobacco Company*, 84 F.3d 734, 745 n.19 (5th Cir. 1996).

Rule 23(b)(3) sets forth four factors which bear upon the predominance/superiority determinations. The first factor is the interest of each member in individually controlling the prosecution or defense of separate actions. Fed. R. Civ. P. 23(b)(3)(A). Where damages suffered by each putative class member are not large, this factor weighs in favor of certifying a class action, especially when it appears likely that individuals will be unable to pursue their claims on

16

an individual basis because the cost of doing so exceeds any recovery they might obtain. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809, 105 S. Ct. 2965, 86 L. Ed. 2d 628 (1985) (reasoning that an advantage to class actions is that they permit plaintiffs "to pool claims which would be uneconomical to litigate individually").

In this action, individual recovery is likely to be more than nominal, but not so large that individuals would be likely to seek individual representation to pursue their claims. As of the date of this motion, plaintiffs/class members have lost income and the value of their retirement and health benefits for a period of less than one year. Plaintiffs are unaware of any prospective class members prosecuting their ADEA claims on their own. This fact indicates that prospective class members are not likely to pursue their claims individually. The significant number of former DRR employees who have chosen to become plaintiffs also demonstrates that the individuals prefer to pursue their claims in a multi-plaintiff/class type of proceeding.

The second factor is "the extent and nature of any litigation concerning the controversy already commenced by or against members of the class." Fed. R. Civ. P. 23(b)(3)(B). This factor is intended to serve the purpose of assuring judicial economy and reducing the possibility of multiple lawsuits. *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1191 (9th Cir. 2001). If other actions have already been filed, then the threat of multiple and possible inconsistent adjudications exists. *Id.* In that situation, a Rule 23 proceeding may just serve to create another lawsuit. *Id.* More significantly, the existence of other litigation demonstrates that some of the interested parties have decided that individual actions are an acceptable, if not preferable, way to proceed. *Id.*

17

Plaintiffs are aware of no other lawsuits on record which assert the facts and law that are the basis of this action. The risk of multiple and possible inconsistent adjudications would only arise if class certification in this action is not granted and multiple plaintiffs decide to pursue their claims individually.

The third factor is "the desirability or undesirability of concentrating the litigation of the claims in the particular forum." Fed. R. Civ. P. 23(b)(3)(C). The District of Columbia is the appropriate forum. The plaintiff/class members worked for defendant in both its D.C. and Dallas, Texas office. Defendant's main office is located in the District.

The fourth factor is "the difficulties likely to be encountered in the management of a class action." Fed. R. Civ. P. 23(b)(3)(D). A district court's evaluation of this issue must be "granted a wide range of discretion" because manageability is a practical problem which district courts are generally more experienced at than appellate courts. *Link v. Mercedes Benz of N. Am., Inc.*, 550 F.2d 860, 864 (3d Cir. 1977); *Windham v. American Brands, Inc.*, 565 F.2d 59, 65 (4th Cir. 1977). Manageability encompasses "the whole range of practical problems that may render the class action format inappropriate for a particular suit." *Eisen*, 417 U.S. at 164.

Failure to certify an action under Rule 23(b)(3) on the sole ground that it would be unmanageable is disfavored and "'should be the exception rather than the rule.'" *In re Visa Check/MasterMoney Antitrust Litig. v. Visa, USA Inc.*, 280 F.3d 124, 140 (2nd Cir. 2001) (quoting Manual for Complex Litigation, §§ 1.43 n. 72 (1977)); *see also In re Bristol Bay, Alaska, Salmon Fishery Antitrust Litig.*, 78 F.R.D. 622, 628 (W.D. Wa. 1978) (concluding that "dismissal for management reasons, in view of the public interest involved in class actions, should be the exception rather than the rule"); *Yaffe v. Powers*, 454 F.2d 1362, 1365 (1st Cir.

18

1972) (stating that "for a court to refuse to certify a class . . . because of vaguely-perceived management problems . . . discounts too much the power of the court to deal with a class suit flexibly, in response to difficulties as they arise").

In this action, each class member will not have to litigate numerous and substantial separate issues to establish his or her right to recover individually. The only individual issue will be the amount of each class members' damages. Damages, however, would be relatively easy to compute as the plaintiffs/class members are only seeking pecuniary damages. There are no claims for emotional distress or other non-pecuniary damages which would require individual determinations. The amount of the plaintiffs/class members loss of income would be easy to calculate as each former DRR employee worked at an assigned grade and step.

If defendant does argue that the calculation of individualized damages makes this case unmanageable as a class action, then there are several tools the Court may use to maintain the class and still do individualized damage calculations, such as: (1) bifurcating liability and damage trials with the same or different juries; (2) appointing a magistrate judge or special master to preside over individual damages proceedings; (3) decertifying the class after the liability trial and providing notice to class members concerning how they may proceed to prove damages; (4) creating subclasses; or (5) altering or amending the class. *See*, *In re Master Key Antitrust Litig.*, 528 F.2d 5, 12 n.11, 14 (2d Cir. 1975) (discussing use of a separate liability and damages trial and, if appropriate, use of subclasses to facilitate damages determination).

This class is especially manageable because it will likely be comprised of a just a hundred or so, as opposed to several hundred or a few thousand, members. In addition, the class will be geographically limited to the District of Columbia and Texas. The class is well defined and the

19

one claim for relief is relatively simple and straightforward.

From either a judicial or litigant viewpoint, there is no advantage in individual members controlling the prosecution of separate actions. If class certification was denied, there would be less settlement advantages, significantly reduced resources and no greater prospect for recovery. Given the limited focus of the action, the shared factual predicate and the shared remedies, the proposed class is sufficiently cohesive to survive Rule 23(b)(3) scrutiny. Thus, the requisite predominance and superiority tests are satisfied, and the conditions of Rule 23(b)(3) have been met.

**C.    IF THE COURT FINDS THAT CERTIFICATION IS NOT APPROPRIATE AT THIS TIME, PLAINTIFFS SHOULD BE PERMITTED TIME TO CONDUCT DISCOVERY AND SUBMIT FURTHER EVIDENCE IN SUPPORT OF THE MOTION BEFORE A FINAL DETERMINATION HAS BEEN MADE**

When presented with a motion for class certification, Rule 23(b) of the Local Civil Rules of this district give the district court the option of either granting the motion, denying the motion, or postponing a ruling so that discovery may be conducted. In the event the Court finds that any facts supporting certification of a class are lacking at this stage of the litigation, plaintiffs respectfully request that permission be granted to conduct discovery to provide the Court with any missing information.

**IV.    CONCLUSION**

Because plaintiffs have demonstrated that the elements of numerosity, commonality, typicality, adequacy of representation, predominance, and superiority have been met, a class on behalf of all current or former employees of the Division of Resolutions and Receiverships who lost their employment in DRR as a result of the 2005 RIF should be certified as a class action

20

pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure.  In the event the Court finds some element lacking, plaintiffs should be provided an opportunity to conduct discovery and submit further evidence in support of their motion for class certification.

Dated: April 21, 2006                        Respectfully submitted,


                                             /s/ David L. Rose
                                             /s/ Terri N. Marcus
                                             _____
                                             David L. Rose, D.C. Bar No. 376379
                                             Terri N. Marcus, D.C. Bar No. 483175
                                             Rose & Rose, P.C.
                                             1320 19th Street, N.W. Suite 601
                                             Washington, D.C. 20036
                                             Tel:  (202) 331-8555
                                             Fax: (202) 331-0996

                                             Attorneys for Plaintiffs