# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

BARBARA ALIOTTA, et al and    )
  Others similarly situated,    )
           )   Case Number 1: 05CV02325
        Plaintiffs,    )
           )
v.           )
           )
MARTIN J. GRUENBERG, ACTING    )
CHAIRMAN, FEDERAL DEPOSIT    )
INSURANCE CORPORATION,    )
           )
        Defendant.    )
_____)

## REPLY BRIEF IN SUPPORT OF MOTION
## FOR CLASS CERTIFICATION

David L. Rose, D.C. Bar No. 376379
Terri N. Marcus, D.C. Bar No. 483175
Rose & Rose, P.C.
1320 19th Street, N.W., Suite 601
Washington, D.C. 20036
Tel: (202) 331-8555
Fax: (202) 331-0996
daver@roselawyers.com
tmarcus@roselawyers.com
Attorney for Plaintiffs

# TABLE OF CONTENTS

Page No.

**Table of Contents** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  i

**Table of Authorities** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    A.  This Suit Was Timely Filed and Its Filing Tolled Any Period of Limitations
        for Members of the Class . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    B.  Plaintiffs' Notice of Their Intent to File Suit was Timely . . . . . . . . . . . . . . . . . . . . 4

    C.  Plaintiffs' Claims Meet the Requirements of Rule 23(a) . . . . . . . . . . . . . . . . . . . . 5

        1.  Plaintiffs' Claims Meet the Commonality and Typicality Requirements . . . .  5

        2.  The "Reduction in Grade" Plaintiff's Claim Meet the Commonality and
            Typicality Requirements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

        3.  The Claims of the Plaintiffs Who Were Terminated as Part of the
            2005 RIF Meet the Commonality and Typicality Requirements  . . . . . . 13

        4.  Plaintiffs' Claims Meet the Numerosity Requirement . . . . . . . . . . . . . . . . . 15

        5.  Plaintiffs' Claims Meet the Adequacy Requirement . . . . . . . . . . . . . . . . . . 15

    D.  Plaintiffs' Claims Meet the Requirements of Rule 23(b)(3) . . . . . . . . . . . . . . . . 16

        1.  Plaintiffs' Claims Meet the Predominance Requirement . . . . . . . . . . . . . . 16

        2.  Plaintiffs' Claims Meet the Superiority Requirement . . . . . . . . . . . . . . . . . 18

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

# TABLE OF AUTHORITIES

Page No.

**STATUTES AND REGULATIONS**

Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq* . . . . . . . . . . . *passim*

28 U.S.C. § 1658(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

28 U.S.C. § 2401(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

29 U.S.C. § 633a . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

29 U.S.C. § 633a(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2,3,4

29 C.F.R. § 1614.201(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

29 C.F.R. § 1614.204(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

**CASES**

*Adams v. Mitsubishi Bank, Ltd.*
        133 F.R.D. 82, 88 (E.D.N.Y. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9,10

*Bynum v. District of Columbia,*
        214 F.R.D. 27, 33 (D.D.C. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5,16,18

*Chappell-Johnson v. Powell,*
        440 F.3d 484 (D.C. Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Check/Mastermoney Antitrust Litigation v. Visa U.S.A. Inc.,*
        280 F.3d 124, 145 (2nd Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Crown Cork & Seal Co., Inc. v. Parker,*
        462 U.S. 345, 363-64, 103 S.Ct 2392, 76 L.Ed. 2d 628 (1983) . . . . . . . . . . . . . . . . . . . . 3

*Downey v. Southern Natural Gas Co.,*
        649 F.2d 302 (5th Cir. Unit B 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Eisen v. Carlisle & Jacquelin,*
        417 U.S. 156, 178, 94 S.Ct. 2140, 40 L.Ed. 2d 732 (1974) . . . . . . . . . . . . . . . . . . . . . . . 5

*Foster v. Ruhrpumpen, Inc.,*
     365 F.3d 1191, 1197-98 (10th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Jarvis v. Sauer Sundstrand Co.,*
     116 F.3d 321 (8th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*In Re Visa/Check/Mastermoney Antitrust Litigation v. Visa U.S.A., Inc..,*
     280 F.3d 124, 145 (2nd Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Johnson v. Runyon,*
     137 F.3d 1081, 1082 (8th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Jones v. R.R. Connelley & Son Co.,*
     541 U.S. 369, 383, 124 S.Ct. 1836, 158 L.Ed. 2d 645 (2004) . . . . . . . . . . . . . . . . . . . . . 5

*Mansfield v. Billington,*
     2006 WL 1517514 *1 (D.D.C. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*McCarthy v. Kleindienst,*
     741 F.2d 1406, 1415 (D.C.Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Moysey v. Andrus,*
     481 F.Supp. 850, 854 (D.C.C. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Rand v. Chao,*
     346 F.3d 192, 195 (D.C. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Rodolico v. Unisys Corp.,*
     199 F.R.D. 468, 477 (E.D.N.Y. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . 13,14,16,17,18

