## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

BARBARA ALLIOTA *et al.*,                          :_____

                                                   :

                            Plaintiffs,            :    Civil No.:        05-2325 (RMU)

                                                   :

              v.                                   :    Document No.:     9

                                                   :

MARTIN GRUENBERG,                                  :

Acting Chairman,                                   :

Federal Deposit Insurance Corporation,             :

                                                   :

                            Defendant.             :

### MEMORANDUM OPINION

#### GRANTING THE PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

## I.    INTRODUCTION

The plaintiffs are 49 current and former employees of the Federal Deposit Insurance

Corporation ("FDIC") who are all over 50 years young.  The plaintiffs claim that the FDIC's

campaign to trim its workforce through a buyout program and a Reduction-in-Force program

("RIF") violated the plaintiffs' rights under the Age Discrimination in Employment Act

("ADEA"), 29 U.S.C. § 621 *et seq.*  The plaintiffs are now asking the court to certify their case as

a class action.  Because the plaintiffs satisfy Federal Rule 23's requirements, the court grants the

plaintiffs' motion and certifies this case as a class action.

## II.    BACKGROUND

### A.    Factual Background

The FDIC is a government agency responsible for insuring money deposits at banks and

savings associations across the United States.  Def.'s Opp'n at 3.  The plaintiffs were all

employed in the FDIC's Division of Resolutions and Receiverships ("DRR"), Am. Compl. ¶ 5,

which runs receiverships of failed banks and liquidates their assets, Def.'s Opp'n at 3.  All

plaintiffs were employed in either the Washington, D.C. or Dallas, TX offices.  Pls.' Mot. at 18.

In the 1980s and 1990s, the FDIC was busy handling the fallout from failed financial institutions

during the famed savings and loan crisis.  *Id.*; Am. Compl. ¶ 56.  According to the defendant, as

the banking crisis eased, so too did the FDIC's workload, and it began reducing the size of its

workforce accordingly.  Def.'s Opp'n at 3.

      According to the plaintiffs, the Director of the DRR, Michael Glassman, issued a message

to all DRR employees that he was recommending to FDIC management that DRR reduce its

staffing levels by more than half during 2005.  Am. Compl. ¶ 68; Def.'s Opp'n at 8.  Pursuant to

this plan, the defendant offered a buyout (calculated by the employee's grade and salary) to DRR

employees not eligible for full retirement.  Am. Compl. ¶ 74.  Over 100 DRR employees

accepted this buyout offer and signed documents indicating their intent to retire early.[1]  *Id.* ¶ 75.

      A second set of plaintiffs, they allege, were separated by the FDIC on September 3,

2005.[2]  Am. Compl. ¶ 79.  The plaintiffs claim that the FDIC separated approximately 50 other

---

[1]    These employees included plaintiffs Barrow, Brown, Cain, Cantrell, Dillow, DuPree-Ellis, Fairfield, George, Glazener, Gray, Haag, Henderson, Hoover, Kelly, Leal, Lett, Mann, McAnally, Montoya, Parker, Patterson, Petri, Schirf, Scott, Shute, Thiels, Valentine, Ware, and Williams, each of whom signed intent to retire documents.  Am. Compl. ¶ 75.

The defendant contends that Petri is not a named plaintiff and that plaintiffs Gray and Patterson did not accept the buyout but were separated from employment with the FDIC pursuant to the RIF.  Ans. ¶ 75.  However, these and other discrepancies between the plaintiffs' and defendant's understandings of the facts are not material because the court accepts as true the allegations set forth in the complaint.  *Shelter Realty Corp. v. Allied Maint. Corp.*, 574 F.2d 656, 661 n. 15 (2d Cir.1978);  *In re Lorazepam & Clorazepate Antitrust Litig.*, 202 F.R.D. 12, 21 (D.D.C. 2001).

[2]    These plaintiffs are plaintiffs Aliotta, Anderson, Avery, Bonner, Catapat, Claude, Cline, Ellis [*sic*], Elrod, Everett, Harootunian, Kebbeh, Keller, Lindsey, Mortiz, Powers, Wardell.

employees who did not accept the buyout offer.  *Id.*  According to the Amended Complaint, despite placing several of the plaintiffs on a re-employment priority list, the defendant filled vacant positions with younger and less senior employees no better qualified than older workers. *Id.* ¶ 80.  The plaintiffs allege that plaintiff Gregory Haag, in addition to roughly 30 other employees, accepted a reduction in grade in a different division of the FDIC to avoid the RIF. Pls.' Mot. at 6; Pls.'s Reply at 12.

