**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                                    )
**BARBARA ALIOTTA, et al.,**                )
                                                    )
**Plaintiffs,**                                   )
                                                    )
        **v.**                                     )        **Case No. 1:05-cv-02325-RMU**
                                                    )
**SHEILA C. BAIR,**                          )
**Chairman,**                                 )
**Federal Deposit Insurance Corporation,**  )
                                                    )
        **Defendant.**                           )
_____)

**DEFENDANT'S MOTION TO COMPEL DISCOVERY**
**AND TO STRIKE PLAINTIFFS' EXPERT REPORT**

On October 15, 2007, Defendant Agency belatedly received Plaintiffs' responses to

Defendant's Interrogatories and Requests for Admission to Plaintiffs that had been propounded

in mid-August.  On that date, Defendant also received an untimely report prepared by Plaintiffs'

expert Lance Seberhagen, Ph.D. (the "Seberhagen Expert Report").  Because Plaintiffs'

responses to Defendant's interrogatories are inadequate, and because the Seberhagen Expert

Report was served three months after the deadline imposed by this Court for service of expert

reports by Plaintiffs, Defendant has filed this motion (i) to compel Plaintiffs to provide more

complete responses to the Agency's interrogatories and (ii) to strike Dr. Seberhagen's expert

report as untimely.  In addition, Defendant requests that the FDIC be allowed additional time to

complete discovery once Plaintiffs have properly responded to the Agency's discovery requests.

Counsel for the parties conferred concerning these issues on October 19, 2007, as required by

Local Civil Rule 7(m), but were unable to resolve their differences.  A proposed order is

attached.

**Procedural History Concerning Expert Reports and the Discovery Requests at Issue**

On February 1, 2007, the parties filed their Joint Report pursuant to Local Civil Rule 16.3

and this Court's Order entered on January 11, 2007.  In the Joint Report, the parties agreed to the

following discovery schedule:  (a) Discovery to be completed by July 31, 2007; (b) Plaintiffs'

expert report(s) to be submitted by May 31, 2007; (c) Defendant's expert report(s) to be

submitted by June 29, 2007.  Joint Report, ECF Document No. 31, ¶¶ 8(a), 9.  On the same date

that the Joint Report was filed, the Court entered an order adopting the parties' proposed

discovery schedule.  Minute Order dated February 1, 2007, ECF Document No. 32.

Plaintiffs did not file any expert reports by the May 31 due date set forth in the

scheduling order.  Nearly four weeks later, however, on June 26, 2007, counsel for Plaintiffs

filed a Consent Motion to Extend Time for Discovery, proposing the following amended

discovery schedule:  (a) Plaintiffs' expert report(s) due July 16, 2007; (b) Defendants' expert

report(s) due August 20, 2007; (c) discovery to close September 28, 2007.  Consent Motion, ECF

Document No. 33.  The Court granted the motion and amended the scheduling order in

accordance with Plaintiffs' request.  Minute Order dated June 26, 2007 (no ECF Document No.

assigned).

On the July 16 due date, counsel for FDIC received from the offices of Plaintiffs' counsel

an electronic copy of what was described as "the incomplete expert report of John D. DeLuca,

CPA, CVA" (the "DeLuca Expert Report"), who the report indicated had been retained to render

an expert opinion on the level of damages Plaintiffs had incurred.  On August 20, 2007, in

accordance with the amended scheduling order, Defendant served the report of its expert, P.R.

Jeanneret, Ph.D., which addressed liability issues.

In the interim, Defendant had been awaiting Plaintiffs' response to its First Request for

Production of Documents served on April 30, 2007.[1]  As a number of Defendant's document

requests pertained to the issue of damages, and the parties had agreed in their Joint Report that

the initial trial in these proceedings should concern liability only, on August 10 the parties filed a

Joint Motion Concerning Bifurcation of Trial and the Service of Expert Reports on Damages.

