# EXHIBIT 26

**(Declaration of Pamela K. Mergen)**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

BARBARA ALIOTTA, et al.,                )
    Plaintiffs,                           )
                                          )
    v.                                    )    Case No. 1:05-cv-02325-RMU
                                          )
SHEILA C. BAIR,                         )
Chairman,                               )
Federal Deposit Insurance Corporation,  )
                                          )
    Defendant.                            )
_____)

### DECLARATON OF PAMELA K. MERGEN

I, Pamela K. Mergen, declare as follows:

1. My name is Pamela K. Mergen. I have personal knowledge of the facts contained herein, and I am competent to testify to the same.

2. I am employed at the Federal Deposit Insurance Corporation (FDIC) in Arlington, Virginia as a Lead Human Resources Specialist in the Human Resources Branch (HRB) of the Division of Administration. I have been employed with the FDIC since 2003. Prior to working for the FDIC, I was employed by the U.S. Office of Personnel Management (USOPM). I have more than 28 years of experience with federal personnel matters, including reductions in force.

3. The decisions as to whether there was a surplus of employees in the Division of Resolutions and Receiverships (DRR) and which positions would be designated surplus were made by DRR management based upon the business needs of the organization.

4. Once DRR management determined which positions were surplus and which positions were to be kept, management shared that information with HRB. HRB then decided

whether a reduction in force (RIF) was necessary to accomplish the necessary reduction in staff.

5.  HRB considers two key criteria in making the determination as to whether a RIF is necessary. First, we consider the reasons for the RIF. In this case, the driving force was the need of DRR to reduce staff and restructure the organization in both Dallas and Washington, D.C. in light of a reduced workload of resolutions and receiverships. Second, we consider what personnel actions are available and appropriate to accomplish the necessary reduction in staff. In this case, we determined that, if the necessary staff reductions could have been accomplished by voluntary personnel actions, such as retirements or other voluntary departures from DRR, then no RIF in DRR would have been necessary. When involuntary personnel actions are needed, such as separation, change to lower grade or reassignment requiring displacement, then a RIF is necessary under USOPM regulations at 5 C.F.R. Part 351. In this case, a RIF was necessary because there were not enough voluntary actions taken by DRR employees to eliminate all of the surpluses in DRR, and the FDIC followed the USOPM regulations at 5 C.F.R. Part 351 in conducting the RIF in DRR.

6.  DRR had a large number of surplus positions and a large number of employees who could not be retained in light of the approved reorganization and downsizing of DRR. This was true even after a large number of the employees voluntarily opted for the buyout, which ended in May of 2005. In addition to the buyout, approximately sixty (60) DRR employees voluntarily applied for and were selected for positions in other divisions and offices of the FDIC. Those departures from DRR, along with the buyouts, reduced

the number of surplus employees, but did not eliminate the need to conduct a RIF. As a result, RIFs were run in both the Washington and Dallas offices of DRR.

7.  The RIF process was started when DRR provided HRB with a list, by competitive level, of positions authorized as part of the reorganization. A competitive level is a group of positions in the same series, grade, and work schedule, which are similar in duties, responsibilities and qualifications to the point where they are viewed as interchangeable with each other. The incumbent of one position in a competitive level should be able to readily perform any other position in that competitive level. The competitive levels consisted of positions which were occupied as well as vacant. The vacant positions were largely new positions that were created in the reorganization. DRR made available all of the vacant positions in the RIF process. The RIF process does not allow placement of employees into positions at grade levels higher than their official position of record.

8.  The RIF was conducted in accordance with 5 C.F.R. Part 351 and the FDIC's RIF Circular, which was negotiated with the National Treasury Employees Union (NTEU), which is exclusive representative of bargaining unit employees of the FDIC. The vast majority of employees in DRR who were subject to the RIF held positions in the bargaining unit represented by the NTEU. A copy of the RIF Circular is attached hereto as Exhibit A.

9.  The FDIC provided an informational notice of RIF to DRR staff members in Washington and Dallas on April 5, 2005. In that notice, DRR employees were informed that the FDIC would provide each employee with their RIF essential information, which would be used in determining their retention standing and assignment rights in the RIF. Employees were given the opportunity to review their Official Personnel Folders (OPF's)

3

and verify their RIF essential information, and to supplement their OPF's with any missing information by May 6, 2005.

10. The RIF was conducted in two rounds of competition. Round 1 of competition was for positions within the competitive levels. We had already grouped the employees by competitive level. If we had more employees than positions at a particular competitive level, then the employees with greater "retention standing" remained in their competitive level. Under 5 C.F.R. § 351.501, "retention standing" is determined in accordance with tenure group, veteran's preference and years of service with additional credit provided based upon performance. The employees with lower "retention standing" were then released from their competitive level and became subject to round 2 of the RIF process to see if they could be retained in a different position in the competitive area or if they needed to be separated.

11. Round 2 takes the excess employees from Round 1 and tries to place these employees in other positions. The employee's assignment right in Round 2 is to a position in a different competitive level, at the same or lower grade level (no more than three grade intervals lower) that is occupied by someone subject to displacement. Employees could not be considered for positions at grade levels higher than their existing grade levels. Because DRR made vacancies available for RIF placement, potential assignment rights also included vacancies in different competitive levels, at or below their current grade level. We in HRB first tried to place the excess qualified employees in positions that were already vacant and at their same grade level. If there were no such positions, then we tried to place the excess employees in jobs that were occupied by other employees but still at the same grade level as the excess employee. In this latter case, we had to observe

4

the "bump" and "retreat" rights of the employees under 5 C.F.R. Part 351. We used the

RIF procedures to place excess employees. If the excess employee was not placed into a

vacant position at or below (up to a maximum of three grade intervals below) his or her

grade level and also could not exercise bump or retreat rights into an occupied position at

or below (up to a maximum of three grade intervals below) the same grade level ,then he

or she would be separated by the RIF.

12. The RIF rules are complex, and it is virtually impossible for anyone to know beforehand

which employees will be released from their competitive levels in round 1 or which

employees will have assignment rights in round 2.

13. The FDIC exercised its discretion to fill vacant positions in the RIF. In filling vacant

positions in the RIF in DRR, the FDIC followed the USOPM regulations of 5 C.F.R. Part

351 and the FDIC RIF Circular negotiated with the NTEU. The vacancies were filled

based on the best match of skills among the qualified employees as compared to the

requirements of the vacant positions.

14. Retention rights and RIF assignment rights were determined based upon the individuals

who were on the employment rolls of DRR (*i.e.*, had not already accepted a buyout or

made some other voluntary decision to leave DRR) as of the effective date of the RIF,

September 3, 2005. Specific RIF notices, which were issued on June 30, 2005, were

based upon the retention standing of those individuals who we expected to be on the rolls

as of the effective date of the RIF, September 3, 2005. Individuals who had voluntarily

accepted the buyout were no longer employed by DRR as of June 30, 2005 and thus were

not considered for assignment rights to authorized positions during the RIF. .

15. No one could possibly predict whether employees who accepted the buyout would have been placed in a position in DRR during the RIF because their voluntary buyout actions excluded them from consideration for positions in the RIF process.

16. Based upon the listing of authorized positions provided by DRR, HRB identified which individuals were in surplus positions and identified potential assignment rights for those individuals based upon the RIF regulations.

17. The effective date of the RIF was September 3, 2005.  Employees separated by the RIF were entitled to, and received, notice of the RIF separation action at least sixty (60) days before the effective date.

