# EXHIBIT 28

**(Expert Report of Lance Seberhagen)**

*Aliotta v. FDIC*

# REBUTTAL TO DR. JEANNERET'S REPORT AND ADVERSE IMPACT ANALYSIS

October 15, 2007

Lance Seberhagen, Ph.D.
Seberhagen & Associates
9021 Trailridge Court
Vienna, VA 22182
703-790-0796

*Aliotta v. FDIC*

# REBUTTAL TO DR. JEANNERET'S REPORT
# AND ADVERSE IMPACT ANALYSIS

## Background

Plaintiffs filed charges of employment discrimination on the basis of age against the Federal Deposit Insurance Corporation (FDIC) under the Age Discrimination in Employment Act (ADEA). The complaint specifically charged that the FDIC's 2005 reduction-in-force (RIF) discriminated against employees age 50-up in the FDIC's Division of Resolutions and Receiverships (DRR). The FDIC retained the services of Dr. P.R. Jeanneret to review and respond to the plaintiff's complaint, using his expertise as an industrial and organizational psychologist.

## Objective

Mr. David Rose, attorney for Plaintiffs, asked me to critique Dr. Jeanneret's report and to estimate the adverse impact of the 2005 RIF on the basis of age. Mr. Rose asked me to focus on employee separations, rather than other types of employment actions that may have harmed employees. Mr. Rose asked me to estimate the adverse impact of the 2005 RIF on the basis of the number of permanent employees Age Under 50 versus Age 50-up, as of January 1, 2005, and December 31, 2005, with appropriate adjustments for RIF-related separations. Mr. Rose asked me to use these employment totals to estimate the adverse impact of the 2005 RIF in DRR and total FDIC.

## Qualifications

I have a Ph.D. in industrial and organizational psychology from the University of Minnesota and over 35 years of professional experience in the field of employee selection, job analysis, position classification, job evaluation, and equal employment opportunity. Statistical analysis was a major part of my professional training, and I use statistical analysis as a regular part of my work. A copy of my resume is attached to my report. My fee for working on this case is $275 per hour, plus expenses.

# CRITIQUE OF DR. JEANNERET'S REPORT

Dr. Jeanneret reviewed case documents, interviewed four individuals (whose relevance was not defined), and reviewed various FDIC documents and descriptive statistics. On the basis of this information, Dr. Jeanneret said he could find no evidence of systemic age discrimination at the FDIC.

My primary criticism of Dr. Jeanneret's report is that he did not conduct an adverse impact analysis to see if the 2005 RIF had an adverse impact against the class of permanent employees who were Age 50-up. Dr. Jeanneret looked at the average age

of DRR employees before and after the 2005 RIF but did not define his sample of employees precisely enough to permit replication of his "study" and performed no tests of statistical significance to evaluate the observed differences in average ages. In any event, a comparison of average ages is not a proper adverse impact analysis. Dr. Jeanneret should have analyzed the 2005 RIF separation rates of permanent employees who were Age Under 50 versus Age 50-up to see if there was a substantially different rate of selection, as shown by appropriate statistical tests.

Dr. Jeanneret's also failed to describe and evaluate the FDIC's method for determining each employee's "retention standing." Dr. Jeanneret did not analyze these ratings to see if they had an adverse impact on the basis of age (i.e., Age Under 50 vs. Age 50-up). Nor did Dr. Jeanneret review FDIC documents to see if these rating procedures provided reliable and valid ratings of an employee's actual retention value to the organization.

## ADVERSE IMPACT ANALYSIS

As requested by Mr. Rose, I conducted an adverse impact analysis, as described below.

### Employee Sample – 2005 Data

Mr. Rose provided an electronic file to me containing PERHIS-2005 data for FDIC employees. This file contained all employees who were employed at FDIC during 2005. Mr. Rose also provided a key for the PERHIS code numbers used in the data file, and I looked up additional code numbers in the NFC Procedures Manual for the Information/Research Inquiry System, August 2007. The data file contained a spreadsheet with a separate line (record) of data for each personnel "action" (e.g., appointment, separation, award, merit increase) for a given employee during 2005. Each employee typically had more than one "action" during the year. The file contained 17,234 records for 31 variables, including the following relevant variables:

- EMPLAID (employee ID number)
- Birth Date
- Hire Date
- Effective Date
- Nature of Action
- Type of Appointment
- Pay Plan
- Series
- Grade
- Position Title
- Org2 (Division)

*Aliotta v. FDIC*

## Method

1. The data file contained multiple records for each employee. I used the employee ID number (EMPLAID) to identify each unique employee to provide a basis for my employee headcounts.

2. I selected only those employees who had a Type of Appointment with code = 1 (competitive-career, SES career) or code = 2 (competitive-career conditional) to limit the analysis only to regular, permanent employees.

3. I identified all employees whose hiring date was prior to 1/1/05 and calculated their age as of 1/1/05. This group represents FDIC employees as of 1/1/05.

4. I identified all employees whose hiring date was on or before 12/31/05 and calculated their age as of 12/31/05. From this group, I deleted all employees with separation codes likely to include employees directly affected by the 2005 Reduction-in-Force, including any type of separation that had a relatively high frequency on or about May 5, 2005 (buyout date) or September 3, 2005 (RIF date). These separation codes included:

   - 302 – Retirement-voluntary
   - 303 – Retirement-special option
   - 304 – Retirement-ILIA (In-Lieu-of-Involuntary Action)
   - 312 – Resignation-ILIA (In-Lieu-of-Involuntary Action)
   - 317 – Resignation
   - 352 – Term-appointment In
   - 356 – Term-involuntary

5. Using the procedure in Step 4, I counted the number of employees by age (Age Under 50 and Age 50-up), as of 1/1/05 and 12/31/05, in each of the following work units:

   - Div 15 – Corporate University
   - Div 35 – Division of Administration
   - Div 51 – Division of Information Technology
   - Div 52 – Division of Finance
   - Div 53 – Division of Insurance and Research
   - Div 65 – Division of Resolutions and Receivership
   - Div 70 – Division of Supervision and Consumer Protection
   - FDIC Total (includes above divisions plus other work units)

6. Using the results from Step 5, I analyzed the adverse impact of the 2005 RIF in the two work units requested by Mr. Rose: Division of Resolutions and Receivership (DRR) and total FDIC, based on the number of employees as of 1/1/05 and 12/31/05.

*Aliotta v. FDIC*

7.  As defined by the *Uniform Guidelines on Employee Selection Procedures* (29 CFR 1607), "adverse impact" is a substantially different rate of selection that works to the disadvantage of members of a protected group.[1]  In the case of selection for termination (e.g., reduction-in-force), "adverse discriminatory impact" generally exists when two standards are met.  First, the selection rate of one group must be greater than 125.0 percent of the selection rate of another group, according to the "125% Rule" used in the *Uniform Guidelines*.[2]  Second, the difference in selection rates between groups must be statistically significant at the .05 level, as shown by an appropriate test of statistical significance, such as Fisher's Exact Test.   The 125% Rule ensures that the differences between groups are large enough to have practical significance.  The statistical significance test ensures that the differences between groups are reliable, with a two-tailed, chance probability of not more than 5.0 percent.  I used Fisher's Exact Test as my statistical significance test because it provides accurate probability estimates for both large and small samples, regardless of the distribution of the data.

8.  At the request of Mr. Rose, I also calculated the difference between groups in standard deviation units, using a z-test for two independent proportions.   A difference of 1.96 standard deviations indicates a statistically significant difference, with a two-tailed, chance probability of 5.0 percent.  However, the courts sometimes require "two or three standard deviations" to indicate adverse discriminatory impact.

9.  I provided some additional tables to provide perspective:

    - 2005 New Hires by Appointment Type
    - 2005 New Hires by Pay Grade (Any Appointment Type)
    - 2005 New Hires by Organization
    - 2005 Separations by Age – FDIC Total
    - 2005 Separations by Age – Corporate University
    - 2005 Separations by Age – Division of Administration
    - 2005 Separations by Age – Division of Information Technology
    - 2005 Separations by Age – Division of Finance
    - 2005 Separations by Age – Division of Insurance and Research
    - 2005 Separations by Age – Division of Resolutions and Receivership
    - 2005 Separations by Age – Division of Supervision and Consumer Protection
    - 2005 Separations by Organization

---

[1]  The Uniform Guidelines do not specifically apply to age discrimination but provide general guidance in the area of employment discrimination.

[2]  The Uniform Guidelines uses the "80% Rule" as a rule of thumb to compare selection rates for positive selection decisions (e.g., hiring, promotion).  When one is comparing selection rates for negative selection decisions (e.g., layoff, termination), the comparable rule of thumb would be the "125% Rule."

Seberhagen Report, 10/15/07                                                      *Aliotta v. FDIC*

## Findings

All tables are provided at the end of the narrative report.

Tables 1-8 show the count of permanent employees for the seven largest divisions and total FDIC, as of 1/1/05 and 12/31/05. FDIC conducted a major RIF during 2005. Thus, the totals for 12/31/05 are usually smaller than the totals for 1/1/05.

Tables 9-10 show the results of the adverse impact analysis for DRR and total FDIC.

Table 11 shows the new hires by appointment type at FDIC in 2005. Table 12 shows the new hires by pay grade at FDIC in 2005.  Table 13 shows the new hires by organization at FDIC in 2005.

Tables 14-22 show the 2005 separations by division and total FDIC for permanent employees.  There was no separation code for the RIF.  Therefore, one can only estimate the number of employees affected by the RIF from the available separation codes, as noted in Tables 14-21.

## Conclusions

My adverse impact analysis found that the 2005 RIF had an adverse discriminatory impact for permanent employees Age 50-up (versus Age Under 50) in the Division of Resolutions and Receivership (DRR) and in the Total FDIC.

For permanent employees in DRR (see Table 9), the RIF had an adverse discriminatory impact for permanent employees Age 50-up, compared to permanent employees Under Age 50.  The separation rate of permanent employees Age 50-up (47.0%) was 147.3% of the separation rate of permanent employees Under Age 50 (31.9%).  Thus, the separation rate of permanent employees Age 50-up was greater than the 125% "rule of thumb" in the Uniform Guidelines.  The difference in separation rates for permanent employees Age Under 50 versus Age 50-up was also statistically significant, with a chance probability of 0.33 percent, or a difference of 3.04 standard deviations.

For permanent employees in DRR (see Table 10), the RIF had an adverse discriminatory impact for permanent employees Age 50-up, compared to permanent employees Under Age 50.  The separation rate of permanent employees Age 50-up (18.7%) was 296.8% of the separation rate of permanent employees Under Age 50 (6.3%).  Thus, the separation rate of permanent employees Age 50-up was greater than the 125% "rule of thumb" in the Uniform Guidelines.  The difference in separation rates for permanent employees Age Under 50 versus Age 50-up was also statistically significant, with a chance probability of less than 0.01 percent, or a difference of 12.44 standard deviations.

Seberhagen Report, 10/15/07                                          *Aliotta v. FDIC*

I also found that the FDIC hired 206 employees in 2005, the same year as the 2005 RIF. Of these new hires, 91.7% were Age Under 40 and 8.3% were Age 50-up. The great majority of these new hires were non-career appointments (e.g., interns and trainees) at Grade 7 or lower, assigned primarily to: Corporate University, Division of Supervision and Consumer Protection, Division of Administration, and Division of Insurance and Research.

Seberhagen Report, 10/15/07                                                    *Aliotta v. FDIC*

**Table 1**
**Employment - Corporate University***

| Date | Age Under 50 | | Age 50-up | | Total | |
|------|---|---|---|---|---|---|
| | N | Pct | N | Pct | N | Pct |
| 01/01/05 | 31 | 54.4% | 26 | 45.6% | 57 | 100.0% |
| 12/31/05** | 31 | 52.5% | 28 | 47.5% | 59 | 100.0% |

\* Competitive-career and competitive-career conditional appointments only.
\*\* Employed during 2005 minus employees with separation codes 302, 303, 304, 312, 317, 352, & 356.

**Table 2**
**Employment - Division of Administration***

| Date | Age Under 50 | | Age 50-up | | Total | |
|------|---|---|---|---|---|---|
| | N | Pct | N | Pct | N | Pct |
| 01/01/05 | 209 | 51.1% | 200 | 48.9% | 409 | 100.0% |
| 12/31/05** | 192 | 53.9% | 164 | 46.1% | 356 | 100.0% |

\* Competitive-career and competitive-career conditional appointments only.
\*\* Employed during 2005 minus employees with separation codes 302, 303, 304, 312, 317, 352, & 356.

**Table 3**
**Employment - Division of Information Technology***

| Date | Age Under 50 | | Age 50-up | | Total | |
|------|---|---|---|---|---|---|
| | N | Pct | N | Pct | N | Pct |
| 01/01/05 | 190 | 50.0% | 190 | 50.0% | 380 | 100.0% |
| 12/31/05** | 155 | 57.2% | 116 | 42.8% | 271 | 100.0% |

\* Competitive-career and competitive-career conditional appointments only.
\*\* Employed during 2005 minus employees with separation codes 302, 303, 304, 312, 317, 352, & 356.

**Table 4**
**Employment - Division of Finance***

| Date | Age Under 50 | | Age 50-up | | Total | |
|------|---|---|---|---|---|---|
| | N | Pct | N | Pct | N | Pct |
| 01/01/05 | 107 | 55.2% | 87 | 44.8% | 194 | 100.0% |
| 12/31/05** | 105 | 60.3% | 69 | 39.7% | 174 | 100.0% |

\* Competitive-career and competitive-career conditional appointments only.
\*\* Employed during 2005 minus employees with separation codes 302, 303, 304, 312, 317, 352, & 356.

**Table 5**
**Employment - Division of Insurance and Research***

| Date | Age Under 50 | | Age 50-up | | Total | |
|------|---|---|---|---|---|---|
| | N | Pct | N | Pct | N | Pct |
| 01/01/05 | 108 | 62.1% | 66 | 37.9% | 174 | 100.0% |
| 12/31/05** | 115 | 68.0% | 54 | 32.0% | 169 | 100.0% |

\* Competitive-career and competitive-career conditional appointments only.
\*\* Employed during 2005 minus employees with separation codes 302, 303, 304, 312, 317, 352, & 356.

Seberhagen Report, 10/15/07    *Aliotta v. FDIC*

## Table 6
## Employment - Division of Resolutions and Receivership*

| Date | Age Under 50 | | Age 50-up | | Total | |
|------|------|------|------|------|------|------|
| | N | Pct | N | Pct | N | Pct |
| 01/01/05 | 138 | 32.9% | 281 | 67.1% | 419 | 100.0% |
| 12/31/05** | 94 | 38.7% | 149 | 61.3% | 243 | 100.0% |

\* Competitive-career and competitive-career conditional appointments only.
\*\* Employed during 2005 minus employees with separation codes 302, 303, 304, 312, 317, 352, & 356.


## Table 7
## Employment - Division of Supervision and Consumer Protection*

| Date | Age Under 50 | | Age 50-up | | Total | |
|------|------|------|------|------|------|------|
| | N | Pct | N | Pct | N | Pct |
| 01/01/05 | 1,777 | 67.6% | 853 | 32.4% | 2630 | 100.0% |
| 12/31/05** | 1,706 | 67.8% | 809 | 32.2% | 2515 | 100.0% |

\* Competitive-career and competitive-career conditional appointments only.
\*\* Employed during 2005 minus employees with separation codes 302, 303, 304, 312, 317, 352, & 356.


## Table 8
## Employment - FDIC Total*

| Date | Under 50 | | Age 50-up | | Total | |
|------|------|------|------|------|------|------|
| | N | Pct | N | Pct | N | Pct |
| 01/01/05 | 2804 | 59.2% | 1931 | 40.8% | 4735 | 100.0% |
| 12/31/05** | 2628 | 62.6% | 1570 | 37.4% | 4198 | 100.0% |

\* Competitive-career and competitive-career conditional appointments only.  Includes all work units.
\*\* Employed during 2005 minus employees with separation codes 302, 303, 304, 312, 317, 352, & 356.

**Table 9**
**Impact Analysis - Division of Resolutions and Receivership**

| Group | 1/1/05 Employment | | Separations | | 12/31/05 Employment | | 125% Rule | Fisher's Exact Test | Diff in Std Dev (z-Test) |
|---|---|---|---|---|---|---|---|---|---|
| | N | Pct | N | Pct | N | Pct | | | |
| Age Under 50 | 138 | 100.0% | 44 | 31.9% | 94 | 68.1% | | | |
| Age 50-up | 281 | 100.0% | 132 | 47.0% | 149 | 53.0% | 147.3%* | FS = 8.71 Prob = 0.33% | 3.04 |
| Total | 419 | 100.0% | 176 | 42.0% | 243 | 58.0% | | | |

SOURCE:  Table 6 above.  Competitive-career and competitive-career conditional appointments only.
*  Comparison of separation rates = 47.0/31.9 = 147.3.   Significant if greater than 125.0.
FS = Fisher's statistic.
Prob = Chance probability.  Significant if 5.00% or less.
Diff in Std Dev = Difference in Standard Deviations.  Significant if greater than 2.00.
CONCLUSION = Adverse discriminatory impact for Age 50-up.


**Table 10**
**Impact Analysis – FDIC Total**

| Group | 1/1/05 Employment | | Separations | | 12/31/05 Employment | | 125% Rule | Fisher's Exact Test | Diff in Std Dev (z-Test) |
|---|---|---|---|---|---|---|---|---|---|
| | N | Pct | N | Pct | N | Pct | | | |
| Age Under 50 | 2804 | 100.0% | 176 | 6.3% | 2628 | 93.7% | | | |
| Age 50-up | 1931 | 100.0% | 361 | 18.7% | 1570 | 81.3% | 296.8%* | FS = 172.59 Prob < 0.01% | 12.44 |
| Total | 4735 | 100.0% | 537 | 11.3% | 4198 | 88.7% | | | |

SOURCE:  Table 8 above.  Competitive-career and competitive-career conditional appointments only.
*  Comparison of separation rates = 18.7/6.3 = 296.8.  Significant if greater than 125.0.
FS = Fisher's statistic.
Prob = Chance probability.  Significant if 5.00% or less.
Diff in Std Dev = Difference in Standard Deviations.  Significant if greater than 2.00.
CONCLUSION = Adverse discriminatory impact for Age 50-up.   .

**Table 11**
**2005 New Hires by Appointment Type**

| Appointment Type | Under 50 N | Under 50 Pct | Age 50-up N | Age 50-up Pct | Total N | Total Pct |
|---|---|---|---|---|---|---|
| Competitive – career, SES career | 16 | 72.7% | 6 | 27.3% | 22 | 100.0% |
| Competitive – career conditional | 12 | 92.3% | 1 | 7.7% | 13 | 100.0% |
| Competitive, term, TAPER, Indefinite, SES-military term, emergency | 6 | 85.7% | 1 | 14.3% | 7 | 100.0% |
| Competitive temp, SES time limited career, special need | | | | | | |
| Excepted – permanent | 3 | 75.0% | 1 | 25.0% | 4 | 100.0% |
| Excepted – conditional | 29 | 100.0% | | | 29 | 100.0% |
| Excepted indefinite, excepted limited (more than 1 yr), special appointments | 54 | 87.1% | 8 | 12.9% | 62 | 100.0% |
| Excepted temp (e.g., interns), SES time limited noncareer | 69 | 100.0% | | | 69 | 100.0% |
| Total | 189 | 91.7% | 17 | 8.3% | 206 | 100.0% |

**Table 12**
**FDIC 2005 New Hires by Pay Grade (Any Appointment Type)**

| Pay Grade | Under 50 N | Under 50 Pct | Age 50-up N | Age 50-up Pct | Total N | Total Pct |
|---|---|---|---|---|---|---|
| Grade 0 | 3 | 100.0% | | | 3 | 100.0% |
| Grade 1 | 1 | 100.0% | | | 1 | 100.0% |
| Grade 2 | 2 | 100.0% | | | 2 | 100.0% |
| Grade 3 | 17 | 100.0% | | | 17 | 100.0% |
| Grade 4 | 58 | 98.3% | 1 | 1.7% | 59 | 100.0% |
| Grade 5 | 9 | 100.0% | | | 9 | 100.0% |
| Grade 6 | 1 | 50.0% | 1 | 50.0% | 2 | 100.0% |
| Grade 7 | 56 | 88.8% | 7 | 11.1% | 63 | 100.0% |
| Grade 8 | | | | | | |
| Grade 9 | 14 | 87.5% | 2 | 12.5% | 16 | 100.0% |
| Grade 10 | | | | | | |
| Grade 11 | 3 | 100.0% | | | 3 | 100.0% |
| Grade 12 | 11 | 91.7% | 1 | 8.3% | 12 | 100.0% |
| Grade 13 | 4 | 80.0% | 1 | 20.0% | 5 | 100.0% |
| Grade 14 | 6 | 66.7% | 3 | 33.3% | 9 | 100.0% |
| Grade 15 | 4 | 80.0% | 1 | 20.0% | 5 | 100.0% |
| Total | 189 | 91.7% | 17 | 8.3% | 206 | 100.0% |

Seberhagen Report, 10/9/07                                                  *Aliotta v. FDIC*

**Table 13**
**FDIC 2005 New Hires by Organization**

| Organization | Under 50 | | Age 50-up | | Total | |
|---|---|---|---|---|---|---|
| | N | Pct | N | Pct | N | Pct |
| 05 – Office of Chairman | | | | | | |
| 10 – Executive Offices | 1 | 50.0% | 1 | 50.0% | 2 | 100.0% |
| 11 – Deputy to Chairman Chief Op Officer | | | | | | |
| 13 – Chief Financial Officer | | | | | | |
| 14 – Legislative Affairs | | | | | | |
| 15 – Corporate University | 52 | 83.9% | 10 | 16.1% | 62 | 100.0% |
| 16 – Public Affairs | 1 | 100.0% | | | 1 | 100.0% |
| 17 – Ombudsman | 1 | 100.0% | | | 1 | 100.0% |
| 18 – Diversity & Economic Opportunity | 3 | 100.0% | | | 3 | 100.0% |
| 19 – International Affairs | | | | | | |
| 25 – Enterprise Risk Management | 1 | 100.0% | | | 1 | 100.0% |
| 35 – Administration Div | 24 | 100.0% | | | 24 | 100.0% |
| 40 – Inspector General | 4 | 100.0% | | | 4 | 100.0% |
| 51 – Information Technology Div | 9 | 81.8% | 2 | 18.2% | 11 | 100.0% |
| 52 – Finance Div | 7 | 100.0% | | | 7 | 100.0% |
| 53 – Insurance & Research Div | 22 | 100.0% | | | 22 | 100.0% |
| 65 – Resolutions & Receivership Div | 3 | 60.0% | 2 | 40.0% | 5 | 100.0% |
| 70 – Supervision & Cons Protect Div | 46 | 95.8% | 2 | 4.2% | 48 | 100.0% |
| 81 – Legal Div | 15 | 100.0% | | | 15 | 100.0% |
| Total | 189 | 91.7% | 17 | 8.3% | 206 | 100.0% |

Seberhagen Report, 10/9/07                                    *Aliotta v. FDIC*

**Table 14**
**2005 Separations by Age – FDIC Total***

| Separation Code | Under 50 | | Age 50-up | | Total | |
|---|---|---|---|---|---|---|
| | N | Pct | N | Pct | N | Pct |
| 300 | | | | | | |
| 301 | 1 | 12.5% | 7 | 87.5% | 8 | 100.0% |
| 302** | | | 196 | 100.0% | 196 | 100.0% |
| 303** | 13 | 10.4% | 112 | 89.6% | 125 | 100.0% |
| 304** | | | 6 | 100.0% | 6 | 100.0% |
| 312** | 2 | 100.0% | | | 2 | 100.0% |
| 317** | 96 | 84.2% | 18 | 15.8% | 114 | 100.0% |
| 330 | 3 | 60.0% | 2 | 40.0% | 5 | 100.0% |
| 350 | 1 | 12.5% | 7 | 87.5% | 8 | 100.0% |
| 352** | 60 | 77.9% | 17 | 22.1% | 77 | 100.0% |
| 355 | 3 | 60.0% | 2 | 40.0% | 5 | 100.0% |
| 356** | 30 | 63.8% | 17 | 36.2% | 47 | 100.0% |
| 357 | | | | | | |
| 385 | | | | | | |
| Total | 209 | 35.2% | 384 | 64.8% | 593 | 100.0% |

* Competitive-career and competitive-career conditional appointments only.
** Separation codes most likely to reflect 2005 Reduction-in-Force (RIF).

300 = Retirement - mandatory.
301 = Retirement - disability.
302 = Retirement - voluntary.
303 = Retirement-special option.
304 = Retirement-ILIA (in-lieu-of-involuntary-action).
312 = Resignation-ILIA (in-lieu-of-involuntary-action).
317 = Resignation.

330 = Removal.
350 = Death.
352 = Termination of appointment in FDIC
355 = Termination of appointment.
356 = Termination -involuntary.
357 = Termination.
385 = Term during probation/trial period.

*Aliotta v. FDIC*

**Table 15**
**2005 Separations by Age – Corporate University***

| Separation Code | Under 50 | | Age 50-up | | Total | |
|---|---|---|---|---|---|---|
| | N | Pct | N | Pct | N | Pct |
| 300 | | | | | | |
| 301 | | | | | | |
| 302** | | | | | | |
| 303** | | | | | | |
| 304** | | | | | | |
| 312** | | | | | | |
| 317** | | | | | | |
| 330 | | | | | | |
| 350 | | | | | | |
| 352** | | | | | | |
| 355 | 1 | 100.0% | | | 1 | 100.0% |
| 356** | | | | | | |
| 357 | | | | | | |
| 385 | | | | | | |
| Total | 1 | 100.0% | | | 1 | 100.0% |

* Competitive-career and competitive-career conditional appointments only.
** Separation codes most likely to reflect 2005 Reduction-in-Force (RIF).

300 = Retirement - mandatory.
301 = Retirement - disability.
302 = Retirement - voluntary.
303 = Retirement-special option.
304 = Retirement-ILIA (in-lieu-of-involuntary-action).
312 = Resignation-ILIA (in-lieu-of-involuntary-action).
317 = Resignation.

330 = Removal.
350 = Death.
352 = Termination of appointment in FDIC
355 = Termination of appointment.
356 = Termination -involuntary.
357 = Termination.
385 = Term during probation/trial period.

**Table 16**
**2005 Separations by Age – Division of Administration***

| Separation Code | Under 50 | | Age 50-up | | Total | |
|---|---|---|---|---|---|---|
| | N | Pct | N | Pct | N | Pct |
| 300 | | | | | | |
| 301 | | | 1 | 100.0% | 1 | 100.0% |
| 302** | | | 20 | 100.0% | 20 | 100.0% |
| 303** | | | 10 | 100.0% | 10 | 100.0% |
| 304** | | | | | | |
| 312** | | | | | | |
| 317** | 9 | 90.0% | 1 | 10.0% | 10 | 100.0% |
| 330 | | | | | | |
| 350 | | | | | 1 | 100.0% |
| 352** | 16 | 76.2% | 5 | 23.8% | 21 | 100.0% |
| 355 | | | | | | |
| 356** | | | | | | |
| 357 | | | | | | |
| 385 | | | | | | |
| Total | 26 | 41.3% | 37 | 58.7% | 63 | 100.0% |

\* Competitive-career and competitive-career conditional appointments only.
\*\* Separation codes most likely to reflect 2005 Reduction-in-Force (RIF).

300 = Retirement - mandatory.
301 = Retirement - disability.
302 = Retirement - voluntary.
303 = Retirement-special option.
304 = Retirement-ILIA (in-lieu-of-involuntary-action).
312 = Resignation-ILIA (in-lieu-of-involuntary-action).
317 = Resignation.

330 = Removal.
350 = Death.
352 = Termination of appointment in FDIC
355 = Termination of appointment.
356 = Termination -involuntary.
357 = Termination.
385 = Term during probation/trial period.

**Table 17**
**2005 Separations by Age – Division of Information Technology***

| Separation Code | Under 50 | | Age 50-up | | Total | |
|---|---|---|---|---|---|---|
| | N | Pct | N | Pct | N | Pct |
| 300 | | | | | | |
| 301 | | | 1 | 100.0% | 1 | 100.0% |
| 302** | | | 38 | 100.0% | 38 | 100.0% |
| 303** | 5 | 16.1% | 26 | 83.9% | 31 | 100.0% |
| 304** | | | | | | |
| 312** | | | | | | |
| 317** | 16 | 72.7% | 6 | 27.3% | 22 | 100.0% |
| 330 | | | | | | |
| 350 | | | 1 | 100.0% | 1 | 100.0% |
| 352** | 14 | 70.0% | 6 | 30.0% | 20 | 100.0% |
| 355 | | | | | | |
| 356** | | | | | | |
| 357 | | | | | | |
| 385 | | | | | | |
| Total | 35 | 31.0% | 78 | 69.0% | 113 | 100.0% |

* Competitive-career and competitive-career conditional appointments only.
** Separation codes most likely to reflect 2005 Reduction-in-Force (RIF).

| | |
|---|---|
| 300 = Retirement - mandatory. | 330 = Removal. |
| 301 = Retirement - disability. | 350 = Death. |
| 302 = Retirement - voluntary. | 352 = Termination of appointment in FDIC |
| 303 = Retirement-special option. | 355 = Termination of appointment. |
| 304 = Retirement-ILIA (in-lieu-of-involuntary-action). | 356 = Termination -involuntary. |
| 312 = Resignation-ILIA (in-lieu-of-involuntary-action). | 357 = Termination. |
| 317 = Resignation. | 385 = Term during probation/trial period. |

Seberhagen Report, 10/9/07                                                                          *Aliotta v. FDIC*

**Table 18**
**2005 Separations by Age – Division of Finance***

| Separation Code | Under 50 | | Age 50-up | | Total | |
|---|---|---|---|---|---|---|
| | N | Pct | N | Pct | N | Pct |
| 300 | | | | | | |
| 301 | | | | | | |
| 302** | | | 12 | 100.0% | 12 | 100.0% |
| 303** | | | 4 | 100.0% | 4 | 100.0% |
| 304** | | | | | | |
| 312** | | | | | | |
| 317** | | | | | | |
| 330 | | | | | | |
| 350 | | | | | | |
| 352** | 2 | 50.0% | 2 | 50.0% | 4 | 100.0% |
| 355 | | | | | | |
| 356** | | | | | | |
| 357 | | | | | | |
| 385 | | | | | | |
| Total | 2 | 10.0% | 18 | 90.0% | 20 | 100.0% |

* Competitive-career and competitive-career conditional appointments only.
** Separation codes most likely to reflect 2005 Reduction-in-Force (RIF).

