# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____
|                                    )
| **BARBARA ALIOTTA, et al.**        )
|                                    )
| **Plaintiffs,**                    )
|                                    )
| **v.**                             )     **Case No. 1:05-cv-02325-RMU**
|                                    )
| **SHEILA C. BAIR,**                )
| **Chairman,**                      )
| **Federal Deposit Insurance Corporation,**  )
|                                    )
| **Defendant.**                     )
|_____)

## DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE QUESTION OF LIABILITY

William S. Jones
Georgia Bar No. 404288
Counsel, Legal Division
Federal Deposit Insurance Corporation
3501 N. Fairfax Drive (VS-E6006)
Arlington, VA 22226
(703) 562-2362
(703) 562-2482 (Fax)

Stephen J. Kessler
D.C. Bar No. 382427
Counsel, Legal Division
Federal Deposit Insurance Corporation
3501 N. Fairfax Drive (VS-E6014)
Arlington, VA 22226
(703) 562-2311
(703) 562-2482 (Fax)

Attorneys for Defendant

March 7, 2008

# TABLE OF CONTENTS

TABLE OF EXHIBITS ........................................................................................... iii

TABLE OF AUTHORITIES ................................................................................... iv

I.    INTRODUCTION ........................................................................................1

II.   FACTUAL BACKGROUND ........................................................................2

III.  ARGUMENT AND AUTHORITIES ...........................................................3

    A.    Plaintiffs' Disparate Impact Claim Fails as a Matter of Law ............................3

    B.    Alternatively, Plaintiffs Have Not Established a *Prima Facie* Case ................7

    C.    Response to Plaintiffs' "Background" Allegations........................................11

IV.   CONCLUSION...........................................................................................15

## TABLE OF EXHIBITS

**No.**          **Description**

36          Second Declaration of Lester Bodian

37          Cross Reference – EMPAIDs for named Plaintiffs

38          SF-50 for Bruce Brown

39          Deposition of Donald E. Powell

40          Errata Sheet – Powell Deposition


Defendant's Exhibit Nos. 1-35 were previously submitted in connection with the Agency's own motion for summary judgment.  To avoid confusion, Defendant's additional exhibits submitted with this Opposition have been numbered consecutively from the last summary judgment exhibit.

# TABLE OF AUTHORITIES

<u>**Cases**</u>                                                                                                                <u>**Page(s)**</u>

*Armstrong v. Powell,*
    230 F.R.D. 661 (W.D. Okla. 2005)........................................................................5

*Barrett v. FCC,* Appeal No. 01831968,
    1984 WL 484622, at *2 (EEOC, Apr. 4, 1984) ....................................................5

*Beeck v. Fed. Express Corp.,*
    81 F. Supp.2d 48 (D.D.C. 2000) ........................................................................14

*Brite v. Dep't of the Navy,* Appeal No. 01830976,
    1983 WL 411679, at *5-6 (EEOC, Nov. 9, 1983) ..................................................5

*Burlison v. McDonald's Corp.,*
    455 F.3d 1242 (11th Cir. 2006) ........................................................................10

*Cuddy v. Carmen,*
    694 F.2d 853 (D.C. Cir. 1982) ............................................................................5

*Girten v. McRentals, Inc.,*
    337 F.3d 979 (8th Cir. 2003) ............................................................................13

*Griggs v. Duke Power Co.,*
    401 U.S. 424 (1971)............................................................................................6

*Holdridge v. Thornburgh,*
    804 F. Supp. 876 (N.D. Tex. 1992) ..................................................................5, 6

*Lehman v. Nakshian,*
    453 U.S. 156 (1981)............................................................................................1

*Loeb v. Textron,*
    600 F.2d 1003 (1st Cir. 1979)..............................................................................5

*Manning v. Chevron Chem. Co., LLC,*
    332 F.3d 874 (5th Cir. 2003) ............................................................................13

*Meacham v. Knolls Atomic Power Lab,*
    461 F.3d 134 (2nd Cir. 2006), *cert. granted,*
    128 S.Ct. 1118 (2008).....................................................................................3, 7

*New York City Transit Auth. v. Beazer,*
    440 U.S. 568 (1979)..............................................................................6

*Pippin v. Burlington Resources Oil & Gas Co.,*
    440 F.3d 1186 (10th Cir. 2006) ......................................................4, 7

*Price Waterhouse v. Hopkins,*
    490 U.S. 228 (1989)............................................................................13

*Smith v. City of Jackson,*
    544 U.S. 228 (2005)......................................................................4, 7, 8

*Siragy v. Georgetown Univ.,*
    No. 97-2557 (RMU), 1999 WL 767831 (D.D.C. Aug. 20, 1999) ..........14

