**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| BARBARA ALIOTTA, et al. and ) <br> Others similarly situated, ) <br> ) <br>       Plaintiffs, ) <br> ) <br> v.   . ) <br> ) <br> SHEILA BAIR, CHAIRMAN, ) <br> FEDERAL DEPOSIT INSURANCE ) <br> CORPORATION, ) <br> ) <br>       Defendant. ) <br> _____) | Case Number 1: 05CV02325 <br> Class Action |

**PLAINTIFFS' SUPPLEMENTAL MEMORANDUM CONCERNING THE**
**DECLARATIONS OF DR. BODIAN AND IN OPPOSITION TO THE**
**TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiffs file this Supplemental Memorandum in Opposition to Defendant's Motion for Summary Judgment to note the sharp change in position of Defendant's employee, Dr. Lester Bodian and the change in the position of the Defendant Agency. On May 5, 2008, Defendant filed an "Amendment to Second Declaration of Lester Bodian", Doc. 52-3, and a conforming amendment to its responses to Plaintiffs' requests for admissions.

The Second Declaration of Dr. Bodian was filed by Defendant on March 7, 2008 in conjunction with its motion for summary judgment (Dkt. 46-4).  In paragraph 6 of his Declaration, Dr. Bodian stated that "as of January 1, 2005, a total number of 4747 permanent employees at the FDIC with Appointment Codes 01 and 02, of which 1745 were under the age of 50 and 3002 were age 50 or over." Para. 6, Doc. 46-4 at 2 Accord: para. 7. In that Declaration he indicated that only 37% of the career employees of FDIC were under the age of 50, while 53%, or "3002 employees were age 50 or older." *Id.*

By contrast, Plaintiffs contended (Am. Complaint paras.89 and 90) that "Defendant chose to conduct the 2005 RIF...in DRR ..because DRR's workforce was significantly older than the work force or the other Divisions." Dr. Seberhagen's report showed that of the FDIC 's employees as of January 1, 2005 there were a total of 4539 in appointment code 1 an additional 187 in code 2 or a total of 4,726, of whom only 1879 , or 40% were age 50 or older . Plaintiffs Ex. 1 at Table 1, page 7.

In his Second Declaration, however, Dr. Bodian reported information as of Dec. 31, 2005 showed that for the FDIC as a whole, in career appointments, the FDIC had 4747 employees with Codes 01 or 02, of whom "3002 employees were age 50 or over as of January 1, 2005." Report of Dr. Bodian, Ex. 36 at para. 7, p.2, Doc. 46-4. His report indicated that on the first day of 2005, about 63% of the career employees were over the age of 50 Id. Similarly, in the Second Declaration he reported that "The results show a total number of 4167 permanent employees with Appointment Codes 01 and 02, of which ...2619 (or about 63%) were age 50 of over as of December 31, 2005." Ex. 36, p.2 Para. 7 (Doc. 46-4). In his Rebuttal Report of Jan. 28, 2008, Dr. Seberhagen, however, reported as of Dec. 31, 2005 a total of "1505 employees age 50 up," or about 34% of the 4138 full time employees, in Appointment Codes 1 and 2, *See* Ex. 1, Table 12, p. 11. while there were at the same time 2736 employees under 50, that is about 64% of the workforce.

Defendant thereafter filed an "Amendment to Second Declaration of Lester Bodian" on May 12 (Dkt. No. 52-3). The results in Dr. Bodian's May 5 Amended Second Declaration were notably different from those in his March 7 Second Declaration. Dr. Bodian now declares that as of Jan. 1, 2005, the FDIC's workforce of career employees was only 37% over the age of 50, approximately 63% under the age of 50. Id.

2

The statistical results in the Amended Second Declaration of Dr. Bodian now are consistent with Dr. Seberhagen's findings as explained in Dr. Seberhagen's attached Declaration of May 19, 2008. and his earlier report, Ex.1 Rebuttal and Report of Dr. Seberhagen, January 28, 2008. The report of that date differences in selection rates for termination of employment in FDIC, based on age were statistically significant, and harmed the oldest employees disproportionately, with a chance probability of less than 0.0001% and a difference of over 4.90 standard deviations for "career" and "permanent" employees. Ex. 1, Tables 12 (for career employees only) and Table 13 (for permanent employees, including career employees). That report shows that the disparity in treatment harmed oldest employees (those over 50) at more than twice the rate as those under 50, that is more than 19% of all of the oldest employees of FDIC were separated from the FDIC, while slightly less than 9% of those under 50 were so separated. Ex. 1, Table 13.

