UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                              )
**BARBARA ALIOTTA, et al**                    )
                                              )
    **Plaintiffs,**                      )
                                              )
    **v.**                              )    **Case No. 1:05-cv-02325-RMU**
                                              )
**SHEILA C. BAIR,**                           )
**Chairman,**                                 )
**Federal Deposit Insurance Corporation,**    )
                                              )
    **Defendant.**                       )
_____)


**DEFENDANT'S RESPONSE TO PLAINTIFFS' SUPPLEMENTAL
MEMORANDUM CONCERNING THE DECLARATIONS OF DR. BODIAN
AND IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

    On May 5, 2008, Defendant filed amended responses to Plaintiffs' statement of

undisputed facts nos. 9-10 and 14-15, supported by an amendment to paragraphs 6 and 7 of the

Second Declaration of Lester Bodian.[1]  Although 40 out of 47 of Plaintiffs' undisputed facts

(including nos. 9-10 and 14-15) were unsupported by any reference to the evidentiary record in

contravention of LCvR 7(h), Defendant sought to address the substance of all such facts alleged

by Plaintiffs, regardless of whether or not they were material to the dispositive issues in this case.

The numerical data contained in Plaintiffs' statement nos. 9-10 and 14-15, which include data

relating to the FDIC's workforce in Divisions and Offices of the FDIC other than the Division of

---

[1] Plaintiffs' statement on page 1 of their Supplemental Memorandum, that "[t]he Second
Declaration of Dr. Bodian was filed by Defendant on March 7, 2008 in connection with its
motion for summary judgment" is incorrect.  Defendant's motion for summary judgment and
related exhibits were filed on February 25, 2008, as ECF 43 through 43-18.  The Second
Declaration of Lester Bodian (ECF 46-4) was filed in March as an exhibit to Defendant's
opposition to Plaintiffs' motion for partial summary judgment, and its amendment in no way
affects the undisputed facts supporting Defendant's pending motion for summary judgment.

Resolutions and Receiverships ("DRR"), typify facts that are not material to Plaintiffs' complaint that the FDIC's 2005 reduction in force ("RIF") – which occurred in a single division of the FDIC, DRR – had a disparate impact on older employees in that Division.  Nevertheless, when Defendant discovered that there were inaccuracies in the Agency's responses to these alleged facts, the previous filings were amended in order to correct the record.

In response to these factual corrections, Plaintiffs have filed a "Supplemental Memorandum" which is in the nature of an unauthorized sur-reply, accompanied by a new declaration by Plaintiffs' expert, Dr. Seberhagen, which basically restates his adverse impact analysis for the FDIC as a whole that was previously set out in his report (ECF 44-5, at 6, 11). Putting aside any procedural improprieties, Plaintiffs' most recent filings serve to highlight the glaring error found in all of Dr. Seberhagen's analyses – that he includes in the same group and treats as similarly situated (at the behest of Plaintiffs' counsel) both (i) employees who voluntarily left the Agency in 2005 in response to its buyout offer, and (ii) those employees who were involuntarily terminated in the DRR RIF.  *See* Defendant's MSJ Reply (ECF 51) at 5-16.

Consistent with this improper methodology which combines these dis-similarly situated employees, Dr. Seberhagen concludes that there were 665 "RIF-related" separations FDIC-wide in 2005.  *See* Seberhagen Declaration, Ex. 2, Tables 1-4.  This result is clearly absurd, given that neither party disputes that (i) the 2005 RIF occurred <u>only</u> in DRR,[2] and (ii) there were only 503 DRR employees at the start of 2005 to begin with.[3]  Despite these undisputed facts, Dr.

---

[2] *See* uncontroverted Def. Statement of Undisputed Facts (ECF 43-2) nos. 57, 59, 63.  (While an informational notice of RIF was sent to Division of Information Technology ("DIT") employees, *see* Def. MSJ Ex. 18, specific RIF notices were never issued and a RIF was avoided in DIT because there were sufficient employee retirements, resignations and transfers to other Divisions and agencies, *see* Def. MSJ Exs. 19, 22.)

[3] Seberhagen Report (ECF 44-5), at 10 (Table 11); Jeanneret Reply Report (ECF 45-2), at 19 (Tables 2-3).

Seberhagen finds that hundreds of other, non-DRR employees suffered "RIF-related" separations during 2005, although it is clear that these were employees from other FDIC Divisions and Offices who either voluntarily resigned or retired.  Dr. Seberhagen's impact analysis of the FDIC as a whole in his most recent declaration illustrates the same error found in his DRR impact analysis in his January 28 expert report, which treats as similarly situated the 63 involuntarily separated DRR employees and the 132 DRR employees who voluntarily resigned or retired with a buyout prior to the RIF.[4]

Plaintiffs' recent submission also has the incidental effect of undermining their own theory of the case.  This is because Plaintiffs' agency-wide data show that the buyout was more attractive to older employees in the many Divisions and Offices of the FDIC where there was no impending RIF.  Since there can be no rational contention that such employees labored under any coercion (legally cognizable or not),[5] this phenomenon undercuts Plaintiffs' theory that the decision to apply for a buyout was not what it conclusively appears to be:  a matter of employee choice.

