**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| BARBARA ALIOTTA *et al.*, | : | | |
| | : | | |
| Plaintiffs, | : | Civil Action No.: | 05-2325 (RMU) |
| | : | | |
| v. | : | Re Document No.: | 66 |
| | : | | |
| SHEILA C. BAIR, | : | | |
| In her official capacity as Chairman, | : | | |
| Federal Deposit Insurance Corporation, | : | | |
| | : | | |
| Defendant. | : | | |

**MEMORANDUM OPINION**

**DENYING THE PLAINTIFFS' MOTION TO ALTER OR AMEND JUDGMENT**

**I.  INTRODUCTION**

This case is before the court on the plaintiffs' motion to alter or amend judgment. The plaintiffs, former and current employees of the Division of Resolutions and Receiverships ("DRR") of the Federal Deposit Insurance Corporation ("FDIC" or "the defendant" or "the Agency"), brought a class action suit against the defendant under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq.*, alleging unlawful age discrimination. Following the parties' cross-motions for summary judgment, the court granted summary judgment in the defendant's favor. The plaintiffs now move to alter or amend that judgment pursuant to Federal Rule of Civil Procedure 59(e). Because the plaintiffs fail to show that they are entitled to relief upon reconsideration of the court's order, the court denies their motion.

## II. FACTUAL & PROCEDURAL BACKGROUND

Because the court outlined the facts underlying this case in its memorandum opinion of September 18, 2008, it will only briefly summarize them here. In October 2004, the Director of the DRR informed DRR employees that the Agency planned to reduce DRR staff by approximately fifty percent. Mem. Op. (Sept. 18, 2008) at 4. Although the Agency hoped to attain these staffing levels by instituting a buyout program and giving DRR employees the opportunity to transfer to other divisions, management also projected the need for an involuntary reduction in force ("RIF"). *Id.*

Ultimately, 132 DRR employees accepted a buyout package. *Id.* at 4. In addition, seventy-three DRR employees transferred to other divisions of the Agency before the RIF occurred. *Id.* The Agency proceeded with the RIF in 2005 in negotiation with the employees' collective bargaining group. *Id.* The RIF notifications set forth the factors that the Agency considered in selecting employees for involuntary termination: veteran status, civil service tenure, length of federal service and performance ratings. *Id.* The Agency terminated fifty-three employees, and another ten retired or resigned in lieu of separation. *Id.* After the RIF, 233 DRR employees remained. *Id.*

The plaintiffs, a class of former or present DRR employees over age fifty "who, as a result of the 2005 RIF, either accepted a buyout or reduction in grade, or were terminated from their positions in the DRR," filed suit in December 2005. *Id.* at 5-6. The plaintiffs claimed that the Agency's 2005 downsizing had an adverse impact on DRR employees over the age of fifty. *See generally* Am. Compl. On September 18, 2008, the court granted summary judgment in the defendant's favor, holding that the plaintiffs had failed to demonstrate that the buyouts or

transfers were involuntary and that the plaintiffs had not established that the RIF had a discriminatory effect on older employees. *See generally* Mem. Op. (Sept. 18, 2008). The plaintiffs filed a motion for reconsideration on October 3, 2008. *See generally* Pls.' Mot. The court now turns to the parties' arguments.

### III.  ANALYSIS

**A.  Legal Standard for Motion to Alter or Amend Judgment Under Rule 59(e)**

Federal Rule of Civil Procedure 59(e) provides that a motion to alter or amend a judgment must be filed within ten days of the entry of the judgment at issue. FED. R. CIV. P. 59(e); *see also Mashpee Wamponoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1098 (D.C. Cir. 2003) (stating that a Rule 59(e) motion "must be filed within 10 days of the challenged order, not including weekends, certain specified national holidays (including Christmas Day and New Year's Day), or any other day appointed as a holiday by the President"). While the court has considerable discretion in ruling on a Rule 59(e) motion, the reconsideration and amendment of a previous order is an unusual measure. *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (*per curiam*); *McDowell v. Calderon*, 197 F.3d 1253, 1255 (9th Cir. 1999). Rule 59(e) motions "need not be granted unless the district court finds that there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear legal error or prevent manifest injustice." *Ciralsky v. Cent. Intelligence Agency*, 355 F.3d 661, 671 (D.C. Cir. 2004) (quoting *Firestone*, 76 F.3d at 1208). Moreover, "[a] Rule 59(e) motion to reconsider is not simply an opportunity to reargue facts and theories upon which a court has already ruled," *New York v. United States*, 880 F. Supp. 37, 38 (D.D.C. 1995), or a vehicle for presenting

theories or arguments that could have been advanced earlier, *Kattan v. District of Columbia*, 995 F.2d 274, 276 (D.C. Cir. 1993); *W.C. & A.N. Miller Cos. v. United States*, 173 F.R.D. 1, 3 (D.D.C. 1997).

### B. The Court Denies the Plaintiffs' Motion to Alter or Amend Judgment

The plaintiffs offer three arguments in support of their motion to alter or amend judgment. First, they contend the court erroneously concluded that the buyouts were voluntary as a matter of law. Pls.' Mot. at 2-7. Second, the plaintiffs assert that the court misrepresented the year that the defendant's Corporate Employee program (which the court discusses below) began. *Id.* at 7-8. And third, the plaintiffs argue that they established a prima facie case of adverse impact. *Id.* at 8-9. The court now addresses each of these arguments in turn.