*Rossiter v. Potter,*
     357 F.3d 26, 29 (1st Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3,4

*Rowell v. Bellsouth Corp.,*
     433 F.3d 794, 805 (11th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Scott v. Goodyear Tire & Rubber Co.,*
     160 F.3d 1121, 1128 (6th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Sperling for Hoffman-LaRoche,*
     24 F.3d 463, 470-72 (3rd Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Staats v. United Postal Service,*

99 F.3d 1120 (Fed. Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Stevens v. Dep't of Treasury,*
500 U.S. 1, 6, 111 S.Ct. 1562, 114 L.Ed. 2d 1 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . 3,4

*Tolliver v. Xerox Corp.,*
918 F.2d 1052, 1058 (2nd Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Vega v. Kodak Caribbean, Ltd.,*
3 F.3d 476, 480 (1st Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10,11

*Watkins v. Blue Cross and Blue Shield Assoc.,*
1987 WL 16838 *1 (D.D.C. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Woe v. Cuomo,*
729 F.2d 96, 107 (2nd Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

**FEDERAL RULES OF CIVIL PROCEDURE**

Fed.R.Civ.P. 23(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5,19

Fed.R.Civ.P. 23(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Fed.R.Civ.P. 23(b)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16,19

**LOCAL CIVIL RULES OF THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

Local Civil Rule 23.1(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,8

**REPLY BRIEF IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**

Defendant's brief in opposition ("Opp.") to class certification argues first that Plaintiffs

failed to exhaust the EEOC administrative process (Opp. A, at 11-14); secondly that Plaintiffs

allegations are "insufficient"(Opp. B at 14-15); and that the "buyout plaintiffs" acted

"voluntarily" when they accepted a retirement that was less than 25% of their income as an

employee (Opp. at 17-19).  Such arguments would be more appropriately considered on a motion

to dismiss or for summary judgment, after discovery has been completed.  *Chappell-Johnson v.

Powell*, 440 F.3d 484 (D.C. Cir. 2006); *Mansfield v. Billington*, 2006 WL 1517514 *1 (D.D.C.

2006).  In any event, the arguments are without merit because: 1) the Plaintiffs gave more than 30

days notice to the EEOC and the Defendant on October 31, 2005 and November 10, 2005 that

there would likely be a class of at least one-hundred older employees who lost their employment

as a result of the 2005 RIF (See letters attached hereto as Exhibit A); 2) the allegations are

sufficient to support the class; and 3) whether the retirements were in voluntary is a question of

fact because the employees who accepted the buyouts reasonably believed that they would be

terminated and lose all their income if they did not accept the buyout.   Plaintiffs' motion for

class certification should be granted.  At a minimum, the ruling on the motion should be deferred

until after discovery is completed.[1]

As alleged in the complaint, on October 26, 2004, the Defendant FDIC adopted a goal of

further reducing its total workforce from 5,300 with a "reduction of between 500 to 600."

---

[1] Plaintiffs filed the motion prior to the onset of discovery because Local Civil Rule
23.1(b) mandates filing class certification motions within 90 days after filing the complaint.
Discovery has not been conducted because the initial scheduling conference has not yet taken
place.

Answer, ¶68.  The Division of Resolutions and Receiverships ("DRR") was in 2004 and in earlier years the oldest Division or office of the FDIC in terms of the age and length of service of its employees.  Complaint and  Answer, ¶ 90.  On October 28, 2004 DRR announced from corporate headquarters that based upon "our review of new business procedures and our budget submission", it intended to reduce staffing levels from "515 to 240" positions, that is the FDIC intended to eliminate 275 positions, or 55% of those in DRR, and retain no more than 240 or 45% of the DRR employees.  Complaint and Answer, ¶69.  In fact, the buyout portion 2004-2005 Reduction in Force resulted in the acceptance of a buyout by 595 employees, so the goal stated by the FDIC had already been achieved before any layoffs.

After this motion was filed, the EEOC wrote two letters, dated May 23, 2006.  The letter to Defendant's Director of Diversity and Economic Opportunity asked the FDIC to conduct its internal review of whether there is enough evidence to support Plaintiffs' allegations "within thirty days".  The EEOC's letter to the undersigned attorney for Plaintiffs, asked whether the Plaintiffs intended to proceed with a class action, and urged a prompt filing.

**ARGUMENT**

**A.    THIS SUIT WAS TIMELY FILED AND ITS FILING TOLLED ANY
       PERIOD OF LIMITATIONS FOR MEMBERS OF THE CLASS**

Plaintiffs complied with Section 15 of the ADEA, 29 U.S.C. § 633a(d).  That section states the following:

> When the individual has not filed a complaint concerning age discrimination with the Commission, no civil action may be commenced by any individual under this section until the individual has given the Commission not less than thirty days' notice of an intent to file such action. Such notice shall be filed within one hundred and eighty days after the alleged unlawful practice occurred.