The plaintiffs allege that in total, approximately 171 DRR employees, at least 126 of whom were over the age of 50, were separated from the FDIC (either through the buyout or termination).  Am. Compl. ¶ 90.  The plaintiffs claim that the defendant's RIF program and the FDIC's implementation of that program violates the ADEA.  Am. Compl. ¶¶ 99-101.

## B.   Procedural Background

On October 31, 2005, the plaintiffs' attorney sent a letter to the United States Equal Employment Opportunity Commission ("EEOC") notifying it that "Barbara Aliotta and at least nineteen other former and current employees intend to file suit" against the FDIC pursuant to the ADEA.  Def.'s Opp'n Ex. 10-1.  Also on October 31, 2005, the plaintiffs' attorney sent a letter to the FDIC stating that "at least two of the claimants may act as class agents" in the action.  Def.'s Supp. Memo. Ex. B.  Between October 31, 2005 and February 21, 2006, counsel sent nine additional letters to the EEOC adding current and former FDIC employees as individuals intending to file suit.  Def.'s Opp'n at Exs. 10-2 through 10-10.

On December 5, 2005, the plaintiffs filed suit in this case.  The plaintiffs now move for class certification pursuant to Federal Rule of Civil Procedure 23(b)(3).  Pls.' Mot.  Specifically, the plaintiffs would like the court to certify the class as

3

Former or present employees of FDIC's Division of Resolution and Receiverships who were born on a date on or before September 30, 1955 who were terminated from their positions in the DRR, or who were offered and accepted a buyout to avoid termination, as a result of the 2005 RIF, or who accepted a reduction in grade to retain their employment.[3]

Pls.' Reply at 9.  The court now turns to the plaintiffs' motion.

### III.    ANALYSIS

The plaintiffs bring their case under the ADEA.  The ADEA sets forth certain procedural requirements as prerequisites to filing civil suits.  29 U.S.C. § 633(d).  Accordingly, in this case, class action is appropriate if the plaintiffs have satisfied the ADEA statutory requirements in addition to the specific class action requirements set forth in Federal Rules of Civil Procedures 23(a) and 23(b).

### A.    The Plaintiffs Satisfy the Requirements of the ADEA

Under the ADEA,

When the individual has  not filed a complaint concerning age discrimination with the [EEOC], no civil action may be commenced by any individual under this section until the individual has given the [EEOC] not less than thirty days' notice of an intent to file such action.  Such notice shall be filed within one hundred and eighty days after the alleged unlawful practice occurred[.]

---

[3]    Plaintiffs offer two alternative class definitions. First: Former or present employees of FDIC's Division of Resolution and Receiverships who were born on a date on or before September 30, 1955 who were terminated from their positions in the DRR, or who accepted the buyout offer to avoid termination, as a result of the 2005 RIF, or who accepted a reduction in grade to retain their employment. Pls.' Reply at 9. Second: Former or present employees of FDIC's Division of Resolution and Receiverships who were born on a date on or before September 30, 1955 who were terminated from their positions in the DRR, or who were offered and accepted a buyout to avoid termination, as a result of the 2005 RIF, or who accepted a reduction in grade to retain their employment in lieu of accepting the buyout or termination as part of the 2005 RIF. Pls.' Reply at 13.

4

29 U.S.C. §633a(d).  The plaintiffs sent ten letters to the EEOC notifying it of the plaintiffs' intent to file suit.  Def.'s Opp'n Exs. 10-1 through 10-10.  For example, the initial letter indicated that "Barbara Aliotta and at least nineteen other former and current employees intend to file suit."  Def.'s Opp'n Ex. 10-1.  The defendant argues that the plaintiffs did not provide appropriate notice to the EEOC of their *class* claim.  Def.'s Opp'n at 12.  However, notice does not need an "explicit mention that a representative action is contemplated."[4]  *Anderson v. Montgomery Ward & Co., Inc.*, 852 F.2d 1008, 1017 (7th Cir. 1988) (construing a similar section of the ADEA that governs non-federal employees as a general notice requirement).  As long as the "defendant understands the magnitude of his potential liability," notice is sufficient.  *Id.* (holding that so long as there is an indication of an allegation of class-wide discrimination, notice may serve as a basis for suit by others who are similarly situated).