Joint Motion, ECF Document No. 35.  The Court granted this motion and ordered "that these

proceedings shall be bifurcated into liability and damages phases, and that the following shall be

deferred until after the issue of liability has been determined, with a more precise schedule to be

entered if the Court finds for Plaintiffs on the issue of liability:  (1) completion of Plaintiffs'

expert report on damages; (2) disclosure of Defendant's rebuttal expert testimony on damages

pursuant to Fed. R. Civ. P. 26(a)(2); and (3) depositions of the parties' experts on damages."

Order dated August 13, 2007, ECF Document No. 36.

On August 13, the Agency electronically served Plaintiffs with Defendant's

Interrogatories and Requests for Admission to Plaintiffs.[2]  Plaintiffs failed to respond to

Defendant's discovery requests within 30 days as required by Fed. R. Civ. P. 33(b)(3), but on

September 12 Plaintiffs' counsel requested a week's extension to complete the responses, which

was agreed to by FDIC counsel.  When Plaintiffs' responses were not received by Monday,

September 24, FDIC counsel contacted Plaintiffs' counsel, who then stated that the responses

would not be completed until two weeks later, by October 5.  Since this was after the scheduled

close of discovery at that time, the parties agreed to file a Joint Motion to Extend Time for

---

[1] Previously filed as ECF Document No. 35-2.  On August 24 and 31, 2007, Plaintiffs responded
to Defendant's document requests by producing W-2 statements for most of the named plaintiffs.
These documents are responsive to Document Request No. 2.  Plaintiffs' responses did not
comply with Fed. R. Civ. P. 34 or LCvR 26.2(d), as they completely failed to address any of
Defendant's other 15 requests for production.  Accordingly, any documents that should have
been produced in response to these requests but were not are subject to preclusion under Fed. R.
Civ. P. 37(c)(1).
[2] Previously filed as ECF Document No. 37-2.

Discovery and Dispositive Motions.  See Joint Motion to Extend Time, ECF Document No. 37.

On September 26, the Court granted the motion and further amended the scheduling order so that

discovery is currently scheduled to close on October 26, 2007.  Order dated September 26, 2007,

ECF Document No. 38.

Plaintiffs' discovery responses were finally received on October 15, 2007, ten days after

the date promised by Plaintiffs' counsel and memorialized in the Joint Motion to Extend Time.

The responses were deficient and did not provide the information that had been requested by

Defendant Agency concerning Plaintiffs' claims.  Also on October 15, without seeking leave of

Court, Plaintiffs served a second expert report, this time prepared by a Dr. Seberhagen.  The

Seberhagen Expert Report was served three months after the July 16 deadline set by the Court

for Plaintiffs' expert reports (unlike Plaintiffs' DeLuca Expert Report that had been timely

served on July 16) and was entitled "Rebuttal to Dr. Jeanneret's Report and Adverse Impact

Analysis."

**Plaintiffs Should Be Required to Supplement Their Answers to Defendant's Interrogatories**

Plaintiffs' responses to five of the seven interrogatories propounded by Defendant

(Interrogatory Nos. 1-4 and 6) are inadequate.  As required by LCvR 26.2(d), set forth verbatim

below is each interrogatory and response, as well as the reason(s) why Plaintiffs' response is

deficient.

Interrogatory No. 1:  Identify each person who has knowledge of the facts complained of

in your Amended Complaint and describe the person's knowledge.

Response:  The Plaintiffs listed in the Amended Complaint (noting that given the age of
the class and other complications, some – namely Dennis Keller and Patrick Shute – have
died), and other members of the class certified by the Court have knowledge about the
impact of the FDIC's treatment of older employees in the Division of Resolutions and
Receiverships ("DRR") and Chief Operating Officer Bovenzi, DRR Director Glassman
and other high level officials of the Defendant who were involved in the decision-making

processes and implementation of the decisions by the Agency to offer incentives to older employees coupled with declarations that many of the job titles held by older employees were surplus, that resulted in the departure of employees over the age of 50 at a rate far higher than the rate of separations for employees of FDIC under age 50. See Answer to No. 4 below.