During the same time that the actions outlined above were being undertaken with regard to the RIF in DRR, I was also involved in similar activities that were being undertaken with regard to a RIF that was planned for the FDIC's Division of Information Technology (DIT). However, because the necessary staff reductions in DIT were accomplished by voluntary personnel actions, such as retirements or other voluntary departures from DIT, it was ultimately determined by DIT management that no RIF in DIT was necessary.  Consequently, although the FDIC provided an informational notice of RIF to DIT staff members on April 5, 2005, subsequent voluntary departures coupled with management directed reassignments of remaining surplus personnel to vacant positions eliminated the need to conduct a RIF in DIT.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Date: 2\21\2008

Pamela K. Mergen

6

# EXHIBIT A

**(RIF Policy)**

| | TYPE AND NUMBER Circular 2100.4 | |
|---|---|---|
| **FEDERAL DEPOSIT INSURANCE CORPORATION** | CONTACT Joy Crosser | TELEPHONE NUMBER (703) 562-2158 |
| # DIRECTIVE SYSTEM | DATE December 23, 1996 | |
| | DATE OF CANCELLATION *(Bulletins Only)* | |

TO:          All Employees

FROM:        Jane L. Sartori, Director
             Division of Administration

SUBJECT:     Corporate Reduction in Force Policy

1. Purpose.  To establish the policy and procedures governing
reductions-in-force (RIF) in the Corporation; and to implement
Parts 351, 330, 302, and 536 Title 5, Code of Federal Regulations
(CFR) along with agreements reached between the Corporation and
the National Treasury Employees Union (NTEU).  In all mandatory
matters, the law governs.

2. Coverage.  The provisions outlined in this directive apply to:

   a.    Corporation executive E-level employees;

   b.    General-graded (GG) and wage graded (WG, WL, WS, XP, XL,
XS) employees on career, career-conditional, and term appointments
in the competitive service or equivalent appointments in the
excepted service; and

   c.    Liquidation-graded (LG) employees with one year or more of
current continuous service who are separated before their NTE
date.

NOTE:  Employees on temporary-limited appointments in the
competitive service (GG temps) and reemployed annuitants serve at
the will of the agency and are not competing employees in a RIF.
All Attorneys including those on term appointments are in the
excepted service.

3. Questions.  Questions regarding the reduction in force policy
should be directed to the Personnel Services Branch (PSB) Policy
and Programs Section at (202) 942-3390.  All questions of an
operating or procedural nature should be addressed to the
appropriate personnel specialist at PSB headquarters or the
regional PSB offices, or to the appropriate RIF Team(s), if
established.

4. Disposition.  This directive should be retained for future
reference.

AL-DOA-07799

# Table of Contents

**SUBCHAPTER I. General**                                      3

   I-1.  Reduction in Force Defined............................3
   I-2.  Policy................................................3
   I-3.  Responsibilities.....................................4
   I-4.  Advance Planning.....................................5
   I-5.  Use of Vacancies.....................................6

**SUBCHAPTER II. RIF Procedures**                             7

   II-1.  Use of RIF Procedures...............................7
   II-2.  Applicability.......................................7
   II-3.  Competitive Areas...................................9
   II-4.  Competitive Levels..................................9
   II-5.  Retention Registers................................10
   II-6.  Crediting Performance..............................11
   II-7.  First Round of Competition.........................13
   II-8.  Second Round of Competition........................13
   II-9.  Exceptions to the Regular Order of Release.........14
   II-10. Qualifications for Position Change.................15
   II-11. Offer of Position..................................16
   II-12. Notices to Employees...............................17
   II-13. Replies to Job Offers..............................18

**SUBCHAPTER III. Assistance and Benefits**                  19

   III-1. Grade and Pay Retention............................19
   III-2. Employment Assistance..............................20
   III-3. Reemployment Priority Lists........................20
   III-4. Reemployment in Temporary Positions................21
   III-5. Relocation Expenses................................21

**SUBCHAPTER IV. Grievances and Appeals**                    22

**SUBCHAPTER V. Retention Records**                          23

   V-1.  Disclosure of Retention Records.....................23
   V-2.  Content of Retention Records........................23
   V-3.  Records.............................................23

**SUBCHAPTER VI. Definitions**                               24

**APPENDIX I. RIF Competition Summary**                      29

AL-DOA-07800

# I. General

## I-1.  Reduction in Force Defined

A reduction in force (RIF) is the release of a competing employee
from his or her competitive level by furlough for more than 30 days,
separation, demotion, or reassignment requiring displacement, when
the release is required because of lack of work, shortage of funds,
insufficient personnel ceiling, reorganization, an individual's
exercise of reemployment or restoration rights, or reclassification
due to erosion of duties when it occurs within 180 days of a
formally announced RIF in the competitive area.

## I-2.  Policy

It is the policy of the Corporation to:

o  avoid the need for RIF through the prudent management of
available resources,

o  mitigate the effect of any necessary RIF by such means as careful
advance planning, use of hiring freezes, and a pre-RIF placement
program to assign employees to available vacancies for which they
qualify,

o  keep employees fully informed of any potential RIF that may
affect them,

o  apply RIF procedures uniformly and consistently in any one
reduction in force,

o  minimize the impact of RIF on employees and commit itself to the
long-term employment stability of its permanent workforce,

o  accomplish any necessary reductions in a manner to ensure
fairness, uniformity, and consistency,

o  comply with advance notification and bargaining provisions of
applicable labor agreements, and

o  provide outplacement assistance to employees scheduled for
separation.

**AL-DOA-07801**

## I-3.  Responsibilities

Management will decide whether a RIF is necessary, when it will take
place, and what positions are abolished.

The Chief Financial Officer is responsible for coordinating and
communicating downsizing efforts among the Divisions and Offices to

ensure that the Corporation's planning is done in a coordinated fashion.

The Personnel Services Branch's advice should be sought when management is considering an organizational change. This consultation is especially important in cases where the abolishment of encumbered positions is proposed or where bargaining unit positions will be affected. Divisions and Offices facing office closings and staff reductions are responsible for keeping the Chief Financial Officer and the Associate Director Personnel Services Branch informed of future workload, staffing plans, and other material planning decisions that are made. Specific information should be provided on numbers, grade levels, occupational categories, geographic locations of positions expected to be surplus, and dates.

The Personnel Services Branch (PSB) is responsible for providing RIF policy guidance, pursuing alternatives to RIF, advising on whether or not positions and grade levels can be supported as workload and responsibilities diminish, notifying and negotiating with the union, and planning for and carrying out reductions in force and related activities. Specifically PSB will:

o act as a "placement negotiator" and try to effect pre-RIF placements of adversely-affected employees in positions for which they qualify their local commuting area, before the regular recruitment process is begun,

o insure RIF procedures are used whenever they are required,

o establish competitive levels and maintain documents to describe them,

o establish, describe, and maintain documents describing the competitive areas within which RIF will take place,

o establish and define geographically the local commuting areas,

o identify employee(s) affected by RIF,

o determine proper offers and issue specific notices to employees,

o counsel employees who are eligible for discontinued service retirement and advise employees of their appeal rights,
__x7920

o process personnel, position, and pay actions,

o notify U.S. OPM, the state dislocated worker unit(s), and the chief elected official of the local government(s) within which separations will take place, when 50 or more employees in a competitive area are to receive RIF separation notices.

AL-DOA-07802

The Chairman will announce the RIF date and numbers of employees to be affected for a significant widespread reduction in force. Division and Office Directors will announce the RIF date and numbers of employees to be affected for RIF's limited to their respective Division or Office.

Managers, supervisors, employees, and PSB need to assure that positions are accurately described in position descriptions and are properly classified since these form the basis for establishing competitive levels and determining qualifications for positions.

Managers and supervisors need to insure that performance ratings are accurate, current, and submitted on time. PSB is responsible for insuring that ratings are issued in accordance with established schedules and submitted to PSB on a timely basis.

Employees are responsible for submitting updated qualifications statements prior to RIF by the established deadline date in order for determinations on qualifications for assignment to other positions to be made. Employees should provide up-to-date information on veterans preference, education, and experience; verify information to be used by PSB in establishing retention registers; and notify PSB of errors or omissions.


**I-4.   Advance Planning**

Accomplishment of workforce mission adjustments in an orderly and timely manner requires careful advance planning. Plans should seek to achieve the minimum disruption and dislocation of employees while maintaining organizational efficiency and productivity. Every feasible effort should be made to avoid or mitigate a RIF.

In order to prepare for a RIF, position descriptions and employee records should be reviewed for accuracy, and employees should submit qualifications statements in order for qualifications to be determined. A RIF plan should include the competitive levels and competitive areas affected, the proposed effective dates, and the reasons for the reduction in force.