300 = Retirement - mandatory.  
301 = Retirement - disability.  
302 = Retirement - voluntary.  
303 = Retirement-special option.  
304 = Retirement-ILIA (in-lieu-of-involuntary-action).  
312 = Resignation-ILIA (in-lieu-of-involuntary-action).  
317 = Resignation.  

330 = Removal.  
350 = Death.  
352 = Termination of appointment in FDIC  
355 = Termination of appointment.  
356 = Termination -involuntary.  
357 = Termination.  
385 = Term during probation/trial period.

Seberhagen Report, 10/9/07                                                                 *Aliotta v. FDIC*

**Table 19**
**2005 Separations by Age – Division of Insurance and Research***

| Separation Code | Under 50 | | Age 50-up | | Total | |
|---|---|---|---|---|---|---|
| | N | Pct | N | Pct | N | Pct |
| 300 | | | | | | |
| 301 | | | 1 | 100.0% | 1 | 100.0% |
| 302** | | | 9 | 100.0% | 9 | 100.0% |
| 303** | | | 3 | 100.0% | 3 | 100.0% |
| 304** | | | | | | |
| 312** | | | | | | |
| 317** | 1 | 100.0% | | | 1 | 100.0% |
| 330 | | | | | | |
| 350 | | | 1 | 100.0% | 1 | 100.0% |
| 352** | 2 | 100.0% | | | 2 | 100.0% |
| 355 | | | | | | |
| 356** | | | | | | |
| 357 | | | | | | |
| 385 | | | | | | |
| Total | 3 | 17.6% | 14 | 82.4% | 17 | 100.0% |

* Competitive-career and competitive-career conditional appointments only.
** Separation codes most likely to reflect 2005 Reduction-in-Force (RIF).

300 = Retirement - mandatory.
301 = Retirement - disability.
302 = Retirement - voluntary.
303 = Retirement-special option.
304 = Retirement-ILIA (in-lieu-of-involuntary-action).
312 = Resignation-ILIA (in-lieu-of-involuntary-action).
317 = Resignation.

330 = Removal.
350 = Death.
352 = Termination of appointment in FDIC
355 = Termination of appointment.
356 = Termination -involuntary.
357 = Termination.
385 = Term during probation/trial period.

*Aliotta v. FDIC*

**Table 20**
**2005 Separations by Age – Division of Resolutions and Receivership***

| Separation Code | Under 50 | | Age 50-up | | Total | |
|---|---|---|---|---|---|---|
| | N | Pct | N | Pct | N | Pct |
| 300 | | | | | | |
| 301 | | | 2 | 100.0% | 2 | 100.0% |
| 302** | | | 70 | 100.0% | 70 | 100.0% |
| 303** | 6 | 15.0% | 34 | 85.0% | 40 | 100.0% |
| 304** | | | 6 | 100.0% | 6 | 100.0% |
| 312** | 2 | 100.0% | | | 2 | 100.0% |
| 317** | 4 | 44.4% | 5 | 55.6% | 9 | 100.0% |
| 330 | | | 1 | 100.0% | 1 | 100.0% |
| 350 | | | | | | |
| 352** | 3 | 60.0% | 2 | 40.0% | 5 | 100.0% |
| 355 | | | | | | |
| 356** | 29 | 63.0% | 17 | 37.0% | 46 | 100.0% |
| 357 | | | | | | |
| 385 | | | | | | |
| Total | 44 | 24.3% | 137 | 75.7% | 181 | 100.0% |

* Competitive-career and competitive-career conditional appointments only.
** Separation codes most likely to reflect 2005 Reduction-in-Force (RIF).

| | |
|---|---|
| 300 = Retirement - mandatory. | 330 = Removal. |
| 301 = Retirement - disability. | 350 = Death. |
| 302 = Retirement - voluntary. | 352 = Termination of appointment in FDIC |
| 303 = Retirement-special option. | 355 = Termination of appointment. |
| 304 = Retirement-ILIA (in-lieu-of-involuntary-action). | 356 = Termination -involuntary. |
| 312 = Resignation-ILIA (in-lieu-of-involuntary-action). | 357 = Termination. |
| 317 = Resignation. | 385 = Term during probation/trial period. |

Seberhagen Report, 10/9/07                                    *Aliotta v. FDIC*

**Table 21**
**2005 Separations by Age – Division of Supervision and Consumer Protection***

| Separation Code | Under 50 | | Age 50-up | | Total | |
|---|---|---|---|---|---|---|
| | N | Pct | N | Pct | N | Pct |
| 300 | | | | | | |
| 301 | 1 | 33.3% | 2 | 66.7% | 3 | 100.0% |
| 302** | | | 22 | 100.0% | 22 | 100.0% |
| 303** | 2 | 11.1% | 16 | 88.9% | 18 | 100.0% |
| 304** | | | | | | |
| 312** | | | | | | |
| 317** | 58 | 92.1% | 5 | 7.9% | 63 | 100.0% |
| 330 | 2 | 66.7% | 1 | 33.3% | 3 | 100.0% |
| 350 | | | 5 | 100.0% | 5 | 100.0% |
| 352** | 16 | 88.8% | 2 | 11.1% | 18 | 100.0% |
| 355 | | | | | | |
| 356** | | | | | | |
| 357 | | | | | | |
| 385 | | | | | | |
| Total | 79 | 59.8% | 53 | 40.2% | 132 | 100.0% |

* Competitive-career and competitive-career conditional appointments only.
** Separation codes most likely to reflect 2005 Reduction-in-Force (RIF).

| | |
|---|---|
| 300 = Retirement - mandatory. | 330 = Removal. |
| 301 = Retirement - disability. | 350 = Death. |
| 302 = Retirement - voluntary. | 352 = Termination of appointment in FDIC |
| 303 = Retirement-special option. | 355 = Termination of appointment. |
| 304 = Retirement-ILIA (in-lieu-of-involuntary-action). | 356 = Termination -involuntary. |
| 312 = Resignation-ILIA (in-lieu-of-involuntary-action). | 357 = Termination. |
| 317 = Resignation. | 385 = Term during probation/trial period. |

Seberhagen Report, 10/9/07                                                                  *Aliotta v. FDIC*

**Table 22**
**2005 Separations by Organization***

| Organization | Under 50 | | Age 50-up | | Total | |
|---|---|---|---|---|---|---|
| | N | Pct | N | Pct | N | Pct |
| 05 – Office of Chairman | | | | | | |
| 10 – Executive Offices | | | 2 | 100.0% | 2 | 100.0% |
| 11 – Deputy to Chairman Chief Op Officer | | | | | | |
| 13 – Chief Financial Officer | 1 | 100.0% | | | 1 | 100.0% |
| 14 – Legislative Affairs | | | | | | 100.0% |
| 15 – Corporate University | 1 | 100.0% | | | 1 | 100.0% |
| 16 – Public Affairs | | | 2 | 100.0% | 2 | 100.0% |
| 17 – Ombudsman | | | 5 | 100.0% | 5 | 100.0% |
| 18 – Diversity & Economic Opportunity | 2 | 100.0% | | | 2 | 100.0% |
| 19 – International Affairs | | | | | | |
| 25 – Enterprise Risk Management | | | 2 | 100.0% | 2 | 100.0% |
| 35 – Administration Div | 26 | 41.3% | 37 | 58.7% | 63 | 100.0% |
| 40 – Inspector General | 12 | 40.0% | 18 | 60.0% | 30 | 100.0% |
| 51 – Information Technology Div | 35 | 31.0% | 78 | 69.0% | 113 | 100.0% |
| 52 – Finance Div | 2 | 10.0% | 18 | 90.0% | 20 | 100.0% |
| 53 – Insurance & Research Div | 3 | 17.6% | 14 | 82.4% | 17 | 100.0% |
| 65 – Resolutions & Receivership Div | 44 | 24.3% | 137 | 75.7% | 181 | 100.0% |
| 70 – Supervision & Cons Protect Div | 79 | 59.8% | 53 | 40.2% | 132 | 100.0% |
| 81 – Legal Div | 4 | 18.2% | 18 | 81.8% | 22 | 100.0% |
| Total | 209 | 35.2% | 384 | 64.8% | 593 | 100.0% |

* Competitive-career and competitive-career conditional appointments only.

Seberhagen Report, 10/9/07                                                    *Aliotta v. FDIC*

# A P P E N D I X

# LANCE W. SEBERHAGEN

## Seberhagen & Associates, 9021 Trailridge Court, Vienna, VA 22182-1730
## Tel (703) 790-0796; Fax (703) 790-1817; sebe@erols.com

**MAJOR AREAS OF SPECIALIZATION**

| | |
|---|---|
| Compensation | Position Classification |
| Employee Selection (entry and promotional) | Psychological Testing |
| Equal Employment Opportunity | Statistical Analysis |
| Expert Witness | Survey Research |
| Job Analysis | Test Administration |
| Job Evaluation | Test Construction and Development |
| Organization Development | Test Validation |
| Performance Appraisal and Management | Training and Development |

**EDUCATION**

Ph.D., University of Minnesota, Minneapolis, MN, 1979. Major: industrial/organizational psychology. Minor: industrial relations. Dissertation: *Sex discrimination in salaries within a state government.* Advisor: Dr. Thomas J. Bouchard.

M.A., Southern Methodist University, Dallas, TX, 1968. Major: industrial/organizational psychology. Minor: business administration. Thesis: *Herzberg's two-factor theory of motivation in a municipal government.* Advisor: Dr. Charles L. Hughes.

B.A., Brown University, Providence, RI, 1966. Major: psychology. Minor: sociology.

**EMPLOYMENT HISTORY**

Director, Seberhagen & Associates, Vienna, VA, 12/76 to present.

Senior Associate, Planning Research Corporation, McLean, VA, 10/73 to 12/76.

Test Research & Development Manager, State of Minnesota, Personnel Department, 5/69 to 10/73.

Personnel Consultant, Minneapolis, MN, 9/68 to 5/69.

Personnel Analyst, City of Dallas, TX, Civil Service Department, 5/67 to 9/68.

**WORK EXPERIENCE**

*Employee Selection.* Developed selection procedures for hourly production jobs at American Video Glass, Corning, and Honda of America Mfg. Conducted validation study of literacy test for hourly production jobs at Champion International and Georgia-Pacific. Developed performance appraisal procedure as basis for layoff of non-union employees at Texaco refinery. Designed test administration program for electric utility industry through Edison Electric Institute. Planned implementation of EEI tests at Public Service Electric and Gas and Virginia Electric Power. Evaluated selection procedures for Power Plant Operator at Pennsylvania Power and Light. Evaluated employee selection procedures at Westinghouse Savannah River Site (nuclear plant). Developed selection procedures for onboard service jobs at Amtrak. Evaluated selection procedures for restaurant employees and managers at Boston Chicken, Steak & Ale, The Cheesecake Factory, and Darden Restaurants. Developed weighted application blank to reduce clerical turnover at Prudential Insurance Co.

# LANCE W. SEBERHAGEN

Served on expert panel for National Skills Standards Board to provide technical guidance to industry groups in establishing national certification standards and assessment procedures for key occupations. Assisted U.S. Employment Service in briefing National Academy of Sciences about General Aptitude Test Battery (GATB) and validity generalization. Developed professional certification procedures (used in promotional selection process) for Logistics jobs at Defense Department. Served as technical advisor to U.S. Postal Service on development of new entry-level Postal Worker exam. Developed minimum qualifications for Library of Congress and Legal Services Corp. Developed performance appraisal procedures for Federal Aviation Administration. Wrote and evaluated test items for ASPPB Psychologist Licensing Exam.

Evaluated test development process used by Metro Water Reclamation District of Greater Chicago. Developed selection procedures for Toll Collector, Toll Collection Supervisors, and Tunnel Emergency Worker (tow truck operator) at Maryland Transportation Authority. Developed general examining procedure for senior-level jobs in District of Columbia. Developed selection procedures for wide variety of jobs in State of Minnesota; City of Dallas, TX; and Territory of Virgin Islands. Developed minimum qualifications for all jobs in State of Ohio. Designed job testing standards for State of New Jersey. Designed prerelease assessment process to evaluate employability of inmates at Maryland Correctional System.

Drafted chapter on police selection standards for law enforcement agency accreditation program through National Organization of Black Law Enforcement Executives. Conducted statewide job analysis of Police Officer to serve as basis for police selection and training standards in Maryland. Developed selection procedures for Deputy Sheriff in 28 counties of West Virginia. Developed selection procedures for Minnesota Highway Patrol Officer. Developed promotional selection procedures for police jobs in City of Colorado Springs, CO; City of Fresno, CA; City of Indianapolis, IN; City of Memphis, TN; Montgomery County, MD; City of Orlando, FL; and Territory of Virgin Islands. Served as assessor in promotional assessment center for police jobs in District of Columbia. Developed performance appraisal system for Fresno Police Department. Wrote manual for setting test cutoff scores for New York Police Foundation. Developed selection procedures for entry-level Firefighter in City of Minneapolis.

***Classification and Compensation***. Analyzed and evaluated factory and office jobs in lawsuit by International Union of Electrical Workers against General Electric. Analyzed and evaluated professional jobs to resolve employee grievances in National Education Association. Analyzed and evaluated job of Social Services Representative to resolve employee grievance in DC Government. Analyzed and evaluated job of Probation Counselor to resolve employee grievance against Fairfax County, VA. Evaluated classification and pay procedures of United Mine Workers Welfare and Retirement Fund. Analyzed merit increases at IRS and SEC for National Treasury Employees Union.

Conducted classification and pay studies for State of Ohio; State of Maine; State of Minnesota; State of Wyoming; City of Dallas, TX; Maryland-National Capital Park and Planning Commission; Territory of Virgin Islands; University of the Virgin Islands; Legal Services Corp.; Planning Research Corp; and International Criminal Investigative Training Assistance Program at U.S. Department of Justice.

Analyzed, classified, and evaluated sworn and nonsworn police jobs in Colorado Springs, CO; Indianapolis, IN; Montgomery County, MD; and Orlando, FL. Identified sworn positions that could be performed by nonsworn employees. Evaluated police compensation and retirement practices in Baltimore County, MD, and Montgomery County, MD.

***Litigation***. Served as expert witness or technical advisor in over 100 cases (court, arbitration, administrative), regarding employee selection, position classification, compensation, and other matters. Evaluated test validation reports for DOL/OFCCP. Reviewed case documents, assembled databases, analyzed statistical data, evaluated policies and procedures, wrote technical reports, and gave sworn testimony. Evaluated work of other experts as they developed new employee selection procedures under consent agreements. (NOTE: No legal complaints have ever been filed against work by Dr. Seberhagen.)

2

# LANCE W. SEBERHAGEN

***EEO/Affirmative Action****.* Analyzed workforce utilization, evaluated personnel practices, and recommended remedial action to establish first affirmative action program for State of Minnesota. Evaluated statewide EEO program of State of Wyoming and recommended improved policies and procedures. Developed affirmative action programs for Montgomery County, MD; District of Columbia; Territory of Virgin Islands; and MVM Corp. Developed regression models to analyze sex-based wage disparities in a state government. Wrote book on legal aspects of personnel selection in public service under grant from U.S. Civil Service Commission. Wrote chapter on Federal EEO requirements under grant from Minneapolis Civil Service Commission. Wrote handbook on nondiscrimination for Equal Employment Opportunity Commission and Office of Revenue Sharing.

***Personnel Rules and Regulations****.* Drafted personnel rules on recruitment, selection, classification, EEO, labor relations, and other topics for City of Falls Church, VA; District of Columbia; and Territory of Virgin Islands. Drafted employee manual for Legal Services Corp.

***Organization Development****.* Analyzed records and conducted surveys to investigate turnover of Investigators and recommend improved personnel practices in Agriculture Department. Conducted surveys, redesigned jobs, and revised personnel policies to establish career development programs for police departments in Colorado Springs, CO; Fresno, CA; Indianapolis, IN; Montgomery County, MD; and Orlando, FL. Developed organizational effectiveness criteria and analyzed employee performance and satisfaction data to evaluate OD interventions (e.g., team building, job enrichment) at U.S. Army bases in Europe as part of All-Volunteer Army Program. Designed survey instruments to diagnose organizational problems in U.S. Army Air Defense Command in Europe. Conducted employee attitude surveys and other analyses to improve personnel management at Metro Business Forms, American Geophysical Union, and Service Employees International Union. Conducted survey of employees in City of Dallas, TX, to test Herzberg's theory of motivation. Collected and analyzed employee attitude data as part of OD study for Hennepin County, MN.

***Training****.* Investigated feasibility of voluntary certification as incentive to encourage construction supervisors to learn more about occupational safety and health for OSHA. Conducted training on test administration for electric utility industry, Amtrak, Corning, and Honda of America Mfg. Conducted training on federal EEO requirements for Library of Congress; NASA; Montgomery County, MD; IPMA; MAPAC; and Batrus Hollweg, Inc. Organized EEO workshops for Society of Industrial and Organizational Psychology and Personnel Testing Council of Metropolitan Washington. Conducted numerous training programs on personnel topics to implement development projects. Taught one course and assisted professors in teaching two other courses at Southern Methodist University.

***Human Resource Planning****.* Designed computerized employee information system for State of Minnesota to match employees to jobs, estimate impact of personnel policies, forecast staffing needs, and compile statistical reports. Defined human resource planning needs for Planning Research Corp. Conducted labor force availability studies for many clients.

***Market Research****.* Surveyed Baltimore-area residents for Shelter Corp. to identify types of persons interested in living in Inner Harbor district and type of housing and related features that would be most attractive to this group. Analyzed interview data from leading citizens of Charles County, MD, to assess attitudes towards proposed residential/recreation development and to recommend best way to inform community about this project. Designed survey to analyze safety criteria used by military officials and civilian authorities to evaluate waterfront sites for handling dangerous cargo.

***Human Factors****.* Interviewed machine operators and conducted speed tests to determine best use of automated letter sorting machines in U.S. Postal Service.

3

# LANCE W. SEBERHAGEN

## PROFESSIONAL AFFILIATIONS

American Psychological Association (APA)
1. APA Division 5 (Evaluation, Measurement, and Statistics).
2. APA Division 14 (Industrial and Organizational Psychology).

American Statistical Association

Personnel Testing Council of Metropolitan Washington
1. Founding member, 1977.
2. Founding officer, 1977-1978.
3. Elected officer, 1987-1991.
4. President, 1989-90.
5. Bemis Award Committee, 1987-91, 1997.
6. Newsletter Committee, professional calendar, 1982-07.
7. Website Committee, 1998-02.
8. Workshop Committee, 1982.

Society for Industrial and Organizational Psychology (APA Div 14)
1. Awards Committee, 1991-92; 1997-00.
2. Professional Practice Committee, 1995-98.
3. Program Committee, 1996-06.
4. Workshop Committee, 1989-91.

## PROFESSIONAL RECOGNITION

Member, Expert Panel on Assessment, National Skill Standards Board, Washington, DC, 1999.

Consulting Editor, *Forensic Reports*, 1989-1994.

James Philander Kirkham Award, University of Minnesota, 1971.

Dreyfus Memorial Fellowship, Southern Methodist University, 1967.

## PUBLICATIONS AND PAPERS

### Books

Roberts, P., Seberhagen, L., & Cottrell, R. (1971). *Manpower planning for the public service.* Chicago, IL: Public Personnel Association.

Seberhagen, L., McCollum, M., & Churchill, C. (1972). *Legal aspects of personnel selection in the public service.* Chicago, IL: International Personnel Management Association.

Seberhagen, L. (1973). *Job analysis for content validation.* St. Paul, MN: Minnesota State Personnel Department. (Later published in: Drauden, G., & Peterson, N. (1974). *A domain sampling approach to job analysis.* St. Paul, MN: Minnesota State Personnel Department.)

### Chapters

Seberhagen, L. (1978). A model oral exam procedure. In S. Mussio (Ed.), *A training manual for personnel selection specialists.* Minneapolis, MN: Minneapolis Civil Service Commission.

4

# LANCE W. SEBERHAGEN

Seberhagen, L. (1978). Federal EEO requirements for state and local government. In S. Mussio (Ed.), *A training manual for personnel selection specialists.* Minneapolis, MN: Minneapolis Civil Service Commission.

Seberhagen, L. (1978). What to do about minimum qualifications. In S. Mussio (Ed.), *A training manual for personnel selection specialists.* Minneapolis, MN: Minneapolis Civil Service Commission.

Seberhagen, L. (1982). Standards for police selection. Vienna, VA: Author. [First draft of chapter published in: Commission on Accreditation for Law Enforcement Agencies, (1983). *Standards for law enforcement agencies: The standards manual of the law enforcement accreditation program.* Fairfax, VA: Author.]

Seberhagen, L. (1995). Human resources management. In M. Kurke and E. Scrivner (Eds.), *Police psychology into the 21st century.* Hillsdale, NJ: Lawrence Erlbaum.

Seberhagen, L. (1996). A modern approach to minimum qualifications. In R. Barrett (Ed.), *Fair employment strategies in human resource management.* Westport, CT: Quorum Books.

Seberhagen, L. (1996). How much does a test validation study cost? In R. Barrett (Ed.), *Fair employment strategies in human resource management.* Westport, CT: Quorum Books.

Seberhagen, L. (1998). (Contributing editor for several case studies.) In R.L. Lowman (Ed.), *The ethical practice of psychology in organizations.* Washington, DC: American Psychological Association.

## Articles

Seberhagen, L. (1969). What motivates civil service employees? *Public Personnel Review, 31,* 48-50.

Seberhagen, L. (1972). Review of R.N. Ford, *Motivation through the work itself,* and M.S. Myers, *Every employee a manager.* Public Administration Review, 32, 167-169.

Seberhagen, L. (1980). Court rules against job element method. *IPMAAC Assessment News, 4(1),* 6-8.

Seberhagen, L. (1981). Review of Ad Hoc Group, *A professional and legal analysis of the Uniform Guidelines on Employee Selection Procedures. PTC/MW Newsletter, 6(3),* 3-4.

Seberhagen, L. (1985). Good employee rating system is important. *The Business Review, 10,* 4.

Seberhagen, L. (1987). GATB/VG testing program studied by National Academy of Sciences. *The Industrial-Organizational Psychologist, 25(1),* 33-35.

Seberhagen, L. (1989). Revised professional standards proposed for assessment centers. *PTC/MW Newsletter, 12(4),* 8.

Seberhagen, L. (1989). Top ten jobs in which general intelligence is not a valid predictor of job success. *PTC/MW Newsletter, 12(5),* 2-3.

Seberhagen, L. (1990, January). Court accepts test transportability; new testing standards. *PTC/MW Newsletter, 13(1),* 2-3.

Seberhagen, L. (1990, March). Civil Rights Act of 1990. *PTC/MW Newsletter, 13(3),* 2-3.

# LANCE W. SEBERHAGEN

Seberhagen, L. (1990, April). Civil Rights Act of 1990; cost of validation studies. *PTC/MW Newsletter, 13(4)*, 2-5.

Seberhagen, L. (1990, May). Civil Rights Act of 1990; integrity testing. *PTC/MW Newsletter, 13(5)*, 2-6.

Seberhagen, L. (1990, June). Psychologists and legislation; definition of "business necessity;" PTC/MW clearinghouse established at OPM. *PTC/MW Newsletter, 13(6)*, 2-6.

Seberhagen, L. (1990, July). How difficult is it to conduct a validation study? *The Industrial-Organizational Psychologist, 28*, 41-46.

Seberhagen, L. (1990, July). Americans with Disabilities Act of 1990; publications of interest; APA comments on testing. *PTC/MW Newsletter, 13(7)*, 2-6.

Seberhagen, L. (1990, August). Civil Rights Act passes Senate; GATB suspended; publications of interest. *PTC/MW Newsletter, 13(8)*, 2-6

Seberhagen, L. (1990, October). Update on Civil Rights Act. *PTC/MW Newsletter, 13(10)*, 5-8.

Seberhagen, L. (1990, November). Civil Rights Act dead for this year. *PTC/MW Newsletter, 13(11)*, 4-6.

Seberhagen, L. (1990, November). SIOP releases survey report. *PTC/MW Newsletter, 13(11)*, 7.

Seberhagen, L. (1990, December). Bush statement on Civil Rights Act. *PTC/MW Newsletter, 13(12)*, 2-6.

Seberhagen, L. (1990, December). APA comments on OTA report. *PTC/MW Newsletter, 13(12)*, 2-4.

Seberhagen, L. (1991, January). Update on proposed GATB plan. *PTC/MW Newsletter, 14(1)*, 2-3.

Seberhagen, L. (1991, February). APA drafts policy on test disclosure. *PTC/MW Newsletter, 14(2)*, 4.

Seberhagen, L. (1991, February). Civil Rights Act of 1991 introduced. *PTC/MW Newsletter, 14(2)*, 4-6.

Seberhagen, L. (1991, February). Important age study in progress. *PTC/MW Newsletter, 14(2)*, 3.

Seberhagen, L. (1991, April). A comment on the official position of SIOP on the Civil Rights Act of 1990. *The Industrial-Organizational Psychologist, 28*, 25-29.

Seberhagen, L. (1991, April). News in testing. *PTC/MW Newsletter, 14(4)*, 4-8.

Seberhagen, L. (1991, May). A most popular criterion measure. *PTC/MW Newsletter, 14(5)*, 6.

Seberhagen, L. (1991, May). Lawyers' Committee comments on GATB. *PTC/MW Newsletter, 14(5)*, 2-5.

Seberhagen, L. (1991, June). Update on Americans with Disabilities Act. *PTC/MW Newsletter, 14(6)*, 2-3, 5-13.

Seberhagen, L. (1991, July). Showdown near on civil rights bill. *PTC/MW Newsletter, 14(7)*, 2-9.

# LANCE W. SEBERHAGEN

Seberhagen, L. (1991, August). News of interest. *PTC/MW Newsletter, 14(8)*, 4-7.

Seberhagen, L. (1991, September). Copyright and test integrity. *PTC/MW Newsletter, 14(9)*, 2, 4-5.

Seberhagen, L. (1991, November). News on the legal front. *PTC/MW Newsletter, 14(11)*, 3-10.

Seberhagen, L. (1991, December). Congress passes compromise civil rights bill. *PTC/MW Newsletter, 14(12)*, 3-7.

Seberhagen, L. (1992, January). President signs civil rights bill. *PTC/MW Newsletter, 15(1)*, 5-6.

Seberhagen, L. (1992, June). APA advises EEOC on testing. *PTC/MW Newsletter, 15(6)*, 7-10.

Seberhagen, L. (1992, December). Yes, statisticians do have an ethics code. *PTC/MW Newsletter, 15(12)*, 5-7.

Seberhagen, L. (1993, January). An ethics code for statisticians: What next? *The Industrial-Organizational Psychologist, 30*, 71-74.

Seberhagen, L. (1993, September). Commentary on APA Testimony and Goals 2000. *PTC/MW Newsletter, 16(9)*, 9.

Seberhagen, L. (1993, October). An ethics code for I/O psychology: Good behavior at low cost. *The Industrial-Organizational Psychologist, 31*, 69-71.

Seberhagen, L. (1994, February). PTC/MW should adopt an ethics code. *PTC/MW Newsletter, 17(2)*, 5.

Seberhagen, L. (1995, April). Affirmative action under close review. *PTC/MW Newsletter, 18(4)*, 4-8.

Seberhagen, L. (1995, August). OFCCP testifies before Senate Labor Committee. *PTC/MW Newsletter, 18(8)*, 5-10.

Seberhagen, L. (1996, April). House subcommittee votes to ban preferential treatment by the Federal Government. *PTC/MW Newsletter, 19(4)*, 6-7.

Seberhagen, L. (1996, October). Obituary: M. Scott Myers. *The Industrial-Organizational Psychologist, 34*, 98-100.

Seberhagen, L. (1996, November). Guidelines proposed for test-taker rights and responsibilities. *PTC/MW Newsletter, 19(11)*, 4-5.

Seberhagen, L. (1997, August). Court rules against another job element test. *PTC/MW Newsletter, 20(8)*, 4-5.