## Statutes

Age Discrimination in Employment Act (ADEA),
    29 U.S.C. § 621..................................................................................1

Older Workers Benefit Protection Act,
    29 U.S.C. § 626(f)............................................................................10

## Rules and Regulations

5 C.F.R. Part 351 ....................................................................................1

29 C.F.R. § 1625.7(d) ..............................................................................4

29 C.F.R. § 1625.22 ............................................................................9, 10

29 C.F.R. § 1625.22(d)(3)........................................................................9

29 C.F.R. § 1625.22(f)(1)(iii) ................................................................10

46 Fed. Reg. 47724 (Sept. 29, 1981) ....................................................5

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                                    )
**BARBARA ALIOTTA, et al**                          )
                                                    )
    **Plaintiffs,**                               )
                                                    )
    **v.**                                       )        **Case No. 1:05-cv-02325-RMU**
                                                    )
**SHEILA C. BAIR,**                                 )
**Chairman,**                                       )
**Federal Deposit Insurance Corporation,**          )
                                                    )
    **Defendant.**                               )
_____)


**DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION**
**FOR PARTIAL SUMMARY JUDGMENT ON THE QUESTION OF LIABILITY**

## I. INTRODUCTION

Due to a declining workload, the Federal Deposit Insurance Corporation ("FDIC" or

"Agency") conducted a reduction-in-force ("RIF") in 2005 within its Division of Resolutions and

Receiverships ("DRR"), in accordance with OPM regulations found at Part 351 of Title 5, Code

of Federal Regulations. Plaintiffs filed this case as a class action in December of 2005, alleging

that the Agency's design and implementation of the RIF violated the Age Discrimination in

Employment Act (ADEA), 29 U.S.C. § 621, *et seq.*, and harmed DRR employees age 50 and

older.[1]

The Court granted Plaintiffs' motion for class certification on July 25, 2006, concluding

that the case may proceed on behalf of a class defined as:

_____

[1] Plaintiffs filed an amended complaint on February 8, 2006, which joined additional named
plaintiffs. This is a non-jury case. *See Lehman v. Nakshian*, 453 U.S. 156 (1981).

> Former or present employees of FDIC's Division of Resolution and Receiverships who were born on a date on or before September 30, 1955 and who, as a result of the 2005 RIF, either accepted a buyout or reduction in grade, or were terminated from their positions in the DRR.

The record evidence shows that no employee was compelled to accept a buyout as a result of the RIF. Rather, all employees who accepted a buyout did so voluntarily <u>before</u> the RIF was actually conducted and <u>before</u> any employees received any specific RIF notices. Moreover, the record evidence shows that age was not a factor in the FDIC's decisions to reorganize and downsize DRR, or in the design or implementation of the RIF. The record also shows that the FDIC followed applicable federal law and regulations (as well as Agency RIF procedures) in conducting the RIF in DRR, and that none of the actions taken by the Agency during the 2004-2005 downsizing and RIF in any way violated Plaintiffs' rights under the ADEA.

## II. FACTUAL BACKGROUND

Plaintiffs begin by stating what they call "the basic undisputed facts." Pl's Br. at 1-4. But many of the salient facts asserted by Plaintiffs misstate the record evidence in this case. *See* discussion below and at section III.C. Plaintiffs' most egregious misstatement is their assertion that in 2005, the FDIC "terminated" the employment of 588 career employees, including 178 employees in DRR. In reality, as the Agency has clearly demonstrated in its own Motion for Summary Judgment and Memorandum in Support Thereof ("Agency MSJ"), the only involuntary "terminations" that occurred in 2005 resulted from the RIF in DRR – and within DRR, only 53 employees were terminated as a result of the RIF. *See* Agency MSJ at 38. In addition, 7 DRR employees retired in lieu of separation and 3 employees resigned after receiving

2

a specific RIF notice.  *Id.*[2]  The remainder of the employees who left the FDIC in 2005

voluntarily retired or resigned, no doubt influenced by the generous buy-out program that had

been offered by the Agency, which included a payment equal to half their annual salary and

other incentives.  *See* Agency MSJ at 13-15.

### III.  ARGUMENT AND AUTHORITIES

**A.      Plaintiffs' Disparate Impact Claim Fails as a Matter of Law**

Plaintiffs' <u>entire</u> "Argument" (Pl's Br. at 4-9) is devoted to their disparate impact claim.[3]

And, most of Plaintiffs' analysis of authorities is directed to the proposition that the employer –

and not the employee – bears the burden of proof on the reasonable factor other than age

("RFOA") defense to disparate impact claims in ADEA cases.  Plaintiffs also argue (albeit in a

very conclusory fashion) that Defendant has not presented evidence of an RFOA in this case.