Dr. Seberhagen points out in his attached Declaration of May 19, 2008, that he re-calculated the employment totals for total FDIC to correspond to the employee groupings in Dr. Bodian's Amended Second Declaration. (Seberhagen Declaration, para. 5). Dr. Seberhagen found that he had mistakenly included "new hires" in his employment totals for January 1, 2005. Dr. Seberhagen's initial figures were almost identical to those in Dr. Bodian's Amended Second Declaration. Dr. Seberhagen believes that Dr. Bodian's employment totals for January 1, 2005 may have mistakenly included employees hired during 2005, which likely accounted for the differences between his and the FDIC's employment totals for January 1, 2005. (Seberhagen Declaration of May 19, 2008, para. 6.

Dr. Seberhagen also conducted a revised impact analysis using January 1, 2005 as well as September 30, 2005. Dr. Seberhagen found that the degree of adverse discriminatory impact against employees over the age of 50 was even greater when age was based on January 1, 2005 rather than

September 30, 2005 (Seberhagen Declaration, para. 13). Indeed, both figures are statistically significant, with differences exceeding ten standard deviations. *Id.*

Thus, Dr. Bodian's findings in his Amended Second Declaration are consistent with Dr. Seberhagen's conclusions, both in his January 28, 2008 declaration and his attached May 13, 2008 Declaration of May 19, 2008, that the DRR workforce was significantly older than that of the Agency as a whole, namely about 60% over the age of 50, as compared to the Agency as a whole which was less than 40% or less "permanent" employees age fifty and over, with a disparity of 4.90 standard deviations, and less than a one in ten-thousand chance that this disparity occurred by chance.

When "competing expert opinions present the 'classic battle of the experts' ... it [is] up to a jury to evaluate what weight and credibility each expert opinion deserves." *Phillips v. Cohen*, 400 F.3d 388, 399 (6th Cir. 2005)(citation omitted). However, in this case, the parties do not have any battle of the experts, because Dr. Bodian's report, as recently amended, as corrected is now consistent with the Rebuttal Report of Dr. Seberhagen.

In this case, Seberhagen's January 28, 2008 findings are not contradicted by Dr. Jennerett or by Dr. Bodian, and Plaintiffs' allegation that the work force of DRR was on Jan. 1, 2005, the oldest of all of the Divisions, and particularly had a composition of more than 68% career employees over age 50, and 64% of its permanent employees, although in the FDIC as a whole, less than 40% of the permanent employees were over the age of 50. Seberhagen Rebuttal Report at Tables 8 and 13, at 9 and p. 11.

Dr. Bodian's analysis in his Second Amended declaration does not submit competing data with respect Dr. Seberhagen's findings as to the adverse impact against Plaintiffs and other members of

the class within DRR.[1]

Now neither Second Amended Declaration of Dr. Bodian, nor the report of Dr. Jennerett offer differ data with respect the FDIC as a whole. There is therefore no disputed issue of fact on whether or not the downsizing program resulted in termination of employment of more than 19% of Defendant's oldest employees, but in less than 10% of its employees under 50 at most 8.9% of its younger employees, and that the differences show 10 standard deviations and that there is less than one chance in 10,000 that such differences could occur by chance. Seberhagen report at Tables 12 and 13.

For the reasons set forth above and in Plaintiffs' original memorandum in opposition to the Defendant's motion for summary judgment, and based upon all of the evidence, the evidence shows that Defendant's conduct had a discriminatory, adverse impact against its employees over the age of 50 in the 2005 downsizing. Defendant's motion for summary judgement should be denied and either the Plaintiffs' motion for summary judgment should be granted, or this case should be set for trial at the earliest date feasible.

---

[1] In Ex. 1, Dr. Seberhagen found that for the 503 permanent employees employed there on Jan. 1, 323 were over the age of 50, and of those oldest employees, 138 were separated from their employment for RIF related reasons, or 42.7%, while for the younger employees under age 50, only 55 or 30.6% were so separated a difference of 2.67 standard deviations. Table 13. See also, Table 12, showing 3.16 standard deviations.

**Respectfully Submitted,**

/s/ David L. Rose
David L. Rose
Joshua N. Rose
ROSE & ROSE, P.C.
1320 19th Street, NW, Suite 601
Washington, D.C. 20036
(202) 331-8555
(202) 331-0996 fax
daver@roselawyers.com
josh@roselawyers.com
Attorneys for Plaintiffs

Dated: May 20, 2008