The revised data in Defendant's most recent filings do not affect, in any way, the conclusions of Defendant's expert, Dr. Jeanneret, which effectively rebut the opinions of Dr. Seberhagen.[6]  Critically, the agency-wide data which is the sole focus of Plaintiffs' recent

---

[4] *See* uncontroverted Def. Statement of Undisputed Facts (ECF 43-2) nos. 56, 68.

[5] Even as a watered-down constructive discharge, the requisites of which Plaintiffs do not even attempt to fulfill, *see* Def. MSJ (ECF 43) at 24-28, Def. MSJ Reply (ECF 51) at 9-14, Plaintiffs' theory does not work, because older employees in Divisions and Offices with no impending RIF chose the buyout in far greater numbers than their younger colleagues.  This implies that the buyout option was more practicable for persons who had more time to accumulate assets or were closer to retirement, a singularly unsurprising aspect of this type of incentive.  *See* Jeanneret Reply Report (ECF 45-2) at 11, fn. 5 and 6; Def. MSJ Reply (ECF 51) at 12, fn. 27.

[6] Plaintiffs' Supplemental Memorandum is either careless or misleading when it refers to "Dr. Bodian's report" on page 4 and states that "Dr. Bodian's report, as recently amended, as corrected now is consistent with the Rebuttal Report of Dr. Seberhagen."  Lester Bodian is

submission (and that of their expert) does not alter the statistical and/or demographic aspects of the RIF in DRR.  Thus, it remains uncontroverted that the average age of the 200+ DRR employees remaining after the RIF and buyouts was not statistically different from that of the 500+ employees in DRR prior to the downsizing.  It is also uncontroverted that comparing the population of DRR employees subject to the RIF with those actually RIF'd, not only was there no disparate impact adverse to older employees, but there was a statistically significant impact in favor of older employees.  *See* Def. MSJ Reply (ECF 51), at 4 and fn. 6-9.[7]

While Plaintiffs state that Dr. Seberhagen's report illustrates differing "selection rates" for older and younger employees, Supplemental Memorandum at 3, Dr. Seberhagen's analysis does not properly limit itself to the selection rates for DRR employees who were involuntarily terminated in the RIF; he also erroneously includes DRR employees who "self-selected" themselves for retirement or resignation prior to the RIF.[8]  As Dr. Jeanneret has stated, a statistical analysis such as this, which is based on combining employees who are not similarly situated, is inherently invalid.  Jeanneret Reply Report (ECF 45-2) at 9-11.  For all of the reasons

---

employed by the FDIC as a Personnel Systems Specialist and his role in this litigation has been that of a fact witness gathering employment data from the Agency's PERHIS electronic data system.  Dr. Seberhagen's analyses have been and continue to be conclusively rebutted by Defendant's expert reports submitted by Dr. Jeanneret (ECF 43-10 and 45-2), which remain accurate as filed and are unaffected by the amended data concerning the FDIC as a whole.

[7] Further, the agency-wide data corrections do not affect the question of whether DRR was a relatively "older" Division (Supplemental Memorandum at 2, 4), which is still an unsupported assertion; however, Defendant has already expressed a willingness that this be assumed *arguendo* for purposes of the cross-motions for summary judgment.  *See* Def. Opp. to Pl. MSJ (ECF 46) at 12.  Since Plaintiffs' claim was, by their own emphatic affirmation, narrowly directed at the allegation that Defendant chose DRR for a RIF because of its allegedly older work force, Defendant sought to meet this allegation head-on.  *Id.*

[8] *See* uncontroverted Def. Statement of Undisputed Facts (ECF 43-2) nos. 63 (specific RIF notices were sent to displaced DRR employees on June 30, 2005), 76-77 (the buyout period closed on May 2, 2005 and DRR employees electing the buyout did not participate in the RIF).

4

set forth in its briefings to date and related exhibits, the Agency requests that summary judgment

be entered in favor of Defendant.

Respectfully submitted,

*/s/ William S. Jones*

_____

William S. Jones
Georgia Bar No. 404288
Counsel, Legal Division
Federal Deposit Insurance Corporation
3501 N. Fairfax Drive (VS-E6006)
Arlington, VA 22226
(703) 562-2362
(703) 562-2482 (Fax)


Stephen J. Kessler
D.C. Bar No. 382427
Counsel, Legal Division
Federal Deposit Insurance Corporation
3501 N. Fairfax Drive (VS-E6014)
Arlington, VA 22226
(703) 562-2311
(703) 562-2482 (Fax)

Attorneys for Defendant

Dated: June 3, 2008