The plaintiffs advance four arguments in support of their contention that the buyouts were not voluntary as a matter of law. They assert that (1) the court erroneously adopted the "voluntariness" standard employed by the Merit Systems Protection Board ("MSPB") rather than the proper standard under the ADEA, and under the correct standard the buyouts were involuntary, *id.* at 2-3; (2) the court misapplied the Circuit's holding in *Schmid v. Frosch*, 680 F.2d 248 (D.C. Cir. 1982), *id.* at 3-4; (3) the voluntariness of the buyouts is at a minimum a disputed question of fact, *id.* at 4-5; and (4) their declarations demonstrate that the buyouts were, in fact, involuntary, *id.* at 5-7. The defendants disagree, asserting that the court correctly addressed the voluntariness issue in its memorandum opinion of September 18, 2008. Defs.' Opp'n at 3-8.

The plaintiffs' arguments on the voluntariness issue essentially reiterate those made in their opposition to the defendant's motion for summary judgment. *See* Pls.' Opp'n to Defs.'

Mot. for Summ. J. at 34-35 (arguing that "[t]he standards for an MSPB appeal are irrelevant to analysis of the [plaintiffs'] ADEA claim"); *id.* at 17 (maintaining that the buyouts were involuntary as defined in *Schmid v. Frosch*); *id.* at 15-17 (asserting that the buyouts were involuntary). Indeed, the court addressed all of these arguments in its memorandum opinion granting the defendant's motion for summary judgment. Mem. Op. (Sept. 18, 2008) at 10-17. As a result, the points that the plaintiffs raise with respect to the voluntariness of the buyouts constitute an impermissible attempt to relitigate issues on which the court has already ruled. *See New York*, 880 F. Supp. at 38.

The plaintiffs' next argument also echoes one made in their opposition to the defendant's summary judgment motion. In that submission, the plaintiffs asserted that the RIF was a pretext for unlawful age discrimination because the Agency "planned further downsizing so that [it] could commence recruitment for new employees on the campuses of colleges and universities and community centers under the new Corporate Employee program." Pls.' Opp'n to Def.'s Mot. for Summ. J. at 4. In its September 18, 2008 memorandum opinion, the court rejected this argument, observing that DRR only hired five new employees during 2005 – two of whom were over age fifty – while it reduced its workforce by nearly 300. Mem. Op. (Sept. 18, 2008) at 25. The court also noted that

> the new positions were for workers assuming different responsibilities for lower pay in different departments than the plaintiffs. Clearly, the two groups are not so similarly situated as to support the proposition that the FDIC conducted the voluntary buyout, transfers and RIF as an elaborate ruse to flush the agency of senior staff.

*Id.*

The plaintiffs now assert that the court erred by misstating the year in which the Corporate Employee program began. Pls.' Mot. at 7-8. They point out that "[w]hile the recruiting initiative may have begun in 2002," as the court stated it did, "there were no Corporate Employee students or facility until September 2005." *Id.* at 7. But as the defendant correctly observes, Def.'s Opp'n at 8, the court's analysis hinged not on the date on which the Corporate Employee program began, but on the fact that the plaintiffs and the employees hired through the Corporate Employee program were not similar enough – in their respective numbers or in their employment characteristics – to make a pretext claim plausible, Mem. Op. (Sept. 18, 2008) at 24-25. Therefore, the court declines to alter or amend its judgment. *See New York*, 880 F. Supp. at 38.

The plaintiffs' final argument fares no better. The plaintiffs contend that they established a prima facie case of adverse impact because the "reorganization plan affected all DRR employees, and is a 'specific employment practice'" as defined in *Smith v. City of Jackson*, 544 U.S. 228 (2005). Pls.' Mot. at 8-9. The defendant responds by urging that the plaintiffs' adverse impact claim must fail because the reorganization plan was not a "specific employment practice." Def.'s Opp'n at 9-10. As in the plaintiffs' first two arguments, the court addressed whether the reorganization plan was a "specific employment practice" in its memorandum opinion of September 18, 2008, Mem. Op. (Sept. 18, 2008) at 23. Consequently the point warrants no further discussion here, *see New York*, 880 F. Supp. at 38, except to note the following: the court's grant of summary judgment on the adverse impact claim did not rest solely on the determination that the reorganization plan was not a "specific employment practice." To the contrary, the court also held that the plaintiffs failed to "show that the RIF adversely impacted

older employees," Mem. Op. (Sept. 18, 2008) at 23, and noted that "[f]urther, the defendant has produced evidence indicating that the 2005 downsizing throughout the FDIC in general and the RIF in DRR in particular were based on a reasonable factor other than age – a reduced workload," *id.* at 24.  As a result, the plaintiffs' argument that they are entitled to reconsideration of the dismissal of their suit because the reorganization plan was a "specific employment practice" fails.

## IV.  CONCLUSION

For the foregoing reasons, the court denies the plaintiffs' motion to alter or amend judgment.  An Order consistent with this Memorandum Opinion is separately and contemporaneously issued this 10th day of June, 2009.

RICARDO M. URBINA
United States District Judge