2

Plaintiffs herein gave such notice to the EEOC and the Defendant in October and November 2005, and thereafter.  The class action complaint also gave notice to the Court and to Defendant that Plaintiffs were planning to seek a class action.  *See*, Complaint, ¶¶16-18.

Plaintiffs' first notice to the EEOC was delivered via courier to its headquarters in the District of Columbia on October 31, 2005, Def. Ex. 10-1.  Plaintiffs' letter to FDIC's General Counsel was also hand-delivered that day.  The lawsuit was filed by Aliotta and 18 other Plaintiffs on December 5, 2005, approximately 39 days after the notice was given.  The suit is, therefore, timely filed.  *Stevens v. Dep't. of Treasury*, 500 U.S. 1, 6, 111 S.Ct. 1562, 114 L.Ed. 2d 1 (1991); *Rossiter v. Potter*, 357 F.3d 26, 29 (1st Cir. 2004)

Defendant does not contend that the suit is untimely, but rather asserts that the original notice did not advise the EEOC of the class action nature of the suit and that the claims of the "buyout plaintiffs" are untimely.  Opp, p. 12.  Nothing in 29 U.S.C. § 633a(d) or any other part of the ADEA statute applicable to federal employers states or suggests that the notice to the EEOC must say anything about class actions, even when the party giving the notice has enough information to know that it will be a class action.  29 C.F.R. § 1614.204(b) ("A complainant may move for class certification at any reasonable point in the process when it becomes apparent that there are class implications to the claim . . .").

Once a plaintiff files a class action suit, the filing of the suit tolls the period of limitations for members of the putative class until the class rights are determined through adjudication, or until the motion for class certification has been denied.  *Crown Cork & Seal Co., Inc. v. Parker*, 462 U.S. 345, 363-64, 103 S.Ct. 2392, 76 L.Ed. 2d 628 (1983).

Plaintiffs who invoke the ADEA's notice provision do not have to "exhaust"

administrative prerequisites before filing suit. A "federal employee may bring a claim directly in federal court so long as, within 180 days of the allegedly discriminatory act, he provides the EEOC with notice of his intent to sue at least 30 days before commencing suit." *Rand v. Chao*, 346 F.3d 192, 195 (D.C. Cir. 2003), *Rossiter*, *supra*, 357 F.3d at 29, *Stevens*, *supra*, 500 U.S. at 6. Both the ADEA and the binding regulations of the EEOC expressly provide the same. 29 U.S.C. § 633a(d); 29 C.F.R. § 1614.201(a).

Plaintiffs gave notice to the FDIC through its General Counsel, that "at least two of the claimants may act as class agents on the forced retirement claim on behalf of themselves and approximately 100 other employees over the age of 50." A copy of that letter was sent to the EEOC. *See*, letters from the EEOC to Defendant and to Plaintiff, dated May 23, 2006, Exhibit A to Defendant's Supplemental Memorandum of Points and Exhibits. Thus, the Plaintiffs gave notice both to the Defendant and EEOC that some of them would act as class agents for the members of the class.

Even when a charge is filed with the EEOC for an individual, the charge need not use the word "class" or "class action" to provide the foundation for a class action suit, but need only provide "some indication that the grievance affects a group" of employees. *Tolliver v. Xerox Corp.*, 918 F.2d 1052, 1058 (2nd Cir. 1990); *Sperling for Hoffman-LaRoche*, 24 F.3d 463, 470-72 (3rd Cir. 1994); *Foster v. Ruhrpumpen, Inc.*, 365 F.3d 1191, 1197-98 (10th Cir. 2004).

## B.    PLAINTIFFS' NOTICE OF THEIR INTENT TO FILE SUIT WAS TIMELY

Section 15 of the ADEA, 29 U.S.C. § 633a, has no explicit statute of limitations. *Stevens*, *supra*, 500 U.S. at 7-8. The Supreme Court has ruled that "Congress intended to impose

4

an appropriate period either from statue statute or from an analogous federal one." *Id.*  In that case, however, the Court declined to rule on what statute of limitations would be used because "Stevens filed his suit on May 3, 1988, only one year and six days after the allegedly discriminatory event." *Id.* at 8.  The other statute possibly applicable was 28 U.S.C. § 2401(a), the general statue of limitations for suits against the government. *Id.*  A third statute that is probably inapplicable is 28 U.S.C. § 1658(a); *Jones v. R.R. Donnelley & Son Co.*, 541 U.S. 369, 383, 124 S. Ct. 1836, 158 L.Ed. 2d 645 (2004).