Though the statute requires only general notice for class action cases, a representative of each category of plaintiffs must have served notice.  *See James v. England*, 332 F. Supp. 2d 239, 248 (D.D.C. 2002) (ruling that exhaustion of individual remedies is not required to be a member of a class); *Bradley v. Kissinger*, 418 F. Supp. 64, 66 (D.D.C. 1976); *Anderson*, 852 F.2d at 1016 (ruling that Congress did not intend to require that every litigant make a timely filing before commencing an ADEA action in District Court).  The plaintiffs in this case fall generally into two categories: those that accepted an offer either for a buyout or reduction in grade, and those that the FDIC terminated pursuant to the RIF.  With regard to notice by a representative of the first group, plaintiff Cain, who accepted a buyout and was separated from the FDIC on May 14,

---

[4]     It would have been impossible for the plaintiffs to give the defendants notice that they were filing a class action because it is the court that determines if class certification is appropriate.  FED. R. CIV. P. 23.

2005, was included in the plaintiffs' first notice of intent letter sent to the EEOC on October 31, 2005, less than 180 days after the alleged unlawful practice occurred. Def.'s Opp'n at Ex. 10-1. With regard to the second group, plaintiff Aliotta, who was separated from the FDIC by the RIF on September 3, 2005, was included in the plaintiffs' first notice of intent letter sent to the EEOC on October 31, 2005, less than 180 days after the alleged unlawful practice occurred. *Id.* This suit was then filed on December 5, 2005, more than thirty days after the EEOC received the plaintiffs' notice of intent to file suit. Compl.; 29 U.S.C. § 633a(d). Therefore, those potential class members who voluntarily accepted the buyout or a reduction in grade and those who were involuntarily separated through the RIF are represented by plaintiffs who have complied with the requirements of the ADEA.

### B.    The Plaintiffs Satisfy the Criteria of Rule 23(a) for Class Certification

### 1.    Legal Standard for Class Certification

Federal Rule of Civil Procedure 23 sets forth the requirements for class certification. FED. R. CIV. P. 23. Congress designed the rule to promote the efficient and economical conduct of litigation. *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 553 (1974). A class action generally enables courts "to treat common claims together, obviating the need for repeated adjudications of the same issues." *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 783 (3d Cir.1995). An exception to the usual rule that litigation is conducted by and on behalf of the individually named parties only, the class action is "peculiarly appropriate" when the "issues involved are common to the class as a whole" and when they "turn on questions of law applicable in the same manner to each member of the class." *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 155 (1982) (quotations omitted). A party who seeks to certify a class

bears the burden of establishing Rule 23's requirements. *Heaven v. Trust Co. Bank*, 118 F.3d

735, 737 (11th Cir.1997); *Reed v. Bowen*, 849 F.2d 1307, 1309 (10th Cir.1988).

To obtain class certification, a party must first demonstrate that it can meet the four

prerequisites of Rule 23(a). FED. R CIV. P. 23(a); *Falcon*, 457 U.S. at 156. Those requirements

are that:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there
> are questions of law or fact common to the class, (3) the claims or defenses of the
> representative parties are typical of the claims or defenses of the class, and (4) the
> representative parties will fairly and adequately protect the interests of the class.

FED. R. CIV. P. 23(a). Once a party has demonstrated numerosity, commonality, typicality, and

adequacy, it still must satisfy one prong of Rule 23(b) to warrant class certification. FED. R. CIV.