This response is deficient because it references over 50 named plaintiffs, as well as other unidentified class members, but does not describe what actual knowledge any such individual has. This provides absolutely no substantive information as to these potential witnesses and is the type of answer that has been characterized as "utterly deficient" by this Court. See Williams v. Johanns, 235 F.R.D. 116, 122-123 (D.D.C. 2006) ("[I]n response to Interrogatory No. 1, which asked plaintiffs to identify persons with relevant knowledge *and* to state the facts of which those persons have knowledge, plaintiffs did not provide any facts of which the persons they named have knowledge." (Emphasis in original)). Plaintiffs in this case should be required to provide the names of individuals with relevant knowledge and describe that knowledge.

Interrogatory No. 2: Describe any non-privileged conversations or interviews with any person(s) regarding any of your allegations that the actions of the defendant amounted to unlawful discrimination or violation of the law, and identify each and every statement from, or summary of the conversation or interview with, such person(s).

> Response: In light of the fact that the attorneys for the FDIC were present and represented it at the depositions of former Chairman Powell, Chief Operating Officer Bovenzi, Director of DRR Glassman and other employees of FDIC, we assume that the above request does not include information received at depositions. The great bulk of the information we received was privileged since it came from clients. Other information was received by discovery, plus at least one conversation with an attorney who was litigating similar but not identical issues against Defendant.

The mere fact that information was received from a client does not establish that it is protected by the attorney-client privilege. See, e.g., United States v. Naegele, 468 F.Supp.2d 165, 169 (D.D.C. 2007) ("The attorney-client communication is construed narrowly, to protect

from disclosure only those communications from the client to the attorney which were intended

to remain confidential and made for the purpose of seeking legal advice.  Because the purpose of

the privilege is to promote a free and open discussion between the client and the attorney in

seeking or giving legal advice, the privilege should protect only the client's communications to

the attorney (and so much of the attorney's communication to the client that might tend to reveal

a client communication) – and, of course, the legal advice itself – and not facts or other

information contained in the communication."  Internal quotes and citations omitted.)

For example, at the deposition of Dr. Jeanneret on October 11, Plaintiffs' counsel alluded

to statements made by "management" to certain plaintiffs that they had a "slim chance" of

surviving the RIF.  Defendant is entitled to learn the details of these conversations, which did not

involve counsel.  The fact that Plaintiffs' counsel learned about them from his clients does not

render them privileged.

In addition, because no privilege log was submitted, Plaintiffs have not "describe[d] the

nature of the documents, communications, or things not produced or disclosed in a manner that,

without revealing information itself privileged or protected, will enable other parties to assess the

applicability of the privilege or protection" as required by Fed. R. Civ. P. 26(b)(5).  Plaintiffs

should be required to respond fully to this interrogatory and to produce a privilege log listing

those communications for which the attorney-client privilege is properly claimed.

Interrogatory No. 3:  With respect to the allegations in paragraph 85 of your Amended

Complaint, state all facts upon which you base your allegation that "The 2005 RIF was designed

and intended by Defendant Agency to have a disparate impact against its employees over age 50;

and the RIF actually had a disparate impact against such employees."

> Response:    The allegation is based on information provided by Plaintiffs, plus
> information from minutes of the Board of the FDIC in the years from 1995 through 2003,

and inferences drawn from the conduct of the RIFs in those years, and upon statistical data, and testimony by Chairman Powell in his deposition.

This answer is utterly non-responsive, as it provides absolutely no facts or substantive information, but only identifies the alleged sources of such information.  For example, Defendant is unaware of what information has been "provided by Plaintiffs," what information from eight years of Board of Directors minutes Plaintiffs think are responsive to this inquiry, or "inferences" are referenced.  Plaintiffs should be required to respond fully to this interrogatory.

Interrogatory No. 4:  State all facts upon which you base your contention on page 15 of your Motion for Class Certification (filed April 21, 2006) that "DRR was targeted for the 2005 RIF because DRR was an 'old' agency . . . ."

Response:  That information was based upon the assertions made by our clients both by electronic and regular mail and orally, before the filing of the Complaint.  Those views were confirmed by data supplied by the Defendant showing that on or about Jan. 1, 2005, that of the approximately 419 "permanent" employees, 261 (or more than 67%) were over the age of 50, that the next oldest Division, DIT, had only 50% of its employees over the age of 50, and the largest Division, DSC, had 2,630 employees, less than one third of whom were over the age of 50.