**I-5.   Use of Vacancies**

In a RIF an agency may choose to fill all, some, or no vacant positions within a competitive area. Management may choose which vacant positions to offer. The Corporation is committed to ensuring that permanent employees whose positions are targeted for abolishment receive every reasonable opportunity to be placed in suitable permanent vacant positions in their competitive area. To the maximum extent possible vacant continuing positions will be used to lessen the impact of RIF. If the agency determines to fill a vacancy, it will be filled with a qualified employee reached for a RIF action, in accordance with subgroup retention standing as of the

AL-DOA-07803

other RIF action, the Corporation will include both full-time and part-time positions for which an employee (either full-time or part-time) qualifies.

Vacant temporary positions will not be used as RIF offers of assignment (see Section III-4).

AL-DOA-07804

# II.  RIF Procedures

## II-1.  Use of Reduction in Force Procedures

The procedures in this directive must be uniformly and consistently applied in any one RIF.  RIF procedures will be used whenever an employee is to be released from his/her competitive level due to lack of work, shortage of funds, reorganization, exercise of restoration or reemployment rights, or reclassification of a position due to erosion of duties when that action will take place within 180 days of a previously announced RIF.  Release from a competitive level includes a furlough of more than 30 days (or more than 22 workdays), separation, demotion, or reassignment requiring displacement.  Qualifications for placement are outlined in section II-10.

The FDIC, at its discretion, may reassign an employee, without regard to RIF procedures, to a vacant position at the same grade or rate of pay regardless of whether the position is in the same or a different competitive level, competitive area, or local commuting area.  However, no employee may be reassigned to a position within the Office of the Inspector General without authorization by the Inspector General.  Also, the need to apply RIF procedures does not suspend the FDIC's authority and responsibility to take other legitimate personnel actions, such as reassignments and changes to lower grade for unacceptable performance, before, after, or during a RIF.

## II-2.  Applicability

Excepted service temporaries (LG's) who have one year or more of current, continuous service are covered under the RIF regulations if they are let go before their NTE date.  A RIF must be conducted in order to determine who is separated and who is retained.  Excepted service temporary appointments, however, can be allowed to expire on their NTE date or such temporary employees can be given short term (less than one year) appointments without invoking RIF regulations. (U.S. OPM granted our request to continue to use our existing Schedule A, LG authority for current LG employees until May 31, 1996, at which time the authority revoked.  No new hires under that authority were permitted after December 31, 1993.  Instead competitive service GG temporaries must be hired for temporary field positions on appointments not-to-exceed 1 year, with only one 1-year extension permitted.  A separate Schedule A, LG authority was approved allowing for the hiring of LG's at bank closing sites within 60 days of the bank closing, on 1-year appointments, with only one 1-year extension permissible.)  When eligible to compete in a RIF, LG's are included in excepted service tenure group III, the lowest retention group.  Term employees are included in competitive service tenure group III.  Competitive service tenure group I includes career employees, and tenure group II includes career-

AL-DOA-07805

conditional employees.  There are comparable tenure groups for the
excepted service.

Employees on temporary-limited appointments in the competitive
service serve at the will of the agency and can be let go at any
time.  They are not competing employees in a RIF, and as such are
removed before any employee covered by U.S. OPM retention
regulations is reached for a RIF action in a competitive level.
Such temporary employees are also separated by the effective date of
a major RIF when they are in positions in the same series and
competitive areas as positions from which permanent employees retire
under a voluntary retirement authority.

Reemployed annuitants also serve at the will of the agency and are
not competing employees in a RIF; however, if an annuitant is not
separated prior to a RIF, he/she competes in the RIF and his/her
retention standing is determined in the same manner as it is for
other employees.

Employees in receipt of written decisions to remove due to
unacceptable performance are not competing employees in a RIF.

Employees with restoration rights who are on furlough to perform
military duty are not listed on retention registers since they are
not affected by RIF actions because of their restoration rights.

According to U.S. OPM's RIF regulations, permanent excepted service
employees (GG Attorneys), temporary excepted service employees
(LG's) with one year or more of service, and tenure group III
employees in the competitive service (terms) are not entitled to
assignment rights during a RIF nor to priority reemployment after
separation by RIF, unless such rights are extended to them
administratively at the agency's discretion.  It is the policy of
the FDIC to treat all of its employees in a uniform and consistent
manner in the interest of equity.  Excepted service tenure group I
and II employees (GG Attorneys) will be accorded the same assignment
(bump and retreat) and reemployment rights as competitive service
tenure group I and II employees.  Competitive service tenure group
III employees (terms) will be given the same assignment rights
(bump) as excepted service tenure group III employees (LG's) are
given.  Tenure group III employees cannot be given retreat rights
according to U.S. OPM RIF regulations.

**II-3.  Competitive Areas**

Competitive areas outline the boundaries of RIF competition.  They
must be defined solely in terms of organizational unit(s) and
geographic location(s).  They may not be established on the basis of
grade levels or occupational series definitions.  The minimum
competitive area is an organization that is separate from other
organizations in a local commuting area by virtue of differences in
operation, work function, staff, and personnel management authority.
When changes to existing competitive areas are made, or new areas

AL-DOA-07806

are established, within 90 days of the effective date of a RIF, prior approval of U.S. OPM is required.

For headquarters (Washington, D.C. metropolitan area) each Division and each Office will be designated as separate competitive areas. For field locations separate competitive areas will be established for each Division and each Office whose employees' duty stations are within the local commuting area. The commuting area will include a population center (or two or more neighboring ones) and the surrounding localities in which people live and reasonably can be expected to travel back and forth daily from home to work in their usual employment.

## II-4. Competitive Levels

No RIF action may be taken until every position in the affected competitive area is assigned to a competitive level. A retention register will be prepared for each affected competitive level in a competitive area.

PSB will establish competitive levels on the basis of grouping jobs that are in the same grade and classification series, and are similar enough in duties, qualification requirements, pay schedules, and working conditions so that incumbents of one kind of position could successfully perform the essential duties of any other position upon entry into it without any loss of productivity beyond that normally expected in the orientation period for a new, qualified employee. Employees' official positions of record are used in establishing competitive levels. Separate competitive levels will be established for positions in the competitive service and the excepted service, for excepted service positions filled under different appointing authorities, for positions filled under different pay schedules, for those with different work schedules (full-time versus part-time), and for positions in formally designated trainee or developmental programs. Employees of such positions do not compete with each other for retention or placement in RIF.

Full-time employment is a work schedule of 80 hours or more per pay period. Any schedule of less than 80 hours per pay period is considered part-time employment. All part-time employees in otherwise interchangeable positions will be placed in the same competitive level regardless of the number of hours in their part-time schedules. Employees may request reassignment from a part-time to a full-time schedule in accordance with the provisions of section 9 b (5) (h) of the Corporate Part-time Employment Policy Directive, Circular 2310.4, effective November 5, 1995.

Serving a supervisory or managerial probationary period is not a basis for establishing a separate competitive level.

PSB will notify NTEU of their initial determinations of competitive levels and solicit NTEU comments which PSB will take into account in making final competitive level decisions.

AL-DOA-07807

## II-5.  Retention Registers

A separate retention register must be established for each competitive level in which an occupied position will be abolished and for each competitive level in which an occupied position will be affected by either bumping or retreating.

Noncompeting employees will be removed by means other than RIF from positions in the competitive level before any competing employee is released from the competitive level by RIF.  After all employees who are noncompeting are removed from the competitive level, competing employees are released in inverse order of their retention standing from the lowest to the highest.

Employees will be listed on retention registers in descending order on the basis of tenure, veteran preference, and length of creditable service augmented by performance credit.  The name of each employee in receipt of a written decision to remove due to unacceptable performance will be listed at the bottom of the respective retention register.  These employees will not compete in RIF.  A competing employee who has not received a written decision of demotion or removal due to unacceptable performance is listed on the retention register, not apart from it.  An employee in receipt of a written decision to demote due to unacceptable performance will compete in RIF from the position to which he/she will be demoted.