Seberhagen, L. (1997, November). Reasonable accommodation on GED tests. *PTC/MW Newsletter, 20(11)*, 3-6.

Seberhagen, L. (1999, March). Successful Challenge to ALJ Qualification Standards. *PTC/MW Newsletter, 23(3)*, 3.

Seberhagen, L. (1999, July). Workshop on Expert Witnesses. *PTC/MW Newsletter, 23*, 4-5.

# LANCE W. SEBERHAGEN

Seberhagen, L. (2000, November). Update on expert testimony. *PTC/MW Newsletter, 24*, 3.

Seberhagen, L. (2000, December). MSPB Rules Against OPM on ALJ Exam. *PTC/MW Newsletter, 24*, 4.

Seberhagen, L. (2001, April). Court Upholds Employer on Cutoff Scores. *PTC/MW Newsletter, 25*, 4.

Seberhagen, L. (2001, July). Court Upholds Another Employer's Cutoff Score. *PTC/MW Newsletter, 25*, 3.

Seberhagen, L. (2004, August). A Job Analysis Is Not a Validation Study. *PTC/MW Newsletter, 26*, 8.

**Presentations**

Moore, M., & Seberhagen, L. (1968, April). *The most influential psychologists*. Paper presented at the meeting of the Southwestern Psychological Association, New Orleans, LA.

Seberhagen, L. (1969, September). *A note on ranking the important psychologists*. Paper presented at the meeting of the American Psychological Association, Washington, DC.

Seberhagen, L. (1974, June). Problems associated with intergovernmental consortia: The GLAC experience. In A. Heuerman (Chair), *Interjurisdictional concepts*. Symposium presented at the meeting of the IPMA Eastern Region, Hershey, PA.

Seberhagen, L. (1978, April). *Federal EEO requirements: Sixteen guidelines in sixteen minutes*. Paper presented at the meeting of the Personnel Testing Council of Metropolitan Washington, Washington, DC.

Seberhagen, L. (1978, September). Affirmative action in the public sector. In D. Schwartz (Chair), *Affirmative action in testing and selection: Legal and psychological perspectives*. Symposium presented at the meeting of the American Psychological Association, Toronto, Canada.

Seberhagen, L. (1978, November). *Consulting under the Uniform Guidelines*. Paper presented at the meeting of the Personnel Testing Council of Metropolitan Washington, Washington, DC.

Seberhagen, L. (1978, June). *Evaluation of a statewide EEO program*. Paper presented at the meeting of the IPMA Assessment Council, Atlanta, GA.

Seberhagen, L. (1979, June). *Development of a multi-jurisdictional selection procedure for Deputy Sheriff in 28 counties of West Virginia*. Paper presented at the meeting of the IPMA Assessment Council, San Diego, CA.

Seberhagen, L. (1979, June). How to be a good client. In D. Feldman (Chair), *How to get what you want from consultants*. Symposium presented at the meeting of the IPMA Assessment Council, San Diego, CA.

Seberhagen, L. (1981, May). *Job evaluation and wage comparability: the EEO issue of the 1980s*. Paper presented at the meeting of the IPMA Assessment Council, Denver, CO.

Seberhagen, L. (1981, November). A model oral exam procedure. In L. Seberhagen (Chair), *Structured interviews*. Symposium presented at the meeting of the Personnel Testing Council of Southern California, Los Angeles, CA.

Seberhagen, L. (1982, June). An I/O psychologist's concerns about labor unions and employee selection. In N. Abrams (Chair), *Labor unions: How much of an effect on personnel assessment decisions?* Symposium presented at the meeting of the IPMA Assessment Council, Minneapolis, MN.

8

# LANCE W. SEBERHAGEN

Seberhagen, L. (1982, June). Why IPMAAC should have a real ethical code. In M. Fraser (Chair), *Ethical considerations in personnel.* Symposium presented at the meeting of the IPMA Assessment Council, Minneapolis, MN.

Seberhagen, L. (1983, May). Comments on Minneapolis Firefighter exam. In N. Abrams (Chair), *Firefighter selection: Non-written tests.* Symposium presented at the meeting of the IPMA Assessment Council, Washington, DC.

Seberhagen, L. (1985, October). *Testimony regarding the Uniform Guidelines on Employee Selection Procedures, 1978.* Invited testimony presented at the hearing of the U.S. House of Representatives, Committee on Education and Labor, Subcommittee on Employment Opportunities, Washington, DC.

Seberhagen, L. (1989, June). *Development of a selection procedure for Toll Collectors.* Paper presented at the meeting of the IPMA Assessment Council, Orlando, FL.

Seberhagen, L. (1989, June). My recommendations. In F. Landy (Chair), *The Guidelines in the year 2000.* Symposium conducted at the meeting of the IPMA Assessment Council, Orlando, FL.

Seberhagen, L. (1989, June). The top ten complaints by expert witnesses about lawyers. In N. Abrams (Chair), *Testifying as an expert witness.* Symposium conducted at the meeting of the IPMA Assessment Council, Orlando, FL.

Seberhagen, L. (1990, August). *Let's give lawyers the respect that they deserve.* Paper presented at the meeting of the Personnel Testing Council of Metropolitan Washington, Washington, DC.

Seberhagen, L. (1991, April). A practitioner's view. In J. Lefkowitz (Chair), *Validation in the 1990s: Legal, social, demographic, and professional issues.* Panel discussion presented at the meeting of the Society for Industrial and Organizational Psychology, St. Louis, MO.

Seberhagen, L. (1991, June). My view of the proposed legislation. In D. Joiner (Chair), *A multi-perspective look at the Civil Rights Act of 1991.* Symposium presented at the meeting of the IPMA Assessment Council, Chicago, IL.

Seberhagen, L. (1991, June). The legal view of content validity. In R. Tonowski (Chair), *Content validity: current directions and practical applications.* Symposium presented at the meeting of the IPMA Assessment Council, Chicago, IL.

Seberhagen, L. (1992, February). *Civil Rights Act of 1991: Major changes.* Paper presented at the meeting of the Mid-Atlantic Personnel Assessment Consortium, Washington, DC.

Seberhagen, L. (1992). *Legal requirements for EEO.* Workshop presented at the Batrus Hollweg Invitational Conference on Equal Employment Opportunity, Dallas, TX.

Seberhagen, L. (1993, October). Practical problems with ADA compliance. In M. Kurke (Chair), *Impact of ADA on law enforcement.* Symposium presented at the meeting of the Law Enforcement Behavioral Sciences Association, Fairfax, VA.

Seberhagen, L. (1996, March). The answers. In R. Lowe (Chair), *Q&A on fair employment issues: Testing, affirmative action, ADA, civil rights acts (and other things you want to know but are afraid to ask).* Panel discussion presented at meeting of Southeastern Psychological Association, Norfolk, VA.

Seberhagen, L., & Ramos, R. (1999, May). *Expert witnesses: The Good, the bad, and the ugly.* Workshop presented for the Personnel Testing Council of Metropolitan Washington, Washington, DC.

# LANCE W. SEBERHAGEN

Seberhagen, L. (2000, January). The multi-faceted role of MQs in the selection process. Talk presented at the meeting of the Mid-Atlantic Personnel Assessment Consortium, Baltimore, MD.

Seberhagen, L. (2000, April). Seberhagen's view. In L. Seberhagen (Chair), *Minimum standards for employment tests*. Panel discussion presented at the meeting of the Society for Industrial and Organizational Psychology, New Orleans, LA.

Seberhagen, L. (2003, April). The plaintiff's expert. In J. Arnold (Chair), *Defending and Questioning Validity in Litigation: The Varying Roles of I/O Psychologists*. Symposium presented at the meeting of the Society for Industrial and Organizational Psychology, Orlando, FL.

## LITIGATION EXPERIENCE

### U.S. Equal Employment Opportunity Commission

*EEOC v. Dallas County, TX* (1981-84, equal pay, sex). Analyzed and evaluated job of Chief Court Clerk in Justice of the Peace Courts to investigate pay differences. Case settled. Contract Number: 2/6000/0171. Contracting Officer: Barbara Dunn, Washington, DC. Attorney: Dale Jurgens, Dallas, TX, (for plaintiff).

*EEOC v. Leatherwood Motor Coach Corp.* (1984-85, adverse impact, sex). Analyzed adverse impact and validity of selection procedures for Motor Coach Operator (bus drivers for long distance tours). Case settled. Contract Number: 5/0120/7290/P. Contracting Officer: Barbara Dunn, Washington, DC. Attorney: Fred Charleston, Baltimore, MD, (for plaintiff).

*Kuenz and EEOC v. Goodyear Tire and Rubber Co.* (1985-88, adverse impact, sex). Analyzed adverse impact and validity of selection procedures for Retail Store Manager. Case settled. Contract Number: 5/0120/0115. Contracting Officer: Barbara Dunn, Washington, DC. Attorney: Robert Johnson, St.Louis, MO, (for plaintiff).

*EEOC v. Jenn Air* (1986-88, disparate treatment, race, sex). Analyzed validity of selection procedures for clerical and factory jobs. Identified victims of discrimination. Case settled. Contract Number: 6/0130/0120. Contracting Officer: Barbara Dunn, Washington, DC. Attorney: Barbara Meacham & Anthony Prather, Indianapolis, IN, (for plaintiff).

*EEOC v. Stella D'Oro* (1990-92, adverse impact, disparate treatment, equal pay, race, sex, national origin). Analyzed jobs, pay differences, and validity of selection procedures for Table Packer, Carton Packer, and Route Sales Driver. Gave deposition. Case settled. Contract Number: 0/0130/0157. Contracting Officer: A. Diane Williams, Washington, DC. Attorney: Deborah Reik, New York, NY, (for plaintiff).

*EEOC v. Madigan Brothers* (1992, adverse impact, race). Analyzed labor force availability for department store jobs. Case settled. Attorney: Zachery Tobin, Chicago. Subcontract to Economic Systems, Springfield, VA, (for plaintiff).

*EEOC v. Local 580, et al.* (1998, adverse impact, race). Analyzed validity of written tests for union membership (and referral to Iron Worker jobs). Testified at hearing. Case settled. Contract Number: 8/0130/0172. Contracting Officer: Cassandra Bates. Attorney: Johnnie L. Johnson, Jr., Esq., Washington, DC, (for plaintiff).

*EEOC v. Consumers Energy Co.* (1998-00, adverse impact, sex). Analyzed validity of strength test for hourly maintenance jobs. Case pending. Contract Number: 9/6257/02/2534. Contracting Officer: James Neely, Jr. Attorney: Laura Brodeur, Esq., and Stanley Pitts, Esq., Detroit, MI, (for plaintiff).

# LANCE W. SEBERHAGEN

*EEOC v. Schott North America, Inc.* (2006-2007, adverse impact, sex). Analyzed adverse impact and validity of selection procedures for Melting Line Operator. Case pending. Attorney: Cynthia Locke, Philadelphia, PA (for plaintiff).

**U.S. Department of Justice, Civil Rights Division**

*U.S. v. City of Milwaukee, WI* (1982-89, adverse impact, race). Analyzed adverse impact and validity of selection procedures for Police Sergeant and Detective. Case settled. Under consent agreement, reviewed adverse impact and validity of new selection procedures developed by outside consultant. Attorney: Marybeth Martin, Washington, DC, (for plaintiff).

*U.S. v. City of Montgomery, AL* (1982-85, adverse impact, race). Analyzed adverse impact and validity of selection procedures for Police Sergeant. Case settled. Attorney: Marybeth Martin, Washington, DC, (for plaintiff).

*U.S. v. City of Omaha, NB* (1985, adverse impact, race). Suggested alternative selection procedures for entry Police Officer. Case settled. Attorney: Robert Dempsey, Washington, DC, (for plaintiff).

*U.S. v. City of Montgomery, AL* (1986-88, adverse impact, race). Recommended commercial test of mental ability for temporary use until City developed its own selection procedure for entry Police Officer. Case settled. Attorney: Marybeth Martin, Washington, DC, (for plaintiff).

*U.S. v. State of Louisiana* (1987-93, adverse impact, race). Under consent agreement, analyzed adverse impact and validity of selection procedures for 12 engineering aide jobs developed by consultant. Case settled. Attorney: Marybeth Martin, Washington, DC, (for plaintiff).

*U.S. v. City of Wichita Falls, TX* (1987, adverse impact, sex). Analyzed adverse impact and validity of selection procedures (physical ability test) for entry Police Officer under consent agreement. Testified at trial. Case decided for Defendant. Attorney: Eugenia Esch, Washington, DC, (for plaintiff).

*U.S. v. City of Montgomery, AL* (1989-97, adverse impact, race). Under consent agreement, analyzed adverse impact and validity of new selection procedures for Police Sergeant, Lieutenant, Captain, and Major developed by consultant. Case settled. Attorney: Marybeth Martin, Washington, DC, (for plaintiff).

*U.S. v. City of Miami Beach, FL* (1992-92, adverse impact, race, national origin). Analyzed adverse impact and validity of selection procedures for Firefighter and Police Officer. Case settled. Attorney: Delora Kennebrew and David Lopez, Washington, DC, (for plaintiff).

*Albrecht v. City of Chicago, IL* (1993, adverse impact, race, national origin). Analyzed adverse impact and validity of selection procedures for Fire Lieutenant. Case settled. Attorney: Marybeth Martin and Richard Ugelow, Washington, DC, (for plaintiff).

**U.S. Department of Justice, U.S. Attorney's Office**

*Dendy v. Interior* (1989, adverse impact, race, age). Analyzed adverse impact and validity of selection procedures for U.S. Park Police Lieutenant. Case settled. Attorney: John Cleary, U.S. Attorney, and Robert Walter, U.S. Dept of Interior, Washington, DC, (for defendant).

*Carroll v. Interior* (1991-92, disparate treatment, age). Analyzed adverse impact of selection procedures for Supervisory Position Classification Specialist. Case decided for defendant (summary judgment). Attorney: John Birch and Jeffrey Sprung, U.S. Attorney, and Horace Clark, U.S. Dept of Interior, Washington, DC, (for defendant).

# LANCE W. SEBERHAGEN

***Hummer v. Interior*** (1991-93, adverse impact, age).  Analyzed adverse impact of selection procedures for Departmental Manager Development Program.  Case settled.  Attorney: Marina Braswell, U.S. Attorney, and Robert Walter, U.S. Dept of Interior, Washington, DC, (for defendant).

***Burns v. Bowsher*** (1992-93, disparate treatment, race).  Evaluated testimony of plaintiff's expert regarding the performance appraisal procedures of the General Accounting Office.  Testified at trial.  Case settled.  Attorney: Robert Shapiro, U.S. Attorney, Washington, DC, (for defendant).

**U.S. Department of Labor, Office of Federal Contract Compliance Programs**

***OFCCP v. Boise Cascade, et al.*** (1988, adverse impact, sex).  Analyzed validity of physical ability test for entry jobs in forest products industry developed by outside consultant in cooperative study for Boise Cascade, Champion International, ITT-Rayoner, Roseburg Lumber, Scott Paper, Simpson Timber, and Weyerhaeuser.  Case referred to EEOC, decided for plaintiffs.  Contract Number: 89E84132.  Contract Monitor: Willis Nordlund, ESA, Washington, DC; Robert Gelerter, OFCCP, Washington, DC, (for plaintiff).

***OFCCP v. Private Employer (confidential).***  (2006, adverse impact, race).  Analyzed validity of written tests for hourly jobs.  Case pending.  Contract Monitor: Dr. Richard Fischer (I/O Psychologist), OFCCP, Washington, DC.

**Private Attorneys**

***IUE v. General Electric Co.*** (1980, comparable worth, sex).  Analyzed and evaluated office jobs and factory jobs to investigate wage discrimination under Title VII.  Case settled.  Attorney: Richard Sobol, Sobol & Trister, Washington, DC, (for plaintiff).

***Sowers v. Fairfax County (VA) School Board*** (1981, personnel rules).  Reviewed job descriptions and conducted salary survey of skilled trades jobs in Washington, DC area to investigate salary inequities.  Case settled.  Attorney: Robert Annand, Cohen & Annand, Alexandria, VA, (for plaintiff).

***Savage v. Orr*** (1982, disparate treatment, race).  Analyzed adverse impact and validity of selection procedures for Deputy Assistant Secretary for Equal Employment Opportunity in the U.S. Department of Defense, Air Force.  Testified at trial.  Case decided for defendant.  Attorney: Michelle White; McIntosh, Flanagan & White; Washington, DC, (for plaintiff).

***McGuthrie v. National Education Association*** (1983-85, union contract).  Analyzed and evaluated Research Specialist positions to determine proper classification and pay grade.  Testified at arbitration hearing.  Case decided for defendant.  Attorney: Barbara Bruno and Kenneth Greene, NEA Staff Organization, Washington, DC, (for plaintiff).

***Morris v. Prince George's County, MD*** (1983, personnel rules).  Analyzed validity of selection procedures (written test) for Sergeant in Deputy Sheriff's Dept.  Case decided for defendant.  Attorney: James Chapin; Beckett, Cromwell & Myers; Bethesda, MD, (for plaintiff).

***Nuanes and Strandt v. National Education Association*** (1983, union contract).  Analyzed Legal Services Specialist positions to determine proper classification and pay grade.  Testified at arbitration hearing.  Case decided for plaintiff.  Attorney: Barbara Bruno, NEA Staff Organization, Washington, DC, (for plaintiff).

***Allan, Battle, et al. v. FDIC*** (1984-85, adverse impact, race).  Analyzed validity of selection procedures (assessment center) for Commissioned Bank Examiner.  Testified at trial.  Case decided for plaintiff.  Attorney: Paddy McNamara and Stephen Seliger, Chicago, IL, (for plaintiff).

# LANCE W. SEBERHAGEN

*Hispanic Society v. New York (NY) Civil Service Commission* (1984-85, adverse impact, race, national origin). Analyzed adverse impact and validity of selection procedures (written test) for Police Sergeant. Case settled. Attorney: Kenneth Kimmerling, Puerto Rican Legal Defense Fund, New York, NY, (for plaintiff).

*Brigola v. Arlington County, VA* (1985, disparate treatment, race, sex, national origin). Analyzed validity of selection procedures (written test) for Chemist II. Testified at trial. Case decided for plaintiff. Attorney: Vincent Fuller, Alexandria, VA, (for plaintiff).

*Kuenz and EEOC v. Goodyear Tire and Rubber Co.* (1985-88, adverse impact, sex). Analyzed adverse impact and validity of selection procedures for Retail Store Manager. Case settled. Attorney: Virginia O'Leary, Oakland City, IN, (for plaintiff).

*Keith v. Air Force* (1987, personnel rules). Analyzed validity of selection procedures (performance appraisal) and use of impermissible personality measures for management jobs. Case settled. Attorney: Sydney Rab & Charles Roberts, Compton & Duling, Woodbridge, VA, (for plaintiff).

*Walker v. State of Alabama* (1987, adverse impact, race). Analyzed validity of selection procedures (criminal history records) for state jobs. Testified at trial. Case decided for plaintiff. Attorney: Robert Wiggins; Gordon, Silberman, Wiggins & Childs; Birmingham, AL, (for plaintiff).

*Dameron v. Maryland-National Capital Park and Planning Commission* (1988, disparate treatment, sex). Analyzed adverse impact and validity of selection procedures (written test) for Police Sergeant. Testified at trial. Case decided for plaintiff. Attorney: Karl Feissner, Feissner & Slatkin, Burtonsville, MD, (for plaintiff).

*Fraternal Order of Police v. Town of Easton, MD* (1988, personnel rules). Analyzed validity of selection procedures (written test) for Police Corporal, Sergeant, and Lieutenant. Testified at trial. Case decided for defendant. Attorney: Stephen Kehoe, Assistant Town Attorney, Ewing, Dietz, Turner & Kehoe, Easton, MD, (for defendant).

*Fraternal Order of Police v. City of Miami, FL* (1988-91, personnel rules). Analyzed validity of selection procedures (assessment center) for Police Lieutenant. Testified at trial. Case decided for plaintiff. Attorney: Robert Klausner, Klausner & Cohen, Hollywood, FL, (for plaintiff).

*Social Work Supervisors v. Fairfax County, VA* (1988, personnel rules). Evaluated appeal of pay grade. Case settled. Attorney: Robert Weiss, Fairfax, VA, (for plaintiff).

*AFSCME, District Council 20 v. District of Columbia* (1989, union contract). Analyzed and evaluated Social Services Representative positions to determine proper classification and pay grade. Testified at arbitration hearing. Case settled. Attorney: Kimberly Keller; Kirschner, Weinberg & Dempsey; Washington, DC, (for plaintiff).

*Choyce v. City of Oakland, CA* (1989-90, adverse impact, race). Analyzed adverse impact and validity of selection procedures (assessment center) for Fire Lieutenant. Case settled. Attorney: Howard Moore, Jr., Moore & Moore, Oakland, CA, (for plaintiff).

*Galbert v. General Motors Corp.* (1989-94, disparate treatment, race). Analyzed validity of performance appraisals for Plant Manager. Calculated salary and benefits lost due to discriminatory dismissal. Case settled. Attorney: Carl Edwards, Edwards & Jennings, Detroit, MI, (for plaintiff).

# LANCE W. SEBERHAGEN

***Lewis v. Brady*** (1989, adverse impact, race).  Analyzed adverse impact and validity of selection procedures for Plate Printer apprentices at U.S. Bureau of Printing and Engraving.  Case settled.  Attorney: David Donovan; Wilmer, Cutler & Pickering; Washington, DC, (for plaintiff).

***Dicker v. Allstate Insurance Co.*** (1990-91, adverse impact, race).  Analyzed validity of selection procedures and merit pay for clerical staff in Underwriting Department of Personal Life Service Center.  Case settled.  Attorney: Steven G. Seliger, Chicago, IL, (for plaintiff).

***Foggie v. D.C. Department of Human Resources*** (1990, personnel rules).  Analyzed and evaluated supervisory Pharmacist position to determine proper classification and pay grade.  Case settled.  Attorney: Paul Toulouse; Toulouse & Spillan; Washington, DC, (for plaintiff).

***Hinkle v. County of Monroe, MI*** (1990, wage and hour).  Conducted library research on current practice regarding overtime pay for Police Canine Officers.  Case settled.  Attorney: Stanley Krawetz; Krawetz & Spiros; Lambertville, MI, (for plaintiff).

***Nassau County Guardians v. Nassau County, NY*** (1990, adverse impact, race).  Gave technical advice on setting cutoff scores and minimizing adverse impact in selection procedures for entry Police Officer.  Case settled.  Attorney: Richard T. Seymour, Lawyers Committee for Civil Rights under Law, Washington, DC, (for plaintiff).

***Probation Counselors v. Fairfax County, VA*** (1990, personnel rules).  Analyzed and evaluated Probation Counselor II job to determine proper pay grade.  Testified at hearing.  Case decided for plaintiff.  Contract Monitor: John W. Wrightson, Ad hoc group of Probation Counselors, (for plaintiff).

***Scales v. George Washington University*** (1990-93, disparate treatment, race).  Analyzed labor force availability and adverse impact of selection procedures for nursing management jobs.  Testified at trial.  Case decided for defendant.  Attorney: Jack Frazier; Reasoner, Davis & Fox; Washington, DC, (for defendant).

***Bouyer v. City of Bessemer, AL*** (1991, adverse impact, race).  Analyzed adverse impact and validity of selection procedures (criminal history records) for City jobs.  Case decided for plaintiff.  Attorney: Samuel Fisher; Gordon, Silberman, Wiggins & Childs; Birmingham, AL, (for plaintiff).

***Carter v. City of Springfield, IL*** (1991-94, adverse impact, race).  Analyzed adverse impact and validity of selection procedures for Police Sergeant under Illinois Human Rights Act.  Testified at trial.  Case decided for defendant.  Attorney: Donald Jackson, Peoria, IL, (for plaintiff).

***Cleveland Branch, NAACP v. City of Parma, OH*** (1991-98, adverse impact, race).  Analyzed adverse impact and validity of selection procedures for entry Police Officer and Firefighter.  Gave deposition.  Case settled.  Attorney: David Rose, Washington, DC, (for plaintiff).

***Guinyard v. City of New York, NY*** (1991-92, adverse impact, race).  Analyzed adverse impact and validity of selection procedures (written test, oral exam) for Transit Police Lieutenant.  Case settled.  Attorney: Frederick Brewington and Deborah Karpatkin, New York, NY, (for plaintiff).

***Little v. City of Peoria, IL*** (1991-93, adverse impact, race).  Analyzed adverse impact and validity of selection procedures (written test) for Police Sergeant under Illinois Human Rights Act.  Case settled.  Attorney: Donald Jackson, Peoria, IL, (for plaintiff).

14

# LANCE W. SEBERHAGEN

***Reynolds v. Alabama Highway Department*** (1991-97, adverse impact, race). Analyzed adverse impact and validity of selection procedures for Highway Department jobs. Case settled. Attorney: Robert Wiggins; Gordon, Silberman, Wiggins & Childs; Birmingham, AL, (for plaintiff).

***Sumner v. City of Jacksonville, FL, Sheriff's Department*** (1991-94, adverse impact, age). Analyzed adverse impact and validity of selection procedures for Sheriff Lieutenant. Case settled. Attorney: John MacLennan; Kattman, Eshelman & MacLennan; Jacksonville, FL, (for plaintiff).

***Dean v. The Mitre Corporation*** (1992, disparate treatment, race). Analyzed validity of promotional selection procedures for Group Leader. Identified victims of discrimination. Gave deposition. Case settled. Attorney: Joseph Sellers, Washington Lawyers Committee for Civil Rights under Law, Washington, DC; Joel Cohn; Akin, Gump, Hauer & Feld; Washington, DC; Barry J. Reingold, Perkins Coie, Washington, DC, (for plaintiff).

***Davis v. Shell Oil Company*** (1993, disparate treatment, adverse impact, race). Analyzed validity of promotional selection procedures for Foreman. Case settled. Attorney: Donald Hill, Dallas, TX, (for plaintiffs).

***Moan v. Mercy Hospital*** (1993-94, disparate treatment, reasonable accommodation, age, disability). Analyzed validity of selection procedures (performance appraisal) for Telephone Operator. Case settled. Attorney: Rebecca O'Connor, Mercy Hospital, Pittsburgh, PA, (for defendant).

***U.S. v. City of Miami, FL*** (1993-94; adverse impact; race, sex, and national origin). Analyzed adverse impact and validity of selection procedures (written test) for Firefighter. Case settled. Attorney: Robert Klausner, Klausner & Cohen, Hollywood, FL, (for union intervener).

***Capabianca v. Cherry*** (1994-95; legal malpractice). Identified errors in handling of discrimination complaint against USPS. Case settled. Attorney: Frank Luciano, Lodi, NJ, (for plaintiff).

***Frazier v. Bentsen*** (1994-97; disparate impact, disparate treatment, race, sex). Analyzed adverse impact and validity of selection procedures for Program Analyst in Internal Revenue Service. Gave deposition. Case pending. John Karl, Jr., McDonald & Karl, Washington, DC, (for plaintiff).

***Grant v. U.S. Department of Education*** (1994; disparate impact, sex). Analyzed adverse impact and validity of promotional selection procedures for managers and professionals. Case settled. Attorney: Mary Beth Murphy, Steptoe & Johnson, Washington, DC, (for plaintiff).

***Jaffe v. Lerner Corp*** (1994; disparate treatment, age). Analyzed validity of performance appraisal procedures for Shopping Center Managers. Case settled. Attorney: Mose Lewis, Powers & Lewis, Washington, DC, (for plaintiff).

***Maryland National Bank v. Falsafi*** (1994; loan default). Analyzed job duties and compensation of chief executive who sold business to father in attempt to avoid payment of loan. Case settled. Attorney: Caryn Garvin (Paralegal); Ginsburg, Feldman & Bress; Washington, DC, (for plaintiff).

***McGuire v. Mark Winkler Co.*** (1994; disparate treatment, equal pay, sex). Analyzed and evaluated plaintiff's position versus other management positions. Case settled. Attorney: Andrew Gordon; DiMuro, Ginsberg & Lieberman; Alexandria, VA (for defendant).

***Nunez v. First Union Bank of Florida*** (1994; disparate treatment, national origin). Analyzed adverse impact and validity of selection procedures for Bank Managers after bank merger. Case settled. Attorney: Talbot Trammell, Coral Gables, FL, and Arno Kutner, Miami, FL, (for plaintiff).

# LANCE W. SEBERHAGEN

*Adams v. Indiana Bell Telephone Co. and Ameritech Services Inc.* and *Allard v. Indiana Bell Telephone Co.* (1995-97, disparate treatment, age). Analyzed selection procedures for termination. Gave deposition. Case decided for defendant. Attorney: David L. Rose, Rose & Rose, Washington, DC (for plaintiff).

*Diettrich v. Northwest Airlines Inc.* (1995-96, disparate treatment, age). Analyzed selection procedures (interview) for termination. Testified at trial. Case decided for plaintiff. Attorney: Curry First; First, Blondis, Albrecht, Bangert, & Novotnak; Milwaukee, WI (for plaintiff).

*Gresham and Pines v. Alabama Department of Public Safety et al.* (1995-96, adverse impact, disparate treatment, race). Analyzed validity of selection procedures (written tests) for Clerk II and Clerk III. Case settled. Attorney: Robert Childs Jr.; Gordon, Silberman, Wiggins & Childs; Birmingham, AL, (for plaintiff).