The former point is not necessary to a decision on the cross-motions for summary judgment for

the reasons set forth below.  On the latter point (evidence of an RFOA), not only is Plaintiffs'

Motion without merit, the uncontroverted evidence requires judgment as a matter of law in favor

of Defendant.

The question whether the employer or the employee bears the burden of proof on the

RFOA issue is pending decision by the Supreme Court this term.[4]  However, the summary

judgment evidence is so clear on this issue that Defendant is willing to assume *arguendo* for

---

[2] The average age of these 63 separated employees was 48.28 years – this group was not only
younger, but statistically significantly younger, than the rest of DRR, a fact which is entirely
inconsistent with Plaintiffs' claims of age discrimination.  *See* Agency MSJ at 38.
[3] There are several references to what could be interpreted as disparate treatment (i.e., intentional
discrimination) in the factual background portion of Plaintiffs' Brief; however, these items are
never referred to in Plaintiffs' argument.  These items are also either misstated or incorrect, as
will be demonstrated in section III.C below.  Also, as noted in the FDIC's motion for summary
judgment, there is some doubt as to whether disparate impact claim under the ADEA is
cognizable against a federal agency.  *See* Agency MSJ at 23.
[4] *Meacham v. Knolls Atomic Power Lab*, 461 F.3d 134 (2nd Cir. 2006), *cert. granted*, 128 S.Ct.
1118 (2008).

purposes of the cross-motions for summary judgment that the employer bears the burden of proof

on this issue.  In this regard, it should be kept in mind that, no matter who bears the burden of

proof, the Supreme Court has adopted an extremely liberal definition of what constitutes an

RFOA.

In *Smith v. City of Jackson*, 544 U.S. 228 (2005), the Court emphasized that an employer

is at liberty to choose among alternatives for accomplishing any legitimate business purpose, and

the employer is under no duty to choose the "most" reasonable alternative or even to choose

from among reasonable alternatives that which has the least disparate impact.  *Id.* at 241, 243.

*See also* Agency MSJ at 23-24, 32.  Thus, as long as an employment practice is not demonstrably

unreasonable, it will constitute an RFOA.[5]

Here, the only policy or practice Plaintiffs purport to attack is reasonable by its own

terms.  Plaintiffs' disparate impact complaint deals solely with FDIC's decision to conduct a RIF

in its DRR organization.  But the reason a RIF was necessary was the substantial reduction in

problem banks and bank failures and the consequent lack of bank <u>resolutions</u> and <u>receiverships</u>.

*See* Agency MSJ at 4-12.  Therefore, the logical (and, *a fortiori*, reasonable) division in which to

reduce staff had to be DRR, the division of "resolutions and receiverships."

Plaintiffs suggest (Pls' Br. at 6) that, under EEOC regulations, ". . . when an employment

practice by an employer causes an adverse impact against individuals within the protected age

group, it can only be justified by business necessity."  This is not the law, and ignores the critical

distinction made by the Supreme Court in *City of Jackson*.  The regulation, codified at 29 C.F.R.

§ 1625.7(d), states in relevant part:

> When an employment practice, including a test, is claimed as the basis for
> *different treatment* of employees . . . on the grounds that it is a "factor

---

[5] *See Pippin v. Burlington Resources Oil & Gas Co.*, 440 F.3d 1186, 1200-01 (10th Cir. 2006).

> other than" age, and such practice has an adverse impact on individuals
> within the protected age group, it can only be justified as a business
> necessity.

Emphasis added. Thus, the regulation by its own terms appears to apply only to claims of

*disparate treatment*. In any event, the EEOC itself has never adopted the interpretation that

Plaintiffs would give the regulation. Since the regulation was adopted in 1981,[6] the EEOC in

ADEA cases brought against federal agencies has consistently held that if a complainant

establishes a *prima facie* case of age discrimination, the agency may avoid liability by showing

that the employment action at issue was based on reasonable factors other than age; the

Commission has not required, as Plaintiffs suggest, that the agency must also show that the

action was justified by "business necessity." *See*, *e.g*., *Barrett v. FCC*, Appeal No. 01831968,

1984 WL 484622, at *2 (EEOC, Apr. 4, 1984); *Brite v. Department of the Navy*, Appeal No.

01830976, 1983 WL 411679, at *5 (EEOC, Nov. 9, 1983).[7]

    The federal courts, including the Court of Appeals for this Circuit, also have held that

federal agencies may avoid liability by showing that the employment action at issue was based

on reasonable factors other than age, without also showing that the action was justified by

"business necessity." *See*, *e.g*., *Cuddy v. Carmen*, 694 F.2d 853, 858 (D.C. Cir. 1982) ("if

reasonable and lawful factors dictate and support the employer's decision, additional

consciousness of age is not itself interdicted by the Act"); *see also*, *Armstrong v. Powell*, 230

F.R.D. 661, 673 (W.D. Okla. 2005) (plaintiff cannot recover against federal agency if the

employment practice was based on a reasonable factor other than age); *Holdridge v. Thornburgh*,

---

[6] *See* 46 Fed. Reg. 47724 (Sept. 29, 1981).