### C.     PLAINTIFFS' CLAIMS MEET THE REQUIREMENTS OF RULE 23(a)

In deciding whether or not to certify a class, "the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178, 94 S.Ct. 2140, 40 L. Ed. 2d 732 (1974).  Plaintiffs have shown that the numerosity, commonality, typicality, and adequacy requirements of Rule 23(a) are met.

### 1.     Plaintiffs' Claims Meet the Commonality and Typicality Requirements

The commonality requirement is met when there are "questions of law or fact common to the class." Fed.R.Civ.P. 23(a)(2).  "It is not necessary that every issue of law or fact be the same for each class member" and "factual variations among the class members will not defeat the commonality requirement, so long as a single aspect or feature of the claim is common to all proposed class members." *Bynum v. District of Columbia*, 214 F.R.D. 27, 33 (D.D.C. 2003). Defendant contends that Plaintiffs must make a "specific presentation identifying the questions of law or fact" that are common to their claims and the claims of class members they seek to

represent." Opp., p.15-16. Plaintiffs did so in the complaint and the amended complaint.

There is no dispute that forty-eight of the plaintiffs lost their positions in DRR in 2005, and that Plaintiff Greg Haag and twenty-six others were obliged to accept a lower grade to avoid loss of their employment.[2] The Plaintiffs seek to represent other former DRR employees who also lost their jobs in DRR in 2005 as a result of the two-phase RIF. The only factual difference amongst the 48 Plaintiffs and approximately 160 class members m is how they lost their jobs - some opted to take a buyout and generally lost their jobs in May 2005 while others waited, and as a result, were terminated in September 2005. Pl.'s Mot., p.7. The early buyout offer and the later terminations were simply part of Defendant's two stage plan to rid itself of its older workers. Defendant contends that minor factual differences between the buyout Plaintiffs and the Plaintiffs who were terminated are sufficient to defeat commonality.

Defendant overlooks the main fact which is the thrust of Plaintiffs' suit. The major fact that the vast majority of the Plaintiffs and proposed class members share is that they lost their employment in 2005, although they had no intention of leaving Defendant's employ and retiring until the FDIC confronted them with the more than 50% chance that it would terminate their employment if they did not accept the early retirement offer. The Plaintiffs and proposed class members who were terminated involuntarily in September 2005 obviously had no intention of quitting. As shown by the declarations of twenty-three (23) of the Plaintiffs who accepted the buyout earlier in 2005, these Plaintiffs also had no intention of retiring from Defendant's employment until the FDIC announced the RIF in October 2004. See, Plaintiff Decs., ¶4, attached hereto as Exhibit B. The buyout Plaintiffs accepted retirement because they knew it was

---

[2] This number is based on information obtained by the Plaintiffs, not from the agency.

extremely likely that the FDIC would abolish their positions. Plaintiff Decs., ¶3. Rather than

lose their jobs later that year when cash incentives would not be offered, they opted to lose their

jobs sooner and receive a small retirement, effectively choosing the lesser of two evils.

The other major similarity amongst these Plaintiffs and proposed class members is the

type of harm they suffered. All were forced to leave their employment involuntarily and all

suffered a resultant loss of income. Whether their employment ended in May or September, they

lost their paychecks. Their future financial well-being was affected as each Plaintiff and

proposed class member who lost his or her employment is feeling the effects of a decreased

retirement income. The reduced retirement income is a direct result of the Plaintiffs and

proposed class members' inability to work the desired number of years. Plaintiff Decs., ¶4.

Defendant also contends that there is no commonality among the plaintiffs who took the

buyout. Opp., p.16. Defendant argues that the plaintiffs could not have all agreed to the buyout

by May 2005 based on their desire to avoid termination in a RIF because by that date individual

RIF notices had not been sent to any employees. Opp, p.17. Defendant fails to mention that the

Plaintiffs did not need individual RIF notices to have good reason to believe that their departures

were imminent because the FDIC had advised them of the plan to cut the workforce of DRR by

more than 50%.

Exhibit 2 to Defendant's brief is a memorandum to all FDIC employees from John F.

Bovenzi, Deputy to the Chairman and Chief Operating Officer, dated October 26, 2004. In that

memo, described as "the third in a series of communications about workforce planning for the

future", he informed everyone that DRR and other divisions were "planning for substantial

reductions in their workforces" and that "it appears likely that the necessary staffing reductions in

7

these divisions [including DRR] cannot be accomplished entirely through voluntary departures." As a result, "active planning for RIFS in DRR and DIRM in the third quarter of 2005" had begun.