P. 23(b).

In determining whether to certify a class, the court should not consider the underlying

merits of the plaintiff's claims. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-78 (1974); *In*

*re Lorazepam & Clorazepate Antitrust Litig.*, 202 F.R.D. 12, 14, 21 (D.D.C. 2001). Noting that

Rule 23(c)(1) instructs district courts to rule on class status "[a]s soon as practicable under the

commencement of an action brought as a class action," the Supreme Court has explained that in

"determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs

have stated a cause of action or will prevail on the merits, but rather whether the requirements of

Rule 23 are met." *Eisen*, 417 U.S. at 178 (quotation omitted); *see also In re Cardizem CD*

*Antitrust Litig.*, 200 F.R.D. 297, 303 (E.D. Mich. 2001) (stating that "[a] Rule 23 determination

is wholly procedural and has nothing to do with whether a plaintiff will ultimately prevail on the

substantive merits of its claim") (quotation omitted). Moreover, the court accepts as true the

allegations set forth in the complaint. *Shelter Realty Corp. v. Allied Maint. Corp.*, 574 F.2d 656,

661 n. 15 (2d Cir.1978); *In re Lorazepam*, 202 F.R.D. at 21.  Lastly, "when a court is in doubt as

to whether to certify a class action, it should err in favor of allowing a class."  *In re Cardizem*,

200 F.R.D. at 303 (quotations omitted).

### 2.    The Plaintiffs Demonstrate Numerosity

The first prerequisite for class certification is that the class be "so numerous that joinder

of all members is impracticable."  FED. R. CIV. P. 23(a)(1).  The plaintiffs need not provide a

specific number as long as they give a reasonable basis for their estimate.  *In re Lorazepam*, 202

F.R.D. at 26.  In this case, there are 49 named plaintiffs.  Am. Compl.  The plaintiffs estimate the

size of the class to be approximately 100 to 130 members.  Pls.'s Mot. at 6.  The plaintiffs base

their estimate on a staffing list of the Division of Resolutions and Receiverships, dated March 4,

2002, indicating that 66% of all DRR employees were born on or before September 30, 1955.  *Id.*

Approximately 150 former DRR employees (not including the plaintiffs) either accepted the

buyout offer or were terminated as part of the 2005 RIF.  *Id.*  Therefore, the plaintiffs reason the

number of potential class members is at least 66% of 150 employees, or 99 employees.  *Id.*

Because of the large number of possible class members, joinder of all members is impracticable.

FED. R. CIV. P. 23(a)(1); *Arnold v. Postmaster General*, 667 F. Supp. 6, 15 (D.D.C. 1987) (ruling

that a class of 39 to several hundred class members to be sufficient to sustain class action), *rev'd*

*on other grounds*, 863 F.2d 994.  Thus, the plaintiffs have satisfied the numerosity requirement.

### 3.    The Plaintiffs Demonstrate Commonality and Typicality

The second prerequisite for class certification is that there are questions of law or fact

common to the individual class members.  FED. R. CIV. P.  23(a)(2).  The Supreme Court has

explained that "[t]he commonality and typicality requirements of Rule 23(a) tend to merge."

*Falcon*, 457 U.S. at 157 n.13.  Accordingly, the court treats these two requirements together.

"The commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *Baby Neal for and by Kanter v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994); *see also Lightbourn v. County of El Paso*, 118 F.3d 421, 426 (5th Cir. 1997); *In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 145, 166-167 (2d Cir. 1987); *In re Lorazepam*, 202 F.R.D. at 26.

In this case, the plaintiffs and the prospective class members were, or are, employed in the same divisions of the FDIC, the DRR.  *Id.*  The plaintiffs explain that on September 16, 2002 the FDIC Chairman made an announcement advising FDIC employees of an impending RIF if 400 or more employees did not accept a buyout.  Am. Compl. ¶ 63.  Additionally, on October 26, 2004, Director Glassman of the DRR announced that staffing levels in the DRR would be reduced by 53%.  Am. Compl. ¶ 68.  Thus, those employees who accepted the buyout knew, at the time of their acceptance, of the breadth of the impending RIF.  Pls.' Reply at 8.

The FDIC implemented its buyout and RIF programs to maintain appropriate staffing levels as the agency's workload decreased.  Def.'s Opp'n at 3; Am. Compl. ¶ 56.  Without addressing the merits of the plaintiffs' claims, the court concludes that the plaintiffs and class members who accepted an offer (either for a buyout or reduction in grade) and who were terminated pursuant to the RIF present sufficiently common questions regarding the FDIC's practices in downsizing; specifically whether the downsizing programs were implemented in a discriminatory fashion.  *Baby Neal*, 43 F.3d at 56.