The response does not state any of the facts that may have been contained in the referenced "assertions made by our clients" prior to the litigation and is wholly non-responsive as to Plaintiffs' allegation that DRR was deliberately "targeted" for the 2005 RIF.  Plaintiffs should be required to respond fully to this interrogatory.

Interrogatory No. 6:  Describe all efforts to mitigate your damages after September 3, 2005 (or such earlier date when you contend damages began to accrue), including, without limitation, efforts to secure other employment, any jobs offered to you, job offers declined, periods of employment and unemployment, and income received from all sources.

Response:  Most of the Plaintiffs actively sought comparable employment after having their employment with the Defendant terminated in 2005, and in some cases, they were able to secure some employment, but most of them did so with a large 50% to 80% or

more reduction in pay. The W-2 forms and other documents showing income in 2005 and 2006 from other employers from most of the clients who have been hired from other employers since they left the Defendant in 2005 have been furnished to Defendant.

The response does not describe, for any individual, "efforts to secure other employment, any jobs offered to you, job offers declined, periods of employment and unemployment" as requested. In addition, income shown on W-2 statements would not necessarily constitute a plaintiff's "income from all sources" as requested. However, in light of the Court's Order bifurcating these proceedings, Defendant Agency requests that Plaintiffs be directed to supplement their response to this interrogatory only if the Court finds for Plaintiffs on the issue of liability.

**The Court Should Strike the Seberhagen Expert Report from Consideration**

The Federal Rules of Civil Procedure provide that expert disclosures "shall be made at the time and in the sequence directed by the court." Fed. R. Civ. P. 26(a)(2)(C). The parties' Joint Report filed on February 1, 2007, the initial scheduling order entered by the Court on that date, and the amended scheduling order entered on June 26 all provided that the Plaintiffs' expert report(s) would be served by a date certain, and that the Defendant Agency's expert report(s) would be due approximately 30 days thereafter. Plaintiffs are now attempting to reverse the timing of expert disclosures required by the Court's orders, by serving Dr. Seberhagen's report three months after the due date for Plaintiffs' expert reports on July 16, two months after Defendant timely filed the Agency's expert report on August 20, and two weeks before the close of all discovery. The Court should not allow Plaintiffs so cavalierly to ignore its scheduling orders.

Plaintiffs did not serve the DeLuca Expert Report by the original May 31 deadline and sought no extension before that date, but they were subsequently permitted to serve their report

8

six weeks after this deadline had passed.  Now, Plaintiffs have not sought any extension of time

to serve the Seberhagen Expert Report some thirteen weeks after the July 16 deadline, nor have

they indicated why they should be permitted to do so.  If the Seberhagen Expert Report had been

timely filed in July as required, its contentions could have been addressed by Dr. Jeanneret in his

August report.  That was what was contemplated by the scheduling orders, and to reverse the

timing of the parties' expert reports is prejudicial to the Defendant Agency.  Under these

circumstances, the Seberhagen Expert Report should be struck by the Court.

**The Court Should Allow Defendant Additional Time for Discovery**

Discovery is currently scheduled to close on October 26, 2007.  Because Plaintiffs' long-

awaited responses to Defendant's interrogatories were significantly deficient, Defendant requests

an additional 30 days from the date that sufficient responses are received in order to conduct

discovery.[3]

Respectfully submitted,

/s/ *William S. Jones*

_____

William S. Jones
Georgia Bar No. 404288
Counsel, Legal Division
Federal Deposit Insurance Corporation
3501 N. Fairfax Drive (VS-E6006)
Arlington, VA 22226
(703) 562-2362
(703) 562-2482 (Fax)

Attorney for Defendant

Dated: October 19, 2007

---

[3] In the event that the Court determines not to strike Plaintiffs' Seberhagen Expert Report as untimely, Defendant also requests sufficient additional time to submit a rebuttal report and to depose Dr. Seberhagen, as was contemplated in the parties' Joint Report and the Court's prior scheduling orders.