AL-DOA-07808

## II-6. Crediting Performance

\*                                                                              \*

Additional service credit for performance will be assigned in
accordance with U.S. OPM's Reduction in Force regulations.
Regardless of whether the employee's service occurred in the FDIC
or a former agency, the employee's actual ratings of record are
used to the extent that they are available.

### Official Rating of Record

Rating of record means the performance rating prepared at the end of
an appraisal period for performance of agency-assigned duties over the
entire period and the assignment of a summary rating.  For employees
of the FDIC and other agencies and organizations not subject to 5 USC
Chapter 43 or 5 CFR Part 430, Performance Management, it means the
officially designated performance rating, as provided for in the
agency's appraisal system, that is considered to be an equivalent
rating of record. To be considered an equivalent rating of record, the
appraisal must have been issued as an officially designated
performance evaluation under the employing agency's performance
evaluation system, have been derived from the appraisal of performance
against expectations that are established and communicated in advance
and be work-related, and identified whether the employee performed
acceptably.

### FDIC Appraisals

Performance evaluations issued under the corporate performance
appraisal system are equivalent ratings of record for reduction
in force purposes.  These ratings will be used to calculate
additional service credit.

### Other Agency Appraisals

Ratings of record received from Federal Agencies covered by U.S.
OPM's 5 CFR Part 430, Performance Management, regulations and
those from agencies of organizations not subject to these
regulations, which are determined by the FDIC when conducting
the reduction in force to be equivalent ratings of record, shall
be used to grant additional service credit.

### Basis for Credit

AL-DOA-07809

An employee's entitlement to additional service credit for
performance is based on the average of the employee's three most
recent ratings of record received during the 4-year period prior
to either the date the agency issues specific RIF notices or an
agency-established cut-off date a specific number of days prior
to the issuance of RIF notices.

## Cut-off Date for Appraisals

FDIC will use a cut-off date 30 calendar days prior to the issuance of specific RIF notices to allow HRB time to establish retention registers; after such date, no new ratings of record will be put on record and used for RIF purposes.

## Ratings on Record

To be creditable for reduction in force purposes, ratings must have been issued to the employee with all appropriate reviews and signatures and must also be on record, i.e., available to DOA's Human Resources Branch (HRB) in order to prepare retention registers. For FDIC performance appraisals, the ratings must be final and submitted to the servicing HRB for retention in the Employee Performance File (EPF). For ratings from prior agencies, the appraisals must be available in the employee's personnel records; if they are not available, HRB will give the employee the opportunity to provide them. The actual appraisal or a duplicate must be provided. Certified statements will not be accepted.

Only official ratings of record may be used. All performance appraisals that are due will be prepared to be considered in the RIF analysis. However, ratings of record may not be prepared retroactively to cover periods for which no appraisal is available. This means that ratings of record must be completed and communicated to an employee before the next rating is due. A rating cannot be prepared for a prior rating period at the same time a subsequent rating is due. An employee may not be assigned a new rating of record for the sole purpose of affecting his or her retention standing.

## Effective Date of Rating

The effective date of the rating of record is the ending date of the applicable appraisal period. This date will be used to determine whether or not a rating of record falls within the 4-year "lookback" period for crediting performance for RIF retention.

AL-DOA-07810

Credit for Ratings

Credit is expressed in additional years of service and is based on actual earned ratings. The additional years of service credited will be the average (mean) of the years credited for each summary rating of the three most recent in the look back window period, rounded in the case of a fraction to the next higher whole number. In computing this average, the value assigned depends on the performance summary rating system in place, and if there are multiple summary rating patterns among the appraisals being considered in the 4-year period before the RIF date.

"Multiple summary rating patterns" means that within one competitive area, ratings include a mix of pass/fail and 3-, 4-, or 5-level summary rating appraisals. For example, FDIC had a 5-level system in 1999 and pass/fail systems during 2000 through 2002. If one member of a competitive area had to rely on that 1999 5-level rating, the competitive area would be considered under a multiple summary rating pattern. Also, if an employee was hired from another agency and brought a rating from 2001 that was a 5-level rating, that would create a multiple summary rating pattern even if all the FDIC ratings in the competitive area were pass/fail.

When there is just one pattern among the appraisals in a competitive area, performance will be credited as follows:

(1) Twenty (20) years for each summary rating of Outstanding or equivalent.

(2) Sixteen (16) years for each summary rating of Superior, Exceeds Fully Successful, or equivalent.

(3) Twelve (12) years for each summary rating of Fully Successful or equivalent. A summary rating of Pass under a Pass/Fail system would be valued at twelve years.

As an example of establishing the average years discussed above, an employee with an Outstanding (20) and two Fully Successful (12) ratings would have those three ratings added together [20+12+12=44] and divided by 3, equaling 14.6, which is rounded up to 15 years of service credit based on performance.

A summary numeric rating system, such as the system in place at the FDIC during performance years 2000 and 2001 for bargaining unit members, is considered pass/fail.

When there are multiple summary rating patterns among the appraisals being used for service credit in any one competitive area, all summary ratings equivalent to Fully Successful or above, Pass, and summary numeric score of 2.0 and above, will receive credit for

AL-DOA-07811

twenty additional years of service.

Summary numeric rating scores below 2.0 or below the Fully Successful/Meets Expectations/Pass level will receive no additional credit.

## Missing Ratings

An employee who has received at least one but fewer than three previous ratings of record during the 4-year "lookback" period for crediting performance shall receive credit based on the value of the actual ratings of record divided by the number of actual ratings received.  If an employee has received only two actual ratings of record during the period, the value of the ratings is added together and divided by two (and rounded to the next higher whole number in the case of a fraction).  If an employee has received only one actual rating of record during the period, its value is the amount of additional retention service credit provided.

## Modal Rating

An employee who has received **no** actual ratings of record during the 4-year "lookback" period will receive credit for performance based on the modal rating for the summary level pattern that applies to the employee's official position of record at the time of the reduction in force.  The modal rating is the summary rating assigned most frequently to FDIC employees in the RIF competitive area under FDIC's appraisal system among ratings on record for the most recently completed appraisal period prior to the RIF cut-off date for appraisals.

## Assignment Rights

Employees who currently have summary ratings below Meets Expectations/Pass or an equivalent level forfeit their right of assignment under RIF.

## Consistency

These policies for crediting performance will be applied uniformly and consistently.
*                                                                    *

## II-7.  First Round of Competition

Employees first compete to remain in their competitive level.
Employees to be released from their competitive level are identified
in Round 1 of RIF competition.  Employees on temporary promotions
and details compete based on their official positions of record.
Employees will be released from their competitive level in the
inverse order of retention; employees with the lowest retention
credit will be released first.  In the normal order of release, no
employee is released from his/her competitive level unless everyone
below him/her on the retention register is released.  (Out-of-order
retention is permissible only as provided in section II-9 below.)

When two or more employees are tied in total retention credit (i.e.,
employees in the same subgroup who have the same service date) and
at least one, but not all, of the tied employees has to be released
from the competitive level, employees will be released: 1) in order
of time within grade; or those being equal, 2) time in current
position in the competitive level; or those being equal, 3) in order
of FDIC/RTC/FHLBB* seniority; or those being equal, 4) in order of
the last digit of the Social Security number with zero being lowest.
The employee with the less amount of time or the lowest number will
be released first.

*FHLBB service is defined as Federal service with the FHLBB for
those employees who were reassigned to the FDIC/RTC pursuant to
FIRREA.

## II-8.  Second Round of Competition

A competing employee released from his/her competitive level will be
assigned to another competitive level according to bump or retreat
rights, as applicable, in the manner that will result in the least
possible loss of grade or pay:

BUMP:  The employee will bump into a position held by another
employee in a lower tenure group, or in a lower veteran subgroup
within the same tenure group, that is not more than three grades (or
grade intervals) below the position from which the employee is
released.  An employee cannot displace another employee in the same
tenure group and subgroup by bumping.

RETREAT:   The employee, if in tenure group I or II, will retreat
into a position held by another employee with a lower retention
standing in the same tenure group and subgroup that is no more than
three grades (or grade intervals) below the position from which the
employee is released.  In order to retreat, the position must be the
same as, or essentially identical to, a position previously held by
the released employee in the Federal service on a permanent basis.
Preference eligible employees with a 30 percent compensable service-
connected disability may retreat no more than five grades or grade
intervals.  Tenure group III employees cannot retreat.