*Workman v. Honeywell Inc.* (1995; disparate treatment, equal pay, sex). Analyzed jobs and pay differences among Security System Installers. Case settled. Attorney: Susan Aaron, Popham Haik, Washington, DC, (for defendant).

*Wright v. South Central Bell* (1995, adverse impact, race, sex). Analyzed validity of selection procedures (written tests) for craft jobs. Case pending. Attorney: James Mendelsohn; Gordon, Silberman, Wiggins & Childs; Birmingham, AL, (for plaintiff).

*NAACP v. Town of East Haven, CT.* (1996-98, adverse impact, race). Analyzed validity of selection procedures (written tests) for Firefighter and Police Officer. Testified at trial. Case decided for plaintiff. Attorney: David L. Rose, Rose & Rose, Washington, DC (for plaintiff).

*Provitt v. City of Montgomery Fire Department* (1996, adverse impact, race). Analyzed adverse impact and validity of promotional selection procedures (assessment centers) for Fire Lieutenant, Fire Captain, and District Fire Chief. Case settled. Attorney: James Mendelsohn; Gordon, Silberman, Wiggins & Childs; Birmingham, AL, (for plaintiff).

*Albright et al. v. City of New Orleans, LA* (1997-99, adverse impact, race, sex). Analyzed adverse impact and validity of domicile requirement for police officers. Testified at trial. Case decided for defendant. Attorney: Frank G. DeSalvo, New Orleans, LA, (for plaintiff).

*Fraternal Order of Police v. City of Miami, FL* (1997-00, personnel rules). Analyzed validity of promotional selection procedures (written test) for Police Lieutenant. Case pending. Attorney: Ronald J. Cohen, Klausner & Cohen, Hollywood, FL, (for plaintiffs).

*Platt, et al. v. State of Florida, et al.* (1997-98, adverse impact, race). Analyzed adverse impact and validity of selection procedures (written tests) for Correctional Officer. Testified at trial. Case decided for defendant. Attorney: Jerry G. Traynham, Patterson & Traynham, Tallahassee, FL, (for plaintiffs).

*Harris v. Hantman* (1998-00, equal pay). Provided technical advice regarding classification and pay of Custodians and Laborers working for the Architect of the U.S. Capitol. Case settled. Attorney: Barbara Kraft, Washington, DC, (for plaintiffs).

*McGavern, et al. v. City of Miami Beach, FL* (1998-03; personnel rules). Analyzed validity of promotional selection procedures (oral exam) for Police Sergeant. Gave deposition. Case settled. Attorney: Robert Klausner, Klausner & Cohen, Hollywood, FL, (for union intervener).

16

# LANCE W. SEBERHAGEN

***Cook v. Billington*** (1998-00; adverse impact, race). Analyzed validity of selection procedures for Librarian at the Library of Congress. Testified at hearing. Case settled. Attorney: David L. Kelleher, Arent Fox Kitner Plotkin & Kahn, Washington, DC, (for plaintiffs).

***Meeker v. OPM*** (1998; personnel rules). Analyzed validity of selection procedures for Administrative Law Judge. Gave deposition. Case decided for plaintiff. Attorney: Murray Meeker, Alexandria, VA, (for plaintiff).

***Smith, et al. v. Texaco and Star Enterprise*** (1998-00; adverse impact, race). Analyzed validity of promotional selection procedures. Case settled. Attorney: James E. Payne, Provost & Umphrey, Beaumont, TX (for plaintiffs).

***NAACP v. New Jersey State Police.*** (1999, adverse impact, race). Analyzed validity of educational requirements for State Police Officer. Case settled. Attorney: David L. Rose, Rose & Rose, Washington, DC (for plaintiff).

***Byrd & Williams v. Safeway*** (1999-00; adverse impact, race). Analyzed adverse impact and validity of selection procedures. Case settled. Attorney: JePhunneh Lawrence, Washington, DC (for plaintiff).

***Craze and Turner v. The United States*** (2000; equal pay). Analyzed jobs, pay differences, and promotional selection procedures for IPA Chief at National Security Agency. Case settled. Attorney: Irving Kator, Kator, Scott & Parks, Washington, DC (for plaintiff).

***NAACP v. City of Springfield, IL*** (2000-01, adverse impact, race, sex). Analyzed adverse impact and validity of selection procedures (written tests, physical ability test) for Firefighter and Police Officer. Gave deposition. Case settled. Attorney: David L. Rose, Rose & Rose, Washington, DC (for plaintiff).

***EEOC v. Loudoun County Public Schools*** (2001; equal pay). Analyzed and evaluated four management positions. Gave deposition. Case decided for defendant. Attorney: Elizabeth Menist, Reed Smith LLP, McLean, VA (for defendant).

***NAACP v. New Jersey Department of Personnel*** (2001-2002, adverse impact, race). Analyzed adverse impact and validity of written test for Police Officer. Case settled. Attorney: David L. Rose, Rose & Rose, Washington, DC (for plaintiff).

***McCoy v. Willamette Industries*** (2001-2002, adverse impact, race). Analyzed validity of written test for 19 hourly jobs in paper mill. Gave deposition. Case settled. Attorney: Dan Bailey, Provost & Umphrey, Nashville, TN, (for plaintiffs).

***QSS Group v. General Services Administration*** (2001-2002; Federal Acquisition Regulations). Matched company jobs to equivalent GSA job descriptions and evaluated qualifications of job incumbents to provide independent evaluation of GSA audit. Case settled. Attorney: J. Patrick McMahon, Barton, Baker, McMahon & Tolle, McLean, VA (for defendant).

***Redd, et al. v. Treasury Department*** (2001-2002, adverse impact, race). Analyzed adverse impact of drug testing procedure for jobs at Bureau of Engraving and Printing. Case settled. Attorney: Stan Brown, Largo, MD, (for plaintiff).

***Thornton v. ICMA Retirement Corporation*** (2001-2002, disparate treatment, race). Analyzed adverse impact and validity of promotional selection procedures for top management jobs. Case settled. Attorney: Donald Temple, Temple Law Offices, Washington, DC (for plaintiff).

# LANCE W. SEBERHAGEN

**Baumgartner v. State of Washington** (2002-2004, state personnel rules).  Investigated status of Correctional Lieutenant under State's classification and pay system.  Case pending.  Attorney:  Todd Nichols & Patricia Pendry, Snohomish, WA (for plaintiffs).

**Lemley, et al. v. Philips Electronics and Paul Zepp** (2002-2004, adverse impact, sex, age).  Analyzed adverse impact and validity of simulation test for Machine Attendant.  Gave deposition.  Case settled. Attorney: Larry Rector, Steptoe & Johnson, Clarksburg, WV (for defendants).

**NTEU v. Treasury Department** (2002-2003, union contract).  Analyzed validity of educational requirements for Internal Revenue Agent.  Testified at arbitration hearing.  Case decided for defendant.  Attorney: Tim Hannepel, National Treasury Employees Union, Washington, DC (for plaintiffs).

**Byrd v. Small** (2003-2004, disparate treatment, race).  Analyzed validity of training and experience rating for Anthropologist at Smithsonian Institution.  Gave deposition.  Case decided for defendant.  Attorney: John Relman, Relman & Associates, Washington, DC (for plaintiff).

**Taylor & Harley v. Barnhart** (2003-2007, adverse impact, race).  Analyzed adverse impact of promotional selections at Social Security Administration.  Case pending.  Attorney: David L. Rose, Rose & Rose, Washington, DC (for plaintiff).

**Flagg v. Kirby Inland Marine**  (2004, disparate treatment, race).  Analyzed personnel practices and disparate treatment.  Case settled.  Attorney: Sherry Chandler, The Hall Law Firm, Houston, TX (for plaintiff).

**FOP/Vega v. City of Miami**  (2004-2007, city personnel rules).  Evaluated validity of employee selection procedures for Police Sergeant.  Testified at trial.  Case decided for plaintiffs.  Attorney:  Mimi Turin, Miami City Attorney's Office, Miami, FL (for defendant).

**Kohlbek v. City of Omaha**  (2004, discriminatory affirmative action, race, national origin).  Evaluated employee selection procedures for Fire Captain and Battalion Chief.  Gave deposition.  Case decided for plaintiff.  Attorney: John Corrigan, Fahey & Corrigan, P.C., Omaha, NE (for plaintiff).

**Pennsylvania Statewide Latino Coalition v. City of Reading**  (2004-2005, adverse impact, national origin).  Analyzed adverse impact and evaluated validity of employee selection procedures for entry-level Police Officer.  Case settled.  Attorney: Peter Winebrake, Trujillo Rodriguez & Richards, LC, Philadelphia, PA (for plaintiff).

**Bell v. City of Memphis** (2005, adverse impact, race).  Analyzed adverse impact and validity of promotional selection procedures for Police Sergeant.  Case settled.  Attorney: Kathleen Caldwell, Attorney at Law, Memphis, TN (for plaintiff).

**Bradley v. City of Lynn** (2005, adverse impact, race).  Analyzed adverse impact and validity of entry selection procedures for Firefighter in state of Massachusetts.  Case decided for plaintiffs.  Attorney: Harold Lichten, Pyle, Rome, Lichten, Ehrenberg & Liss-Riordan, P.C., Boston, MA.

**Murphy v. Price Waterhouse Coopers** (2005-2007, adverse impact, age).  Analyzed adverse impact of promotional selection procedures for Partner.  Gave deposition.  Case pending.  Attorney: David L. Rose, Rose & Rose, Washington, DC (for plaintiff).

**NTEU v. Securities and Exchange Commission** (2005-2007, race, age, union contract).  Analyzed adverse impact of merit increases.  Testified at arbitration hearing.  Case decided for plaintiffs.  Attorney: Michael Piacsek and Pat Wynns, National Treasury Employees Union, Washington, DC (for plaintiffs).

# LANCE W. SEBERHAGEN

***NTEU v. Treasury Department*** (2005-2007, union contract). Analyzed validity of employee selection procedures for Tax Specialist. Case settled. Attorney: Robert Shriver, National Treasury Employees Union, Washington, DC (for plaintiffs).

***FOP/Najiy v. City of Miami*** (2006-2007, Florida Civil Rights Act, race). Evaluated adverse impact and validity of employee selection procedures for Police Lieutenant. Gave deposition. Case pending. Attorney: Mimi Turin, Miami City Attorney's Office, Miami, FL (for defendant).

***Harrison-Gray et al. v. Nicholson*** (2006-2007, adverse impact, race). Analyzed adverse impact in employee awards at Richmond, VA, medical center. Case pending. Attorney: Kathleen Oddo, U.S. Department of Veterans Affairs (for defendant).

***Kinsolving v. Nicholson*** (2006, disparate treatment, sex, age). Evaluated validity of employee selection procedures and performance appraisal procedures for Social Worker. Case settled. Attorney: Nathaniel Johnson, The Law Firm of Nathaniel D. Johnson, LLC, Waldorf, MD (for plaintiff).

***Milavickas v. Ciber, Inc.*** (2006-2007, equal pay). Analyzed and evaluated various business development jobs. Case settled. Attorney: Suzzanne Decker, Miles & Stockbridge, Baltimore, MD (for defendant).

***Mure v. City of Miami*** (2006-2007, city personnel rules). Evaluated validity of employee selection procedures for Police Lieutenant. Case pending. Attorney: Kevin Jones and Elsa Jaramillo-Velez, Miami City Attorney's Office, Miami, FL (for defendant).

***Aliotta v. FDIC*** (2007, adverse impact, age). Analyzed adverse impact of reduction in force. Case pending. Attorney: David L. Rose, Rose & Rose, Washington, DC (for plaintiff).

***Jantz v. Barnhart*** (2007, disability). Analyzed adverse impact of employee selection procedures at Social Security Administration. Case pending. Attorney: Michael Snider, Snider & Associates, Baltimore (for plaintiff).

# **EXHIBIT 28-1**

**(Interim Report of Lance Seberhagen)**

*Aliotta v. FDIC*

# REBUTTAL TO DR. JEANNERET'S REPORT AND ADVERSE IMPACT ANALYSIS

## Interim Report

January 15, 2008

Lance Seberhagen, Ph.D.
Seberhagen & Associates
9021 Trailridge Court
Vienna, VA 22182
703-790-0796

# REBUTTAL TO DR. JEANNERET'S REPORT
# AND ADVERSE IMPACT ANALYSIS

## Background

Plaintiffs filed charges of employment discrimination on the basis of age against the Federal Deposit Insurance Corporation (FDIC) under the Age Discrimination in Employment Act (ADEA). The complaint specifically charged that the FDIC's 2005 reduction-in-force (RIF) discriminated against employees age 50-up in the FDIC's Division of Resolutions and Receiverships (DRR). The FDIC retained the services of Dr. P.R. Jeanneret to review and respond to the plaintiff's complaint, using his expertise as an industrial and organizational psychologist.

## Objective

Mr. David Rose, attorney for Plaintiffs, asked me to critique Dr. Jeanneret's report, dated August 15, 2007, and to estimate the adverse impact of the 2005 RIF on the basis of age. Mr. Rose asked me to focus on employee separations, rather than other types of employment actions that may have harmed employees.

I submitted an earlier Rebuttal Report, dated October 15, 2007, containing 22 tables. Upon further review, I found that I did not count all of the employees in the FDIC employee data for 2005. The under-count appears to be random with regard to age. Accordingly, I have revised my analysis for DRR and will revise my analysis for all FDIC employees in the near future. Mr. Rose also asked me to expand my adverse impact analysis to include employees with excepted-permanent types of appointments. The objective of this report is to provide an interim report of my adverse impact analysis for DRR. I will submit a revised final report next week to provide a complete analysis for the entire FDIC, as well as to update all tables, as needed.

## Qualifications

I have a Ph.D. in industrial and organizational psychology from the University of Minnesota and over 35 years of professional experience in the field of employee selection, job analysis, position classification, job evaluation, and equal employment opportunity. Statistical analysis was a major part of my professional training, and I use statistical analysis as a regular part of my work. A copy of my resume is attached to my report. My fee for working on this case is $275 per hour, plus expenses.

## CRITIQUE OF DR. JEANNERET'S REPORT

Dr. Jeanneret reviewed case documents, interviewed four individuals (whose relevance was not defined), and reviewed various FDIC documents and descriptive statistics. On the basis of this information, Dr. Jeanneret said he could find no evidence of systemic age discrimination at the FDIC.

My primary criticism of Dr. Jeanneret's report is that he did not conduct an adverse impact analysis to see if the 2005 RIF had an adverse impact against the class of permanent employees who were Age 50-up. Dr. Jeanneret looked at the average age of DRR employees before and after the 2005 RIF but did not define his sample of employees precisely enough to permit replication of his "study" and performed no tests of statistical significance to evaluate the observed differences in average ages. In any event, a comparison of average ages is not a proper adverse impact analysis. Dr. Jeanneret should have analyzed the 2005 RIF separation rates of permanent employees who were Age Under 50 versus Age 50-up to see if there was a substantially different rate of selection, as shown by appropriate statistical tests.

Dr. Jeanneret's also failed to describe and evaluate the FDIC's method for determining each employee's "retention standing." Dr. Jeanneret did not analyze these ratings to see if they had an adverse impact on the basis of age (i.e., Age Under 50 vs. Age 50-up). Nor did Dr. Jeanneret review FDIC documents to see if these rating procedures provided reliable and valid ratings of an employee's actual retention value to the organization.

## ADVERSE IMPACT ANALYSIS

As requested by Mr. Rose, I conducted an adverse impact analysis, as described below.

### Employee Sample – 2005 Data

Mr. Rose provided an electronic file to me containing PERHIS-2005 data for FDIC employees. This file contained all employees who were employed at FDIC during 2005. Mr. Rose also provided a key for the PERHIS code numbers used in the data file, and I looked up additional code numbers in the NFC Procedures Manual for the Information/Research Inquiry System, August 2007. The data file contained a spreadsheet with a separate line (record) of data for each personnel "action" (e.g., appointment, separation, award, merit increase) for a given employee during 2005. Each employee typically had more than one "action" during the year. The file contained 17,234 records for 31 variables, including the following relevant variables:

- EMPLAID (employee ID number)
- Birth Date
- Hire Date
- Effective Date

- Nature of Action
- Type of Appointment
- Pay Plan
- Series
- Grade
- Position Title
- Org2 (Division)

Mr. Rose also provided a FDIC data file to me, containing the ID numbers of the 504 DRR employees identified in Dr. Jeanneret's report. FDIC later deleted one employee from this list, leaving a total of 503 DRR employees.

## Method

I analyzed the adverse impact of the 2005 RIF in DRR using the method described below.

1. I used the two FDIC data files to identify DRR employees during 2005.

2. I defined "career" employees as those employees who had a Type of Appointment with code = 1 (competitive-career) or code = 2 (competitive-career conditional). I defined "non-career" employees as those employees who had a Type of Appointments with code = 6 (excepted-permanent), or code = 7 (excepted, conditional).

3. I identified all DRR employees whose hiring date was prior to 1/1/05. This group represents FDIC employees as of 1/1/05.

4. I calculated the age (under 50 vs. 50-up) of DRR employees as of 12/31/05, using employee birth dates. The RIF occurred during the entire year of 2005. Therefore, it was appropriate to calculate age at the end of the RIF period.

5. I tracked the personnel actions of the FDIC employees as of 1/1/05 to see what happened to them during the year. Some stayed in DRR, some transferred to other divisions, and others separated from FDIC.

6. There was no personnel action code for Reduction-in-Force (RIF). Therefore, I identified the separation codes that were most likely to include employees directly affected by the 2005 RIF, including separation codes that had a relatively high frequency on or about May 5, 2005 (buyout date) or September 3, 2005 (RIF date). These RIF-related separation codes included:

   - 302 – Retirement-voluntary
   - 303 – Retirement-special option
   - 304 – Retirement-ILIA (In-Lieu-of-Involuntary Action)
   - 312 – Resignation-ILIA (In-Lieu-of-Involuntary Action)

3

- 317 – Resignation
- 352 – Term-appointment In
- 356 – Term-involuntary

7. I identified the remaining separation codes as not being RIF-related. These non-RIF-related separation codes included:

- 300 – Retirement-mandatory
- 301 – Retirement-disability
- 330 – Removal
- 350 – Death
- 357 – Termination
- 385 – Term during probation/trial period

8. RIF-related separations did not occur on one or two specific dates but were likely to occur throughout the year. For purposes of my adverse impact analysis, I defined DRR employment on 12/31/05 as the number of DRR employees on 1/1/05 minus the number of employees who had RIF-related separations during the year. Thus, the selection rate for RIFs was the number of RIF-related separations during the year as a percentage of DRR employees as of 1/1/05.

9. As defined by the *Uniform Guidelines on Employee Selection Procedures* (29 CFR 1607), "adverse impact" is a substantially different rate of selection that works to the disadvantage of members of a protected group.[1] In the case of selection for termination (e.g., reduction-in-force), "adverse discriminatory impact" generally exists when two standards are met. First, the selection rate of one group must be greater than 125.0 percent of the selection rate of another group, according to the "125% Rule" used in the *Uniform Guidelines*.[2] Second, the difference in selection rates between groups must be statistically significant at the .05 level, as shown by an appropriate test of statistical significance, such as Fisher's Exact Test. The 125% Rule ensures that the differences between groups are large enough to have practical significance. The statistical significance test ensures that the differences between groups are reliable, with a two-tailed, chance probability of not more than 5.0 percent. I used Fisher's Exact Test as my statistical significance test because it provides accurate probability estimates for both large and small samples, regardless of the distribution of the data.

10. At the request of Mr. Rose, I also calculated the difference between groups in standard deviation units, using a z-test for two independent proportions. A difference of 1.96 standard deviations indicates a statistically significant difference,

---

[1] The Uniform Guidelines do not specifically apply to age discrimination but provide general guidance in the area of employment discrimination.

[2] The Uniform Guidelines uses the "80% Rule" as a rule of thumb to compare selection rates for positive selection decisions (e.g., hiring, promotion). When one is comparing selection rates for negative selection decisions (e.g., layoff, termination), the comparable rule of thumb would be the "125% Rule."

with a two-tailed, chance probability of 5.0 percent. However, the courts sometimes require "two or three standard deviations" to indicate adverse discriminatory impact.

## Findings

All tables are provided at the end of the narrative report.

Table 1 shows the number of DRR employees as of 1/1/05 by age (age under 50 vs. age 50-up) and their status at the end of the year on 12/31/05. At the start of 2005, there were 503 employees. During the course of the year, 233 employees stayed in DRR, while 73 employees transferred to another division, 179 had a RIF-related separation, and 3 had other separations.

Table 2 shows the results of my adverse impact analysis for DRR employees with career appointments. The RIF-related separation rate for employees age 50-up was 156.0% of the rate for employees under 50. Thus, the separation rate of permanent employees age 50-up was greater than the 125% "rule of thumb" in the *Uniform Guidelines*. The difference in RIF-related separation rates for age under 50 vs. age 50-up was also statistically significant, with a chance probability of 0.14%, or a difference of 3.19 standard deviations.

Table 3 shows the results of my adverse impact analysis for DRR employees with career and excepted appointments. The RIF-related separation rate for employees age 50-up was 140.7% of the rate for employees under 50. Thus, the separation rate of permanent employees age 50-up was greater than the 125% "rule of thumb" in the *Uniform Guidelines*. The difference in RIF-related separation rates for age under 50 vs. age 50-up was also statistically significant, with a chance probability of 0.70%, or a difference of 2.69 standard deviations.

## Conclusions

My adverse impact analysis found that the 2005 RIF had an adverse discriminatory impact for permanent employees age 50-up (versus age under 50) in the Division of Resolutions and Receivership (DRR). This conclusion holds for employees with career appointments, as well as for employees with career and excepted permanent appointments.

Seberhagen Report, 1/15/08                                         *Aliotta v. FDIC*

**Table 1**
**DRR Employees as of 1/1/05**

| Status at End of 2005 | Age Under 50 (12/31/05) | Age 50-up (12/31/05) | Total |
|---|---|---|---|
| **Competitive-Career & Competitive-Career Conditional Appointments as of 1/1/05** | | | |
| Stayed in DRR | 91 | 141 | 232 |
| Transferred to other div – kept career appt | 25 | 42 | 67 |
| Transferred to other div – took excepted appt | 4 | 2 | 6 |
| RIF-related separation /a | 44 | 135 | 179 |
| Other separation | | 3 | 3 |
| Total | 164 | 323 | 487 |
| **Excepted-Permanent & Excepted-Conditional Appointments as of 1/1/05 /b** | | | |
| Stayed in DRR – took career appt | 1 | | 1 |
| RIF-related separation /a | 9 | 6 | 15 |
| Total | 10 | 6 | 16 |
| **Total Employees – Career & Excepted Appointments (from above)** | | | |
| Stayed in DRR – kept career appt | 91 | 141 | 232 |
| Stayed in DRR – took career appt | 1 | | 1 |
| Transferred to other div – kept career appt | 25 | 42 | 67 |
| Transferred to other div – took excepted appt | 4 | 2 | 6 |
| RIF-related separation /a | 53 | 141 | 179 |
| Other separation | | 3 | 3 |
| TOTAL | 174 | 329 | 503 |

a.  Separation codes 302, 303, 304, 312, 317, 352, 356.

Seberhagen Report, 1/15/08                                      *Aliotta v. FDIC*

**Table 2**
**Impact Analysis - DRR – Career Appointments Only**

| Age (12/31/05) | 1/1/05 Employment | | RIF-Related Separations /a | | 12/31/05 Employment /b | | 125% Rule /c | Fisher's Exact Test | Diff in Std Dev |
|---|---|---|---|---|---|---|---|---|---|
| | N | Pct | N | Pct | N | Pct | | | |
| Under 50 | 164 | 100.0% | 44 | 26.8 | 120 | 73.2 | | | |
| 50-up | 323 | 100.0% | 135 | 41.8 | 188 | 58.2 | 156.0 | FS = 10.64 Prob = 0.14% | 3.19 |
| Total | 487 | 100.0% | 179 | 36.8 | 308 | 63.2 | | | |

SOURCE: Table 1 above. Competitive-career and competitive-career conditional appointments only.

a. Separation codes 302, 303, 304, 312, 317, 352, 356.
b. Does not include effect of transfers and non-RIF related separations.
c. Comparison of separation rates = 41.8/26.8 = 156.0 Significant if greater than 125.0.

FS = Fisher's statistic.
Prob = Chance probability. Significant if 5.00% or less.
Diff in Std Dev = Difference in Standard Deviations. Significant if greater than 2.00.
CONCLUSION = Adverse discriminatory impact for Age 50-up.

**Table 3**
**Impact Analysis – DRR – Career and Excepted Permanent Appointments**

| Age (12/31/05) | 1/1/05 Employment | | RIF-Related Separations /a | | 12/31/05 Employment /b | | 125% Rule /c | Fisher's Exact Test | Diff in Std Dev |
|---|---|---|---|---|---|---|---|---|---|
| | N | Pct | N | Pct | N | Pct | | | |
| Under 50 | 174 | 100.0% | 53 | 30.5 | 121 | 69.5 | | | |
| 50-up | 329 | 100.0% | 141 | 42.9 | 188 | 57.1 | 140.7 | FS = 7.43 Prob = 0.70% | 2.69 |
| Total | 503 | 100.0% | 194 | 38.6 | 309 | 61.4 | | | |

SOURCE: Table 1 above. Career and Excepted Permanent Appointments.

a. Separation codes 302, 303, 304, 312, 317, 352, 356.
b. Does not include effect of transfers and non-RIF related separations.
c. Comparison of separation rates = 37.8/23.8 = 158.8. Significant if greater than 125.0.

FS = Fisher's statistic.
Prob = Chance probability. Significant if 5.00% or less.
Diff in Std Dev = Difference in Standard Deviations. Significant if greater than 2.00.
CONCLUSION = Adverse discriminatory impact for Age 50-up.

# A P P E N D I X

# EXHIBIT 28-2

**(Rebuttal Report of Lance Seberhagen)**

*Aliotta v. FDIC*

# REBUTTAL TO DR. JEANNERET'S REPORT AND ADVERSE IMPACT ANALYSIS

**January 28, 2008**

Lance Seberhagen, Ph.D.
Seberhagen & Associates
9021 Trailridge Court
Vienna, VA 22182
703-790-0796

# REBUTTAL TO DR. JEANNERET'S REPORT AND ADVERSE IMPACT ANALYSIS

## Background

Plaintiffs filed charges of employment discrimination on the basis of age against the Federal Deposit Insurance Corporation (FDIC) under the Age Discrimination in Employment Act (ADEA). The complaint specifically charged that the FDIC's overall downsizing, or reduction-in-force (RIF), program in 2005 discriminated against employees age 50-up in the FDIC's Division of Resolutions and Receiverships (DRR).[1] The FDIC retained the services of Dr. P.R. Jeanneret to review and respond to the plaintiff's complaint, using his expertise as an industrial and organizational psychologist.

## Objective

Mr. David Rose, attorney for Plaintiffs, asked me to critique Dr. Jeanneret's report and to estimate the adverse impact of the overall downsizing program in 2005 on the basis of age (under 50 versus 50-up, as of November 30, 2005) for both career and permanent employees of FDIC. Mr. Rose asked me to focus on downsizing-related separations, rather than other types of employment actions that may have harmed employees. Mr. Rose asked me to estimate the adverse impact of the 2005 downsizing for DRR and total FDIC. This report does not attempt to assess the adverse impact of employees who were transferred to a lower-grade position but who remained employed by FDIC.

## Qualifications

I have a Ph.D. in industrial and organizational psychology from the University of Minnesota and over 35 years of professional experience in the field of employee selection, job analysis, position classification, job evaluation, and equal employment opportunity. Statistical analysis was a major part of my professional training, and I use statistical analysis as a regular part of my work. A copy of my resume is attached to my report. My fee for working on this case is $275 per hour, plus expenses.

# CRITIQUE OF DR. JEANNERET'S REPORT

Dr. Jeanneret reviewed case documents, interviewed four individuals (whose relevance was not defined), and reviewed various FDIC documents and descriptive statistics. On the basis of this information, without further explanation of his methodology, Dr. Jeanneret said that he could find no evidence of intentional or systemic age discrimination at the FDIC.

---

[1] For purposes of my report, I use the term downsizing and "reduction-in-force" (RIF) to refer to buyouts, involuntary separations, and other actions taken by FDIC to accomplish its downsizing objectives.

My primary criticism of Dr. Jeanneret's report is that he did not conduct a proper adverse impact analysis to see if the 2005 RIF had an adverse impact against permanent employees who were age 50-up. Dr. Jeanneret calculated the mean age and the age distribution (under 50, 50-up) of DRR employees at various points in time from the beginning to the end of the RIF in 2004-2005, but his methodology and employee sample were not clearly defined. He analyzed the age of employees who remained at FDIC but not the employees who left. Dr. Jeanneret provided a list of employee ID numbers and birth dates in the Appendix of his report but did not explain the relevance of these employees to his report or show the ages that went into each of his calculations. He defined RIF-related separations in overly narrow and restrictive terms, defining the 2005 RIF as a one-day event on September 17, 2005, that was limited to DRR. He made no attempt to analyze the effect of the 2005 RIF on all permanent employees of FDIC. He also failed to analyze relative selection rates, as required for a proper adverse impact analysis. At a minimum, Dr. Jeanneret should have analyzed downsizing (RIF) separation rates for DRR employees who were age under 50 versus 50-up to see if there was a substantially different rate of selection for separation, as shown by appropriate statistical tests.