[7] In both of these cases, the EEOC cited *Loeb v. Textron*, 600 F.2d 1003, 1015 (1st Cir. 1979), in
which the court also held that an employer may avoid liability by showing that the employment
action at issue was based on reasonable factors other than age; the court did not require that the
employer also show that the action was justified by "business necessity."

804 F.Supp. 876, 882 (N.D. Tex. 1992) (federal employer not liable under ADEA where decision not to hire plaintiff was based on reasonable factors other than age).

Furthermore, even a business necessity standard would be of no comfort to Plaintiffs in the case at bar. The Supreme Court has defined business necessity in this context to mean that an employment policy or practice "bears a manifest relationship to the employment in question." *New York City Transit Auth. v. Beazer*, 440 U.S. 568, 587 n. 31 (1979), *quoting Griggs v. Duke Power Co.*, 401 U.S. 424, 432 (1971). Reducing the staff of a division whose function has been concomitantly reduced by conditions in the regulated industry is *ipso facto* "manifestly related to the employment in question."

Moreover, Plaintiffs cannot attack the reasonableness of the RIF methodology since it (1) was agreed to by the union which represents Plaintiffs' interests, (2) was conducted in accordance with RIF regulations promulgated by the United States Office of Personnel Management, and (3) is a process inherently weighted in favor of longer service employees. *See* Agency MSJ at 15-17; *see also* Reply Report of Dr. Jeanneret (Agency MSJ Ex. 27-1) at 15.

Plaintiffs' assertion (Pls' Br. at 5) that "Defendant has not offered evidence to show a defense based upon a reasonable factor other than age . . ." is belied by the record. Defendant has affirmatively pled the RFOA defense. *See* Defendant's Answer (ECF Doc. 7) at 29, Ninth Affirmative Defense. Moreover, Defendant has introduced extensive evidence of the reasons for the staff reduction, its efforts to achieve most of the reduction through the exercise of employee choices rather than involuntary terminations, and the conduct of the RIF itself. *See* Agency MSJ at 4-20 and accompanying exhibits. All of this material is in the nature of reasonable factors other than age.

These principles are reinforced by analogous circumstances of key authorities construing

the RFOA defense. For example, in *City of Jackson* itself, the Supreme Court went out of its way to hold (in the unanimous portion of its opinion) that an employer's decision to provide larger percentage increases to more junior employees to enhance its competitive position in the marketplace could not, as a matter of law, be attacked as unreasonable no matter what the impact of such a policy might be on older employees. 544 U.S. at 242. In *Pippen*, the Court of Appeals held that an employer's policy, in the context of a RIF, to "honor its prior commitment to new hires in order to protect its hiring reputation at the schools involved is reasonable, as is the decision to keep new hires who have not yet been evaluated" (i.e., to not include the new hires in its RIF) was an RFOA as a matter of law. 440 F.3d at 1201. And in *Meacham*, *supra*, the Court of Appeals held that even though the defendant's RIF criteria were "subjective and imprecise at best, the subjectivity disproportionately impacted older employees, [defendant] observed that the disproportion was gross[8] and obvious, and [defendant] did nothing to audit or validate the results," the procedure nevertheless fulfilled the requisites of the RFOA defense. 461 F.3d at 144-46.

**B.     Alternatively, Plaintiffs Have Not Established a *Prima Facie* Case**

Plaintiffs have not come close to establishing either of the two critical elements of a *prima facie* case of disparate impact. The Supreme Court has made clear that a *prima facie* showing of disparate impact under the ADEA requires a plaintiff to both (1) isolate a specific practice, and (2) demonstrate that such practice has caused a disproportionate impact on older employees. *City of Jackson*, 544 U.S. at 241. Plaintiffs in the case at bar have done neither. *See* Agency MSJ at 30-32.