In a further memorandum, dated October 28, 2004, DRR's Director, Michael Glassman announced to DRR employees that based upon "our review of new business procedures and our budget submission" that he recommended that "staffing levels be reduced from 515 to 240 positions." That meant that 275 positions out of the 515 positions in DRR, or 53%, would be eliminated by the end of the third quarter 2005. Defendant admits that the memorandum was distributed to DRR employees. Answer, ¶68. These memos are gave Plaintiffs and the proposed class good reason to believe that their only options were to accept the buyout or else face termination in the 2005 RIF.[3]

Defendant also contends that there is no commonality amongst the group of buyout Plaintiffs/potential class members because any employee's decision to retire or resign with a buyout was necessarily based on his or her own unique personal, career and financial circumstances. This speculation is contradicted by the Plaintiffs' declarations submitted herewith which set forth that each of them took the buyout to avoid being terminated. Plaintiffs' Dec.'s, ¶4. Theoretically, there may be some potential class members who accepted the early retirement buyout because it just happened to coincide with when exactly they wanted to retire.

---

[3] If the Court determines that further discovery of relevant facts is necessary to inform its ruling, Plaintiffs propose, as they did in their moving papers, that the Court postpone its ruling so that discovery may be conducted in accordance with Rule 23.1(b) of the Local Civil Rules of this district. Plaintiffs submitted their motion prior to the discovery phase in an effort to comply with Local Civil Rule 23.1(b) and a court's general preference for hearing certification matters early in litigation. *See*, *Watkins v. Blue Cross and Blue Shield Assoc.*, 1987 WL 16838 *1 (D.D.C. 1987).

In that event, the class can simply be redefined to exclude them.[4]

Next, Defendant argues that any potential class members must overcome a legal presumption that a federal employee who accepts a buyout does so voluntarily. Opp., p.17. Defendant cites *Staats v. United Postal Service*, 99 F.3d 1120 (Fed. Cir. 1996) in support of this proposition. In *Staats,* the plaintiff contested his right to a evidentiary hearing before the Merit Systems Protection Board arguing that his decision to retire was unlawfully coerced. *Id.* The former postal worker in that case was presented the choice of accepting an early retirement or being assigned to a "transition enter" where he would keep his grade and pay. *Id.* at 1122. He was not threatened with termination. *Id.* at 1122-23. Rather, the agency announced there would be "no lay-offs". *Id.* at 1123. In deciding the plaintiff's decision to retire was not coerced, the Court remarked that it was a "governing background principle[]" that "a decision to resign or retire is presumed to be voluntary . . .." *Id.*

Plaintiffs herein alleged that they accepted the buyout to avoid termination. Plaintiffs' declarations support their allegation. Defendant's concern that a class could include some members whose decisions to accept the buyout were truly voluntary is alleviated if the class definition is simply modified to include only those former DRR employees who accepted the buyout offer to avoid termination in the 2005 RIF. *See,* footnote 3. Rule 23 should be given

---

[4] Plaintiffs had defined the class as: "Former or present employees of FDIC's Division of Resolutions and Receiverships who were born on a date on or before September 30, 1955 who were terminated from their positions in the DRR, or who were offered and accepted a buyout, as a result of the 2005 RIF, or who accepted a reduction in grade to retain their employment."

Plaintiffs suggest that the definition of the class be modified to read: "Former or present employees of FDIC's Division of Resolutions and Receiverships who were born on a date on or before September 30, 1955 who were terminated from their positions in the DRR, *or who accepted the buyout offer to avoid termination*, as a result of the 2005 RIF, or who accepted a reduction in grade to retain their employment.

"broad, rather than restrictive interpretation" by the Court. *Adams v. Mitsubishi Bank, Ltd.*, 133 F.R.D. 82, 88 (E.D.N.Y. 1989). "It is often proper to view the class action liberally at the early stages of the litigation since the class can always be modified or divided as issues are later refined for trials." *Adams*, 133 F.R.D. at 88 (citing *Woe v. Cuomo*, 729 F.2d 96, 107 (2nd Cir. 1984).

Defendant also appears to argue that the Plaintiffs who accepted the buyouts have to prove they were constructively discharged. Plaintiffs are not pursuing a constructive discharge claim. To prove their ADEA claim, they have to prove that the offer and acceptance of the buyout was an adverse action for purposes of their *prima facie* case of discrimination. Even though taking the buyout may have been the lesser of two evils, it still constitutes an adverse action.

Cases discussing constructive discharge in an ADEA context have held that "where loss of a job is highly likely if the employee does not take the severance package, then a constructive discharge may be proven if it is also shown that the employee would have kept a job with the company and declined the severance package if given a choice." *Rowell v. Bellsouth Corp.*, 433 F.3d 794, 805 (11th Cir. 2005) (citing *Scott v. Goodyear Tire & Rubber Co.*, 160 F.3d 1121, 1128 (6th Cir. 1998)).