The defendant's contention that individual differences among the plaintiffs should prevent certification of a class because of a lack of commonality is not persuasive.  Though the

plaintiffs' claims and damages may be individualized in nature (as the defendant argues), class treatment is not precluded by the commonality requirement; the court may certify a class for certain particularized issues. *Baby Neal*, 43 F.3d at 57.

For similar reasons, the plaintiffs have satisfied the requirement that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." FED. R. CIV. P. 23(a)(3). Because "[t]he commonality and typicality requirements of Rule 23(a) tend to merge," *Falcon*, 457 U.S. at 157 n.13, because each class member's claim would arise from the same course of events that led to the claims of the representative parties, and because each class member would make similar legal arguments to prove the defendant's liability, the plaintiffs' claims are typical, *In re Lorazepam*, 202 F.R.D. at 27; Am. Comp. at 7-11.

### 4.    The Plaintiffs Demonstrate Adequacy

The final prerequisite for class certification under Rule 23(a) requires that "the representative parties will fairly and adequately protect the interest of the class." FED. R. CIV. P. 23(a)(4). According to the D.C. Circuit, "[t]wo criteria for determining the adequacy of representation are generally recognized: 1) the named representative must not have antagonistic or conflicting interest with the unnamed members of the class, and 2) the representative must appear able to vigorously prosecute the interest of the class through qualified counsel." *Twelve John Does v. Dist. of Columbia*, 117 F.3d 571, 575 (D.C. Cir. 1997) (quotations omitted).

The defendant argues that the named plaintiffs are inadequate representatives of the putative class. Def.'s Opp'n at 15. More specifically, the defendant argues that because no plaintiff is currently a DRR employee, the plaintiffs' interest in "gain[ing] reinstatement with the agency and/or receive an award of back pay" is at odds with potential class members who

10

accepted lower-graded positions in the DRR during the RIF. *Id.* at 22, 23. The defendant's argument is not persuasive. The plaintiffs do not argue that there are any DRR employees who accepted a lower graded position within DRR to avoid termination. Pls.' Reply at 16. And even if there are employees that accepted a lower grade within the DRR to avoid termination, "speculative suggestion of potential conflict is insufficient to defeat class certification." *Rodolico v. Unisys Corp.*, 199 F.R.D. 468, 477 (D.D.C. 2001).

The defendant also argues that the plaintiffs' interests are internally in conflict because they are vying for the same positions within the agency. Def.'s Opp'n at 23. Conflict within the class for a limited number of agency positions, however, is insufficient to find inadequacy. *Moysey v. Andrus*, 481 F. Supp. 850, 854 (D.D.C. 1979) (concluding that even the plaintiffs will be eventually competing with other class members for a limited number of federal positions, the plaintiff may fairly and adequately protect the interest of the class).

The court concludes that the defendant's concerns about conflicts with and within the class are unfounded. The plaintiffs have satisfied Rule 23(a)(4)'s adequacy requirement.

### C.    The Plaintiffs Satisfy the Requirements of Rule 23(b)

Because the plaintiffs have satisfied Rule 23(a)'s four prerequisites to a class action, the court must now evaluate whether the plaintiffs can maintain a class action pursuant to one of Rule 23(b)'s subdivisions. FED. R. CIV. P. 23 (b). The plaintiffs submit that this action is maintainable as a class action under Rule 23(b)(3). Pls.' Mot. at 14-20.

Under Rule 23(b)(3), certification is appropriate when common questions "predominate over any questions affecting only individual members" and class resolution must be "superior to other available methods for the fair and efficient adjudication of the controversy." FED. R. CIV.

P. 23(b)(3).  Among the factors the court should examine in making its determination are (A)

"the interest of members of the class in individually controlling the prosecution or defense of

separate actions;" (B) "the extent and nature of any litigation concerning the controversy already

commenced by or against members of the class;" (C) "the desirability or undesirability of

concentrating the litigation of the claims in the particular forum;" (D) and "the difficulties likely

to be encountered in the management of a class action."  *Id.*

### a.    Common Issues Predominate

Rule 23(b)(3) first requires that common factual and legal issues predominate over any

such issues that affect only individual class members.  FED. R. CIV. P. 23(b)(3).  "The common

question requirement of Rule 23(a) and the predominance requirement of Rule 23(b) overlap."