AL-DOA-07813

An employee is entitled to only one offer of assignment.

An employee with a current annual performance rating of Unacceptable has no assignment right.

An employee with a current performance rating of Marginal may only retreat to a position occupied by another employee with a current performance rating of record of Marginal or lower.

(See Section VI, Definitions, for an explanation of the various tenure groups and veteran subgroups and Appendix 1 for a RIF Competition Summary.)


**II-9. Exceptions to the Regular Order of Release**

Mandatory exceptions to the order of release, for example military restorees are entitled to be retained for either 6 months or 1 year after restoration from military service depending on whether they are in tenure groups I or II, will be honored.

Discretionary continuing exceptions are permitted when necessary to retain an employee in a position that no higher-standing employee can take over within 90 days without undue interruption to the agency and to satisfy a Government obligation to an employee (for example, for a full 60-day specific RIF notice).

Temporary discretionary exceptions are permitted to retain an employee for 90 days or less in order to continue an activity without undue interruption or to benefit the employee when the temporary retention of a lower-standing employee does not adversely affect the right of any higher-standing employee who is released ahead of the lower-standing employee. The agency may establish a maximum number of days, up to 90, for which such an exception may be approved.

In the case of sick leave, an agency may make a temporary exception to retain on sick leave a lower-standing employee who is on approved sick leave on the effective date of the RIF for a period NTE the date the employee's sick leave is exhausted, even if this exceeds 90 days.

In the case of annual leave, an agency shall make a temporary exception to retain on accrued annual leave a lower-standing employee who will attain first eligibility for an immediate retirement benefit and/or establish eligibility to carry health benefits coverage into retirement during the period represented by the amount of the employee's accrued annual leave, if the employee so elects. Such an exception may not exceed the date the employee first becomes eligible for immediate retirement and/or for continuation of health benefits into retirement but may exceed 90

AL-DOA-07814

Exceptions to the regular order of release will be made in a fair and objective manner. Employees will be so informed if they are affected by an exception to the regular order of release.

## II-10. Qualifications for Position Change

Employees will be required to submit qualifications statements 90 days before the specific RIF date; the deadline for receipt will be 30 days before the specific RIF notice.

A competing employee released from his/her competitive level is entitled to placement in a position for which qualified in another competitive level consistent with RIF competition and assignment provisions (bump and retreat). This ordinarily requires meeting all regular qualification requirements for the position including any minimum education prescribed, and any selective placement factors established. The employee must possess, based on background and recency of experience, a positive ability to successfully perform all essential duties of the position upon entry without undue interruption to the organization or loss of productivity beyond that normally expected of a new employee. Employees must also be physically qualified, with reasonable accommodation where appropriate, to perform the duties of the position. However, an employee on a leave of absence due to a compensable injury may not be denied assignment solely due to not being physically qualified, if the disqualification resulted from the compensable injury. Such an employee must be afforded assignment rights subject to recovery.

When an employee gains new qualifications during a RIF notice period that would entitle him/her to a better position offer, that better offer must be made and the original offer of position or notice of separation must be amended.

Except as prescribed by U.S. OPM, the sex of an employee may not be considered in determining whether or not an employee is qualified for a position.

To be qualified to bump or retreat into a trainee position, an employee must meet all of the conditions required for selection and entry into the formal intern development program. Any employee who has completed a course of training of development in a specific occupation, or who is otherwise fully trained and qualified, cannot bump or retreat into a formal FDIC intern or development program in that occupation.

A right of assignment to a sensitive position may not be delayed or denied because the employee does not have the appropriate security clearance or an authority refuses to give it. Any employee whose assignment rights can only be satisfied by such an assignment must be placed in the sensitive position on the date of the RIF. During the pendency of the clearance process, the sensitive duties may be withheld or other appropriate arrangements made.

AL-DOA-07815

## II-11.  Offer of Position

Whenever an employee is released from his/her competitive level, he/she is entitled to be placed in a position that results in the least possible reduction in grade or pay.  This is what is meant by "best" offer.  However, placement is dependent upon many variables including the employee's qualifications and retention standing versus those of other competing employees, and the availability of positions.

Assignments across pay plans, e.g., wage grade to general graded, will be determined by representative rates.  Employees may not be assigned in RIF to a position with a higher representative rate. When an informational RIF notice is issued to employees, FDIC will have employees complete a form soliciting their general preferences in terms of occupations and/or locations to which they may be assigned as a result of RIF.  When assignment rights can be satisfied by more than one position with the same representative rate, the FDIC will make its assignment determination based on legitimate business factors after reasonable consideration of the employee's expressed preferences. An employee may be offered assignment to a position with greater promotion potential.

An employee is entitled to only one proper offer and is entitled to no further offer when he/she accepts an offer, rejects an offer, or fails to reply within a reasonable time.  The agency must make a better offer, however, if a position with a higher representative rate becomes available on or before the effective date of the RIF. It makes no difference whether the employee has accepted or rejected a previous offer.  After determining an employee's assignment right, FDIC, at its discretion may make an alternative offer of a vacant position with the same or lower representative rate than that of the position to which the employee was entitled in order to permit the employee to remain in the commuting area or in the same line of work.

A vacant part-time position may be offered to a full-time employee, and a vacant full-time position may be offered to a part-time employee, in lieu of separation or demotion by RIF.

## II-12.  Notices to Employees

One of management's most important responsibilities in a RIF is to keep employees as well informed as possible about the changes about to occur.  Once a decision is made to conduct a RIF the employees likely to be affected should be fully informed.  This should be done as early as practical.

An informational RIF notice alerts an employee to the possibility of a reduction in force while a specific RIF notice advises the employee that he or she has in fact been reached for a RIF action. FDIC employees will be given at least 90 days informational notice

AL-DOA-07816

of a RIF and 60 calendar days specific RIF notice before the day of
release.

A Saturday, Sunday, legal holiday, or other non-workday will not be
counted as the last day of the notice period.  In such a case, the
action will be made effective on the next regular workday of the
employee.  A similar policy will be used in reply periods.  The
notice period begins on the day after the date the employee receives
the written notice.

During the 60-day specific notice period, the notice may be amended
without extending the notice period if the amendment results in a
more favorable action than the one originally proposed.  However, if
the amendment results in a more severe action, a new 60-day specific
notice period must be given.

During the Christmas holiday season (December 15 through January 3)
notices of RIF will not be issued nor will any RIF actions be
effected.

RIF notices will contain the information required by law, to include
the following: the action taken and its effective date, the
employee's competitive area, competitive level, subgroup, service
date, annual performance ratings of record received during the last
four years, the place the employee may inspect the regulations and
records pertinent to his/her case, the reasons for retaining a
lower-standing employee in the same competitive level, information
on special selection priority and reemployment rights with FDIC, as
pertinent, and the employee's right to appeal/grieve. When requested
employees will be provided with a copy of U.S. OPM's retention
regulations, 5 CFR Part 351.  Employees to be separated will be
provided information on the Interagency Career Transition Assistance
Program regarding how to apply for priority reemployment
consideration with other Federal agencies and on how to apply for
unemployment insurance.

Employees ordinarily continue to occupy their original positions and
remain in a pay and duty status during the entire notice period
unless the employee resigns, or requests and is granted, annual,
sick, or leave without pay.  However, in an emergency when there is
a lack of work or funds for all or a part of the notice period, an
employee may be placed on annual leave with or without his/her
consent, leave without pay with his/her consent, or in a nonpay
status without his/her consent.

AL-DOA-07817

**Replies to Job Offers**

Specific RIF notices will provide employees with 10 workdays within
which to accept or decline an offer of continuing employment.
Extension of the reply period should be permitted when time is
available, or when it can be shown that employees were prevented by
circumstances beyond their control from replying within the

prescribed time.  Employees should be informed that declining a position offer will probably result in separation.