# ADVERSE IMPACT ANALYSIS

As requested by Mr. Rose, I conducted an adverse impact analysis, as described below.

## Employee Sample – 2005 Data

Mr. Rose provided an electronic file to me containing PERHIS-2005 data for FDIC employees. This file contained all employees who were employed at FDIC during 2005. Mr. Rose also provided a key for the PERHIS code numbers used in the data file, and I looked up additional code numbers in the NFC Procedures Manual for the Information/Research Inquiry System, August 2007. The data file contained a spreadsheet with a separate line (record) of data for each personnel "action" (e.g., appointment, separation, award, merit increase) for a given employee during 2005. Each employee typically had more than one "action" during the year. The file contained 17,234 records for 31 variables, including the following relevant variables:

- EMPLAID (employee ID number)
- Birth Date
- Hire Date
- Effective Date
- Nature of Action
- Type of Appointment
- Pay Plan
- Series
- Grade

2

- Position Title
- Org2 (Division)

Mr. Rose also provided a second FDIC data file, containing the ID numbers of the 504 DRR employees identified in Exhibit 4 of Dr. Jeanneret's report. FDIC later deleted one employee from this list, leaving a total of 503 DRR employees.

## Method

1. The main FDIC data file contained multiple records for each employee. I used the employee ID number (EMPLAID) and hiring date to identify each unique employee for purposes of my employee headcounts. Some employees were hired and separated more than once in 2005. I counted each hire as a separate employee.

2. I performed separate analyses for both "career" and "permanent" employees. "Career" employees include competitive-career and competitive-career conditional appointments (i.e., appointment codes 1 and 2). Permanent employees include career employees plus excepted-permanent and excepted-conditional appointments (i.e., appointment codes 1, 2, 6, and 7).

3. I calculated each employee's age as of September 30, 2005, as requested by Mr. Rose. Based on this date, I categorized employees into the following age groups: Under 40, 40-49, and 50-up.

4. I identified all employees whose hiring date was prior to 1/1/05. This group represented FDIC employees as of 1/1/05.

5. I tracked the personnel actions of the FDIC employees who were employed as of 1/1/05 to see what happened to them during the year. Some stayed in their organizational unit, some transferred to other organizational units, and others separated from FDIC.

6. The effects of the RIF were reflected by various separation codes. I reviewed all employee separation codes and effective dates to identify the codes that were most likely to be RIF-related. Two key dates in this regard were (on or about): May 14, 2005 (buyout date) and September 2 or 3, 2005 (involuntary separation date). RIF-related separation codes included:

- 302 – Retirement-voluntary
- 303 – Retirement-special option
- 304 – Retirement-ILIA (In-Lieu-of-Involuntary Action)
- 312 – Resignation-ILIA (In-Lieu-of-Involuntary Action)
- 317 – Resignation
- 352 – Term-appointment In
- 356 – Term-involuntary

3

7.  I identified the remaining separation codes as not being RIF-related.  These non-RIF-related separation codes included:

- 300 – Retirement-mandatory
- 301 – Retirement-disability
- 330 – Removal
- 350 – Death
- 357 – Termination
- 385 – Term during probation/trial period

8.  I counted the number of employees by age, as of 1/1/05, in each of the following work units:

- Div 15 – Corporate University
- Div 35 – Division of Administration
- Div 51 – Division of Information Technology
- Div 52 – Division of Finance
- Div 53 – Division of Insurance and Research
- Div 65 – Division of Resolutions and Receivership
- Div 70 – Division of Supervision and Consumer Protection
- FDIC Total (includes above divisions plus other work units)

9.  I analyzed the adverse impact of the 2005 RIF in the two work units requested by Mr. Rose:  Division of Resolutions and Receivership (DRR) and total FDIC.

10. RIF-related separations did not occur on one or two specific dates but were likely to occur throughout the year.  For purposes of my adverse impact analysis, I defined employment on 12/31/05 as the number of employees on 1/1/05 minus the number of employees who had RIF-related separations during the year.  Thus, the selection rate for RIFs was the number of RIF-related separations during the year as a percentage of employees as of 1/1/05.

11. As defined by the *Uniform Guidelines on Employee Selection Procedures* (29 CFR 1607), "adverse impact" is a substantially different rate of selection that works to the disadvantage of members of a protected group.[2]  In the case of selection for termination (e.g., reduction-in-force), "adverse discriminatory impact" generally exists when either of two standards are met.  First, the selection rate of one group must be greater than 125.0 percent of the selection rate of another group, according to the "125% Rule" used in the *Uniform Guidelines*.[3]  Second, the difference in selection rates between groups must be statistically significant at the .05 level, as shown by an appropriate test of statistical significance, such as Fisher's Exact Test.

---

[2]  The Uniform Guidelines do not specifically apply to age discrimination but provide general guidance in the area of employment discrimination.
[3]  The Uniform Guidelines uses the "80% Rule" as a rule of thumb to compare selection rates for positive selection decisions (e.g., hiring, promotion).  When one is comparing selection rates for negative selection decisions (e.g., layoff, termination), the comparable rule of thumb would be the "125% Rule."

The 125% Rule ensures that the differences between groups are large enough to have practical significance. The statistical significance test ensures that the differences between groups are reliable, with a two-tailed, chance probability of not more than 5.0 percent. I used Fisher's Exact Test as my statistical significance test because it provides accurate probability estimates for both large and small samples, regardless of the distribution of the data.

12. Under the *Uniform Guidelines*, adverse impact exists when either of the two standards – the 125% Rule or statistical significance – is met, but I used a more conservative approach in my analysis by requiring <u>both</u> standards to be met before I concluded that there was an adverse impact.

13. At the request of Mr. Rose, I calculated statistical significance in terms of standard deviation units, as well as chance probability. A difference of 1.96 standard deviations indicates a statistically significant difference, with a two-tailed, chance probability of 5.0 percent. However, the courts sometimes require a difference of "two or three standard deviations" to indicate adverse discriminatory impact.

14. I provided some additional tables to provide perspective:

- 2005 Employees by Appointment Type (as of 1/1/05)
- 2005 New Hires by Appointment Type
- 2005 New Hires by Pay Grade (Any Appointment Type)
- 2005 New Hires by Organization (Any Appointment Type)
- 2005 Separations by Age – FDIC Total
- 2005 Separations by Age – Corporate University
- 2005 Separations by Age – Division of Administration
- 2005 Separations by Age – Division of Information Technology
- 2005 Separations by Age – Division of Finance
- 2005 Separations by Age – Division of Insurance and Research
- 2005 Separations by Age – Division of Resolutions and Receivership
- 2005 Separations by Age – Division of Supervision and Consumer Protection

## Findings

All tables are provided at the end of the narrative report.

Table 1 shows FDIC employees by appointment type, as of 1/1/05.

Tables 2-9 show the count of employees in the seven largest divisions and total FDIC, as of 1/1/05 and 12/31/05 (i.e., employees minus RIF-related separations).

Tables 10-11 show the results of the adverse impact analysis for DRR. In DRR, the RIF-related separation rate for "career" employees age 50-up was 153.9% of the rate of employees under 50. For "permanent" employees, the RIF-related separation rate for employees age 50-up was 139.8% of the rate of employees under 50. Thus, the RIF-

5

related separation rate of employees 50-up was greater than the 125% "rule of thumb" in the *Uniform Guidelines*.    The differences in selection rates were also statistically significant, with a chance probability of 0.16% and a difference of 3.16 standard deviations for "career" employees, while "permanent" employees had a chance probability of 0.75% and a difference of 2.67 standard deviations.

Tables 12-13 show the results of the adverse impact analysis for the total FDIC.   In FDIC, the RIF-related separation rate for "career" employees age 50-up was 257.2% of the rate of employees under 50.    For "permanent" employees, the RIF-related separation rate for employees age 50-up was 217.3% of the rate of employees under 50.   Thus, the RIF-related separation rate of employees 50-up was greater than the 125% "rule of thumb" in the *Uniform Guidelines*.   The differences in selection rates were also statistically significant, with a chance probability of less than 0.0001% and a difference of over 4.90 standard deviations for "career" employees, while "permanent" employees had a chance probability of less than 0.0001% and a difference of over 4.90 standard deviations.

Table 14 shows the new hires by appointment type at FDIC in 2005.   Table 15 shows the new hires by pay grade at FDIC in 2005, ranked from high to low salary level. Table 16 shows the new hires by organization at FDIC in 2005.

Tables 17-24 show the 2005 separations by division and total FDIC.

## Conclusions

My analysis of employee separations found that the overall RIF in 2005 had an adverse discriminatory impact against both "career" and "permanent" employees age 50-up (versus age Under 50) in the Division of Resolutions and Receivership (DRR) and in the Total FDIC.

Meanwhile, FDIC hired 214 employees in 2005, the same year as the 2005 RIF.   Of these new hires, 93.9% (201/214) were age under 40, while only 6.1% (13/214) were age 50-up. Of the 214 new hires, 29.4% (63/214) were permanent employees, of whom 93.7% (59/63) were age under 50 and 6.3% were age 50-up.   Thus, FDIC was hiring younger workers at the same time that it was laying off older workers.

**Table 1**
**FDIC - Total Employees by Appointment Type  (Jan. 1, 2005)**

| Appointment Code | Age Under 40 9/30/05 | | Age 40-49 9/30/05 | | Age 50-up 9/30/05 | | Total | |
|---|---|---|---|---|---|---|---|---|
| | N | Pct | N | Pct | N | Pct | N | Pct |
| 1 | 945 | 20.8% | 1739 | 38.3% | 1855 | 40.9% | 4539 | 100.0% |
| 2 | 135 | 72.2% | 28 | 15.0% | 24 | 12.8% | 187 | 100.0% |
| 3 | 3 | 23.1% | 6 | 46.2% | 4 | 30.8% | 13 | 100.0% |
| 4 | | 0.0% | 1 | 100.0% | | 0.0% | 1 | 100.0% |
| 6 | 4 | 1.4% | 73 | 26.0% | 204 | 72.6% | 281 | 100.0% |
| 7 | 73 | 88.0% | 5 | 6.0% | 5 | 6.0% | 83 | 100.0% |
| 8 | 3 | 60.0% | | 0.0% | 2 | 40.0% | 5 | 100.0% |
| 9 | 86 | 100.0% | | 0.0% | | 0.0% | 86 | 100.0% |
| Total | 1249 | 24.0% | 1852 | 35.6% | 2094 | 40.3% | 5195 | 100.0% |

Appointment Codes:
1 = Competitive - career.
2 = Competitive - career conditional.
3 = Competitive - term.
4 = Competitive - temporary.

6 = Excepted - permanent.
7 = Excepted - conditional.
8 = Excepted - limited.
9 = Excepted - temporary.

**Table 2**
**2005 Employment - Effect of RIF-Related Separations - Corporate University (Org 15)**

| Date | Age Under 40 9/30/05 | | Age 40-49 9/30/05 | | Age 50-up 9/30/05 | | Total | |
|---|---|---|---|---|---|---|---|---|
| | N | Pct | N | Pct | N | Pct | N | Pct |
| Career employees only (Appointment Codes 1 & 2) | | | | | | | | |
| 1/1/2005 | 6 | 18.8% | 11 | 34.4% | 15 | 46.9% | 32 | 100.0% |
| 12/31/2005* | 6 | 19.4% | 10 | 32.3% | 15 | 48.4% | 31 | 100.0% |
| Permanent employees only (Appointment Codes 1, 2, 6, & 7) | | | | | | | | |
| 1/1/2005 | 6 | 18.8% | 11 | 34.4% | 15 | 46.9% | 32 | 100.0% |
| 12/31/2005* | 6 | 19.4% | 10 | 32.3% | 15 | 48.4% | 31 | 100.0% |

* 1/1/05 employment total, minus employees with RIF-related separation codes during 2005.
  RIF-related separation codes = 302, 303, 304, 312, 317, 352, & 356.


**Table 3**
**2005 Employment - Effect of RIF-Related Separations - Division of Administration (Org 35)**

| Date | Age Under 40 9/30/05 | | Age 40-49 9/30/05 | | Age 50-up 9/30/05 | | Total | |
|---|---|---|---|---|---|---|---|---|
| | N | Pct | N | Pct | N | Pct | N | Pct |
| Career employees only (Appointment Codes 1 & 2) | | | | | | | | |
| 1/1/2005 | 42 | 10.3% | 177 | 43.4% | 189 | 46.3% | 408 | 100.0% |
| 12/31/2005* | 30 | 8.8% | 160 | 46.9% | 151 | 44.3% | 341 | 100.0% |
| Permanent employees only (Appointment Codes 1, 2, 6, & 7) | | | | | | | | |
| 1/1/2005 | 43 | 10.5% | 178 | 43.3% | 190 | 46.2% | 411 | 100.0% |
| 12/31/2005* | 31 | 9.0% | 161 | 46.8% | 152 | 44.2% | 344 | 100.0% |

* 1/1/05 employment total, minus employees with RIF-related separation codes during 2005.
  RIF-related separation codes = 302, 303, 304, 312, 317, 352, & 356.


**Table 4**
**2005 Employment - Effect of RIF-Related Separations - Division of Information Technology (Org 51)**

| Date | Age Under 40 9/30/05 | | Age 40-49 9/30/05 | | Age 50-up 9/30/05 | | Total | |
|---|---|---|---|---|---|---|---|---|
| | N | Pct | N | Pct | N | Pct | N | Pct |
| Career employees only (Appointment Codes 1 & 2) | | | | | | | | |
| 1/1/2005 | 50 | 13.1% | 143 | 37.3% | 190 | 49.6% | 383 | 100.0% |
| 12/31/2005* | 38 | 14.0% | 117 | 43.0% | 117 | 43.0% | 272 | 100.0% |
| Permanent employees only (Appointment Codes 1, 2, 6, & 7) | | | | | | | | |
| 1/1/2005 | 62 | 15.5% | 146 | 36.6% | 191 | 47.9% | 399 | 100.0% |
| 12/31/2005* | 44 | 15.7% | 119 | 42.3% | 118 | 42.0% | 281 | 100.0% |

* 1/1/05 employment total, minus employees with RIF-related separation codes during 2005.
  RIF-related separation codes = 302, 303, 304, 312, 317, 352, & 356.


**Table 5**
**2005 Employment - Effect of RIF-Related Separations - Division of Finance (Org 52)**

| Date | Age Under 40 9/30/05 | | Age 40-49 9/30/05 | | Age 50-up 9/30/05 | | Total | |
|---|---|---|---|---|---|---|---|---|
| | N | Pct | N | Pct | N | Pct | N | Pct |
| Career employees only (Appointment Codes 1 & 2) | | | | | | | | |
| 1/1/2005 | 16 | 8.2% | 93 | 47.4% | 87 | 44.4% | 196 | 100.0% |
| 12/31/2005* | 16 | 9.1% | 91 | 52.0% | 68 | 38.9% | 175 | 100.0% |
| Permanent employees only (Appointment Codes 1, 2, 6, & 7) | | | | | | | | |
| 1/1/2005 | 16 | 8.2% | 93 | 47.4% | 87 | 44.4% | 196 | 100.0% |
| 12/31/2005* | 16 | 9.1% | 91 | 52.0% | 68 | 38.9% | 175 | 100.0% |

* 1/1/05 employment total, minus employees with RIF-related separation codes during 2005.
  RIF-related separation codes = 302, 303, 304, 312, 317, 352, & 356.

**Table 6**
**2005 Employment - Effect of RIF-Related Separations - Division of Insurance and Research (Org 53)**

| Date | Age Under 40 9/30/05 | | Age 40-49 9/30/05 | | Age 50-up 9/30/05 | | Total | |
|---|---|---|---|---|---|---|---|---|
| | N | Pct | N | Pct | N | Pct | N | Pct |
| **Career employees only (Appointment Codes 1 & 2)** | | | | | | | | |
| 1/1/2005 | 48 | 27.4% | 63 | 36.0% | 64 | 36.6% | 175 | 100.0% |
| 12/31/2005* | 47 | 29.6% | 61 | 38.4% | 51 | 32.1% | 159 | 100.0% |
| **Permanent employees only (Appointment Codes 1, 2, 6, & 7)** | | | | | | | | |
| 1/1/2005 | 48 | 27.3% | 64 | 36.4% | 64 | 36.4% | 176 | 100.0% |
| 12/31/2005* | 47 | 29.4% | 62 | 38.8% | 51 | 31.9% | 160 | 100.0% |

\* 1/1/05 employment total, minus employees with RIF-related separation codes during 2005.
   RIF-related separation codes = 302, 303, 304, 312, 317, 352, & 356.


**Table 7**
**2005 Employment - Effect of RIF-Related Separations - Div of Resolutions and Receivership (Org 65)**

| Date | Age Under 40 9/30/05 | | Age 40-49 9/30/05 | | Age 50-up 9/30/05 | | Total | |
|---|---|---|---|---|---|---|---|---|
| | N | Pct | N | Pct | N | Pct | N | Pct |
| **Career employees only (Appointment Codes 1 & 2)** | | | | | | | | |
| 1/1/2005 | 11 | 2.3% | 159 | 32.6% | 317 | 65.1% | 487 | 100.0% |
| 12/31/2005* | 8 | 2.6% | 116 | 37.5% | 185 | 59.9% | 309 | 100.0% |
| **Permanent employees only (Appointment Codes 1, 2, 6, & 7)** | | | | | | | | |
| 1/1/2005 | 19 | 3.8% | 161 | 32.0% | 323 | 64.2% | 503 | 100.0% |
| 12/31/2005* | 8 | 2.6% | 117 | 37.7% | 185 | 59.7% | 310 | 100.0% |

\* 1/1/05 employment total, minus employees with RIF-related separation codes during 2005.
   RIF-related separation codes = 302, 303, 304, 312, 317, 352, & 356.


**Table 8**
**2005 Employment - Effect of RIF-Related Separations - Div of Supv and Consumer Protection (Org 70)**

| Date | Age Under 40 9/30/05 | | Age 40-49 9/30/05 | | Age 50-up 9/30/05 | | Total | |
|---|---|---|---|---|---|---|---|---|
| | N | Pct | N | Pct | N | Pct | N | Pct |
| **Career employees only (Appointment Codes 1 & 2)** | | | | | | | | |
| 1/1/2005 | 859 | 33.3% | 930 | 36.0% | 791 | 30.7% | 2580 | 100.0% |
| 12/31/2005* | 799 | 32.5% | 911 | 37.1% | 746 | 30.4% | 2456 | 100.0% |
| **Permanent employees only (Appointment Codes 1, 2, 6, & 7)** | | | | | | | | |
| 1/1/2005 | 914 | 34.5% | 932 | 35.2% | 801 | 30.3% | 2647 | 100.0% |
| 12/31/2005* | 828 | 33.2% | 913 | 36.6% | 755 | 30.2% | 2496 | 100.0% |

\* 1/1/05 employment total, minus employees with RIF-related separation codes during 2005.
   RIF-related separation codes = 302, 303, 304, 312, 317, 352, & 356.


**Table 9**
**2005 Employment - Effect of RIF-Related Separations - FDIC Total**

| Date | Age Under 40 9/30/05 | | Age 40-49 9/30/05 | | Age 50-up 9/30/05 | | Total | |
|---|---|---|---|---|---|---|---|---|
| | N | Pct | N | Pct | N | Pct | N | Pct |
| **Career employees only (Appointment Codes 1 & 2)** | | | | | | | | |
| 1/1/2005 | 1080 | 22.9% | 1767 | 37.4% | 1879 | 39.8% | 4726 | 100.0% |
| 12/31/2005* | 989 | 23.9% | 1640 | 39.6% | 1509 | 36.5% | 4138 | 100.0% |
| **Permanent employees only (Appointment Codes 1, 2, 6, & 7)** | | | | | | | | |
| 1/1/2005 | 1157 | 22.7% | 1845 | 36.2% | 2088 | 41.0% | 5090 | 100.0% |
| 12/31/2005* | 1026 | 23.2% | 1710 | 38.7% | 1686 | 38.1% | 4422 | 100.0% |

\* 1/1/05 employment total, minus employees with RIF-related separation codes during 2005.
   RIF-related separation codes = 302, 303, 304, 312, 317, 352, & 356.

**Table 10**
**Impact Analysis - DRR - Career Employees Only (Appointment Codes = 1 & 2)**

| Age 9/30/05 | Employment 1/1/05 | | RIF-Related Separations /a | | Employment 12/31/05 /b | | 125% Rule /c | Fisher's Exact Test | Diff in Std Dev | Adverse Impact |
|---|---|---|---|---|---|---|---|---|---|---|
| | N | Pct | N | Pct | N | Pct | | | | |
| Under 50 | 170 | 100.0% | 46 | 27.1% | 124 | 72.9% | | | | |
| 50-up | 317 | 100.0% | 132 | 41.6% | 185 | 58.4% | 153.9% | FS = 10.28 | 3.16 | Yes |
| Total | 487 | 100.0% | 178 | 36.6% | 309 | 63.4% | | Prob = 0.1564% | | |

SOURCE : Table 7 above.
a.  RIF-related separation codes = 302, 303, 304, 312, 317, 352, & 356.
b.  Does not include effect of new hires, transfers, and non-RIF-related separations.
c.  Comparison of separation rates = 46.1/27.1 = 153.9.  Significant if greater than 125.0.

FS = Fisher's statistic.
Prob = Chance probability.  Significant if 5.00% or less.
Diff in Std Dev = Difference in standard deviations.  Significant if greater than 2.00.


**Table 11**
**Impact Analysis - DRR - Permanent Employees Only (Appointment Codes = 1, 2, 6, & 7)**

| Age 9/30/05 | Employment 1/1/05 | | RIF-Related Separations /a | | Employment 12/31/05 /b | | 125% Rule /c | Fisher's Exact Test | Diff in Std Dev | Adverse Impact |
|---|---|---|---|---|---|---|---|---|---|---|
| | N | Pct | N | Pct | N | Pct | | | | |
| Under 50 | 180 | 100.0% | 55 | 30.6% | 125 | 69.4% | | | | |
| 50-up | 323 | 100.0% | 138 | 42.7% | 185 | 57.3% | 139.8% | FS = 7.28 | 2.67 | Yes |
| Total | 503 | 100.0% | 193 | 38.4% | 310 | 61.6% | | Prob = 0.7476% | | |

SOURCE : Table 7 above.
a.  RIF-related separation codes = 302, 303, 304, 312, 317, 352, & 356.
b.  Does not include effect of new hires, transfers, and non-RIF-related separations.
c.  Comparison of separation rates = 46.1/27.1 = 153.9.  Significant if greater than 125.0.

FS = Fisher's statistic.
Prob = Chance probability.  Significant if 5.00% or less.
Diff in Std Dev = Difference in standard deviations.  Significant if greater than 2.00.

**Table 12**
**Impact Analysis - FDIC Total - Career Employees Only (Appointment Codes = 1 & 2)**

| Age 9/30/05 | Employment 1/1/05 | | RIF-Related Separations /a | | Employment 12/31/05 /b | | 125% Rule /c | Fisher's Exact Test | Diff in Std Dev | Adverse Impact |
|---|---|---|---|---|---|---|---|---|---|---|
| | N | Pct | N | Pct | N | Pct | | | | |
| Under 50 | 2847 | 100.0% | 218 | 7.7% | 2629 | 92.3% | | | | |
| 50-up | 1879 | 100.0% | 370 | 19.7% | 1509 | 80.3% | 257.2% | FS = 146.96 | > 4.90 | Yes |
| Total | 4726 | 100.0% | 588 | 12.4% | 4138 | 87.6% | | Prob < 0.0001% | | |

SOURCE : Table 9 above.
a. RIF-related separation codes = 302, 303, 304, 312, 317, 352, & 356.
b. Does not include effect of new hires, transfers, and non-RIF-related separations.
c. Comparison of separation rates = 46.1/27.1 = 153.9. Significant if greater than 125.0.

FS = Fisher's statistic.
Prob = Chance probability. Significant if 5.00% or less.
Diff in Std Dev = Difference in standard deviations. Significant if greater than 2.00.

**Table 13**
**Impact Analysis - FDIC Total - Permanent Employees Only (Appointment Codes = 1, 2, 6, & 7)**

| Age 9/30/05 | Employment 1/1/05 | | RIF-Related Separations /a | | Employment 12/31/05 /b | | 125% Rule /c | Fisher's Exact Test | Diff in Std Dev | Adverse Impact |
|---|---|---|---|---|---|---|---|---|---|---|
| | N | Pct | N | Pct | N | Pct | | | | |
| Under 50 | 3002 | 100.0% | 266 | 8.9% | 2736 | 91.1% | | | | |
| 50-up | 2088 | 100.0% | 402 | 19.3% | 1686 | 80.7% | 217.3% | FS = 114.55 | > 4.90 | Yes |
| Total | 5090 | 100.0% | 668 | 13.1% | 4422 | 86.9% | | Prob < 0.0001% | | |

SOURCE : Table 9 above.
a. RIF-related separation codes = 302, 303, 304, 312, 317, 352, & 356.
b. Does not include effect of new hires, transfers, and non-RIF-related separations.
c. Comparison of separation rates = 46.1/27.1 = 153.9. Significant if greater than 125.0.

FS = Fisher's statistic.
Prob = Chance probability. Significant if 5.00% or less.
Diff in Std Dev = Difference in standard deviations. Significant if greater than 2.00.

11

**Table 14**
**FDIC - New Hires by Appointment Type  (2005)**

| Apptmt Code | Age Under 40 9/30/05 | | Age 40-49 9/30/05 | | Age 50-up 9/30/05 | | Total | |
|---|---|---|---|---|---|---|---|---|
| | N | Pct | N | Pct | N | Pct | N | Pct |
| 1 | 8 | 47.1% | 7 | 41.2% | 2 | 11.8% | 17 | 100.0% |
| 2 | 9 | 69.2% | 3 | 23.1% | 1 | 7.7% | 13 | 100.0% |
| 3 | 1 | 16.7% | 4 | 66.7% | 1 | 16.7% | 6 | 100.0% |
| 4 | | | | | | | | |
| 6 | 2 | 66.7% | | 0.0% | 1 | 33.3% | 3 | 100.0% |
| 7 | 30 | 100.0% | | 0.0% | | 0.0% | 30 | 100.0% |
| 8 | 41 | 66.1% | 13 | 21.0% | 8 | 12.9% | 62 | 100.0% |
| 9 | 83 | 100.0% | | 0.0% | | 0.0% | 83 | 100.0% |
| Total | 174 | 81.3% | 27 | 12.6% | 13 | 6.1% | 214 | 100.0% |

Appointment Codes:
1 = Competitive - career.                    6 = Excepted - permanent.
2 = Competitive - career conditional.        7 = Excepted - conditional.
3 = Competitive - term.                       8 = Excepted - limited.
4 = Competitive - temporary.                  9 = Excepted - temporary.