First, Plaintiffs have not identified a specific practice or policy as the object of their

---

[8] Contrast the FDIC's actual RIF in DRR, which did <u>not</u> have a disparate impact on older employees. *See* Agency MSJ at 38.

disparate impact claim.  Rather, they complain about the generalized decision to conduct a RIF

in DRR.  That is not "isolating" a "specific" practice.  Compare *City of Jackson*, *supra*, in which

the Court criticized the plaintiffs/petitioners on similar grounds:

> [W]e initially note that petitioners have done little more than point out that the
> pay plan at issue is relatively less generous to older workers than to younger
> workers.  They have not identified any specific test, requirement, or practice
> within the pay plan that has an adverse impact on older workers.  As we held in
> *Ward's Cove*, it is not enough to simply allege that there is a disparate impact on
> workers, or point to a generalized policy that leads to such an impact.  Rather, the
> employee is responsible for isolating and identifying the *specific* employment
> practices that are allegedly responsible for any observed statistical disparities.

544 U.S. at 241 (emphasis in the original, citations and quotations omitted).  If the *City of*

*Jackson* plaintiffs could not merely complain about a pay plan without isolating a specific

element of such plan, then, *a fortiori*, the plaintiffs here cannot merely complain about the

workforce reduction without isolating a specific element that can be demonstrated to have a

disparate impact.

Also fatal to Plaintiffs' claim is the statistical evidence, which establishes beyond

peradventure that there was no disparate impact on older employees.  The actual RIF had a

disproportionate effect on younger employees, not older employees.  *See* Agency MSJ at 38.  In

addition, the demographics of DRR before and after the RIF are inconsistent with any negative

age effect.  *Id*. at 33-37.

The only way Plaintiffs are able to conjure up something they can label (erroneously) as

disparate impact is to combine involuntary terminations incident to the RIF with voluntary

retirements and/or acceptances of the buyout.[9]  This analysis is statistically and legally invalid.

---

[9] It is unclear to what extent Plaintiffs may be relying on departures from the FDIC as a whole
rather than just DRR; however, this would be even less supportable than DRR separations,
because (1) there was no agency-wide RIF, (2) Plaintiffs would be even further removed from
isolating a specific practice or policy, and (3) the agency-wide separations were necessarily

*See* Agency MSJ at 30-31.  Plaintiffs' apparent rationale for this clearly deficient statistical

proffer is based upon a regulation governing waivers, which has nothing to do with the present

case.

Plaintiffs contend (Pls' Br. at 6) that "the decisional unit in this case is the FDIC because

the incentive for a buyout was offered to all or almost all of the employees of the FDIC were

offered [sic] the incentive to leave the employment of the agency.  29 C.F.R. 1625.22(d)(3)."

Plaintiffs do not explain why this statement entitles them to summary judgment.  But counsel for

plaintiffs, David L. Rose, referred to this regulation of the EEOC at the deposition of Plaintiffs'

expert, Lance Seberhagen, to explain why he (Mr. Rose) directed Dr. Seberhagen to include as

equivalent in his disparate impact analysis employees who voluntarily decided to accept a buyout

offer along with those whose employment was involuntarily terminated as a result of the RIF.[10]

From Mr. Rose's statements at that deposition, it appears that Plaintiffs contend that, based on

the EEOC regulation codified at 29 C.F.R. § 1625.22, the buyout program and the RIF itself may

be considered a single program for purposes of their expert's statistical analysis.

---

voluntary and weighted heavily with retirements and other normal attrition.  Of course, this
would also be inconsistent with Plaintiffs' class allegations which were directed exclusively at
DRR.  (*See* Plaintiffs' Motion for Class Certification, ECF Doc. 9, at 1-3, 6-7.)

[10] *See* Seberhagen Dep. (Agency MSJ Ex. 33), at 104-106:

> MR. ROSE: [1625.22], then you go into F little 3 which refers to two types of
> programs exit incentive programs and other employment programs and it defines
> both of those and it also talks about the decisional unit in which is F3 . . . .  [104:
> 18-21]
> * * *
> MR. KESSLER: You raised these [regulations] in connection with the discussion
> about whether it is appropriate to include employees who took a buyout in the
> [disparate impact] analysis?
> MR. ROSE: Yes.
> MR. KESSLER: Is [there anything] else besides these regulations that you are
> [relying on in] directing your expert to include the buyout employees?
> MR. ROSE: Well, common sense is the fact that yes, I mean I think that's what
> the statute contemplates but the regulations and how they are referred is the
> statute.  [106: 5-16]