In addition, *Vega v. Kodak Caribbean, Ltd.*, 3 F.3d 476, 480 (1st Cir. 1993), "a plaintiff who has accepted an employer's offer to retire can be said to have been constructively discharged when the offer presented was, at rock bottom, 'a choice between early retirement with benefits or discharge without benefits,' or, more starkly still, an 'impermissible take-it-or-leave-it choice between retirement or discharge." *Id.* That was the situation faced by the Plaintiff and potential

10

class members herein. Bovenzi's memo (Opp, Ex. 2) informed all FDIC employees that employees in DRR would not only have their ranks thinned out via acceptance of buyout offers, but also through a RIF to take place in the third quarter of 2005 because "substantial reductions" were necessary. Plaintiffs were not informed that if enough people accepted the buyout, then no outright terminations would be necessary.

The court in *Vega* held that the plaintiffs were not constructively discharged in large part because the employer informed the employees that if they did not take the early retirement offer, they would be "reassigned or furloughed in order to reach the desired staffing level." *Id.* at 478. They were not threatened with termination like the Plaintiffs herein. As long term employees of the FDIC, Plaintiffs had also witnessed the FDIC's previous RIFS and downsizing which only served to reinforce their reasonable belief that not accepting the buyout would result in termination. *See*, Opp, pp.3-7.

Moreover, since the adverse action/constructive discharge issue goes to the merits of the case, whether or not the buyout Plaintiffs suffered an adverse action is not a proper subject of debate on this class certification motion. Questions regarding the nature of an employee's decision to accept an early retirement are best left to the trier of fact for resolution. *See*, *Jarvis v. Sauer Sundstrand Co.*, 116 F.3d 321 (8th Cir. 1997)("whether employee's acceptance of early retirement offer constituted constructive discharge was for jury"); *Johnson v. Runyon*, 137 F.3d 1081, 1082 (8th Cir. 1998) (after bench trial, judge decided there was no adverse employment action when plaintiff accepted early retirement instead of waiting to see what positions would be available); *Downey v. Southern Natural Gas Co.*, 649 F.2d 302 (5th Cir. Unit B 1981) (employee's information that he might be discharged with a consequent loss of benefits was

11

sufficient to create a contested issue of material fact regarding constructive discharge).

The claims of the 32 Plaintiffs who accepted the buyout are typical of the class because each of the Plaintiffs and prospective class members worked in DRR, was faced with the likelihood of termination as part of the 2005 RIF, offered the buyout, and chose to accept the buyout to avoid termination. If the class is defined as all former DRR employees who accepted the buyout to avoid termination, then the claims of the Plaintiffs and prospective class members are the same. The claims of the 16 Plaintiffs who were terminated outright are typical of the potential class members who were also terminated in September 2005 as part of the RIF.

**2.     The "Reduction in Grade" Plaintiff's Claims Meet the Commonality and Typicality Requirements**

Defendant argues that Plaintiff Haag's claims are not common or typical of anyone in the class. Plaintiff submits that his claims are typical of the class of :

> Former or present employees of FDIC's Division of Resolutions and Receiverships who were born on a date on or before September 30, 1955 who . . . who accepted a reduction in grade to retain their employment.

Plaintiff Haag knew that the 2005 RIF was imminent. Bovenzi's third notification, distributed in October 2004, gave Haag and other potential class members sufficient time to determine if they should look for and accept a different position, rather than being forced into the alternative of accepting early retirement or being fired. Plaintiff Haag alleges in the Amended Complaint that he accepted the lower-graded position in the different division and moved to Lexington, Kentucky in order to avoid the RIF in the Dallas office. Amended Complaint, ¶29.

Defendant does not dispute Plaintiff Haag's reason for deciding to transfer, but instead tries to emphasize the "voluntary" nature of the decision and posits that potential class members

12

do not have common or typical claims because their reasons for seeking a transfer would necessarily be based on their individual circumstances.  Opp, p.19-20.

The class as described in Plaintiffs' motion, however, limits membership to those "who accepted a reduction in grade to retain their employment."  Plaintiffs are certainly willing to add language to the effect of "to retain their employment in lieu of accepting the buyout or termination as part of the 2005 RIF" if that eliminates Defendant's concerns.

Defendant's focus on whether or not a transfer was made before or during the 2005 terminations period of the RIF provides no meaningful distinction that would destroy commonality or typicality.  Opp., p.20.  As long as all the class members sought a transfer in order to avoid termination and keep their employment at FDIC during the time frame that all the DRR employees knew that a RIF in DRR was imminent, there is commonality and typicality with the claims of Plaintiff Haag.