*Rodolico*, 199 F.R.D. at 479.  The common issues previously identified must be shown by the

plaintiffs to predominate over the non-common issues.  *Bynum v. Dist. of Columbia*, 214 F.R.D.

27, 39 (D.D.C. 2003) (quotations omitted).  However, the common issues need not be

dispositive.  *Id.*  "When one or more of the central issues in the action are common to the class

and can be said to predominate, the action will be considered proper under Rule 23(b)(3) even

though important matters will have to be tried separately."  *Id.* at 37 (quoting 7A FED. PRAC. &

PRO. § 1778 (2d ed. 1986)).

The court previously determined that there is a common factual question regarding

whether the plaintiffs were separated from the defendant agency in a discriminatory manner.  *See*

*infra* at 9-10.  This issue, as the plaintiffs argue, predominates because the evidence used will be

common among the plaintiffs and potential class members.  Pls.' Reply at 17; *see Rodolico*, 199

F.R.D. at 479 (holding that the issue of whether a company engaged in a pattern or practice of

intentional discrimination in the planning an execution of a RIF was sufficient to meet the burden

of establishing predominance).  The individualized nature of the potential damages does not

"preclude a finding that common questions of law and fact predominate over individualized

questions."  *See infra* at 10; *Bynum*, 214 F.R.D. at 39 (citing *McCarthy v. Kleindienst*, 741 F.2d

1406, 1415 (D.C. Cir. 1984)); *see also Baby Neal*, 43 F.3d at 57.  The court is satisfied that there

are common questions that predominate over any issues that affect only individual members.

### b.    Class Resolution is Superior to Other Available Methods

The second requirement of Rule 23(b)(3) is that the court concludes that class resolution

is superior to other available methods.  FED. R. CIV. P. 23(b)(3).  Class actions are the superior

method when they serve the purpose of efficient resolution of the claims or liabilities of many

individuals in a single action, as well as the elimination of repetitious litigation and possibly

inconsistent adjudications.  *Rodolico*, 199 F.R.D. at 479-80 (citing *Califano v. Yamasaki*, 422

U.S. 682 (1979)).  The more predominant common issues there are, the more desirable a class

action law suit is under the superiority analysis.  *Klay v. Humana, Inc.*, 382 F.3d 1241, 1269

(11th Cir. 2004).  Because the issue of the FDIC's practices in downsizing the agency

predominate and because repetitious litigation would result through individual actions, class

certification is a superior method of resolution.[5]  *Rodolico* , 199 F.R.D. at 479-80.

---

[5]    The defendant argues that potentially significant money damages preempt the finding of superiority.  Though the amount of potential damages is a factor the court may consider, it is not a factor the court must consider.  *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, (1997) (noting that the text of Rule 23(b)(3) does not exclude cases in which individual damages run high).  Other factors, such as efficiency, may be considered. *Rodolico*, 199 F.R.D. at 479-80.

### D.    Class Definition

Having determined that this lawsuit may proceed as a class action, the court must now

define the specific class.  FED. R. CIV. P. 23(c)(B).  The court defines the class as:

> Former or present employees of FDIC's Division of Resolution and
> Receiverships who were born on a date on or before September 30, 1955 and
> who, as a result of the 2005 RIF, either accepted a buyout or reduction in
> grade, or were terminated from their positions in the DRR.

The court notes that it may modify or divide the class action as the litigation progresses

and more information is known about the appropriate method for bringing the suit.  *D'Alauro v.*

*GC Services LTD P'ship*, 168 F.R.D. 451, 459 (E.D.N.Y. 1996).  The court orders parties to

submit a plan for notification of the certified class as required by Rule 23(b)(3) within thirty

days.


### IV.    CONCLUSION

For the foregoing reasons, the court grants the plaintiffs' motion for class certification.

An order consistent with this Memorandum Opinion is separately and contemporaneously issued

this 25th day of July, 2006.


RICARDO M. URBINA
United States District Judge

14