When an employee accepts an offer of a position within the commuting area, it is recommended that a courtesy interview be set up with the gaining supervisor.  RIF placements are mandatory as far as the gaining supervisor is concerned and may only be objected to on the grounds of undue interruption (see Section II-9 above and the definition of undue interruption in Subchapter VI).

AL-DOA-07818

# III.  Assistance and Benefits

## III-1.  Grade and Pay Retention

The Corporation is not subject to grade and pay retention provisions of Title 5 since the Corporation is not covered by the Classification Act, chapter 51 of Title 5; however, it is the policy of the Corporation to grant grade and pay retention in accordance with 5 CFR 536 to those employees who are downgraded through no fault of their own.

Under grade retention regulations, an employee who is downgraded because of RIF is entitled to retain the same grade for 2 years, provided that the employee held the position under permanent appointment, held the position for at least 1 year, and the employee did not decline an offer of an equivalent position.  The employee's retained grade is considered for most purposes (including pay and pay administration, retirement, life insurance, and eligibility for training, promotions, and within grade increases, but not for future RIF competition) as the grade of the position held before downgrading because of RIF.  An employee receiving grade retention gets within grade increases and 100 percent of any across-the-board nationwide pay increases.  After grade retention ends, the employee is eligible for pay retention.  Also, an employee who is not eligible for grade retention (served less than 52 weeks at the higher grade) may be eligible for pay retention.

Under retained pay regulations, a demoted employee is eligible for indefinite pay retention.  Pay retention applies when the pay rate the employee held prior to the RIF exceeds the highest step of the lower-graded position held by the employee after the RIF.  In those cases, the employee is placed in the lower-graded position, but retains his or her former salary, provided that this retained salary does not exceed 150 percent of the maximum rate for the lower grade in which the employee is placed.  Retained pay is calculated on base pay.  The employee then receives only 50 percent of any adjustment, such as an across-the-board nationwide increase, in the maximum rate for the new grade.  This reduction continues until the rate of pay in the employee's new, lower grade equals or exceeds the employee's then current pay.  Any applicable locality pay and Regional Pay Differential is paid in addition to retained pay.

## III-2.  Employment Assistance

Assistance will be provided to aid employees in locating employment elsewhere, both in the Federal government and the private sector. Through the Career Transition and Outplacement Program eligible employees can secure counseling on how to effectively market their skills, prepare employment applications, and undertake a job search

AL-DOA-07819

Special selection priority for vacancies to be filled will be
afforded to eligible FDIC employees prior to RIF separation in
accordance with the FDIC Career Transition Assistance Program.

Effective February 29, 1996, until September 30, 1999, eligible
displaced employees in receipt of a specific RIF notice exercise
special priority selection for vacancies in other Federal agencies
through the Interagency Career Transition Assistance Plan (ICTAP).
During this period of major government downsizing, U.S. OPM has
suspended the passive Interagency Placement Program, the centralized
inventory of eligible displaced employees from which it made
referrals to Federal vacancies. Instead, under the ICTAP, eligible
displaced employees take an active role in identifying specific
vacancies for which they are well-qualified and interested and apply
directly to the Federal agency announcing the vacancy.

Employees eligible and interested in retirement will be provided
appropriate counseling.

### III-3.  Reemployment Priority Lists

PSB will establish and maintain Reemployment Priority Lists (RPL)
for each commuting area in which it separates competitive and
excepted service Group I or II employees by RIF.  To be eligible an
employee must receive a specific RIF notice or a Certification of
Expected Separation, not have declined an offer of a position with a
representative rate at least as high as the position from which
separated, and have an annual performance rating above Unacceptable.
An eligible employee may be entered on the RPL only for the
commuting area from which separated and may not apply for the RPL in
any other location, except as provided by the regulations for
employees in Alaska and overseas.  To be entered on the RPL, an
employee must submit an application within 30 calendar days of
his/her separation date.  The employee will be entered on the RPL no
later than 10 calendar days after receipt of his/her application.
An employee is entered on the RPL for all positions for which
qualified and available.  Competitive service tenure group I
employees remain on the RPL for a maximum of 2 years from the date
entered, and competitive service tenure group II employees remain
there for a maximum of 1 year.  Excepted service employees who are
entitled to veteran preference remain on the RPL for a maximum of 2
years; excepted service non-preference eligible employees remain on
the RPL for a maximum of 1 year.

When an individual on the RPL either accepts or declines an offer of
nontemporary employment of a nature commensurate with the employment
from which separated, his/her name is removed from the RPL.

The order in which eligibles are listed on the RPL and offered
employment from it, as well as other requirements and operations of
the RPL's, are described in 5 CFR 330, Subpart B, for competitive
service positions and 5 CFR 302.303 & .304 for excepted service
positions.

AL-DOA-0782

Before selecting candidates from outside the agency to fill
positions, agencies are required to select current or former
employees of the agency eligible through the RPLs.

## III-4.  Reemployment in Temporary Positions

Agencies may reemploy separated permanent employees in temporary
positions.  It is the policy of the FDIC to offer separated
employees reemployment in available temporary positions without a
break in service so their benefits will continue for the duration of
their temporary employment.  The Reemployment Priority List would
determine who would be offered the temporary vacancy.

## III-5.  Relocation Expenses

Employees involuntarily separated from service within 1 year of
official relocation to a new duty station are not bound by their
Agreement to Remain in Service and will not be required to reimburse
the FDIC for relocation expenses paid.  Any employee who resigns
because he/she expects to be involuntarily separated as a result of
receiving a specific RIF notice or an informational RIF notice that
all positions in the competitive area will be abolished or
transferred to another competitive area and who had been relocated
at Corporate expense less than a year prior to the resignation,
shall not be required to reimburse the FDIC for associated
relocation expenses that had been paid to the employee.

## IV.  Grievances and Appeals

Employees who accept an offer of assignment to another position at
the same grade or representative rate may not appeal the RIF action.

Non-bargaining unit employees who have been separated or demoted in
RIF may appeal to the Merit Systems Protection Board (MSPB).  In
addition, higher standing employees released from their competitive
level out of retention order because of a decision to retain a lower
standing employee as an exception may appeal this action to the MSPB
for a review of the reasons management has for the exception.

An appealable RIF action may be appealed to the MSPB anytime during
the period beginning with the day after the effective date of the
action, and ending not later than 30 days after that effective date.

Unless the subject of RIF is excluded as a grievable matter under
applicable collective bargaining agreements, bargaining unit
employees must use the negotiated grievance procedure in lieu of an
appeal to MSPB.  However, if they believe the separation or demotion
in RIF discriminated against them on the basis of their race, color,
religion, sex, national origin, age (40 or over), or physical or
mental handicap; they may appeal the action to the MSPB or through
the negotiated grievance procedure, but not through both mechanisms.

AL-DOA-07821

# V.    Retention Records

## V-1.    Disclosure of Retention Records

Retention registers and records must be shown to employees who have received specific RIF notices.  Disclosure of records will be upon request and includes employees' designated representatives.  Before exhibiting such records, the personal information about other employees such as date of birth and social security number must be removed from view.  Employees are also entitled to see descriptions of competitive areas and levels, and the dates these were established or changed.

## V-2.    Content of Retention Records

Retention registers for each competitive level will contain the minimum information necessary to establish standing for each employee such as name, position title, series, grade, organization, tenure group and subgroup, service computation date adjusted for additional service credit, and the last performance rating of record.  Other useful information such as expiration date of mandatory retention after return from military duty, date of expected conversion to career, etc., can be added.  Personal data should not be made a part of retention registers except as necessary to clearly identify employees.  Each retention register will include notations regarding what happened to the position (abolished, downgraded, etc.) as well as the affect on the incumbent (separated, reassigned to "X" position, etc.).

## V-3.    Records

All records, registers, and worksheets sufficient to depict the conduct of a RIF will be maintained for 2 years from the date employees are issued specific notices of RIF.

AL-DOA-07822

# VI.  Definitions

Assignment Right:  The regulatory right of a competitive service
tenure group I or II employee to be assigned (through bumping or
retreating) in the second round of competition to a position in a
different competitive level held by another employee with lower
standing on a retention register.  Administratively, the FDIC has
extended bump and retreat rights to excepted service tenure group I
and II employees, and bump rights to competitive and excepted
service tenure group III employees.  Retreat rights cannot be
extended to tenure group III employees according to U.S. OPM RIF
regulations.