**Table 15**
**FDIC - New Hires by Pay Grade - All Appointment Types (2005)**

| Pay Grade | Age Under 40 9/30/05 | | Age 40-49 9/30/05 | | Age 50-up 9/30/05 | | Total | |
|---|---|---|---|---|---|---|---|---|
| | N | Pct | N | Pct | N | Pct | N | Pct |
| EX-04 | | 0.0% | | 0.0% | 1 | 100.0% | 1 | 100.0% |
| EM-00 | 1 | 33.3% | 2 | 66.7% | | 0.0% | 3 | 100.0% |
| CM-02 | | 0.0% | 1 | 100.0% | | 0.0% | 1 | 100.0% |
| CG-15 | 1 | 25.0% | 3 | 75.0% | | 0.0% | 4 | 100.0% |
| CG-14 | 2 | 25.0% | 4 | 50.0% | 2 | 25.0% | 8 | 100.0% |
| CG-13 | 3 | 60.0% | 1 | 20.0% | 1 | 20.0% | 5 | 100.0% |
| CG-12 | 8 | 72.7% | 3 | 27.3% | | 0.0% | 11 | 100.0% |
| CG-11 | 3 | 100.0% | | 0.0% | | 0.0% | 3 | 100.0% |
| CG-10 | | | | | | | | |
| CG-09 | 12 | 70.6% | 3 | 17.6% | 2 | 11.8% | 17 | 100.0% |
| CG-08 | | | | | | | | |
| CG-07 | 43 | 72.9% | 10 | 16.9% | 6 | 10.2% | 59 | 100.0% |
| CG-06 | 1 | 50.0% | | 0.0% | 1 | 50.0% | 2 | 100.0% |
| CG-05 | 9 | 100.0% | | 0.0% | | 0.0% | 9 | 100.0% |
| CG-04 | 64 | 100.0% | | 0.0% | | 0.0% | 64 | 100.0% |
| CG-03 | 25 | 100.0% | | 0.0% | | 0.0% | 25 | 100.0% |
| CG-02 | 1 | 100.0% | | 0.0% | | 0.0% | 1 | 100.0% |
| CG-01 | 1 | 100.0% | | 0.0% | | 0.0% | 1 | 100.0% |
| Total | 174 | 81.3% | 27 | 12.6% | 13 | 6.1% | 214 | 100.0% |

**Table 16**
**FDIC - New Hires by Organization - All Appointment Types (2005)**

| Organization by Code Number | Age Under 40 9/30/05 | | Age 40-49 9/30/05 | | Age 50-up 9/30/05 | | Total | |
|---|---|---|---|---|---|---|---|---|
| | N | Pct | N | Pct | N | Pct | N | Pct |
| 10 - Executive Offices | 1 | 50.0% | | 0.0% | 1 | 50.0% | 2 | 100.0% |
| 14 - Office of Legislative Affairs | 1 | 100.0% | | 0.0% | | 0.0% | 1 | 100.0% |
| 15 - Corporate University | 39 | 62.9% | 13 | 21.0% | 10 | 16.1% | 62 | 100.0% |
| 16 - Office of Public Affairs | 1 | 100.0% | | 0.0% | | 0.0% | 1 | 100.0% |
| 17 - Office of the Ombudsman | 1 | 100.0% | | 0.0% | | 0.0% | 1 | 100.0% |
| 18 - Office of Diversity and Economic Opportunity | 4 | 100.0% | | 0.0% | | 0.0% | 4 | 100.0% |
| 25 - Office of Enterprise Risk Management | | 0.0% | 1 | 100.0% | | 0.0% | 1 | 100.0% |
| 35 - Division of Administration | 24 | 82.8% | 5 | 17.2% | | 0.0% | 29 | 100.0% |
| 40 - Office of the Inspector General | 4 | 80.0% | 1 | 20.0% | | 0.0% | 5 | 100.0% |
| 51 - Division of Information Technology | 8 | 100.0% | | 0.0% | | 0.0% | 8 | 100.0% |
| 52 - Division of Finance | 10 | 100.0% | | 0.0% | | 0.0% | 10 | 100.0% |
| 53 - Division of Insurance and Research | 20 | 87.0% | 3 | 13.0% | | 0.0% | 23 | 100.0% |
| 65 - Division of Resolutions and Receivership | 4 | 100.0% | | 0.0% | | 0.0% | 4 | 100.0% |
| 70 - Division of Supervision and Consumer Protection | 42 | 87.5% | 4 | 8.3% | 2 | 4.2% | 48 | 100.0% |
| 81 - Legal Division | 15 | 100.0% | | 0.0% | | 0.0% | 15 | 100.0% |
| Total | 174 | 81.3% | 27 | 12.6% | 13 | 6.1% | 214 | 100.0% |

13

**Table 17**
**FDIC Total - Separations (2005)**

| Separation Code | Age Under 40 9/30/05 | | Age 40-49 9/30/05 | | Age 50-up 9/30/05 | | Total | |
|---|---|---|---|---|---|---|---|---|
| | N | Pct | N | Pct | N | Pct | N | Pct |
| **Career employees only (Appointment Codes 1 & 2)** | | | | | | | | |
| 300 | | | | | | | | |
| 301 | | 0.0% | 2 | 25.0% | 6 | 75.0% | 8 | 100.0% |
| 302* | | 0.0% | | 0.0% | 199 | 100.0% | 199 | 100.0% |
| 303* | | 0.0% | 17 | 13.1% | 113 | 86.9% | 130 | 100.0% |
| 304* | | 0.0% | | 0.0% | 6 | 100.0% | 6 | 100.0% |
| 312* | | 0.0% | 2 | 100.0% | | 0.0% | 2 | 100.0% |
| 317* | 66 | 54.5% | 37 | 30.6% | 18 | 14.9% | 121 | 100.0% |
| 330 | 1 | 20.0% | 3 | 60.0% | 1 | 20.0% | 5 | 100.0% |
| 350 | | 0.0% | 2 | 25.0% | 6 | 75.0% | 8 | 100.0% |
| 352* | 24 | 27.6% | 44 | 50.6% | 19 | 21.8% | 87 | 100.0% |
| 355 | | | | | | | | |
| 356* | 1 | 2.2% | 28 | 60.9% | 17 | 37.0% | 46 | 100.0% |
| 357 | | | | | | | | |
| 385 | | | | | | | | |
| Total | 92 | 15.0% | 135 | 22.1% | 385 | 62.9% | 612 | 100.0% |
| **Permanent employees only (Appointment Codes 1, 2, 6, & 7)** | | | | | | | | |
| 300 | | | | | | | | |
| 301 | | 0.0% | 2 | 25.0% | 6 | 75.0% | 8 | 100.0% |
| 302* | | 0.0% | | 0.0% | 213 | 100.0% | 213 | 100.0% |
| 303* | | 0.0% | 18 | 12.8% | 123 | 87.2% | 141 | 100.0% |
| 304* | | 0.0% | | 0.0% | 7 | 100.0% | 7 | 100.0% |
| 312* | 1 | 33.3% | 2 | 66.7% | | 0.0% | 3 | 100.0% |
| 317* | 111 | 64.9% | 41 | 24.0% | 19 | 11.1% | 171 | 100.0% |
| 330 | 1 | 20.0% | 3 | 60.0% | 1 | 20.0% | 5 | 100.0% |
| 350 | | 0.0% | 2 | 25.0% | 6 | 75.0% | 8 | 100.0% |
| 352* | 29 | 29.9% | 46 | 47.4% | 22 | 22.7% | 97 | 100.0% |
| 355 | | | | | | | | |
| 356* | 4 | 7.5% | 29 | 54.7% | 20 | 37.7% | 53 | 100.0% |
| 357 | 6 | 85.7% | | 0.0% | 1 | 14.3% | 7 | 100.0% |
| 385 | | | | | | | | |
| Total | 152 | 21.3% | 143 | 20.1% | 418 | 58.6% | 713 | 100.0% |

\* RIF-related.
Separation codes:
300 = Retirement - mandatory
301 = Retirement - disability
302 = Retirement - voluntary*
303 = Retirement - special option*
304 = Retirement - ILIA (in-lieu-of-involuntary-action)*
312 = Resignation - ILIA (in-lieu-of-involuntary-action)*
317 = Resignation*

330 = Removal
350 = Death
352 = Termination of appointment in FDIC*
355 = Termination of appointment
356 = Termination - involuntary*
357 = Termination
385 = Term during probation/trial period

Table 18
Corporate University (Org 15) - Separations (2005)

| Separation Code | Age Under 40 9/30/05 | | Age 40-49 9/30/05 | | Age 50-up 9/30/05 | | Total | |
|---|---|---|---|---|---|---|---|---|
| | N | Pct | N | Pct | N | Pct | N | Pct |
| Career employees only (Appointment Codes 1 & 2) | | | | | | | | |
| 300 | | | | | | | | |
| 301 | | | | | | | | |
| 302* | | | | | | | | |
| 303* | | | | | | | | |
| 304* | | | | | | | | |
| 312* | | | | | | | | |
| 317* | | | | | | | | |
| 330 | | | | | | | | |
| 350 | | | | | | | | |
| 352* | | 0.0% | 1 | 100.0% | | 0.0% | 1 | 100.0% |
| 355 | | | | | | | | |
| 356* | | | | | | | | |
| 357 | | | | | | | | |
| 385 | | | | | | | | |
| Total | 0 | 0.0% | 0 | 100.0% | 0 | 0.0% | 1 | 100.0% |
| Permanent employees only (Appointment Codes 1, 2, 6, & 7) | | | | | | | | |
| 300 | | | | | | | | |
| 301 | | | | | | | | |
| 302* | | | | | | | | |
| 303* | | | | | | | | |
| 304* | | | | | | | | |
| 312* | | | | | | | | |
| 317* | | | | | | | | |
| 330 | | | | | | | | |
| 350 | | | | | | | | |
| 352* | | 0.0% | 1 | 100.0% | | 0.0% | 1 | 100.0% |
| 355 | | | | | | | | |
| 356* | | | | | | | | |
| 357 | | | | | | | | |
| 385 | | | | | | | | |
| Total | 0 | 0.0% | 1 | 100.0% | 0 | 0.0% | 1 | 100.0% |

* RIF-related.
Separation codes:
300 = Retirement - mandatory
301 = Retirement - disability
302 = Retirement - voluntary*
303 = Retirement - special option*
304 = Retirement - ILIA (in-lieu-of-involuntary-action)*
312 = Resignation - ILIA (in-lieu-of-involuntary-action)*
317 = Resignation*

330 = Removal
350 = Death
352 = Termination of appointment in FDIC*
355 = Termination of appointment
356 = Termination - involuntary*
357 = Termination
385 = Term during probation/trial period

**Table 19**
**Division of Administration (Org 35) - Separations (2005)**

| Separation Code | Age Under 40 9/30/05 | | Age 40-49 9/30/05 | | Age 50-up 9/30/05 | | Total | |
|---|---|---|---|---|---|---|---|---|
| | N | Pct | N | Pct | N | Pct | N | Pct |
| **Career employees only (Appointment Codes 1 & 2)** | | | | | | | | |
| 300 | | | | | | | | |
| 301 | | 0.0% | | 0.0% | 1 | 100.0% | 1 | 100.0% |
| 302* | | 0.0% | | 0.0% | 20 | 100.0% | 20 | 100.0% |
| 303* | | 0.0% | 1 | 8.3% | 11 | 91.7% | 12 | 100.0% |
| 304* | | | | | | | | |
| 312* | | | | | | | | |
| 317* | 8 | 66.7% | 3 | 25.0% | 1 | 8.3% | 12 | 100.0% |
| 330 | | | | | | | | |
| 350 | | 0.0% | 1 | 100.0% | | 0.0% | 1 | 100.0% |
| 352* | 4 | 16.7% | 14 | 58.3% | 6 | 25.0% | 24 | 100.0% |
| 355 | | | | | | | | |
| 356* | | | | | | | | |
| 357 | | | | | | | | |
| 385 | | | | | | | | |
| Total | 12 | 17.1% | 19 | 27.1% | 39 | 55.7% | 70 | 100.0% |
| **Permanent employees only (Appointment Codes 1, 2, 6, & 7)** | | | | | | | | |
| 300 | | | | | | | | |
| 301 | | 0.0% | | 0.0% | 1 | 100.0% | 1 | 100.0% |
| 302* | | 0.0% | | 0.0% | 20 | 100.0% | 20 | 100.0% |
| 303* | | 0.0% | 1 | 8.3% | 11 | 91.7% | 12 | 100.0% |
| 304* | | | | | | | | |
| 312* | | | | | | | | |
| 317* | 8 | 66.7% | 3 | 25.0% | 1 | 8.3% | 12 | 100.0% |
| 330 | | | | | | | | |
| 350 | | 0.0% | 1 | 100.0% | | 0.0% | 1 | 100.0% |
| 352* | 4 | 16.7% | 14 | 58.3% | 6 | 25.0% | 24 | 100.0% |
| 355 | | | | | | | | |
| 356* | | | | | | | | |
| 357 | | | | | | | | |
| 385 | | | | | | | | |
| Total | 12 | 17.1% | 19 | 27.1% | 39 | 55.7% | 70 | 100.0% |

\* RIF-related.
Separation codes:
300 = Retirement - mandatory
301 = Retirement - disability
302 = Retirement - voluntary*
303 = Retirement - special option*
304 = Retirement - ILIA (in-lieu-of-involuntary-action)*
312 = Resignation - ILIA (in-lieu-of-involuntary-action)*
317 = Resignation*

330 = Removal
350 = Death
352 = Termination of appointment in FDIC*
355 = Termination of appointment
356 = Termination - involuntary*
357 = Termination
385 = Term during probation/trial period

**Table 20**
**Division of Information Technology (Org 51) - Separations (2005)**

| Separation Code | Age Under 40 9/30/05 | | Age 40-49 9/30/05 | | Age 50-up 9/30/05 | | Total | |
|---|---|---|---|---|---|---|---|---|
| | N | Pct | N | Pct | N | Pct | N | Pct |
| **Career employees only (Appointment Codes 1 & 2)** | | | | | | | | |
| 300 | | | | | | | | |
| 301 | | 0.0% | | 0.0% | 1 | 100.0% | 1 | 100.0% |
| 302* | | 0.0% | | 0.0% | 38 | 100.0% | 38 | 100.0% |
| 303* | | 0.0% | 6 | 19.4% | 25 | 80.6% | 31 | 100.0% |
| 304* | | | | | | | | |
| 312* | | | | | | | | |
| 317* | 7 | 30.4% | 10 | 43.5% | 6 | 26.1% | 23 | 100.0% |
| 330 | | | | | | | | |
| 350 | | 0.0% | | 0.0% | 1 | 100.0% | 1 | 100.0% |
| 352* | 5 | 25.0% | 10 | 50.0% | 5 | 25.0% | 20 | 100.0% |
| 355 | | | | | | | | |
| 356* | | | | | | | | |
| 357 | | | | | | | | |
| 385 | | | | | | | | |
| **Total** | 12 | 10.5% | 26 | 22.8% | 76 | 66.7% | 114 | 100.0% |
| **Permanent employees only (Appointment Codes 1, 2, 6, & 7)** | | | | | | | | |
| 300 | | | | | | | | |
| 301 | | 0.0% | | 0.0% | 1 | 100.0% | 1 | 100.0% |
| 302* | | 0.0% | | 0.0% | 38 | 100.0% | 38 | 100.0% |
| 303* | | 0.0% | 6 | 19.4% | 25 | 80.6% | 31 | 100.0% |
| 304* | | | | | | | | |
| 312* | | | | | | | | |
| 317* | 10 | 37.0% | 11 | 40.7% | 6 | 22.2% | 27 | 100.0% |
| 330 | | | | | | | | |
| 350 | | 0.0% | | 0.0% | 1 | 100.0% | 1 | 100.0% |
| 352* | 8 | 34.8% | 10 | 43.5% | 5 | 21.7% | 23 | 100.0% |
| 355 | | | | | | | | |
| 356* | | | | | | | | |
| 357 | | | | | | | | |
| 385 | | | | | | | | |
| **Total** | 18 | 14.9% | 27 | 22.3% | 76 | 62.8% | 121 | 100.0% |

* RIF-related.
Separation codes:
300 = Retirement - mandatory
301 = Retirement - disability
302 = Retirement - voluntary*
303 = Retirement - special option*
304 = Retirement - ILIA (in-lieu-of-involuntary-action)*
312 = Resignation - ILIA (in-lieu-of-involuntary-action)*
317 = Resignation*

330 = Removal
350 = Death
352 = Termination of appointment in FDIC*
355 = Termination of appointment
356 = Termination - involuntary*
357 = Termination
385 = Term during probation/trial period

17

**Table 21**
**Division of Finance (Org 52) - Separations (2005)**

| Separation Code | Age Under 40 9/30/05 | | Age 40-49 9/30/05 | | Age 50-up 9/30/05 | | Total | |
|---|---|---|---|---|---|---|---|---|
| | N | Pct | N | Pct | N | Pct | N | Pct |
| **Career employees only (Appointment Codes 1 & 2)** | | | | | | | | |
| 300 | | | | | | | | |
| 301 | | | | | | | | |
| 302* | | 0.0% | | 0.0% | 12 | 100.0% | 12 | 100.0% |
| 303* | | 0.0% | | 0.0% | 5 | 100.0% | 5 | 100.0% |
| 304* | | | | | | | | |
| 312* | | | | | | | | |
| 317* | | | | | | | | |
| 330 | | | | | | | | |
| 350 | | | | | | | | |
| 352* | | 0.0% | 2 | 50.0% | 2 | 50.0% | 4 | 100.0% |
| 355 | | | | | | | | |
| 356* | | | | | | | | |
| 357 | | | | | | | | |
| 385 | | | | | | | | |
| Total | 0 | 0.0% | 2 | 9.5% | 19 | 90.5% | 21 | 100.0% |
| **Permanent employees only (Appointment Codes 1, 2, 6, & 7)** | | | | | | | | |
| 300 | | | | | | | | |
| 301 | | | | | | | | |
| 302* | | 0.0% | | 0.0% | 12 | 100.0% | 12 | 100.0% |
| 303* | | 0.0% | | 0.0% | 5 | 100.0% | 5 | 100.0% |
| 304* | | | | | | | | |
| 312* | | | | | | | | |
| 317* | | | | | | | | |
| 330 | | | | | | | | |
| 350 | | | | | | | | |
| 352* | | 0.0% | 2 | 50.0% | 2 | 50.0% | 4 | 100.0% |
| 355 | | | | | | | | |
| 356* | | | | | | | | |
| 357 | | | | | | | | |
| 385 | | | | | | | | |
| Total | 0 | 0.0% | 2 | 9.5% | 19 | 90.5% | 21 | 100.0% |

* RIF-related.
Separation codes:

300 = Retirement - mandatory
301 = Retirement - disability
302 = Retirement - voluntary*
303 = Retirement - special option*
304 = Retirement - ILIA (in-lieu-of-involuntary-action)*
312 = Resignation - ILIA (in-lieu-of-involuntary-action)*
317 = Resignation*

330 = Removal
350 = Death
352 = Termination of appointment in FDIC*
355 = Termination of appointment
356 = Termination - involuntary*
357 = Termination
385 = Term during probation/trial period

**Table 22**
**Division of Insurance and Research (Org 53) - Separations (2005)**

| Separation Code | Age Under 40 9/30/05 | | Age 40-49 9/30/05 | | Age 50-up 9/30/05 | | Total | |
|---|---|---|---|---|---|---|---|---|
| | N | Pct | N | Pct | N | Pct | N | Pct |
| **Career employees only (Appointment Codes 1 & 2)** | | | | | | | | |
| 300 | | | | | | | | |
| 301 | | 0.0% | 1 | 100.0% | | 0.0% | 1 | 100.0% |
| 302* | | 0.0% | | 0.0% | 10 | 100.0% | 10 | 100.0% |
| 303* | | 0.0% | | 0.0% | 3 | 100.0% | 3 | 100.0% |
| 304* | | | | | | | | |
| 312* | | | | | | | | |
| 317* | | 0.0% | 1 | 100.0% | | 0.0% | 1 | 100.0% |
| 330 | | | | | | | | |
| 350 | | 0.0% | | 0.0% | 1 | 100.0% | 1 | 100.0% |
| 352* | 1 | 50.0% | 1 | 50.0% | | 0.0% | 2 | 100.0% |
| 355 | | | | | | | | |
| 356* | | | | | | | | |
| 357 | | | | | | | | |
| 385 | | | | | | | | |
| **Total** | 1 | 5.6% | 3 | 16.7% | 14 | 77.8% | 18 | 100.0% |
| **Permanent employees only (Appointment Codes 1, 2, 6, & 7)** | | | | | | | | |
| 300 | | | | | | | | |
| 301 | | 0.0% | 1 | 100.0% | | 0.0% | 1 | 100.0% |
| 302* | | 0.0% | | 0.0% | 10 | 100.0% | 10 | 100.0% |
| 303* | | 0.0% | | 0.0% | 3 | 100.0% | 3 | 100.0% |
| 304* | | | | | | | | |
| 312* | | | | | | | | |
| 317* | | 0.0% | 1 | 100.0% | | 0.0% | 1 | 100.0% |
| 330 | | | | | | | | |
| 350 | | 0.0% | | 0.0% | 1 | 100.0% | 1 | 100.0% |
| 352* | 1 | 50.0% | 1 | 50.0% | | 0.0% | 2 | 100.0% |
| 355 | | | | | | | | |
| 356* | | | | | | | | |
| 357 | | | | | | | | |
| 385 | | | | | | | | |
| **Total** | 1 | 5.6% | 3 | 16.7% | 14 | 77.8% | 18 | 100.0% |

* RIF-related.
Separation codes:
300 = Retirement - mandatory
301 = Retirement - disability
302 = Retirement - voluntary*
303 = Retirement - special option*
304 = Retirement - ILIA (in-lieu-of-involuntary-action)*
312 = Resignation - ILIA (in-lieu-of-involuntary-action)*
317 = Resignation*

330 = Removal
350 = Death
352 = Termination of appointment in FDIC*
355 = Termination of appointment
356 = Termination - involuntary*
357 = Termination
385 = Term during probation/trial period

**Table 23**
**Division of Resolutions and Receivership (Org 65) - Separations (2005)**

| Separation Code | Age Under 40 9/30/05 | | Age 40-49 9/30/05 | | Age 50-up 9/30/05 | | Total | |
|---|---|---|---|---|---|---|---|---|
| | N | Pct | N | Pct | N | Pct | N | Pct |
| **Career employees only (Appointment Codes 1 & 2)** | | | | | | | | |
| 300 | | | | | | | | |
| 301 | | 0.0% | | 0.0% | 2 | 100.0% | 2 | 100.0% |
| 302* | | 0.0% | | 0.0% | 70 | 100.0% | 70 | 100.0% |
| 303* | | 0.0% | 8 | 19.5% | 33 | 80.5% | 41 | 100.0% |
| 304* | | 0.0% | | 0.0% | 6 | 100.0% | 6 | 100.0% |
| 312* | | 0.0% | 2 | 100.0% | | 0.0% | 2 | 100.0% |
| 317* | 2 | 22.2% | 2 | 22.2% | 5 | 55.6% | 9 | 100.0% |
| 330 | | 0.0% | | 0.0% | 1 | 100.0% | 1 | 100.0% |
| 350 | | | | | | | | |
| 352* | | 0.0% | 3 | 60.0% | 2 | 40.0% | 5 | 100.0% |
| 355 | | | | | | | | |
| 356* | 1 | 2.2% | 28 | 60.9% | 17 | 37.0% | 46 | 100.0% |
| 357 | | | | | | | | |
| 385 | | | | | | | | |
| **Total** | 3 | 1.6% | 43 | 23.6% | 136 | 74.7% | 182 | 100.0% |
| **Permanent employees only (Appointment Codes 1, 2, 6, & 7)** | | | | | | | | |
| 300 | | | | | | | | |
| 301 | | 0.0% | | 0.0% | 2 | 100.0% | 2 | 100.0% |
| 302* | | 0.0% | | 0.0% | 71 | 100.0% | 71 | 100.0% |
| 303* | | 0.0% | 8 | 19.0% | 34 | 81.0% | 42 | 100.0% |
| 304* | | 0.0% | | 0.0% | 7 | 100.0% | 7 | 100.0% |
| 312* | 1 | 33.3% | 2 | 66.7% | | 0.0% | 3 | 100.0% |
| 317* | 5 | 41.7% | 2 | 16.7% | 5 | 41.7% | 12 | 100.0% |
| 330 | | 0.0% | | 0.0% | 1 | 100.0% | 1 | 100.0% |
| 350 | | | | | | | | |
| 352* | 1 | 16.7% | 3 | 50.0% | 2 | 33.3% | 6 | 100.0% |
| 355 | | | | | | | | |
| 356* | 4 | 7.5% | 29 | 54.7% | 20 | 37.7% | 53 | 100.0% |
| 357 | | | | | | | | |
| 385 | | | | | | | | |
| **Total** | 11 | 5.6% | 44 | 22.3% | 142 | 72.1% | 197 | 100.0% |

* RIF-related.
Separation codes:

| | |
|---|---|
| 300 = Retirement - mandatory | 330 = Removal |
| 301 = Retirement - disability | 350 = Death |
| 302 = Retirement - voluntary* | 352 = Termination of appointment in FDIC* |
| 303 = Retirement - special option* | 355 = Termination of appointment |
| 304 = Retirement - ILIA (in-lieu-of-involuntary-action)* | 356 = Termination - involuntary* |
| 312 = Resignation - ILIA (in-lieu-of-involuntary-action)* | 357 = Termination |
| 317 = Resignation* | 385 = Term during probation/trial period |

**Table 24**
**Division of Supervision and Consumer Protection (Org 70) - Separations (2005)**

| Separation Code | Age Under 40 9/30/05 | | Age 40-49 9/30/05 | | Age 50-up 9/30/05 | | Total | |
|---|---|---|---|---|---|---|---|---|
| | N | Pct | N | Pct | N | Pct | N | Pct |
| **Career employees only (Appointment Codes 1 & 2)** | | | | | | | | |
| 300 | | | | | | | | |
| 301 | | 0.0% | 1 | 33.3% | 2 | 66.7% | 3 | 100.0% |
| 302* | | 0.0% | | 0.0% | 22 | 100.0% | 22 | 100.0% |
| 303* | | 0.0% | 2 | 11.1% | 16 | 88.9% | 18 | 100.0% |
| 304* | | | | | | | | |
| 312* | | | | | | | | |
| 317* | 47 | 72.3% | 13 | 20.0% | 5 | 7.7% | 65 | 100.0% |
| 330 | 1 | 33.3% | 2 | 66.7% | | 0.0% | 3 | 100.0% |
| 350 | | 0.0% | 1 | 20.0% | 4 | 80.0% | 5 | 100.0% |
| 352* | 13 | 68.4% | 4 | 21.1% | 2 | 10.5% | 19 | 100.0% |
| 355 | | | | | | | | |
| 356* | | | | | | | | |
| 357 | | | | | | | | |
| 385 | | | | | | | | |
| **Total** | **61** | **45.2%** | **23** | **17.0%** | **51** | **37.8%** | **135** | **100.0%** |
| **Permanent employees only (Appointment Codes 1, 2, 6, & 7)** | | | | | | | | |
| 300 | | | | | | | | |
| 301 | | 0.0% | 1 | 33.3% | 2 | 66.7% | 3 | 100.0% |
| 302* | | 0.0% | | 0.0% | 22 | 100.0% | 22 | 100.0% |
| 303* | | 0.0% | 2 | 11.1% | 16 | 88.9% | 18 | 100.0% |
| 304* | | | | | | | | |
| 312* | | | | | | | | |
| 317* | 86 | 82.7% | 13 | 12.5% | 5 | 4.8% | 104 | 100.0% |
| 330 | 1 | 33.3% | 2 | 66.7% | | 0.0% | 3 | 100.0% |
| 350 | | 0.0% | 1 | 20.0% | 4 | 80.0% | 5 | 100.0% |
| 352* | 14 | 66.7% | 4 | 19.0% | 3 | 14.3% | 21 | 100.0% |
| 355 | | | | | | | | |
| 356* | | | | | | | | |
| 357 | 6 | 100.0% | | 0.0% | | 0.0% | 6 | 100.0% |
| 385 | | | | | | | | |
| **Total** | **107** | **58.8%** | **23** | **12.6%** | **52** | **28.6%** | **182** | **100.0%** |

* RIF-related.
Separation codes:

| | |
|---|---|
| 300 = Retirement - mandatory | 330 = Removal |
| 301 = Retirement - disability | 350 = Death |
| 302 = Retirement - voluntary* | 352 = Termination of appointment in FDIC* |
| 303 = Retirement - special option* | 355 = Termination of appointment |
| 304 = Retirement - ILIA (in-lieu-of-involuntary-action)* | 356 = Termination - involuntary* |
| 312 = Resignation - ILIA (in-lieu-of-involuntary-action)* | 357 = Termination |
| 317 = Resignation* | 385 = Term during probation/trial period |

# A P P E N D I X

**Resume of Lance W. Seberhagen, Ph.D.**

# LANCE W. SEBERHAGEN

**Seberhagen & Associates, 9021 Trailridge Court, Vienna, VA 22182-1730**
**Tel (703) 790-0796; Fax (703) 790-1817; sebe@erols.com**

## MAJOR AREAS OF SPECIALIZATION

| | |
|---|---|
| Compensation | Position Classification |
| Employee Selection (entry and promotional) | Psychological Testing |
| Equal Employment Opportunity | Statistical Analysis |
| Expert Witness | Survey Research |
| Job Analysis | Test Administration |
| Job Evaluation | Test Construction and Development |
| Organization Development | Test Validation |
| Performance Appraisal and Management | Training and Development |

## EDUCATION

Ph.D., University of Minnesota, Minneapolis, MN, 1979. Major: industrial/organizational psychology. Minor: industrial relations. Dissertation: *Sex discrimination in salaries within a state government.* Advisor: Dr. Thomas J. Bouchard.

M.A., Southern Methodist University, Dallas, TX, 1968. Major: industrial/organizational psychology. Minor: business administration. Thesis: *Herzberg's two-factor theory of motivation in a municipal government.* Advisor: Dr. Charles L. Hughes.

B.A., Brown University, Providence, RI, 1966. Major: psychology. Minor: sociology.

## EMPLOYMENT HISTORY

Director, Seberhagen & Associates, Vienna, VA, 12/76 to present.

Senior Associate, Planning Research Corporation, McLean, VA, 10/73 to 12/76.

Test Research & Development Manager, State of Minnesota, Personnel Department, 5/69 to 10/73.

Personnel Consultant, Minneapolis, MN, 9/68 to 5/69.

Personnel Analyst, City of Dallas, TX, Civil Service Department, 5/67 to 9/68.

## WORK EXPERIENCE

*Employee Selection.* Developed selection procedures for hourly production jobs at American Video Glass, Corning, and Honda of America Mfg. Conducted validation study of literacy test for hourly production jobs at Champion International and Georgia-Pacific. Developed performance appraisal procedure as basis for layoff of non-union employees at Texaco refinery. Designed test administration program for electric utility industry through Edison Electric Institute. Planned implementation of EEI tests at Public Service Electric and Gas and Virginia Electric Power. Evaluated selection procedures for Power Plant Operator at Pennsylvania Power and Light. Evaluated employee selection procedures at Westinghouse Savannah River Site (nuclear plant). Developed selection procedures for onboard service jobs at Amtrak. Evaluated selection procedures for restaurant employees and managers at Boston Chicken, Steak & Ale, The Cheesecake Factory, and Darden Restaurants. Developed weighted application blank to reduce clerical turnover at Prudential Insurance Co.