As Plaintiffs concede (Pls' Br. at 6), the EEOC regulation applies to situations in which an employer seeks waivers from employees of rights and claims under the ADEA.[11] Specifically, 29 C.F.R. § 1625.22(f)(1)(iii) defines employer "programs" in which employers seeking waivers from employees of rights and claims under the ADEA must make certain disclosures. Subparagraph (A) states that there are two types of programs: "exit incentive programs" (such as buyouts) and "other employment termination programs" (such as RIFs). Subparagraph (B) states that a "program" exists "when an employer offers additional consideration for the signing of a waiver pursuant to an exit incentive or other employment termination (e.g., a reduction in force) to two or more employees." Emphasis added.[12]

The regulation cited by plaintiffs has no application here because the FDIC did not seek from any DRR employees waivers of any rights or claims under the ADEA[13] Nevertheless, Plaintiffs apparently believe that, based on the regulation, the FDIC's buyout program and the RIF that was conducted in DRR after the buyout program ended may be considered a single

---

[11] As the court explained in *Burlison v. McDonald's Corp.*, 455 F.3d 1242 (11th Cir. 2006), 29 C.F.R. § 1625.22 implements provisions of the Older Workers Benefit Protection Act, 29 U.S.C. § 626(f), by requiring that employers provide certain information to departing employees from whom the employer obtains waivers of claims under the ADEA in exchange for certain severance or retirement benefits. The information must be provided to employees within the departing employees' "decisional unit," which generally reflects the process by which the employer chose the employees for the program. 455 F.3d at 1245 n. 1. The fact that the FDIC downsizing in 2004-2005 (as opposed to the 2005 RIF in DRR) was corporate-wide, of course, does not render the EEOC regulation applicable to this case, in which the FDIC did not seek waivers of any rights or claims under the ADEA.

[12] It is undisputed that the FDIC offered DRR employees a voluntary incentive (buyout) program before the FDIC conducted the RIF in DRR (in accordance with regulations of the U.S. Office of Personnel Management). *See* Defendant's Statement of Material Facts (filed with the Agency MSJ) at ¶¶ 42, 56. The fact that the buyout program and the RIF may fit the definition of a "program" under 29 C.F.R. § 1625.22(f)(1)(iii) also does not render the regulation applicable to this case. As noted, the FDIC did not seek, and is not asserting, waivers of any rights or claims under the ADEA.

[13] The record is very clear that the FDIC did not seek waivers of any rights or claims under the ADEA in this case. *See, e.g.*, buyout application documents at Agency MSJ Ex. 14.

"program" for purposes of Dr. Seberhagen's disparate impact statistical analysis.

Plaintiffs' argument is not supported by the purpose or the language of the regulation, as discussed above. Moreover, Plaintiffs' argument makes no sense for the reasons stated by the FDIC's expert, Dr. Jeanneret. As Dr. Jeanneret explained in his February 21, 2008 report in reply to Dr. Seberhagen's report, Dr. Seberhagen was able to achieve what he called discriminatory adverse impact only "by combining the outcomes of different employee and employer decisions made under different circumstances," *i.e.*, combining employee resignations or retirements that were voluntary decisions with departures as a result of the RIF that were involuntary.[14] Dr. Jeanneret observed that it is inappropriate for a researcher to lump together those outcomes and assess them together.[15]

Thus, both the statistical and structural aspects of the RIF mandate denial of Plaintiffs' motion for summary judgment.

## C. Response to Plaintiffs' "Background" Allegations[16]

Plaintiffs have adverted to (though not supported with legal argument) several items in the factual background section of their brief (Pl's Br. at 1-4) which have nothing to do with their disparate impact claim. These items include: (1) Plaintiffs' allegation that DRR was selected for staff reductions because it was an "older" division; (2) an alleged statement by FDIC's then-chairman several years prior to the RIF; and (3) the recruiting on college campuses for certain

---

[14] Jeanneret Reply Report (Agency MSJ Ex. 27-1), at 10. As noted in Agency MSJ at 31, Dr. Seberhagen testified at his deposition that he combined and treated as equivalent employees who voluntarily chose to take the buyout with the employees who were involuntarily separated by the RIF because counsel for Plaintiffs instructed him to do so. Seberhagen Dep. (Agency MSJ Ex. 33) at 37-47, 91.

[15] Jeanneret Reply Report (Agency MSJ Ex. 27-1), at 11.

[16] This section addresses erroneous assertions or misstatements in the factual background portion of Plaintiffs' motion for partial summary judgment. There are also various errors in Plaintiffs' statement of "undisputed" facts (many of which are also immaterial to the cross motions for summary judgment), and these are addressed in Defendant's separate response to that document.

positions outside of DRR. For completeness, Defendant responds to these allegations (in the order listed above) as follows:

    1.    In contrast to their present disparate impact claim, in their motion for class certification (ECF Doc. 9), Plaintiffs emphasized that their <u>only</u> class claim was that FDIC had intentionally selected DRR for reduction because it was an "old" division:

> Plaintiffs intend to prove that the FDIC targeted the Division of Resolutions and Receiverships for reductions because it was an "old" division.