> **3.    The Claims of the Plaintiffs Who Were Terminated as Part of the 2005 RIF Meet the Commonality and Typicality Requirements**

Defendant contends that if Plaintiffs are challenging the mechanics of the 2005 RIF, then there is no commonality or typicality, but if Plaintiffs are challenging Defendant's motivation for conducting the RIF, then there may be commonality and typicality.  Opp., p.21.  Plaintiffs' Amended Complaint made clear that discrimination is alleged to have occurred in every aspect of the downsizing that occurred in the DRR in 2005.

The fact that some RIF'ed employees may have had the right to retain they jobs or move to other positions based on their tenure, length of service, veteran's preference, job qualifications, etc. is not sufficient to defeat commonality or typicality in this case.  *Rodolico v. Unisys Corp.*,

13

199 F.R.D. 468, 477 (E.D.N.Y. 2001) (differences "in terms of age, seniority, and department does not alter the conclusion, because the claim that Unisys' November 1993 RIF constituted age discrimination is central to each putative class members' claim"). No one who is part of the proposed class actually kept his or her employment in DRR or was moved to another position by the agency without being downgraded.

Plaintiffs alleged that the buyout and terminations in 2005 were the result of a centralized plan, set in motion by the Chairman, the Chief Operating Officer, and the Board, that was designed to lay off older employees due to their age. Specifically, Plaintiffs alleged that at least since the mid-1990's Defendant has operated with the goal of removing as many older employees from its ranks as possible. In the mid-1990s, Defendant opposed conducting RIFS because RIFs favor employees with seniority, increasing the likelihood that younger employees would lose their jobs. Amended Complaint, ¶57. Plaintiffs alleged that as far back as 1997, FDIC's Board asked for a list of all employees age 50 and older; whereupon retirement incentives were offered which effectively reduced the ranks of employees age 50 and older. Amended Complaint, ¶58. Plaintiffs alleged that the FDIC's Chairman announced in front of groups of employees that he wanted young people working at FDIC because "they have all the innovative ideas" and that "[i]t is time for you long-term employees to go and give the younger employees a chance to advance". Amended Complaint, ¶59, ¶60. Plaintiffs alleged that RIFs and early buyout offers in 2002 and 2003 primarily got rid of employees over age 50. Amended Complaint, ¶63, ¶64, ¶66. Finally, Plaintiffs alleged that Defendant "chose to conduct the 2005 RIF harming the older employees in DRR in whole or in substantial part because DRR's work force was significantly older than the work force of its other Divisions." Amended Complaint, ¶90.

These allegations, amongst others, show that Plaintiffs are challenging the FDIC's motivation for offering the buyouts and for terminating employees in DRR in 2004 and 2005. Other allegations show that Plaintiffs contend that discrimination occurred in the manner of conducting the 2005 RIF.  For example, Plaintiffs alleged that "in designing and implementing the RIFS in DRR in late 2004 and in 2005, the Defendant Agency engaged in a pattern and practice of purposeful discrimination against plaintiffs and its other employees over the age of 50." Amended Complaint, ¶ 86.  Plaintiffs alleged that most of the employees who were terminated were over age 50, while only a few who were discharged were under age 45, and even fewer employees who were younger than 40 were discharged.   Amended Complaint, ¶80.  Thus, the manner of implementing the RIF hurt older employees more than younger employees.  All of these facts are susceptible of proof or disproof on a class-wide basis.

### 4.    Plaintiffs' Claims Meet the Numerosity Requirement

Defendant's numerosity argument relies on a finding that the class, as defined, lacks commonality or typicality.  Defendant identified 120 potential class members who took the buyout and 28 potential class members who were terminated outright.  Opp., p.21.  If the Court determines that the commonality and typicality requirements have been met, then the numerosity requirement is met as well.

### 5.    Plaintiffs' Claims Meet the Adequacy Requirement

Defendant contends that no Plaintiff, specifically Plaintiff Haag, is an adequate representative of those potential class members who accepted a lower-graded position because no one is "currently a DRR employee." Opp., p. 22.  If Plaintiffs are successful in attaining reinstatement with the agency, then Defendant contends that the Plaintiff's interests are at odds

15

with existing DRR employees who were downgraded, but still remain employed at DRR.  Opp., p. 23.

This potential conflict is just speculation.  Defendant does not state or suggest that there actually are any DRR employees who accepted a lower graded position within DRR to avoid termination.   The potential for conflict does not defeat certification.  *In re Visa Check/Mastermoney Antitrust Litigation v. Visa U.S.A. Inc.*, 280 F.3d 124, 145 (2nd Cir. 2001) ("speculative conflict should be disregarded at the class certification stage"); *Rodolico*, 199 F.R.D. at 477 ("speculative suggestion of potential conflicts is insufficient to defeat class certification"); *Bynum v. District of Columbia*, 214 F.R.D. 27, 36 (D.D.C. 2003) (dismissing the defendant's adequacy argument as "pure speculation").