Best Offer:  An offer of a position with either no reduction in
grade or pay, or with the least reduction possible in consideration
of positions available, employee qualifications, and the retention
standing of other competing employees.

Bump Rights:  The regulatory or administratively-determined right of
a competitive or excepted service tenure group I, II, or III
employee reached for release from his/her competitive level to
displace another employee in a lower tenure group or veteran
subgroup in a position for which qualified in another competitive
level.

Competing Employee:  An employee in tenure group I, II, or III who
is involved in a RIF.

Competitive Area:  The boundaries of competition defined
organizationally and geographically, within which employees compete
for retention in a RIF.

Competitive Level:  All positions within a competitive area which
are in the same grade and classification series and which are
similar enough in duties, qualifications, pay schedules, and working
conditions so that the incumbent of one position could successfully
perform the significant duties of any other position upon entry into
it without any loss of productivity beyond that normally expected in
the orientation of any new, fully qualified employee.

Competitive Service:  Federal positions normally filled through open
competitive examination under Civil Service rules and regulations.

Excepted Service:  Federal service positions not subject to the
appointment requirements of the competitive service.  All Attorney
positions, whether in tenure groups I, II, or III, are in the
excepted service.

Fully Qualified:  Meets U.S. OPM standards and requirements for a
position, including any minimum education requirement, physical
requirement (with reasonable accommodation), and is able to perform
the duties and requirements of a position without undue
interruption.

AL-DOA-07823

Normal Commuting Area:  The geographic area that usually constitutes one area for employment purposes.  It includes any population center (or two or more neighboring ones) and the surrounding localities in which people can reasonably expect to travel back and forth from home to work each day.

Notice:  There are two types of notice which can be given to employees involved in RIF situations, specific and informational:

    Specific Notice is a written communication from an agency official to an individual employee stating the employee will be reached for a RIF action.

    Informational Notice alerts employees that a RIF may be necessary.  An informational notice does not satisfy an employee's right to a specific RIF notice, nor does the informational notice count toward the mandatory notice period for a specific RIF notice.

Preference Eligible:  A person who was separated with an honorable discharge or under honorable conditions from active duty in the armed forces performed in a war, a campaign or expedition for which a campaign badge has been authorized, or served between April 28, 1952 and July 1, 1955, or for more than 180 consecutive days, other than for training, between February 1, 1955 and October 14, 1976. Under certain conditions, the spouse (or widow/widower) and/or mother of a qualified veteran may be a preference eligible.  A retired member of a Uniformed Service is considered a preference eligible only if he/she meets the conditions of 5 CFR 351.501(d).

Reemployment Priority Lists:  Referral lists established by PSB to afford permanent competitive and excepted service (tenure group I and II) employees priority consideration and reemployment in comparable positions with the FDIC after separation by RIF.

Reorganization:  The planned elimination, addition, or redistribution of functions or duties in an organization.

Representative Rates:  The hourly rates used to compare pay in different pay schedules to ascertain best offers.  The fourth step of the grade for GG/LG positions, the second step for wage positions, and agency-designated rates for other positions.

Retention Register:  A list of employees in retention standing order by tenure group and veteran subgroup who are assigned to positions in a competitive level.

Retention Standing:  An employee's relative standing on a retention register based on tenure, veterans preference, and length of service augmented by performance credit.

Retreat Rights:  The regulatory or administratively-determined right of a competitive or excepted service tenure group I or II employee reached for release from his/her competitive level to displace another employee in another competitive level with lower retention

AL-DOA-07824

standing in the same tenure group or veteran subgroup when the position is the same as, or essentially identical to, one previously held by the retreating employee in any Federal agency on a permanent basis.

Rounds of Competition:  The different stages of competing for retention.  In the first round of competition, employees compete to stay in the competitive level.  In the second round of competition, employees with assignment rights (bump/retreat) compete for assignment to positions in different competitive levels.

Service Computation Date (SCD):  The constructed date that reflects an employee's total creditable Federal service.  The length of active Military Service is creditable only if the employee meets the requirements of a "preference eligible" for RIF purposes.

Subgroup Standing:  The employee's relative standing on a retention register based on tenure group and veterans preference subgroup.  It does not take into account length of service and performance credit.

Tenure:  The period of time an employee may reasonably expect to serve under a current appointment.

Tenure Groups (Competitive Service):

    Group I - Career employees who are not serving the 1-year probationary period for appointment to a competitive position.  The fact that an employee is serving the 1-year probationary period for new supervisors and managers does not affect the tenure group of the employee's appointment for RIF purposes.

    Group II - Career-conditional employees and career employees serving a new 1-year probationary period for appointment from a U.S. OPM or DEU certificate of eligibles.


    Group III - Employees serving under indefinite appointment, temporary appointment pending establishment of a register (TAPER), term appointment, status quo appointment or any other nonstatus, nonpermanent appointment.  An employee serving under a temporary-limited appointment is not in tenure group III and is not a competing employee.

Tenure Groups (Excepted Service):

    Group I - Permanent employees whose appointments carry no restriction or condition such as conditional, indefinite, specific time limit, or trial period.

    Group II - Employees who are serving a trial period or whose tenure is equivalent to a career-conditional appointment in the competitive service.

AL-DOA-07825

Group III - Employees whose tenure is indefinite (i.e., without specific time limit) but not actually or potentially permanent, or whose appointments have a specific time limitation of more than one year; or who are currently under a temporary appointment limited to one year but have completed one year of current continuous service. An employee serving under such a temporary appointment who does not have one year of current continuous service is not in tenure group III and is not a competing employee. Such temporary employees who have served one year or more of continuous service can be released on their NTE date without invoking RIF regulations; RIF only comes into play when their NTE date is cut short.

Undue Interruption: The degree of interruption that would prevent the completion of required work within the allowable limits of time and quality, taking into account the pressures of priorities, deadlines, and other demands. A work program probably would be unduly interrupted if an employee needed more than ninety days after the reduction in force to successfully perform the essential duties of a position. Assignments to lower priority programs or vacant positions might tolerate a longer interruption. Undue interruption may be said to occur to an organization or job when a new incumbent does not possess the special skills, work processes or procedures knowledge, or personal attributes, such as ability to meet and deal with others, that are necessary to competently perform the job without delaying or impeding efficient and effective work accomplishment. A lack of skills or abilities that can be quickly acquired does not constitute undue interruption.

Veterans Preference Subgroups: Within each of the three tenure groups on a retention register, employees are listed by veterans preference subgroups. These subgroups are the same for both the competitive and excepted services. The subgroups are as follows:

Subgroup AD - Preference eligible employees who have a compensable service-connected disability of 30 percent or more (CPS).

Subgroup A - Preference eligible employees who are not in subgroup AD (CP, XP, TP).

Subgroup B - Employees who are not entitled to veterans preference (NV).

AL-DOA-07826

Appendix I

## RIF COMPETITION SUMMARY

Employees first compete to remain in their competitive level.

Round 1: Employees to be released from their competitive level are identified. In the normal order of release, no employee is released from his/her competitive level unless everyone below him/her on the retention register is released.

Round 2: Employees released in Round 1 are assigned to available positions in another competitive level in the same competitive area by bump or retreat.

BUMP = displacement of employees in lower tenure group or veteran subgroup (no more than 3 grades or grade intervals below employee's current grade)

I-AD (can bump employees in all other subgroups because I-AD is the highest subgroup; cannot bump another I-AD)

I-A (can bump a I-B or anyone in II or III, but not another IA)

I-B (can bump employees in groups II and III because they are lower, but not another I-B)

II-AD
II-A
II-B
III

RETREAT = displacement of another employee in same tenure & veterans subgroup with a later SCD (Tenure group III employees cannot retreat.)