1

# LANCE W. SEBERHAGEN

Served on expert panel for National Skills Standards Board to provide technical guidance to industry groups in establishing national certification standards and assessment procedures for key occupations. Assisted U.S. Employment Service in briefing National Academy of Sciences about General Aptitude Test Battery (GATB) and validity generalization. Developed professional certification procedures (used in promotional selection process) for Logistics jobs at Defense Department. Served as technical advisor to U.S. Postal Service on development of new entry-level Postal Worker exam. Developed minimum qualifications for Library of Congress and Legal Services Corp. Developed performance appraisal procedures for Federal Aviation Administration. Wrote and evaluated test items for ASPPB Psychologist Licensing Exam.

Evaluated test development process used by Metro Water Reclamation District of Greater Chicago. Developed selection procedures for Toll Collector, Toll Collection Supervisors, and Tunnel Emergency Worker (tow truck operator) at Maryland Transportation Authority. Developed general examining procedure for senior-level jobs in District of Columbia. Developed selection procedures for wide variety of jobs in State of Minnesota; City of Dallas, TX; and Territory of Virgin Islands. Developed minimum qualifications for all jobs in State of Ohio. Designed job testing standards for State of New Jersey. Designed prerelease assessment process to evaluate employability of inmates at Maryland Correctional System.

Drafted chapter on police selection standards for law enforcement agency accreditation program through National Organization of Black Law Enforcement Executives. Conducted statewide job analysis of Police Officer to serve as basis for police selection and training standards in Maryland. Developed selection procedures for Deputy Sheriff in 28 counties of West Virginia. Developed selection procedures for Minnesota Highway Patrol Officer. Developed promotional selection procedures for police jobs in City of Colorado Springs, CO; City of Fresno, CA; City of Indianapolis, IN; City of Memphis, TN; Montgomery County, MD; City of Orlando, FL; and Territory of Virgin Islands. Served as assessor in promotional assessment center for police jobs in District of Columbia. Developed performance appraisal system for Fresno Police Department. Wrote manual for setting test cutoff scores for New York Police Foundation. Developed selection procedures for entry-level Firefighter in City of Minneapolis.

***Classification and Compensation***. Analyzed and evaluated factory and office jobs in lawsuit by International Union of Electrical Workers against General Electric. Analyzed and evaluated professional jobs to resolve employee grievances in National Education Association. Analyzed and evaluated job of Social Services Representative to resolve employee grievance in DC Government. Analyzed and evaluated job of Probation Counselor to resolve employee grievance against Fairfax County, VA. Evaluated classification and pay procedures of United Mine Workers Welfare and Retirement Fund. Analyzed merit increases at IRS and SEC for National Treasury Employees Union.

Conducted classification and pay studies for State of Ohio; State of Maine; State of Minnesota; State of Wyoming; City of Dallas, TX; Maryland-National Capital Park and Planning Commission; Territory of Virgin Islands; University of the Virgin Islands; Legal Services Corp.; Planning Research Corp; and International Criminal Investigative Training Assistance Program at U.S. Department of Justice.

Analyzed, classified, and evaluated sworn and nonsworn police jobs in Colorado Springs, CO; Indianapolis, IN; Montgomery County, MD; and Orlando, FL. Identified sworn positions that could be performed by nonsworn employees. Evaluated police compensation and retirement practices in Baltimore County, MD, and Montgomery County, MD.

***Litigation***. Served as expert witness or technical advisor in over 100 cases (court, arbitration, administrative), regarding employee selection, position classification, compensation, and other matters. Evaluated test validation reports for DOL/OFCCP. Reviewed case documents, assembled databases, analyzed statistical data, evaluated policies and procedures, wrote technical reports, and gave sworn testimony. Evaluated work of other experts as they developed new employee selection procedures under consent agreements. (NOTE: No legal complaints have ever been filed against work by Dr. Seberhagen.)

# LANCE W. SEBERHAGEN

***EEO/Affirmative Action***.  Analyzed workforce utilization, evaluated personnel practices, and recommended remedial action to establish first affirmative action program for State of Minnesota.  Evaluated statewide EEO program of State of Wyoming and recommended improved policies and procedures.  Developed affirmative action programs for Montgomery County, MD; District of Columbia; Territory of Virgin Islands; and MVM Corp.  Developed regression models to analyze sex-based wage disparities in a state government.  Wrote book on legal aspects of personnel selection in public service under grant from U.S. Civil Service Commission.  Wrote chapter on Federal EEO requirements under grant from Minneapolis Civil Service Commission.  Wrote handbook on nondiscrimination for Equal Employment Opportunity Commission and Office of Revenue Sharing.

***Personnel Rules and Regulations***.  Drafted personnel rules on recruitment, selection, classification, EEO, labor relations, and other topics for City of Falls Church, VA; District of Columbia; and Territory of Virgin Islands.  Drafted employee manual for Legal Services Corp.

***Organization Development***.  Analyzed records and conducted surveys to investigate turnover of Investigators and recommend improved personnel practices in Agriculture Department.  Conducted surveys, redesigned jobs, and revised personnel policies to establish career development programs for police departments in Colorado Springs, CO; Fresno, CA; Indianapolis, IN; Montgomery County, MD; and Orlando, FL.  Developed organizational effectiveness criteria and analyzed employee performance and satisfaction data to evaluate OD interventions (e.g., team building, job enrichment) at U.S. Army bases in Europe as part of All-Volunteer Army Program.  Designed survey instruments to diagnose organizational problems in U.S. Army Air Defense Command in Europe.  Conducted employee attitude surveys and other analyses to improve personnel management at Metro Business Forms, American Geophysical Union, and Service Employees International Union.  Conducted survey of employees in City of Dallas, TX, to test Herzberg's theory of motivation.  Collected and analyzed employee attitude data as part of OD study for Hennepin County, MN.

***Training***.  Investigated feasibility of voluntary certification as incentive to encourage construction supervisors to learn more about occupational safety and health for OSHA.  Conducted training on test administration for electric utility industry, Amtrak, Corning, and Honda of America Mfg.  Conducted training on federal EEO requirements for Library of Congress; NASA; Montgomery County, MD; IPMA; MAPAC; and Batrus Hollweg, Inc.  Organized EEO workshops for Society of Industrial and Organizational Psychology and Personnel Testing Council of Metropolitan Washington.  Conducted numerous training programs on personnel topics to implement development projects.  Taught one course and assisted professors in teaching two other courses at Southern Methodist University.

***Human Resource Planning***.  Designed computerized employee information system for State of Minnesota to match employees to jobs, estimate impact of personnel policies, forecast staffing needs, and compile statistical reports.  Defined human resource planning needs for Planning Research Corp.  Conducted labor force availability studies for many clients.

***Market Research***.  Surveyed Baltimore-area residents for Shelter Corp. to identify types of persons interested in living in Inner Harbor district and type of housing and related features that would be most attractive to this group.  Analyzed interview data from leading citizens of Charles County, MD, to assess attitudes towards proposed residential/recreation development and to recommend best way to inform community about this project.  Designed survey to analyze safety criteria used by military officials and civilian authorities to evaluate waterfront sites for handling dangerous cargo.

***Human Factors***.  Interviewed machine operators and conducted speed tests to determine best use of automated letter sorting machines in U.S. Postal Service.

3

# LANCE W. SEBERHAGEN

**PROFESSIONAL AFFILIATIONS**

American Psychological Association (APA)
1. APA Division 5 (Evaluation, Measurement, and Statistics).
2. APA Division 14 (Industrial and Organizational Psychology).

American Statistical Association

Personnel Testing Council of Metropolitan Washington
1. Founding member, 1977.
2. Founding officer, 1977-1978.
3. Elected officer, 1987-1991.
4. President, 1989-90.
5. Bemis Award Committee, 1987-91, 1997.
6. Newsletter Committee, professional calendar, 1982-07.
7. Website Committee, 1998-02.
8. Workshop Committee, 1982.

Society for Industrial and Organizational Psychology (APA Div 14)
1. Awards Committee, 1991-92; 1997-00.
2. Professional Practice Committee, 1995-98.
3. Program Committee, 1996-06.
4. Workshop Committee, 1989-91.

**PROFESSIONAL RECOGNITION**

Member, Expert Panel on Assessment, National Skill Standards Board, Washington, DC, 1999.

Consulting Editor, *Forensic Reports*, 1989-1994.

James Philander Kirkham Award, University of Minnesota, 1971.

Dreyfus Memorial Fellowship, Southern Methodist University, 1967.

**PUBLICATIONS AND PAPERS**

**Books**

Roberts, P., Seberhagen, L., & Cottrell, R. (1971). *Manpower planning for the public service.* Chicago, IL: Public Personnel Association.

Seberhagen, L., McCollum, M., & Churchill, C. (1972). *Legal aspects of personnel selection in the public service.* Chicago, IL: International Personnel Management Association.

Seberhagen, L. (1973). *Job analysis for content validation.* St. Paul, MN: Minnesota State Personnel Department. (Later published in: Drauden, G., & Peterson, N. (1974). *A domain sampling approach to job analysis.* St. Paul, MN: Minnesota State Personnel Department.)

**Chapters**

Seberhagen, L. (1978). A model oral exam procedure. In S. Mussio (Ed.), *A training manual for personnel selection specialists.* Minneapolis, MN: Minneapolis Civil Service Commission.

# LANCE W. SEBERHAGEN

Seberhagen, L. (1978). Federal EEO requirements for state and local government. In S. Mussio (Ed.), *A training manual for personnel selection specialists.* Minneapolis, MN: Minneapolis Civil Service Commission.

Seberhagen, L. (1978). What to do about minimum qualifications. In S. Mussio (Ed.), *A training manual for personnel selection specialists.* Minneapolis, MN: Minneapolis Civil Service Commission.

Seberhagen, L. (1982). Standards for police selection. Vienna, VA: Author. [First draft of chapter published in: Commission on Accreditation for Law Enforcement Agencies, (1983). *Standards for law enforcement agencies: The standards manual of the law enforcement accreditation program.* Fairfax, VA: Author.]

Seberhagen, L. (1995). Human resources management. In M. Kurke and E. Scrivner (Eds.), *Police psychology into the 21st century.* Hillsdale, NJ: Lawrence Erlbaum.

Seberhagen, L. (1996). A modern approach to minimum qualifications. In R. Barrett (Ed.), *Fair employment strategies in human resource management.* Westport, CT: Quorum Books.

Seberhagen, L. (1996). How much does a test validation study cost? In R. Barrett (Ed.), *Fair employment strategies in human resource management.* Westport, CT: Quorum Books.

Seberhagen, L. (1998). (Contributing editor for several case studies.) In R.L. Lowman (Ed.), *The ethical practice of psychology in organizations.* Washington, DC: American Psychological Association.

## Articles

Seberhagen, L. (1969). What motivates civil service employees? *Public Personnel Review, 31,* 48-50.

Seberhagen, L. (1972). Review of R.N. Ford, *Motivation through the work itself,* and M.S. Myers, *Every employee a manager.* Public Administration Review, 32, 167-169.

Seberhagen, L. (1980). Court rules against job element method. *IPMAAC Assessment News, 4(1),* 6-8.

Seberhagen, L. (1981). Review of Ad Hoc Group, *A professional and legal analysis of the Uniform Guidelines on Employee Selection Procedures.* PTC/MW Newsletter, 6(3), 3-4.

Seberhagen, L. (1985). Good employee rating system is important. *The Business Review, 10,* 4.

Seberhagen, L. (1987). GATB/VG testing program studied by National Academy of Sciences. *The Industrial-Organizational Psychologist, 25(1),* 33-35.

Seberhagen, L. (1989). Revised professional standards proposed for assessment centers. *PTC/MW Newsletter, 12(4),* 8.

Seberhagen, L. (1989). Top ten jobs in which general intelligence is not a valid predictor of job success. *PTC/MW Newsletter, 12(5),* 2-3.

Seberhagen, L. (1990, January). Court accepts test transportability; new testing standards. *PTC/MW Newsletter, 13(1),* 2-3.

Seberhagen, L. (1990, March). Civil Rights Act of 1990. *PTC/MW Newsletter, 13(3),* 2-3.

# LANCE W. SEBERHAGEN

Seberhagen, L. (1990, April). Civil Rights Act of 1990; cost of validation studies. *PTC/MW Newsletter, 13(4)*, 2-5.

Seberhagen, L. (1990, May). Civil Rights Act of 1990; integrity testing. *PTC/MW Newsletter, 13(5)*, 2-6.

Seberhagen, L. (1990, June). Psychologists and legislation; definition of "business necessity;" PTC/MW clearinghouse established at OPM. *PTC/MW Newsletter, 13(6)*, 2-6.

Seberhagen, L. (1990, July). How difficult is it to conduct a validation study? *The Industrial-Organizational Psychologist, 28*, 41-46.

Seberhagen, L. (1990, July). Americans with Disabilities Act of 1990; publications of interest; APA comments on testing. *PTC/MW Newsletter, 13(7)*, 2-6.

Seberhagen, L. (1990, August). Civil Rights Act passes Senate; GATB suspended; publications of interest. *PTC/MW Newsletter, 13(8)*, 2-6

Seberhagen, L. (1990, October). Update on Civil Rights Act. *PTC/MW Newsletter, 13(10)*, 5-8.

Seberhagen, L. (1990, November). Civil Rights Act dead for this year. *PTC/MW Newsletter, 13(11)*, 4-6.

Seberhagen, L. (1990, November). SIOP releases survey report. *PTC/MW Newsletter, 13(11)*, 7.

Seberhagen, L. (1990, December). Bush statement on Civil Rights Act. *PTC/MW Newsletter, 13(12)*, 2-6.

Seberhagen, L. (1990, December). APA comments on OTA report. *PTC/MW Newsletter, 13(12)*, 2-4.

Seberhagen, L. (1991, January). Update on proposed GATB plan. *PTC/MW Newsletter, 14(1)*, 2-3.

Seberhagen, L. (1991, February). APA drafts policy on test disclosure. *PTC/MW Newsletter, 14(2)*, 4.

Seberhagen, L. (1991, February). Civil Rights Act of 1991 introduced. *PTC/MW Newsletter, 14(2)*, 4-6.

Seberhagen, L. (1991, February). Important age study in progress. *PTC/MW Newsletter, 14(2)*, 3.

Seberhagen, L. (1991, April). A comment on the official position of SIOP on the Civil Rights Act of 1990. *The Industrial-Organizational Psychologist, 28*, 25-29.

Seberhagen, L. (1991, April). News in testing. *PTC/MW Newsletter, 14(4)*, 4-8.

Seberhagen, L. (1991, May). A most popular criterion measure. *PTC/MW Newsletter, 14(5)*, 6.

Seberhagen, L. (1991, May). Lawyers' Committee comments on GATB. *PTC/MW Newsletter, 14(5)*, 2-5.

Seberhagen, L. (1991, June). Update on Americans with Disabilities Act. *PTC/MW Newsletter, 14(6)*, 2-3, 5-13.

Seberhagen, L. (1991, July). Showdown near on civil rights bill. *PTC/MW Newsletter, 14(7)*, 2-9.

# LANCE W. SEBERHAGEN

Seberhagen, L. (1991, August). News of interest. *PTC/MW Newsletter, 14(8)*, 4-7.

Seberhagen, L. (1991, September). Copyright and test integrity. *PTC/MW Newsletter, 14(9)*, 2, 4-5.

Seberhagen, L. (1991, November). News on the legal front. *PTC/MW Newsletter, 14(11)*, 3-10.

Seberhagen, L. (1991, December). Congress passes compromise civil rights bill. *PTC/MW Newsletter, 14(12)*, 3-7.

Seberhagen, L. (1992, January). President signs civil rights bill. *PTC/MW Newsletter, 15(1)*, 5-6.

Seberhagen, L. (1992, June). APA advises EEOC on testing. *PTC/MW Newsletter, 15(6)*, 7-10.

Seberhagen, L. (1992, December). Yes, statisticians do have an ethics code. *PTC/MW Newsletter, 15(12)*, 5-7.

Seberhagen, L. (1993, January). An ethics code for statisticians: What next? *The Industrial-Organizational Psychologist, 30*, 71-74.

Seberhagen, L. (1993, September). Commentary on APA Testimony and Goals 2000. *PTC/MW Newsletter, 16(9)*, 9.

Seberhagen, L. (1993, October). An ethics code for I/O psychology: Good behavior at low cost. *The Industrial-Organizational Psychologist, 31*, 69-71.

Seberhagen, L. (1994, February). PTC/MW should adopt an ethics code. *PTC/MW Newsletter, 17(2)*, 5.

Seberhagen, L. (1995, April). Affirmative action under close review. *PTC/MW Newsletter, 18(4)*, 4-8.

Seberhagen, L. (1995, August). OFCCP testifies before Senate Labor Committee. *PTC/MW Newsletter, 18(8)*, 5-10.

Seberhagen, L. (1996, April). House subcommittee votes to ban preferential treatment by the Federal Government. *PTC/MW Newsletter, 19(4)*, 6-7.

Seberhagen, L. (1996, October). Obituary: M. Scott Myers. *The Industrial-Organizational Psychologist, 34*, 98-100.

Seberhagen, L. (1996, November). Guidelines proposed for test-taker rights and responsibilities. *PTC/MW Newsletter, 19(11)*, 4-5.

Seberhagen, L. (1997, August). Court rules against another job element test. *PTC/MW Newsletter, 20(8)*, 4-5.

Seberhagen, L. (1997, November). Reasonable accommodation on GED tests. *PTC/MW Newsletter, 20(11)*, 3-6.

Seberhagen, L. (1999, March). Successful Challenge to ALJ Qualification Standards. *PTC/MW Newsletter, 23(3)*, 3.

Seberhagen, L. (1999, July). Workshop on Expert Witnesses. *PTC/MW Newsletter, 23*, 4-5.

# LANCE W. SEBERHAGEN

Seberhagen, L. (2000, November). Update on expert testimony. *PTC/MW Newsletter, 24*, 3.

Seberhagen, L. (2000, December). MSPB Rules Against OPM on ALJ Exam. *PTC/MW Newsletter, 24*, 4.

Seberhagen, L. (2001, April). Court Upholds Employer on Cutoff Scores. *PTC/MW Newsletter, 25*, 4.

Seberhagen, L. (2001, July). Court Upholds Another Employer's Cutoff Score. *PTC/MW Newsletter, 25*, 3.

Seberhagen, L. (2004, August). A Job Analysis Is Not a Validation Study. *PTC/MW Newsletter, 26*, 8.

**Presentations**

Moore, M., & Seberhagen, L. (1968, April). *The most influential psychologists.* Paper presented at the meeting of the Southwestern Psychological Association, New Orleans, LA.

Seberhagen, L. (1969, September). *A note on ranking the important psychologists.* Paper presented at the meeting of the American Psychological Association, Washington, DC.

Seberhagen, L. (1974, June). Problems associated with intergovernmental consortia: The GLAC experience. In A. Heuerman (Chair), *Interjurisdictional concepts.* Symposium presented at the meeting of the IPMA Eastern Region, Hershey, PA.

Seberhagen, L. (1978, April). *Federal EEO requirements: Sixteen guidelines in sixteen minutes.* Paper presented at the meeting of the Personnel Testing Council of Metropolitan Washington, Washington, DC.

Seberhagen, L. (1978, September). Affirmative action in the public sector. In D. Schwartz (Chair), *Affirmative action in testing and selection: Legal and psychological perspectives.* Symposium presented at the meeting of the American Psychological Association, Toronto, Canada.

Seberhagen, L. (1978, November). *Consulting under the Uniform Guidelines.* Paper presented at the meeting of the Personnel Testing Council of Metropolitan Washington, Washington, DC.

Seberhagen, L. (1978, June). *Evaluation of a statewide EEO program.* Paper presented at the meeting of the IPMA Assessment Council, Atlanta, GA.

Seberhagen, L. (1979, June). *Development of a multi-jurisdictional selection procedure for Deputy Sheriff in 28 counties of West Virginia.* Paper presented at the meeting of the IPMA Assessment Council, San Diego, CA.

Seberhagen, L. (1979, June). How to be a good client. In D. Feldman (Chair), *How to get what you want from consultants.* Symposium presented at the meeting of the IPMA Assessment Council, San Diego, CA.

Seberhagen, L. (1981, May). *Job evaluation and wage comparability: the EEO issue of the 1980s.* Paper presented at the meeting of the IPMA Assessment Council, Denver, CO.

Seberhagen, L. (1981, November). A model oral exam procedure. In L. Seberhagen (Chair), *Structured interviews.* Symposium presented at the meeting of the Personnel Testing Council of Southern California, Los Angeles, CA.

Seberhagen, L. (1982, June). An I/O psychologist's concerns about labor unions and employee selection. In N. Abrams (Chair), *Labor unions: How much of an effect on personnel assessment decisions?* Symposium presented at the meeting of the IPMA Assessment Council, Minneapolis, MN.

# LANCE W. SEBERHAGEN

Seberhagen, L. (1982, June). Why IPMAAC should have a real ethical code. In M. Fraser (Chair), *Ethical considerations in personnel.* Symposium presented at the meeting of the IPMA Assessment Council, Minneapolis, MN.

Seberhagen, L. (1983, May). Comments on Minneapolis Firefighter exam. In N. Abrams (Chair), *Firefighter selection: Non-written tests.* Symposium presented at the meeting of the IPMA Assessment Council, Washington, DC.

Seberhagen, L. (1985, October). *Testimony regarding the Uniform Guidelines on Employee Selection Procedures, 1978.* Invited testimony presented at the hearing of the U.S. House of Representatives, Committee on Education and Labor, Subcommittee on Employment Opportunities, Washington, DC.

Seberhagen, L. (1989, June). *Development of a selection procedure for Toll Collectors.* Paper presented at the meeting of the IPMA Assessment Council, Orlando, FL.

Seberhagen, L. (1989, June). My recommendations. In F. Landy (Chair), *The Guidelines in the year 2000.* Symposium conducted at the meeting of the IPMA Assessment Council, Orlando, FL.

Seberhagen, L. (1989, June). The top ten complaints by expert witnesses about lawyers. In N. Abrams (Chair), *Testifying as an expert witness.* Symposium conducted at the meeting of the IPMA Assessment Council, Orlando, FL.

Seberhagen, L. (1990, August). *Let's give lawyers the respect that they deserve.* Paper presented at the meeting of the Personnel Testing Council of Metropolitan Washington, Washington, DC.

Seberhagen, L. (1991, April). A practitioner's view. In J. Lefkowitz (Chair), *Validation in the 1990s: Legal, social, demographic, and professional issues.* Panel discussion presented at the meeting of the Society for Industrial and Organizational Psychology, St. Louis, MO.

Seberhagen, L. (1991, June). My view of the proposed legislation. In D. Joiner (Chair), *A multi-perspective look at the Civil Rights Act of 1991.* Symposium presented at the meeting of the IPMA Assessment Council, Chicago, IL.

Seberhagen, L. (1991, June). The legal view of content validity. In R. Tonowski (Chair), *Content validity: current directions and practical applications.* Symposium presented at the meeting of the IPMA Assessment Council, Chicago, IL.

Seberhagen, L. (1992, February). *Civil Rights Act of 1991: Major changes.* Paper presented at the meeting of the Mid-Atlantic Personnel Assessment Consortium, Washington, DC.

Seberhagen, L. (1992). *Legal requirements for EEO.* Workshop presented at the Batrus Hollweg Invitational Conference on Equal Employment Opportunity, Dallas, TX.

Seberhagen, L. (1993, October). Practical problems with ADA compliance. In M. Kurke (Chair), *Impact of ADA on law enforcement.* Symposium presented at the meeting of the Law Enforcement Behavioral Sciences Association, Fairfax, VA.

Seberhagen, L. (1996, March). The answers. In R. Lowe (Chair), *Q&A on fair employment issues: Testing, affirmative action, ADA, civil rights acts (and other things you want to know but are afraid to ask).* Panel discussion presented at meeting of Southeastern Psychological Association, Norfolk, VA.

Seberhagen, L., & Ramos, R. (1999, May). *Expert witnesses: The Good, the bad, and the ugly.* Workshop presented for the Personnel Testing Council of Metropolitan Washington, Washington, DC.

# LANCE W. SEBERHAGEN

Seberhagen, L. (2000, January). The multi-faceted role of MQs in the selection process. Talk presented at the meeting of the Mid-Atlantic Personnel Assessment Consortium, Baltimore, MD.

Seberhagen, L. (2000, April). Seberhagen's view. In L. Seberhagen (Chair), *Minimum standards for employment tests.* Panel discussion presented at the meeting of the Society for Industrial and Organizational Psychology, New Orleans, LA.

Seberhagen, L. (2003, April). The plaintiff's expert. In J. Arnold (Chair), *Defending and Questioning Validity in Litigation: The Varying Roles of I/O Psychologists.* Symposium presented at the meeting of the Society for Industrial and Organizational Psychology, Orlando, FL.

## LITIGATION EXPERIENCE

### U.S. Equal Employment Opportunity Commission

***EEOC v. Dallas County, TX*** (1981-84, equal pay, sex). Analyzed and evaluated job of Chief Court Clerk in Justice of the Peace Courts to investigate pay differences. Case settled. Contract Number: 2/6000/0171. Contracting Officer: Barbara Dunn, Washington, DC. Attorney: Dale Jurgens, Dallas, TX, (for plaintiff).

***EEOC v. Leatherwood Motor Coach Corp.*** (1984-85, adverse impact, sex). Analyzed adverse impact and validity of selection procedures for Motor Coach Operator (bus drivers for long distance tours). Case settled. Contract Number: 5/0120/7290/P. Contracting Officer: Barbara Dunn, Washington, DC. Attorney: Fred Charleston, Baltimore, MD, (for plaintiff).

***Kuenz and EEOC v. Goodyear Tire and Rubber Co.*** (1985-88, adverse impact, sex). Analyzed adverse impact and validity of selection procedures for Retail Store Manager. Case settled. Contract Number: 5/0120/0115. Contracting Officer: Barbara Dunn, Washington, DC. Attorney: Robert Johnson, St.Louis, MO, (for plaintiff).

***EEOC v. Jenn Air*** (1986-88, disparate treatment, race, sex). Analyzed validity of selection procedures for clerical and factory jobs. Identified victims of discrimination. Case settled. Contract Number: 6/0130/0120. Contracting Officer: Barbara Dunn, Washington, DC. Attorney: Barbara Meacham & Anthony Prather, Indianapolis, IN, (for plaintiff).

***EEOC v. Stella D'Oro*** (1990-92, adverse impact, disparate treatment, equal pay, race, sex, national origin). Analyzed jobs, pay differences, and validity of selection procedures for Table Packer, Carton Packer, and Route Sales Driver. Gave deposition. Case settled. Contract Number: 0/0130/0157. Contracting Officer: A. Diane Williams, Washington, DC. Attorney: Deborah Reik, New York, NY, (for plaintiff).

***EEOC v. Madigan Brothers*** (1992, adverse impact, race). Analyzed labor force availability for department store jobs. Case settled. Attorney: Zachery Tobin, Chicago. Subcontract to Economic Systems, Springfield, VA, (for plaintiff).

***EEOC v. Local 580, et al.*** (1998, adverse impact, race). Analyzed validity of written tests for union membership (and referral to Iron Worker jobs). Testified at hearing. Case settled. Contract Number: 8/0130/0172. Contracting Officer: Cassandra Bates. Attorney: Johnnie L. Johnson, Jr., Esq., Washington, DC, (for plaintiff).

***EEOC v. Consumers Energy Co.*** (1998-00, adverse impact, sex). Analyzed validity of strength test for hourly maintenance jobs. Case settled. Contract Number: 9/6257/02/2534. Contracting Officer: James Neely, Jr. Attorney: Laura Brodeur, Esq., and Stanley Pitts, Esq., Detroit, MI, (for plaintiff).

# LANCE W. SEBERHAGEN

***EEOC v. Schott North America, Inc.*** (2006-2008, adverse impact, sex).  Analyzed adverse impact and validity of selection procedures for Melting Line Operator.  Case pending.  Attorney: Cynthia Locke, Philadelphia, PA (for plaintiff).

**U.S. Department of Justice, Civil Rights Division**

***U.S. v. City of Milwaukee, WI*** (1982-89, adverse impact, race).  Analyzed adverse impact and validity of selection procedures for Police Sergeant and Detective.  Case settled.  Under consent agreement, reviewed adverse impact and validity of new selection procedures developed by outside consultant.  Attorney: Marybeth Martin, Washington, DC, (for plaintiff).

***U.S. v. City of Montgomery, AL*** (1982-85, adverse impact, race).  Analyzed adverse impact and validity of selection procedures for Police Sergeant.  Case settled.  Attorney: Marybeth Martin, Washington, DC, (for plaintiff).

***U.S. v. City of Omaha, NB*** (1985, adverse impact, race).  Suggested alternative selection procedures for entry Police Officer.  Case settled.  Attorney: Robert Dempsey, Washington, DC, (for plaintiff).

***U.S. v. City of Montgomery, AL*** (1986-88, adverse impact, race).  Recommended commercial test of mental ability for temporary use until City developed its own selection procedure for entry Police Officer.  Case settled.  Attorney: Marybeth Martin, Washington, DC, (for plaintiff).

***U.S. v. State of Louisiana*** (1987-93, adverse impact, race).  Under consent agreement, analyzed adverse impact and validity of selection procedures for 12 engineering aide jobs developed by consultant.  Case settled.  Attorney: Marybeth Martin, Washington, DC, (for plaintiff).