*Id.* at 3.

> There are no claims made about discrimination in hiring, promotions, awards, training, discipline, or any other of the myriad of ways employees can be discriminated against by their employers.

*Id.* at 7.

This theme is repeated in Plaintiffs' motion for summary judgment (Pl's Br. at 3), which states: "The DRR was the oldest Division in terms of the age and service of its employees." Plaintiffs cite to no record evidence for this assertion, but Defendant will assume it *arguendo* in the context of the pending cross-motions for summary judgment.

The assertion is meaningless because Plaintiffs have adduced no evidence – none – that any manager or executive at FDIC based the decision to reduce the staff of DRR on its allegedly being an "old" division. Despite extensive discovery, Plaintiffs have not produced the slightest indication that any decision maker had an awareness that DRR was allegedly an old or older division, or that this had any role in the decisions at issue in this case.

In contrast, Defendant has articulated the compelling reasons for reducing staff at DRR. (*See* Agency MSJ at 4-20, and section III.A above.) Thus, the intentional discrimination that Plaintiffs asked the Court to rely upon as the basis for class certification (ECF Doc. 9, quoted above) finds no support in the summary judgment evidence.

2.      Without presenting a supporting exhibit, Plaintiffs purport to quote (Pl's Br. at 1)

a former chairman of FDIC as testifying, *inter alia*, that he told a group of employees that "I

want young people around me . . . they have all the innovative ideas . . . ."  Plaintiffs, however,

have seriously misrepresented the record.  The offending phrases were contained in Plaintiffs'

counsel's question and <u>not</u> in the witness's testimony, which consisted only of the innocuous

statement that "I'm sure on occasions I have talked about the value of young people in an

organization."  *See* Deposition of Donald Powell, attached as Exhibit 39, at p. 13, lines 16-21.

Even if the testimony, correctly quoted, were somehow construed as a negative statement

about older employees (which clearly it is not),[17] it would be a "stray remark" as that term is

used in employment discrimination jurisprudence, and thus irrelevant and immaterial.  For a

remark of this type to be probative, it must be (1) made by a decision maker, (2) at a time

reasonably proximate to the decision at issue, and (3) relate to the decision at issue.[18]  Plaintiffs

have not attempted to make these showings, and in any event, the summary judgment evidence is

to the contrary.  First, the statement was alleged by Plaintiffs to have been made "in 2001 or

2002," Powell Dep. (Ex. 39) at p. 13, lines 16-17, long before the 2005 RIF.  Second, Chairman

Powell was not a decision maker with respect to the operational aspects of the RIF.[19]  Finally,

---

[17] Note that Plaintiffs do not make any reference to this material in the argument section of their brief.

[18] *Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874, 882 (5th Cir. 2003).  *See also Price Waterhouse v. Hopkins*, 490 U.S. 228, 277 (1989) (O'Connor, J., concurring) ("[S]tray remarks in the workplace . . . unrelated to the decisional process itself [cannot] suffice to satisfy the plaintiff's burden."); *Girten v. McRentals, Inc.*, 337 F.3d 979, 983 (8th Cir. 2003) (remark that plaintiffs were too old did not show pretext, because it was remote in time and may not have been made by a decision maker).

[19] A review of the very brief deposition of former Chairman Powell (Ex. 39) underscores his lack of involvement in (or even knowledge of) how the RIF was implemented.

Plaintiffs make no attempt to connect the alleged remark to the decisions at issue here.[20]

  3.  Plaintiffs' assertions about FDIC's college recruiting (Pl's Br. at 2) are both

disingenuous and not germane to the RIF in DRR.  In his initial report, Plaintiffs' expert

dismissed the idea of any hiring issue as follows:

> The great majority of these new hires were non-career appointments (e.g., interns
> and trainees) at Grade 7 or lower, assigned primarily to [divisions other than
> DRR].

10/15/07 Report of Lance Seberhagen (Agency MSJ Ex. 28) at p. 6.[21]  Plaintiffs' expert was

correct in these statements as evidenced by his tables on hiring activity at the agency.  *See id.* at

Table 12, 1/28/08 Seberhagen Report (Agency MSJ Ex. 28-2) at Table 15 (showing that the bulk

of the hiring was in relatively low-level jobs).