Furthermore, the fact that there may be intra-class competition for a limited number of positions does not make Plaintiffs inadequate class representatives.  In *Moysey v. Andrus*, 481 F. Supp. 850, 854 (D.D.C. 1979), the court reasoned that:

> Even though [the plaintiff], if he prevails, may eventually be competing with other class members for a limited number of federal positions, he may fairly and adequately protect the interests of the class . . . the purpose of class adjudication under this provision is to present the Court with the entire matter, thereby precluding an award of individual relief which would ignore the interests of other similarly situated parties.  Under such circumstances, some minor conflict is inevitable and the Court may find that a proposed representative will 'fairly and adequately' protect the interest of his fellow class members even though such a conflict arises.

**D.    PLAINTIFFS' CLAIMS MEET THE REQUIREMENTS OF RULE 23(b)(3)**

**1. Plaintiffs' Claims Meet the Predominance Requirement**

Defendant repeats its arguments against commonality to argue that the predominance requirement is not met as well.   The fact that individual Plaintiffs and potential class members

16

may have different personal career and financial circumstances does not deflect from the fact that each Plaintiff and prospective class member will rely on common evidence to prove that Defendant violated the ADEA.  In their moving papers, Plaintiffs stated that they expected to prove their case via evidence that applies generally to the entire class.  Such evidence was identified as including:

1) evidence that the DRR was targeted for the 2005 RIF because DRR was an "old" agency; it had a disproportionately large number of employees aged 50 or older

2) evidence that the buyout was offered only to older employees, or in greater numbers than younger employees;

3) evidence that after the 2005 RIF, younger employees remained as a greater percentage of the DRR work force than older employees than they had before the RIF;

4) evidence that a disproportionate number of younger DRR employees were found new positions in the agency after the 2005 RIF.

Plaintiffs, thus, explained that the common issue of liability is expected to be proved or disproved through facts and evidence which are shared by all members of the class.

In *Rodolico*, the court held that the plaintiffs met their burden of establishing predominance because they claimed that the RIF was the result of a centralized plan from top management which was designed to lay off older employees because of their age.  199 F.R.D. at 479.  The court recognized that the main issue at trial would be whether the employer engaged in a pattern or practice of intentional discrimination in the planning and implementation of the RIF and that the plaintiffs' proof would entail reliance on the same witnesses and statistical evidence. *Id.*

17

Defendant also contends that predominance is defeated by differences in each Plaintiff and potential class member's damages. Opp, p. 24. As Plaintiffs pointed out in their moving papers, differences in damage awards, even if they vary significantly does "not preclude a finding that common questions of law and fact predominate over individual questions." *Bynum*, 214 F.R.D. at 39 (citing *McCarthy v. Kleindienst*, 741 F.2d 1406, 1415 (D.C. Cir. 1984)).

## 2.     Plaintiffs' Claims Meet the Superiority Requirement

Plaintiffs' moving papers addressed the four factors typically examined in the superiority analysis. On this point, Defendant offers only that the individual nature of the claims eliminates the desirability of a single forum, that the possibility of significant money damages gives the Plaintiffs an incentive to prosecute their own claims, and that the proposed class action is unmanageable. Opp., p. 25.

Plaintiffs explained how their claims share the same factual and legal basis to those of the class members in the commonality and predominance portions of this brief. In their initial motion, Plaintiffs explained that damages in this case are likely more than nominal, but that they are not sufficiently large to motivate the prospective class members to seek individual representation as evidenced by the lack of any individual suits and the substantial number of individuals who decided to join the multi-plaintiff/potential class action suit. Finally, Plaintffs explained that the case is manageable because each Plaintiff/potential class member will not have to litigate numerous and substantial separate issues to establish his or her right to recover individually. In *Rodolico*, the court found that a class action was the superior method of litigating because by "permitting the plaintiffs to proceed as a class on the issue of liability, the Court eliminates the risk that the issue of whether Unisys engaged in a pattern or practice of age

18

discrimination will be decided 126 different times." 199 F.R.D. at 480. The court therein further

reasoned that a class action "conserves judicial resources while permitting a fair adjudication of

the issues." *Id.*

## CONCLUSION

Based on the facts and arguments made herein and in Plaintiff's moving papers, class

certification should be granted because this case meets the requirements of certification under

Rule 23(a) and Rule 23(b)(3).


Dated: June 15, 2006                    Respectfully submitted,
                                        /s/ David L. Rose
                                        /s/ Terri N. Marcus
                                        _____
                                        David L. Rose, D.C. Bar No. 376379
                                        Terri N. Marcus, D.C. Bar No. 483175
                                        Rose & Rose, P.C.
                                        1320 19th Street, N.W. Suite 601
                                        Washington, D.C. 20036
                                        Tel: (202) 331-8555
                                        Fax: (202) 331-0996

                                        Attorneys for Plaintiffs

19