-must be essentially identical to position employee previously held on a permanent basis in any agency

-AD's (CPS's--30% or more disabled veterans) can retreat 5 grade levels or intervals rather than the usual 3

AL-DOA-07827



**FDIC**

FEDERAL DEPOSIT INSURANCE CORPORATION

# DIRECTIVE SYSTEM

| TYPE AND NUMBER | |
|---|---|
| Circular 2100.4, CH-3 | |
| CONTACT | TELEPHONE NUMBER |
| Joy R. Crosser | (703) 562-2158 |
| DATE | |
| February 24, 2003 | |
| DATE OF CANCELLATION *(Bulletins Only)* | |

**TO**:                          All Employees

**FROM**:                      Arleas Upton Kea
                                    Director, Division of Administration

**SUBJECT**:                <u>Corporate Reduction in Force Policy</u>

---

**1. Purpose**              To transmit changes to the basic FDIC Circular 2100.4,
                                    Corporate Reduction in Force Policy, dated December 23, 1996.

---

**2. Change Information**   Section II-6., Crediting Performance, has been rewritten to reflect
                                    the treatment of performance when there are different summary
                                    rating patterns. This change cancels and supercedes the
                                    changes in FDIC Circular 2100.4, CH-2 dated December 12,
                                    2001, and 2100.4, CH-1, dated July 24, 1998, and replaces
                                    Subchapter II-6 in FDIC Circular 2100.4, dated December 23,
                                    1996.

---

**3. Action**                Remove and insert pages as follows from the original Circular
                                    2100.4:

| <u>Remove pages</u> | <u>Insert pages</u> |
|---|---|
| 11 through 12 | 11 through 12b |

---

**4. Filing Instructions**  File this change transmittal in front of FDIC Circular 2100.4,
                                    CH-2, dated December 12, 2001, FDIC Circular 2100.4,
                                    CH-1, dated July 24, 1998, and the basic FDIC Circular 2100.4,
                                    dated December 23, 1996.

---

AL-DOA-07828

## II-6. Crediting Performance

\*                                                                      \*

Additional service credit for performance will be assigned in accordance with U.S. OPM's Reduction in Force regulations.  Regardless of whether the employee's service occurred in the FDIC or a former agency, the employee's actual ratings of record are used to the extent that they are available.

### Official Rating of Record

Rating of record means the performance rating prepared at the end of an appraisal period for performance of agency-assigned duties over the entire period and the assignment of a summary rating.  For employees of the FDIC and other agencies and organizations not subject to 5 USC Chapter 43 or 5 CFR Part 430, Performance Management, it means the officially designated performance rating, as provided for in the agency's appraisal system, that is considered to be an equivalent rating of record. To be considered an equivalent rating of record, the appraisal must have been issued as an officially designated performance evaluation under the employing agency's performance evaluation system, have been derived from the appraisal of performance against expectations that are established and communicated in advance and be work-related, and identified whether the employee performed acceptably.

### FDIC Appraisals

Performance evaluations issued under the corporate performance appraisal system are equivalent ratings of record for reduction in force purposes. These ratings will be used to calculate additional service credit.

### Other Agency Appraisals

Ratings of record received from Federal Agencies covered by U.S. OPM's 5 CFR Part 430, Performance Management, regulations and those from agencies of organizations not subject to these regulations, which are determined by the FDIC when conducting the reduction in force to be equivalent ratings of record, shall be used to grant additional service credit.

### Basis for Credit

An employee's entitlement to additional service credit for performance is based on the average of the employee's three most recent ratings of record received during the 4-year period prior to either the date the agency issues specific RIF notices or an agency-established cut-off date a specific number of days prior to the issuance of RIF notices.

---

AL-DOA-07829

## Cut-off Date for Appraisals

FDIC will use a cut-off date 30 calendar days prior to the issuance of specific RIF notices to allow HRB time to establish retention registers; after such date, no new ratings of record will be put on record and used for RIF purposes.

## Ratings on Record

To be creditable for reduction in force purposes, ratings must have been issued to the employee with all appropriate reviews and signatures and must also be on record, i.e., available to DOA's Human Resources Branch (HRB) in order to prepare retention registers. For FDIC performance appraisals, the ratings must be final and submitted to the servicing HRB for retention in the Employee Performance File (EPF). For ratings from prior agencies, the appraisals must be available in the employee's personnel records; if they are not available, HRB will give the employee the opportunity to provide them. The actual appraisal or a duplicate must be provided. Certified statements will not be accepted.

Only official ratings of record may be used. All performance appraisals that are due will be prepared to be considered in the RIF analysis. However, ratings of record may not be prepared retroactively to cover periods for which no appraisal is available. This means that ratings of record must be completed and communicated to an employee before the next rating is due. A rating cannot be prepared for a prior rating period at the same time a subsequent rating is due. An employee may not be assigned a new rating of record for the sole purpose of affecting his or her retention standing.

## Effective Date of Rating

The effective date of the rating of record is the ending date of the applicable appraisal period. This date will be used to determine whether or not a rating of record falls within the 4-year "lookback" period for crediting performance for RIF retention.

**Credit for Ratings**

Credit is expressed in additional years of service and is based on actual earned ratings.  The additional years of service credited will be the average (mean) of the years credited for each summary rating of the three most recent in the look back window period, rounded in the case of a fraction to the next higher whole number.  In computing this average, the value assigned depends on the performance summary rating system in place, and if there are multiple summary rating patterns among the appraisals being considered in the 4-year period before the RIF date.

"Multiple summary rating patterns" means that within one competitive area, ratings include a mix of pass/fail and 3-, 4-, or 5-level summary rating appraisals.  For example, FDIC had a 5-level system in 1999 and pass/fail systems during 2000 through 2002.  If one member of a competitive area had to rely on that 1999 5-level rating, the competitive area would be considered under a multiple summary rating pattern.  Also, if an employee was hired from another agency and brought a rating from 2001 that was a 5-level rating, that would create a multiple summary rating pattern even if all the FDIC ratings in the competitive area were pass/fail.

When there is just one pattern among the appraisals in a competitive area, performance will be credited as follows:

(1)  Twenty (20) years for each summary rating of Outstanding or equivalent.

(2)  Sixteen (16) years for each summary rating of Superior, Exceeds Fully Successful, or equivalent.

(3)  Twelve (12) years for each summary rating of Fully Successful or equivalent.  A summary rating of Pass under a Pass/Fail system would be valued at twelve years.

As an example of establishing the average years discussed above, an employee with an Outstanding (20) and two Fully Successful (12) ratings would have those three ratings added together [20+12+12=44] and divided by 3, equaling 14.6, which is rounded up to 15 years of service credit based on performance.

A summary numeric rating system, such as the system in place at the FDIC during performance years 2000 and 2001 for bargaining unit members, is considered pass/fail.

When there are multiple summary rating patterns among the appraisals being used for service credit in any one competitive area, all summary ratings equivalent to Fully Successful or above, Pass, and summary

**AL-DOA-07831**

numeric scores of 2.0 and above, will receive credit for twenty
additional years of service.

Summary numeric rating scores below 2.0 or below the Fully
Successful/Meets Expectations/Pass level will receive no additional
credit.

## Missing Ratings

An employee who has received at least one but fewer than three previous
ratings of record during the 4-year "lookback" period for crediting
performance shall receive credit based on the value of the actual
ratings of record divided by the number of actual ratings received.  If
an employee has received only two actual ratings of record during the
period, the value of the ratings is added together and divided by two
(and rounded to the next higher whole number in the case of a fraction).
If an employee has received only one actual rating of record during the
period, its value is the amount of additional retention service credit
provided.

## Modal Rating

An employee who has received **no** actual ratings of record during the 4-
year "lookback" period will receive credit for performance based on the
modal rating for the summary level pattern that applies to the
employee's official position of record at the time of the reduction in
force.  The modal rating is the summary rating assigned most frequently
to FDIC employees in the RIF competitive area under FDIC's appraisal
system among ratings on record for the most recently completed appraisal
period prior to the RIF cut-off date for appraisals.

## Assignment Rights

Employees who currently have summary ratings below Meets
Expectations/Pass or an equivalent level forfeit their right of
assignment under RIF.

## Consistency

These policies for crediting performance will be applied uniformly and
consistently.
*                                                                        *

AL-DOA-07832