***U.S. v. City of Wichita Falls, TX*** (1987, adverse impact, sex).  Analyzed adverse impact and validity of selection procedures (physical ability test) for entry Police Officer under consent agreement.  Testified at trial.  Case decided for Defendant.  Attorney: Eugenia Esch, Washington, DC, (for plaintiff).

***U.S. v. City of Montgomery, AL*** (1989-97, adverse impact, race).  Under consent agreement, analyzed adverse impact and validity of new selection procedures for Police Sergeant, Lieutenant, Captain, and Major developed by consultant.  Case settled.  Attorney: Marybeth Martin, Washington, DC, (for plaintiff).

***U.S. v. City of Miami Beach, FL*** (1992-92, adverse impact, race, national origin).  Analyzed adverse impact and validity of selection procedures for Firefighter and Police Officer.  Case settled.  Attorney:  Delora Kennebrew and David Lopez, Washington, DC, (for plaintiff).

***Albrecht v. City of Chicago, IL*** (1993, adverse impact, race, national origin).  Analyzed adverse impact and validity of selection procedures for Fire Lieutenant.  Case settled.  Attorney: Marybeth Martin and Richard Ugelow, Washington, DC, (for plaintiff).

**U.S. Department of Justice, U.S. Attorney's Office**

***Dendy v. Interior*** (1989, adverse impact, race, age).  Analyzed adverse impact and validity of selection procedures for U.S. Park Police Lieutenant.  Case settled.  Attorney: John Cleary, U.S. Attorney, and Robert Walter, U.S. Dept of Interior, Washington, DC, (for defendant).

***Carroll v. Interior*** (1991-92, disparate treatment, age).  Analyzed adverse impact of selection procedures for Supervisory Position Classification Specialist.  Case decided for defendant (summary judgment).  Attorney: John Birch and Jeffrey Sprung, U.S. Attorney, and Horace Clark, U.S. Dept of Interior, Washington, DC, (for defendant).

# LANCE W. SEBERHAGEN

***Hummer v. Interior*** (1991-93, adverse impact, age). Analyzed adverse impact of selection procedures for Departmental Manager Development Program. Case settled. Attorney: Marina Braswell, U.S. Attorney, and Robert Walter, U.S. Dept of Interior, Washington, DC, (for defendant).

***Burns v. Bowsher*** (1992-93, disparate treatment, race). Evaluated testimony of plaintiff's expert regarding the performance appraisal procedures of the General Accounting Office. Testified at trial. Case settled. Attorney: Robert Shapiro, U.S. Attorney, Washington, DC, (for defendant).

**U.S. Department of Labor, Office of Federal Contract Compliance Programs**

***OFCCP v. Boise Cascade, et al.*** (1988, adverse impact, sex). Analyzed validity of physical ability test for entry jobs in forest products industry developed by outside consultant in cooperative study for Boise Cascade, Champion International, ITT-Rayoner, Roseburg Lumber, Scott Paper, Simpson Timber, and Weyerhaeuser. Case referred to EEOC, decided for plaintiffs. Contract Number: 89E84132. Contract Monitor: Willis Nordlund, ESA, Washington, DC; Robert Gelerter, OFCCP, Washington, DC, (for plaintiff).

***OFCCP v. Private Employer (confidential).*** (2006, adverse impact, race). Analyzed validity of written tests for hourly jobs. Case pending. Contract Monitor: Dr. Richard Fischer (I/O Psychologist), OFCCP, Washington, DC.

**Private Attorneys**

***IUE v. General Electric Co.*** (1980, comparable worth, sex). Analyzed and evaluated office jobs and factory jobs to investigate wage discrimination under Title VII. Case settled. Attorney: Richard Sobol, Sobol & Trister, Washington, DC, (for plaintiff).

***Sowers v. Fairfax County (VA) School Board*** (1981, personnel rules). Reviewed job descriptions and conducted salary survey of skilled trades jobs in Washington, DC area to investigate salary inequities. Case settled. Attorney: Robert Annand, Cohen & Annand, Alexandria, VA, (for plaintiff).

***Savage v. Orr*** (1982, disparate treatment, race). Analyzed adverse impact and validity of selection procedures for Deputy Assistant Secretary for Equal Employment Opportunity in the U.S. Department of Defense, Air Force. Testified at trial. Case decided for defendant. Attorney: Michelle White; McIntosh, Flanagan & White; Washington, DC, (for plaintiff).

***McGuthrie v. National Education Association*** (1983-85, union contract). Analyzed and evaluated Research Specialist positions to determine proper classification and pay grade. Testified at arbitration hearing. Case decided for defendant. Attorney: Barbara Bruno and Kenneth Greene, NEA Staff Organization, Washington, DC, (for plaintiff).

***Morris v. Prince George's County, MD*** (1983, personnel rules). Analyzed validity of selection procedures (written test) for Sergeant in Deputy Sheriff's Dept. Testified at hearing. Case decided for defendant. Attorney: James Chapin; Beckett, Cromwell & Myers; Bethesda, MD, (for plaintiff).

***Nuanes and Strandt v. National Education Association*** (1983, union contract). Analyzed Legal Services Specialist positions to determine proper classification and pay grade. Testified at arbitration hearing. Case decided for plaintiff. Attorney: Barbara Bruno, NEA Staff Organization, Washington, DC, (for plaintiff).

***Allan, Battle, et al. v. FDIC*** (1984-85, adverse impact, race). Analyzed validity of selection procedures (assessment center) for Commissioned Bank Examiner. Testified at trial. Case decided for plaintiff. Attorney: Paddy McNamara and Stephen Seliger, Chicago, IL, (for plaintiff).

# LANCE W. SEBERHAGEN

*Hispanic Society v. New York (NY) Civil Service Commission* (1984-85, adverse impact, race, national origin).  Analyzed adverse impact and validity of selection procedures (written test) for Police Sergeant.  Case settled.  Attorney: Kenneth Kimmerling, Puerto Rican Legal Defense Fund, New York, NY, (for plaintiff).

*Brigola v. Arlington County, VA* (1985, disparate treatment, race, sex, national origin).  Analyzed validity of selection procedures (written test) for Chemist II.  Testified at trial.  Case decided for plaintiff.  Attorney: Vincent Fuller, Alexandria, VA, (for plaintiff).

*Kuenz and EEOC v. Goodyear Tire and Rubber Co.* (1985-88, adverse impact, sex).  Analyzed adverse impact and validity of selection procedures for Retail Store Manager.  Case settled.  Attorney: Virginia O'Leary, Oakland City, IN, (for plaintiff).

*Keith v. Air Force* (1987, personnel rules).  Analyzed validity of selection procedures (performance appraisal) and use of impermissible personality measures for management jobs.  Case settled.  Attorney: Sydney Rab & Charles Roberts, Compton & Duling, Woodbridge, VA, (for plaintiff).

*Walker v. State of Alabama* (1987, adverse impact, race).  Analyzed validity of selection procedures (criminal history records) for state jobs.  Testified at trial.  Case decided for plaintiff.  Attorney: Robert Wiggins; Gordon, Silberman, Wiggins & Childs; Birmingham, AL, (for plaintiff).

*Dameron v. Maryland-National Capital Park and Planning Commission* (1988, disparate treatment, sex). Analyzed adverse impact and validity of selection procedures (written test) for Police Sergeant. Testified at trial.  Case decided for plaintiff.  Attorney: Karl Feissner, Feissner & Slatkin, Burtonsville, MD, (for plaintiff).

*Fraternal Order of Police v. Town of Easton, MD* (1988, personnel rules).  Analyzed validity of selection procedures (written test) for Police Corporal, Sergeant, and Lieutenant.  Testified at trial.  Case decided for defendant.  Attorney: Stephen Kehoe, Assistant Town Attorney, Ewing, Dietz, Turner & Kehoe, Easton, MD, (for defendant).

*Fraternal Order of Police v. City of Miami, FL* (1988-91, personnel rules).  Analyzed validity of selection procedures (assessment center) for Police Lieutenant.  Testified at trial.  Case decided for plaintiff.  Attorney: Robert Klausner, Klausner & Cohen, Hollywood, FL, (for plaintiff).

*Social Work Supervisors v. Fairfax County, VA* (1988, personnel rules).  Evaluated appeal of pay grade. Case settled.  Attorney: Robert Weiss, Fairfax, VA, (for plaintiff).

*AFSCME, District Council 20 v. District of Columbia* (1989, union contract).  Analyzed and evaluated Social Services Representative positions to determine proper classification and pay grade.  Testified at arbitration hearing.  Case settled.  Attorney: Kimberly Keller; Kirschner, Weinberg & Dempsey; Washington, DC, (for plaintiff).

*Choyce v. City of Oakland, CA* (1989-90, adverse impact, race).  Analyzed adverse impact and validity of selection procedures (assessment center) for Fire Lieutenant.  Case settled.  Attorney: Howard Moore, Jr., Moore & Moore, Oakland, CA, (for plaintiff).

*Galbert v. General Motors Corp.* (1989-94, disparate treatment, race).  Analyzed validity of performance appraisals for Plant Manager.  Calculated salary and benefits lost due to discriminatory dismissal.  Case settled.  Attorney: Carl Edwards, Edwards & Jennings, Detroit, MI, (for plaintiff).

# LANCE W. SEBERHAGEN

***Lewis v. Brady*** (1989, adverse impact, race). Analyzed adverse impact and validity of selection procedures for Plate Printer apprentices at U.S. Bureau of Printing and Engraving. Case settled. Attorney: David Donovan; Wilmer, Cutler & Pickering; Washington, DC, (for plaintiff).

***Dicker v. Allstate Insurance Co.*** (1990-91, adverse impact, race). Analyzed validity of selection procedures and merit pay for clerical staff in Underwriting Department of Personal Life Service Center. Case settled. Attorney: Steven G. Seliger, Chicago, IL, (for plaintiff).

***Foggie v. D.C. Department of Human Resources*** (1990, personnel rules). Analyzed and evaluated supervisory Pharmacist position to determine proper classification and pay grade. Case settled. Attorney: Paul Toulouse; Toulouse & Spillan; Washington, DC, (for plaintiff).

***Hinkle v. County of Monroe, MI*** (1990, wage and hour). Conducted library research on current practice regarding overtime pay for Police Canine Officers. Case settled. Attorney: Stanley Krawetz; Krawetz & Spiros; Lambertville, MI, (for plaintiff).

***Nassau County Guardians v. Nassau County, NY*** (1990, adverse impact, race). Gave technical advice on setting cutoff scores and minimizing adverse impact in selection procedures for entry Police Officer. Case settled. Attorney: Richard T. Seymour, Lawyers Committee for Civil Rights under Law, Washington, DC, (for plaintiff).

***Probation Counselors v. Fairfax County, VA*** (1990, personnel rules). Analyzed and evaluated Probation Counselor II job to determine proper pay grade. Testified at hearing. Case decided for plaintiff. Contract Monitor: John W. Wrightson, Ad hoc group of Probation Counselors, (for plaintiff).

***Scales v. George Washington University*** (1990-93, disparate treatment, race). Analyzed labor force availability and adverse impact of selection procedures for nursing management jobs. Testified at trial. Case decided for defendant. Attorney: Jack Frazier; Reasoner, Davis & Fox; Washington, DC, (for defendant).

***Bouyer v. City of Bessemer, AL*** (1991, adverse impact, race). Analyzed adverse impact and validity of selection procedures (criminal history records) for City jobs. Case decided for plaintiff. Attorney: Samuel Fisher; Gordon, Silberman, Wiggins & Childs; Birmingham, AL, (for plaintiff).

***Carter v. City of Springfield, IL*** (1991-94, adverse impact, race). Analyzed adverse impact and validity of selection procedures for Police Sergeant under Illinois Human Rights Act. Testified at trial. Case decided for defendant. Attorney: Donald Jackson, Peoria, IL, (for plaintiff).

***Cleveland Branch, NAACP v. City of Parma, OH*** (1991-98, adverse impact, race). Analyzed adverse impact and validity of selection procedures for entry Police Officer and Firefighter. Gave deposition. Case settled. Attorney: David Rose, Washington, DC, (for plaintiff).

***Guinyard v. City of New York, NY*** (1991-92, adverse impact, race). Analyzed adverse impact and validity of selection procedures (written exam, oral exam) for Transit Police Lieutenant. Case settled. Attorney: Frederick Brewington and Deborah Karpatkin, New York, NY, (for plaintiff).

***Little v. City of Peoria, IL*** (1991-93, adverse impact, race). Analyzed adverse impact and validity of selection procedures (written test) for Police Sergeant under Illinois Human Rights Act. Case settled. Attorney: Donald Jackson, Peoria, IL, (for plaintiff).

14

# LANCE W. SEBERHAGEN

*Reynolds v. Alabama Highway Department* (1991-97, adverse impact, race). Analyzed adverse impact and validity of selection procedures for Highway Department jobs. Case settled. Attorney: Robert Wiggins; Gordon, Silberman, Wiggins & Childs; Birmingham, AL, (for plaintiff).

*Sumner v. City of Jacksonville, FL, Sheriff's Department* (1991-94, adverse impact, age). Analyzed adverse impact and validity of selection procedures for Sheriff Lieutenant. Case settled. Attorney: John MacLennan; Kattman, Eshelman & MacLennan; Jacksonville, FL, (for plaintiff).

*Dean v. The Mitre Corporation* (1992, disparate treatment, race). Analyzed validity of promotional selection procedures for Group Leader. Identified victims of discrimination. Gave deposition. Case settled. Attorney: Joseph Sellers, Washington Lawyers Committee for Civil Rights under Law, Washington, DC; Joel Cohn; Akin, Gump, Hauer & Feld; Washington, DC; Barry J. Reingold, Perkins Coie, Washington, DC, (for plaintiff).

*Davis v. Shell Oil Company* (1993, disparate treatment, adverse impact, race). Analyzed validity of promotional selection procedures for Foreman. Case settled. Attorney: Donald Hill, Dallas, TX, (for plaintiffs).

*Moan v. Mercy Hospital* (1993-94, disparate treatment, reasonable accommodation, age, disability). Analyzed validity of selection procedures (performance appraisal) for Telephone Operator. Case settled. Attorney: Rebecca O'Connor, Mercy Hospital, Pittsburgh, PA, (for defendant).

*U.S. v. City of Miami, FL* (1993-94; adverse impact; race, sex, and national origin). Analyzed adverse impact and validity of selection procedures (written test) for Firefighter. Case settled. Attorney: Robert Klausner, Klausner & Cohen, Hollywood, FL, (for union intervener).

*Capabianca v. Cherry* (1994-95; legal malpractice). Identified errors in handling of discrimination complaint against USPS. Case settled. Attorney: Frank Luciano, Lodi, NJ, (for plaintiff).

*Frazier v. Bentsen* (1994-97; disparate impact, disparate treatment, race, sex). Analyzed adverse impact and validity of selection procedures for Program Analyst in Internal Revenue Service. Gave deposition. Case settled. John Karl, Jr., McDonald & Karl, Washington, DC, (for plaintiff).

*Grant v. U.S. Department of Education* (1994; disparate impact, sex). Analyzed adverse impact and validity of promotional selection procedures for managers and professionals. Case settled. Attorney: Mary Beth Murphy, Steptoe & Johnson, Washington, DC, (for plaintiff).

*Jaffe v. Lerner Corp* (1994; disparate treatment, age). Analyzed validity of performance appraisal procedures for Shopping Center Managers. Case settled. Attorney: Mose Lewis, Powers & Lewis, Washington, DC, (for plaintiff).

*Maryland National Bank v. Falsafi* (1994; loan default). Analyzed job duties and compensation of chief executive who sold business to father in attempt to avoid payment of loan. Case settled. Attorney: Caryn Garvin (Paralegal); Ginsburg, Feldman & Bress; Washington, DC, (for plaintiff).

*McGuire v. Mark Winkler Co.* (1994; disparate treatment, equal pay, sex). Analyzed and evaluated plaintiff's position versus other management positions. Case settled. Attorney: Andrew Gordon; DiMuro, Ginsberg & Lieberman; Alexandria, VA (for defendant).

*Nunez v. First Union Bank of Florida* (1994; disparate treatment, national origin). Analyzed adverse impact and validity of selection procedures for Bank Managers after bank merger. Case settled. Attorney: Talbot Trammell, Coral Gables, FL, and Arno Kutner, Miami, FL, (for plaintiff).

# LANCE W. SEBERHAGEN

*Adams v. Indiana Bell Telephone Co. and Ameritech Services Inc.* and *Allard v. Indiana Bell Telephone Co.* (1995-97, disparate treatment, age). Analyzed selection procedures for termination. Gave deposition. Case decided for defendant. Attorney: David L. Rose, Rose & Rose, Washington, DC (for plaintiff).

*Diettrich v. Northwest Airlines Inc.* (1995-96, disparate treatment, age). Analyzed selection procedures (interview) for termination. Testified at trial. Case decided for plaintiff. Attorney: Curry First; First, Blondis, Albrecht, Bangert, & Novotnak; Milwaukee, WI (for plaintiff).

*Gresham and Pines v. Alabama Department of Public Safety et al.* (1995-96, adverse impact, disparate treatment, race). Analyzed validity of selection procedures (written tests) for Clerk II and Clerk III. Case settled. Attorney: Robert Childs Jr.; Gordon, Silberman, Wiggins & Childs; Birmingham, AL, (for plaintiff).

*Workman v. Honeywell Inc.* (1995; disparate treatment, equal pay, sex). Analyzed jobs and pay differences among Security System Installers. Case settled. Attorney: Susan Aaron, Popham Haik, Washington, DC, (for defendant).

*Wright v. South Central Bell* (1995, adverse impact, race, sex). Analyzed validity of selection procedures (written tests) for craft jobs. Case settled. Attorney: James Mendelsohn; Gordon, Silberman, Wiggins & Childs; Birmingham, AL, (for plaintiff).

*NAACP v. Town of East Haven, CT.* (1996-98, adverse impact, race). Analyzed validity of selection procedures (written tests) for Firefighter and Police Officer. Testified at trial. Case decided for plaintiff. Attorney: David L. Rose, Rose & Rose, Washington, DC (for plaintiff).

*Provitt v. City of Montgomery Fire Department* (1996, adverse impact, race). Analyzed adverse impact and validity of promotional selection procedures (assessment centers) for Fire Lieutenant, Fire Captain, and District Fire Chief. Case settled. Attorney: James Mendelsohn; Gordon, Silberman, Wiggins & Childs; Birmingham, AL, (for plaintiff).

*Albright et al. v. City of New Orleans, LA* (1997-99, adverse impact, race, sex). Analyzed adverse impact and validity of domicile requirement for police officers. Testified at trial. Case decided for defendant. Attorney: Frank G. DeSalvo, New Orleans, LA, (for plaintiff).

*Fraternal Order of Police v. City of Miami, FL* (1997-00, personnel rules). Analyzed validity of promotional selection procedures (written test) for Police Lieutenant. Case settled. Attorney: Ronald J. Cohen, Klausner & Cohen, Hollywood, FL, (for plaintiffs).

*Platt, et al. v. State of Florida, et al.* (1997-98, adverse impact, race). Analyzed adverse impact and validity of selection procedures (written tests) for Correctional Officer. Testified at trial. Case decided for defendant. Attorney: Jerry G. Traynham, Patterson & Traynham, Tallahassee, FL, (for plaintiffs).

*Harris v. Hantman* (1998-00, equal pay). Provided technical advice regarding classification and pay of Custodians and Laborers working for the Architect of the U.S. Capitol. Case settled. Attorney: Barbara Kraft, Washington, DC, (for plaintiffs).

*McGavern, et al. v. City of Miami Beach, FL* (1998-03; personnel rules). Analyzed validity of promotional selection procedures (oral exam) for Police Sergeant. Gave deposition. Case settled. Attorney: Robert Klausner, Klausner & Cohen, Hollywood, FL, (for union intervener).

16

# LANCE W. SEBERHAGEN

***Cook v. Billington*** (1998-00; adverse impact, race). Analyzed validity of selection procedures for Librarian at the Library of Congress. Testified at hearing. Case settled. Attorney: David L. Kelleher, Arent Fox Kitner Plotkin & Kahn, Washington, DC, (for plaintiffs).

***Meeker v. OPM*** (1998; personnel rules). Analyzed validity of selection procedures for Administrative Law Judge. Gave deposition. Case decided for plaintiff. Attorney: Murray Meeker, Alexandria, VA, (for plaintiff).

***Smith, et al. v. Texaco and Star Enterprise*** (1998-00; adverse impact, race). Analyzed validity of promotional selection procedures. Case settled. Attorney: James E. Payne, Provost & Umphrey, Beaumont, TX (for plaintiffs).

***NAACP v. New Jersey State Police.*** (1999, adverse impact, race). Analyzed validity of educational requirements for State Police Officer. Case settled. Attorney: David L. Rose, Rose & Rose, Washington, DC (for plaintiff).

***Byrd & Williams v. Safeway*** (1999-00; adverse impact, race). Analyzed adverse impact and validity of selection procedures. Case settled. Attorney: JePhunneh Lawrence, Washington, DC (for plaintiff).

***Craze and Turner v. The United States*** (2000; equal pay). Analyzed jobs, pay differences, and promotional selection procedures for IPA Chief at National Security Agency. Case settled. Attorney: Irving Kator, Kator, Scott & Parks, Washington, DC (for plaintiff).

***NAACP v. City of Springfield, IL*** (2000-01, adverse impact, race, sex). Analyzed adverse impact and validity of selection procedures (written tests, physical ability test) for Firefighter and Police Officer. Gave deposition. Case settled. Attorney: David L. Rose, Rose & Rose, Washington, DC (for plaintiff).

***EEOC v. Loudoun County Public Schools*** (2001; equal pay). Analyzed and evaluated four management positions. Gave deposition. Case decided for defendant. Attorney: Elizabeth Menist, Reed Smith LLP, McLean, VA (for defendant).

***NAACP v. New Jersey Department of Personnel*** (2001-2002, adverse impact, race). Analyzed adverse impact and validity of written test for Police Officer. Case settled. Attorney: David L. Rose, Rose & Rose, Washington, DC (for plaintiff).

***McCoy v. Willamette Industries*** (2001-2002, adverse impact, race). Analyzed validity of written test for 19 hourly jobs in paper mill. Gave deposition. Case settled. Attorney: Dan Bailey, Provost & Umphrey, Nashville, TN, (for plaintiffs).

***QSS Group v. General Services Administration*** (2001-2002; Federal Acquisition Regulations). Matched company jobs to equivalent GSA job descriptions and evaluated qualifications of job incumbents to provide independent evaluation of GSA audit. Case settled. Attorney: J. Patrick McMahon, Barton, Baker, McMahon & Tolle, McLean, VA (for defendant).

***Redd, et al. v. Treasury Department*** (2001-2002, adverse impact, race). Analyzed adverse impact of drug testing procedure for jobs at Bureau of Engraving and Printing. Case settled. Attorney: Stan Brown, Largo, MD, (for plaintiff).

***Thornton v. ICMA Retirement Corporation*** (2001-2002, disparate treatment, race). Analyzed adverse impact and validity of promotional selection procedures for top management jobs. Case settled. Attorney: Donald Temple, Temple Law Offices, Washington, DC (for plaintiff).

# LANCE W. SEBERHAGEN

**Baumgartner v. State of Washington** (2002-2004, state personnel rules).  Investigated status of Correctional Lieutenant under State's classification and pay system. Case pending. Attorney: Todd Nichols & Patricia Pendry, Snohomish, WA (for plaintiffs).

**Lemley, et al. v. Philips Electronics and Paul Zepp** (2002-2004, adverse impact, sex, age).  Analyzed adverse impact and validity of simulation test for Machine Attendant.  Gave deposition.  Case settled. Attorney: Larry Rector, Steptoe & Johnson, Clarksburg, WV (for defendants).

**NTEU v. Treasury Department** (2002-2003, union contract). Analyzed validity of educational requirements for Internal Revenue Agent.  Testified at arbitration hearing.  Case decided for defendant.  Attorney: Tim Hannepel, National Treasury Employees Union, Washington, DC (for plaintiffs).

**Byrd v. Small** (2003-2004, disparate treatment, race).  Analyzed validity of training and experience rating for Anthropologist at Smithsonian Institution.  Gave deposition.  Case decided for defendant.  Attorney: John Relman, Relman & Associates, Washington, DC (for plaintiff).

**Taylor & Harley v. Astrue** (2003-2007, adverse impact, race).  Analyzed adverse impact of promotional selections at Social Security Administration.  Case pending.  Attorney: David L. Rose, Rose & Rose, Washington, DC (for plaintiff).

**Flagg v. Kirby Inland Marine**  (2004, disparate treatment, race).  Analyzed personnel practices and disparate treatment. Case settled. Attorney: Sherry Chandler, The Hall Law Firm, Houston, TX (for plaintiff).

**FOP/Vega v. City of Miami** (2004-2008, city personnel rules).  Evaluated validity of employee selection procedures for Police Sergeant.  Testified at trial.  Case decided for plaintiffs. Attorney:  Mimi Turin, Miami City Attorney's Office, Miami, FL (for defendant).

**Kohlbek v. City of Omaha**  (2004, discriminatory affirmative action, race, national origin).  Evaluated employee selection procedures for Fire Captain and Battalion Chief.  Gave deposition.  Case decided for plaintiff. Attorney: John Corrigan, Fahey & Corrigan, P.C., Omaha, NE (for plaintiff).

**Pennsylvania Statewide Latino Coalition v. City of Reading**  (2004-2005, adverse impact, national origin).  Analyzed adverse impact and evaluated validity of employee selection procedures for entry-level Police Officer.  Case settled.  Attorney: Peter Winebrake, Trujillo Rodriguez & Richards, LC, Philadelphia, PA (for plaintiff).

**Bell v. City of Memphis** (2005, adverse impact, race).  Analyzed adverse impact and validity of promotional selection procedures for Police Sergeant.  Case settled.  Attorney: Kathleen Caldwell, Attorney at Law, Memphis, TN (for plaintiff).

**Bradley v. City of Lynn** (2005, adverse impact, race).  Analyzed adverse impact and validity of entry selection procedures for Firefighter in state of Massachusetts.  Case decided for plaintiffs.  Attorney: Harold Lichten, Pyle, Rome, Lichten, Ehrenberg & Liss-Riordan, P.C., Boston, MA.

**Murphy v. Price Waterhouse Coopers** (2005-2008, adverse impact, age).  Analyzed adverse impact of promotional selection procedures for Partner.  Gave deposition.  Case pending. Attorney: David L. Rose, Rose & Rose, Washington, DC (for plaintiff).

**NTEU v. Securities and Exchange Commission** (2005-2008, race, age, union contract).  Analyzed adverse impact of merit increases.  Testified at arbitration hearing.  Case decided for plaintiffs.  Attorney: Michael Piacsek and Pat Wynns, National Treasury Employees Union, Washington, DC (for plaintiffs).

# LANCE W. SEBERHAGEN

***NTEU v. Treasury Department*** (2005-2007, union contract).  Analyzed validity of employee selection procedures for Tax Specialist.  Case settled.  Attorney: Robert Shriver, National Treasury Employees Union, Washington, DC (for plaintiffs).

***FOP/Najiy v. City of Miami*** (2006-2008, Florida Civil Rights Act, race).  Evaluated adverse impact and validity of employee selection procedures for Police Lieutenant.  Gave deposition.  Case pending.  Attorney: Mimi Turin, Miami City Attorney's Office, Miami, FL (for defendant).

***Harrison-Gray et al. v. Nicholson*** (2006-2008, adverse impact, race).  Analyzed adverse impact in employee awards at Richmond, VA, medical center.  Case pending.  Attorney: Kathleen Oddo, U.S. Department of Veterans Affairs (for defendant).

***Kinsolving v. Nicholson*** (2006, disparate treatment, sex, age).  Evaluated validity of employee selection procedures and performance appraisal procedures for Social Worker.  Case settled.  Attorney: Nathaniel Johnson, The Law Firm of Nathaniel D. Johnson, LLC, Waldorf, MD (for plaintiff).

***Milavickas v. Ciber, Inc.*** (2006-2007, equal pay).  Analyzed and evaluated various business development jobs.  Case settled.  Attorney: Suzzanne Decker, Miles & Stockbridge, Baltimore, MD (for defendant).

***Mure v. City of Miami*** (2006-2007, city personnel rules).  Evaluated validity of employee selection procedures for Police Lieutenant. Case pending.  Attorney:  Kevin Jones and Elsa Jaramillo-Velez, Miami City Attorney's Office, Miami, FL (for defendant).

***Aliotta v. FDIC*** (2007-2008, adverse impact, age).  Analyzed adverse impact of reduction in force.  Case pending.  Attorney: David L. Rose, Rose & Rose, Washington, DC (for plaintiff).

***Jantz v. Astrue*** (2007-2008, disability).  Analyzed adverse impact of employee selection procedures at Social Security Administration.  Case pending.  Attorney: Michael Snider, Snider & Associates, Baltimore (for plaintiff).

***NTEU v. Homeland Security Department*** (2007-2008, union contract).  Analyzed adverse impact of employee selection procedures for Customs & Border Patrol Agent.  Case pending.  Attorney: Elaine Kaplan, National Treasury Employees Union, Washington, DC (for plaintiffs).

***Mullins v. City of Baltimore*** (2008, disparate treatment, sex).  Evaluated validity of employee selection procedures for Auto Body Shop Supervisor.  Case pending.  Attorney: John Stolarz, Baltimore, MD (for plaintiff).