  In his final report, however, Dr. Seberhagen changed his hiring conclusion by deleting

the above-quoted statement that the great majority of new hires were lower level interns and

trainees, and has instead added a statement that "thus, FDIC was hiring younger workers at the

same time that it was laying off older workers."  *See* 1/28/08 Seberhagen Report (Agency MSJ

Ex. 28-2) at p. 6.

  This change was obviously made to accommodate Plaintiffs' argument.  It is not

grounded in the expert's hiring data (which were virtually unchanged from his initial to his final

report), and it is misleading.  Indeed, Dr. Seberhagen's data reflect that <u>DRR hired only four</u>

---

[20] *See Beeck v. Federal Express Corp.*, 81 F. Supp.2d 48, 53-54 (D.D.C. 2000) (granting
summary judgment for employer and holding that discriminatory statements, "even if made by
decision-makers," are not direct evidence of discrimination "where the remarks are unrelated to
the decisional process itself."), *citing, inter alia, Siragy v. Georgetown University*, No. Civ.A.
97-2557, 1999 WL 767831, at *6 (D.D.C. Aug. 20, 1999) (Urbina, J.).
[21] ECF header p. 8 of Doc. 43-11.

employees[22] during the year that it was reducing its workforce from over 500 to less than 240. This is obviously inconsequential.

Moreover, Plaintiffs' assertion about college recruiting (Pl's Br. at 2) concerns divisions other than DRR; *i.e.*, primarily trainees to become future bank examiners in DSC.[23]  Presumably, Plaintiffs are attempting to imply that this detracts from Defendant's business reason for staff reductions in DRR.  But there is nothing surprising about the continuing need for certified bank examiners in a division (such as DSC) tasked with the supervision of all banks, while being overstaffed in a division (such as DRR) responsible for disposing of assets incident to bank failures (of which there were virtually none).

Even more significantly, these jobs were made available to Plaintiffs.  *See* Agency MSJ at 12-13.  In the context of the crossover program (one of the options especially designed to provide for employee choice during the staff reductions), all that DRR employees had to do was apply; many of them did so; and virtually all who applied were successful.  *Id.*

## IV.  CONCLUSION

In their pending cross-motions for summary judgment, both Defendant and the Plaintiffs contend that this case should be disposed of on motion, without the necessity of litigating any material issues of fact in this non-jury case.  Plaintiffs contend that they are entitled to summary judgment as to liability under the theory that the FDIC's corporate-wide downsizing in 2004-2005 had a disparate impact on DRR employees who were age 50 and older.  But their only proffered support for this conclusion was obtained by employing the artifice of instructing their

---

[22] *See* 1/28/08 Seberhagen Report (Agency MSJ Ex. 28-2) at Table 16 (ECF header p. 67 of Doc. 43-11; also found in Plaintiffs' MSJ exhibit at ECF header p. 14 of Doc. 44-5).  *See also* Second Declaration of Lester Bodian (attached hereto as Exhibit 36), at ¶ 10.
[23] Plaintiffs describe these positions as entry level hires embarking on an extended (three or four years) training program followed by an examination to become bank examiners.  Pl's Br. at 2.

expert to combine the large number of DRR employees who voluntarily chose to take the buyout <u>prior to</u> the RIF with the much smaller group of employees who actually were involuntarily separated <u>during</u> the RIF.[24]  When the disparate impact analysis is properly limited to the 63 DRR employees who were involuntarily separated during the RIF, the statistics show that RIF had a disparate impact on <u>younger</u> employees who were under 50.

Moreover, the FDIC has presented irrefutable evidence of the business conditions in the banking industry at the time which completely justified its downsizing decisions with respect to the Agency as a whole and DRR in particular.  The Agency's compelling reasons for reducing its staff provide a complete defense to Plaintiffs' disparate impact claim of age discrimination.

For the reasons set forth herein and in the Agency's motion for summary judgment, Plaintiffs' motion should be denied and the Defendant's motion should be granted.

Respectfully submitted,


*/s/ William S. Jones*

_____
William S. Jones
Georgia Bar No. 404288
Counsel, Legal Division
Federal Deposit Insurance Corporation
3501 N. Fairfax Drive (VS-E6006)
Arlington, VA 22226
(703) 562-2362
(703) 562-2482 (Fax)

Stephen J. Kessler
D.C. Bar No. 382427
Counsel, Legal Division
Federal Deposit Insurance Corporation

---

[24] Even this contrived result falls short of the Supreme Court's requirements for a *prima facie* case.  See section III.B above and Agency MSJ at 30-32.

3501 N. Fairfax Drive (VS-E6014)
Arlington, VA 22226
(703) 562-2311
(703) 562-2482 (Fax)

Attorneys for Defendant

Dated: March 7, 2008